A. Barry Cappello (SBN 037835)
abc@cappellonoel.com
Matthew Clarke (SBN 184959)
mclarke@cappellonoel.com
Dugan P. Kelley (SBN 207347)
dkelley@cappellonoel.com
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, California 93101
Telephone:     (805) 564-2444
Facsimile:     (805) 965-5950

Marc S. Cohen (SBN 65486)
mcohen@kayescholer.com
Ashleigh A. Danker (SBN 138419)
adanker@kayescholer.com
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067-6048
Telephone:     (310) 788-1000
Facsimile:     (310) 788-1200

Attorneys for Plaintiffs
Kamran Pasadena Group, Inc. and Kamran Group, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In Re:  NAMCO CAPITAL GROUP INC, a California corporation<br><br>Debtor.<br>_____<br><br>KAMRAN PASADENA GROUP, INC., a California corporation; and KAMRAN GROUP, LLC, a California limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC, a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ | Case No.: 2:08-bk-32333-BR<br>Chapter 11<br>Adv. No.: 2:08-bk_____-BR<br><br>**COMPLAINT FOR:**<br>1.  **Breach Of Written Contract/ Promissory Notes**<br>2.  **Breach of Implied Covenant of Good Faith and Fair Dealing**<br>3.  **Declaratory Relief**<br>4.  **Injunctive Relief**<br>5.  **Fraudulent Inducement**<br>6.  **Fraud - Intentional Concealment**<br>7.  **Fraud - Negligent Concealment**<br>8.  **Conversion - Declaration of Constructive/Resulting Trust**<br>9.  **Interference with Prospective Economic Advantage**<br>10. **Decree of Dissolution and Winding-Up of Joint Venture**<br>11. **To Set Aside the Fraudulent Transfer of the Assets Belonging to Plaintiffs**<br>12. **Rescission**<br>13. **Cancellation** |

CAPPELLO
& NOEL
TRIAL LAWYERS

09019.003 - 161637.1

HEKMATRAVAN, an individual; JAMSHID BAHARVAR; an individual; ASHLAND PROPERTIES, LLC, A California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC; a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEES FOR THE FATORECHI-HASHEMI TRUST; and
DOES 1 THROUGH 100

            Defendants.

**14. Slander of Title**
**15. For An Accounting**

TO THE HONORABLE BARRY RUSSELL UNITED STATES BANKRUPTCY COURT JUDGE, AND ALL DEFENDNTS:

Plaintiffs Kamran Pasadena Group, Inc. and Kamran Group, LLC allege as follows:

## INTRODUCTION

1. Immediate Court intervention is necessary to stop the wrongful foreclosure and fraudulent transfer of three pieces of real property in Pasadena, California. The Namco Trustee (defined below) has or imminently will file a notice of sale setting a foreclosure sale in early March. The Trustee is attempting to enforce Notices of Default and proceed with a non-judicial foreclosure on Promissory Notes that were procured without consideration. Since Plaintiffs can demonstrate that no consideration was paid to procure the bogus Promissory Notes that serve as the foundation for the Trustee's purported legal right to proceed with a non-judicial foreclosure, Court intervention and a declaration of the respective rights and duties between the parties is necessary to prevent manifest injustice.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334. This suit arises under title 11 of the United States, 11 U.S.C. §§ 101, *et seq.* (as hereafter amended, modified, or supplemented, the "Bankruptcy Code") and arises in and is related to the above-captioned bankruptcy case. This is a core matter under 28 U.S.C. §§ 157(b)(1) and (b)(2).

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

/ / /

1

09019.003 - 161637.1

## PARTIES

4.    At all times herein mentioned, plaintiff Kamran Group, LLC ("Kamran") was and is a California limited liability company, whose sole member is David Golkar ("Golkar").

5.    At all times herein mentioned, plaintiff Kamran Pasadena Group, Inc. ("Kamran Inc.") was and is a California corporation authorized to do business in the State of California. Kamran Pasadena Group Inc. was formerly known as Pasadena Athletic Operating Club, Inc., a dissolved California corporation.

6.    Upon information and belief Namco Capital Group, Inc. ("Namco") was and is a California corporation, with its principal place of business located at 12121 Wilshire Boulevard, Suite 1400, Los Angeles, California. At all times herein mentioned, Ezri Namvar ("Namvar") was the principal and/or agent for Namco in its dealings with the Kamran entities as set forth herein.

7.    Pursuant to an order of this Court, Bradley D. Sharp was appointed as the Chapter 11 Trustee for Namco (the "Namco Trustee")

8.    Upon information and belief Woodman Partners, LLC ("Woodman") is a California limited liability company authorized to do business in the State of California, whose members are relatives of Namvar. Woodman was designated as a Trustee of the Promissory Notes at set forth herein.

9.    Upon information and belief, Fidelity National Title Company is a California corporation authorized to do business in the State of California with its principal place of business in Santa Ana, California.

10.    Upon information and belief, Daniel Jacob Issac, Fay Franak Sarafian, Darioush Soleimani, Morteza Homayounjam, Mehrnaz Hekmatravan, Jamshid Baharvar are individuals residing in California who purportedly bought fractional interests from Namco in the null and void Promissory Notes discussed herein. Ashland Properties, LLC, Farmco Trust, Sawtelle Properties, LLC, and Mahmoud Fatorechi and Soussan Hashemi as trustees for the Fatorechi-Hashemi Trust, are entities authorized to do business in California who purportedly bought fractional interests from Defendant Namco in the null and void Promissory Notes discussed herein.

/ / /

2

09019.003 - 161637.1

## GENERAL ALLEGATIONS

**A.     Ezri Namvar and Namco decided to develop real estate projects in California and form joint venture relationship with Plaintiffs:**

11.     In or about late 2004, Golkar met Namvar. Golkar was introduced to Namvar, through Namco, as a potential source of short-term financing for the development of a large tract of land (approximately 1,600 acres into several thousand residential lots) in Beaumont, California. Namvar was impressed with Golkar's development expertise and urged Golkar to consider forming a joint venture relationship to develop other properties. Around this time, Golkar and Namvar solidified their intention to develop other properties. At all times mentioned herein Golkar operated through his Kamran entities. At all times mentioned herein Namvar operated through his Namco and related entities.

12.     Namvar and Golkar agreed their joint venture would be owned 50%/50% with Golkar contributing his development expertise and 10% of the Equity and Namvar contributing his finance expertise and 90% of the equity. The venture called for profits to be split pursuant to the parties' 50-50 percentage ownership interest. Golkar was to manage the venture. The funds paid by each party were credited toward their capital account. Golkar had no idea of Namvar and/or Namco's sordid dealings that are now the subject of multiple bankruptcy actions and common knowledge. Namvar presented himself as a legitimate businessman with specialized skill and expertise in finance and the ability to either fund or find financing for development deals that Golkar was acquiring for joint venture purposes with Namvar.

**B.     Namco and Plaintiffs agree to develop three pieces of real property in Pasadena:**

13.     Throughout the remainder of 2004 and into 2005, Namvar and Golkar (through their entities Kamran and Namco) looked for development ideas.

14.     In or about early August 2005, a real estate broker approached Golkar with the opportunity to purchase 233 North Fair Oaks Avenue in Pasadena, California ("233 Fair Oaks"). This parcel was formerly used as a bank and abutted the Pasadena Athletic Club parcels located at 25 West Walnut Avenue, Pasadena, California ("25 West Walnut"). While Golkar was performing

3

due diligence on 233 Fair Oaks, he was approached by the owner of the Pasadena Athletic Club, John Richards. Richards was interested in selling 25 West Walnut.

15. Golkar and Namvar entered into an oral Joint Venture Agreement to complete the Pasadena Development (assemblage and development). Namvar, through his Tranmar entity acquired the Bank site (Tranmar Property) and Golkar, through his Kamran entity, acquired the Pasadena Athletic Club Corporation, condominiums and affordable housing site. From the onset of the joint venture, Golkar was managing the development of the Property through its entitlement through the City of Pasadena. In December 2007, the parties created Walnut Holding Company, LLC, formed on the same terms as their Joint Venture. The transfer of the real estate and corporate stock to the Walnut Holding Company entity did not take place as promised, but the parties had agreed to implement the venture terms as originally agreed between Namvar and Golkar in 2005 (see paragraph 12, above).

16. Properties were obtained, purchase money passed and a great deal of development money was all spent in accordance with the parties' original intent.

17. Both Golkar and Namvar wanted to develop the 233 Fair Oaks and 25 West Walnut properties into one mixed use project (with hotel, residential, and retail space) for South Pasadena. Both Namvar (through Namco) and Golkar (through Kamran) agreed to proceed with the acquisition and development of these properties in furtherance of their joint venture relationship ("Pasadena project").

18. On or about August 12, 2005, 233 Fair Oaks (APN 5713-009-037) was purchased for $4,300,000.00. This property was a single structure of about 9,600 square feet on a parcel of land of about 41,818 square feet. Namvar and Golkar agreed to form a new entity, Walnut Holding, that would hold title to the 233 Fair Oaks and 25 West Walnut properties. Since the entity was not formed at the time the 233 Fair Oaks sale closed, Namvar requested that Golkar agree to use his Tranmar Properties, LLC (whose managing member was Namvar). Kamran tendered $1,250,000 for the purchase of 233 Fair Oaks. The 233 Fair Oaks property transaction closed on December 12, 2005.

/ / /

4

**C.      Namco borrows $5 million on the 233 Fair Oaks property:**

19.      Upon information and belief, unknown to Kamran or Golkar, Namco borrowed $5 million against the 233 Fair Oaks property.  Namco was able to accomplish these transactions because the title at that time was and still is under Tranmar Properties, LLC.  Upon information and belief, Namco borrowed this $5 million ($2,500,000 in 2005 and another $2,500,000 in 2006) from United Commercial Bank.

20.      This fraudulent transfer occurred without the consent, notice, or knowledge by Kamran.  As a result, Kamran has been damaged in an amount to be ascertained at the time to trial in this matter.

**D.      Namco and Plaintiffs complete the purchase of the Pasadena Athletic Club and 4 condo units for the Pasadena project:**

21.      The Pasadena Athletic Club at 25 West Walnut, Unit #503, was purchased for $7,650,000.  The Pasadena Athletic Club was a three story athletic club with four condominiums on the fourth floor.  John Richards, the owner and president of Pasadena Athletic Club offered Golkar the opportunity to purchase his parcel and include it with the Pasadena project. Richards informed Kamran that the Pasadena Athletic Club had over 3,500 members and he wanted to close the property transaction after approximately one year later to enable him to give notification to the Club's members and ease the transition.  Namco and Kamran agreed to this extended escrow period. Kamran deposited $250,000 in February 2006 and released another $500,000 for the purchase in June 2006.  The transaction closed on June 23, 2007.  Like the 233 Fair Oaks property, this property was going to be transferred into the joint venture Walnut Holding for the Pasadena project, although initially it was agreed that it would be held in the Kamran entity.

22.      In addition to the Pasadena Athletic Club, there were four residential units owned by other individuals at 25 West Walnut, Units #402, #405, #501, and #504.  Plaintiffs and Namco negotiated the purchase prices for these individual units with their owners as follows:

a.   A condominium unit number 405 at 25 West Walnut, Pasadena APN 5713-009-040 owned by Silvia Gordon for $530,000.  Escrow was opened on 3/29/2007 and Namco

5

deposited $30,000 to escrow. Escrow was closed on 4/30/2007. At the closing, Namco deposited an additional $503,154 including closing cost.

b.  A condominium unit number 504 at 25 West Walnut, Pasadena APN 5713-009-041 owned by Dick Davis for $1,650,000. Escrow opened on 5/10/2007 and Namco put a $300,000 deposit in escrow. Escrow was closed on 7/6/2007. At closing, Namco deposited an additional $1,357,847 to escrow including the closing cost.

c.  A condominium unit number 501 at 25 West Walnut, Pasadena APN 5713-009-042 owned by Gay Utter for $780,000. Escrow was opened on 2/27/2007 and Namco deposited $150,000 in escrow. Escrow closed on 7/3/2007. At closing, Plaintiff deposited an additional $630,000 to escrow.

d.  A condominium unit number 402 at 25 West Walnut, Pasadena APN 5713-009-043 owned by Christopher Holden $648,600. Escrow opened on 10/19/2006 and Namco deposited $125,000 in escrow. The parties agreed that this unit would be exchanged and replaced with a new unit after the completion of the Mixed Use Development at the Pasadena project. Chris Holden was carrying a mortgage of about $127,000 at that time and Kamran Group, LLC has paid this mortgage ever since. The mortgage was negatively amortized and currently the principle balance of that loan is $132,000. Later, on 11/21/08, Plaintiffs paid an additional $57,194 to Chris Holden for an extension of escrow. Upon information and belief, Chris Holden currently owns about 2% of this property.

23.  During 2006 (prior to closing the Club unit and condo units at 25 West Walnut), Kamran was procuring entitlements and pushing the Pasadena project forward. The six story development will be comprised of a 200-room hotel and 110 luxury for sale residences. The property will offer two restaurants, including Spago, the internationally acclaimed signature restaurant of Wolfgang Puck. Wolfgang Puck will also be providing services for the hotel's other full service restaurant and the catering and banquet facilities. Other amenities at the property will include a luxurious spa with a state-of-the-art fitness center, lobby bar and rooftop sky-bar, separate swimming pool for guest and residents, over 8200 square feet of meeting and banquet space and a

6

09019.003 - 161637.1

nightclub. The focal point of the Pasadena project will be an open air, interior courtyard promenade offering an outdoor walking, shopping and dining experience within the property's core. Located in downtown Pasadena, the property is adjacent to historic old Pasadena, which features over 80 restaurants and bars and over 120 stores. Upon completion of the Pasadena project, the Pasadena Hotel & Residences will be among the most luxurious hotels in the greater Los Angeles and Tri-City area of Glendale, Burbank and Pasadena. A non-binding letter of intent has been executed with Starwood Hotels and Resort Worldwide to brand the property a W Hotel and Residences, which upon completion will offer its guest and residences amenities found nowhere else in the Tri-City marketplace.

24.    During the course of procuring entitlements and negotiating with vendors for the new Pasadena project, Kamran and Namco were searching to purchase another parcel that would comply with the requirement that a part of the development also include low income housing. In order to receive approval for the Pasadena project, Kamran and Namco needed 15% of the residential housing component to be allocated for low income housing. Kamran and Namco found such a property at 810-820 Marengo Avenue ("Marengo"), Pasadena, California for $3,600,000. Marengo had 18 units that satisfied the low income housing requirement and was located within one mile of 25 West Walnut. Namco contributed approximately $400,000 toward the acquisition of this property in April 2007. The Marengo transaction closed on June 27, 2007.

**E.    Kamran tenders another $4,300,000 to Namco:**

25.    In or about the same time that the Pasadena project was progressing, Kamran and Namco were also planning a large development in Banning, California ("Banning project"). The Banning project was a residential project of over 450 acres of approximately 477 residential lots for single family dwellings. Kamran contributed a total of $4,300,000 toward the Banning project. During the course of developing the Banning project, Kamran believed it was stretched too thin (because of the Pasadena project). Namco initially agreed to convert the $4,300,000 paid by Kamran into a loan and Namco issued Kamran an unsecured promissory note to that effect.

26.    Although Namco made modest interest payments on the promissory note, Kamran wanted a secured position or an agreement to convert the $4,300,000 paid by Kamran on the

7

Banning project into a credit in Plaintiffs' capital account for the Pasadena project. It was estimated that to go vertical with construction build-out would require approximately $220,000,000. As a result, in or around March 2008, Kamran and Namco agreed to credit Plaintiffs' capital account with the $4,300,000 initially paid for the Banning project, and Kamran no longer had any interest in the Banning project. Accordingly, Kamran was not only in full compliance with the terms of the joint venture for the Pasadena project, but also the percentage of ownership was adjusted per the term of the agreement.

**F.    Namco fails to give Plaintiffs any consideration for Promissory Notes secured by Plaintiffs' interest in the 25 West Walnut and Marengo properties:**

27.    After Kamran had fully complied with its joint venture terms, conditions, and obligations, it needed cash to continue to develop the 25 West Walnut project and other projects. The total acquisition price for the real properties included in the Pasadena project was $19,226,215 which $648,000 not yet closed for one outstanding condominium. Plaintiffs contributed over $8,300,000 rather than the $1,922,621.50 it was obligated under the terms of the joint venture between Namco and Plaintiffs.

28.    Rather than obtain financing from other investors or financial institutions secured by Plaintiffs' ownership interests in the 25 West Walnut and Marengo properties, Plaintiffs agreed to allow Namco to give it $12,650,000 in exchange for Promissory Notes secured by these three pieces of real property. From June 2007 – September 2008, Namvar, through Namco, agreed to give Plaintiffs the following amounts secured by Promissory Notes ("Promissory Notes" or "Agreements"):

a.    25 West Walnut, Unit #503 (Pasadena Athletic Club portion): Kamran gave a promissory note in the amount of $5,000,000 on June 29, 2007 and $1,700,000 on September 11, 2008 (Attached as Exhibits A and B are true and correct copies of these Promissory Notes and related deeds of trust and assignment of rents);

b.    25 West Walnut, Unit #501 (Condo unit): Kamran gave a promissory note in the amount of $600,000 on September 10, 2007 (Attached as Exhibit C are true and

09019 003 - 161637.1

correct copies of this Promissory Notes and related deed of trust and assignment of rent);

c.  25 West Walnut, Unit #504 (Condo unit): Kamran gave a promissory note in the amount of $1,300,000 on September 10, 2007 (Attached as Exhibit D are true and correct copies of this Promissory Notes and related deed of trust and assignment of rent);

d.  25 West Walnut, Unit #405 (Condo unit): Kamran gave a promissory note in the amount of $450,000 on September 10, 2007 (Attached as Exhibit E are true and correct copies of this Promissory Notes and related deed of trust and assignment of rent); and Marengo property: Kamran gave a promissory note in the amount of $3,600,000 on June 29, 2007 (Attached as Exhibit F are true and correct copies of this Promissory Notes and related deed of trust and assignment of rent).

TOTAL CONSIDERATION EXPECTED FROM PROMISSORY NOTES = $12,650,000.

TOTAL CONSIDERATION RECEIVED BY PLAINTIFFS FROM NAMCO = $0.

**G.    Namco sells fractional interests in Plaintiffs' Promissory Notes on the Pasadena project without Plaintiffs' knowledge or consent:**

29.    Upon information and belief, although Namco recognized and stated to Kamran that no payments and/or interest were due until the promissory note amounts were tendered to Kamran, Namco (through Namvar) sold to third parties fractional interests in the null and void Promissory Notes. It is believed that Namco received approximately $11,406,200 from selling fictional interests to these third parties.

30.    Plaintiffs seek a declaration from this Court as to the rights and obligations between these third parties, Plaintiffs, and the Namco Trustee on behalf of the bankruptcy estate, given that Plaintiffs received no consideration and the Promissory Notes were never in effect nor did Namco have the legal right to sell fractional interests in the Promissory Notes.

/ / /

/ / /

9

**H.    Bankruptcy Trustee attempts to foreclose on the Pasadena project on the basis of bogus Promissory Notes:**

31.    Although Plaintiffs executed Promissory Notes in favor of Namco, Plaintiffs never received any consideration, i.e., the money called for in the Promissory Notes. Because Plaintiffs never received the money promised, Plaintiffs never made a single interest or principal payment on any of the Promissory Notes. Defendants never sent demands for principal or interest payments or a notice of default. Since June 2007, Kamran has never received any consideration for the Promissory Notes. Namvar and Namco could not (and did not) expect Kamran to make any interest or principal payments pursuant to the Promissory Notes because Namco had not complied with an essential term of the agreements/Promissory Notes (i.e. that the borrower receive consideration).

32.    Prior to Namco honoring its promises and contractual obligations, it was put into this involuntary bankruptcy proceeding. Namvar was also put into his own involuntary bankruptcy proceeding and R. Todd Neilson was appointed as the Chapter 11 Trustee for Namvar. The Namco Trustee has declared Notices of Default against Kamran for alleged failures to pay interest and/or principal payments on these Promissory Notes. The Namco Trustee insists that these Promissory Notes are in default, despite the lack of any consideration or legal right of the Namco Trustee to enforce these Promissory Notes. Notices of Default were recorded on or about November 13, 2009 as follows:

    a.    Walnut Unit #501 = $949,105.86 and allegedly accruing; (Attached hereto Exhibit G is a true and correct copy of the Notice.);

    b.    Walnut Unit #504 = $2,056,396.15 and allegedly accruing; (Attached hereto Exhibit H is a true and correct copy of the Notice.);

    c.    Walnut Unit#1 = $8,207,101.79 and allegedly accruing; (Attached hereto Exhibit I is a true and correct copy of the Notice.);

    d.    Walnut Unit #505 = $711,829.37 and allegedly accruing; (Attached hereto Exhibit J is a true and correct copy of the Notice.); and

10

09019.003 - 161637.1

e. Marengo = $5,900,113.16 and allegedly accruing. (Attached hereto Exhibit K is a true and correct copy of the Notice.)

TOTAL TRUSTEE CLAIMS PLAINTIFFS OWE ON THE PROMISSORY NOTES FOR THE PASADENA PROJECT = OVER $18 MILLION

TOTAL AMOUNT PLAINTIFFS RECEIVED FOR ANY PROMISSORY NOTE = $0.

I. **Injunctive Relief is critical to prevent wrongful foreclosure of Plaintiffs' interests on the Pasadena project:**

33. Despite the undisputed fact that Kamran has not received any consideration for the Promissory Notes, the Trustee is demanding over $18 million in order to prevent a non-judicial foreclosure on the Pasadena project. Since Namco never gave Kamran any consideration for the Promissory Notes, the purported Notices of Default and foreclosure proceedings should be determined null and void. Namvar and other Namco executives know that Kamran has never received any consideration for these Promissory Notes (in violation of the Promissory Notes). Notices of Default were issued only after a Trustee was appointed and made a wrongful assumption that consideration was given.

34. Since Namco never had a legal right to enforce the Promissory Notes, the Namco Trustee also has no legal right to enforce bogus Promissory Notes. Kamran seeks a declaration from this Court that the Notices of Default are null and void and enjoin the Trustee from proceeding with a default (where no default exists). Absent this Court enjoining the Namco Trustee, Namco will be unjustly enriched and allowed to complete the fraud it perpetrated on Kamran. Kamran seeks an injunction prohibiting the wrongful foreclosure on the properties involved in the Pasadena project.

35. Kamran also seeks compensatory and punitive damages according to proof at the time of trial. Kamran also seeks a declaration as to the rights and obligations between Kamran, the third parties who allegedly bought fractional interests of these Promissory Notes, and the Trustee who asserts a right to foreclose on the basis of Promissory Notes unsupported by consideration.

/ / /

/ / /

11

09019.003 - 161637.1

# FIRST CLAIM FOR RELIEF

## (Breach of Written Contract/Promissory Notes – All Plaintiffs Against the Namco Trustee)

36.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 35, inclusive, as though fully incorporated herein and made a part hereof.

37.   As alleged herein, Namco entered into written Agreements with Kamran, including the Promissory Notes and related documents with Kamran, wherein Namco was obligated to tender $12,650,000 to Kamran in exchange for the Promissory Notes. The Namco Trustee is now standing in the place of Namco and is asserting legal rights which do not exist.

38.   Kamran has performed all conditions, covenants and promises it was required to perform in accordance with the terms and conditions of the agreements.

39.   Namco and/or the Namco Trustee breached the agreements by its conduct, including but not limited to the following:

- Taking unilateral action without proper notice;

- Refusing to tender consideration in the amount of $12,650,000 without cause or contractual basis;

- Calling a default when no default existed under the terms of the Agreements;

- Imposing wrongful fees and charges based on a default that did not exist;

- Preventing Plaintiffs performance under the Agreements, then calling a default based on that purported failure to perform;

- Filing Notices of Default when Namco's own actions created a fictional alleged default;

- Failing to give proper notice prior to calling a default;

- Deceit and untruthfulness regarding its intention to avoid performance of its obligations under the Agreements;

- Otherwise breaching the terms of the Agreements.

40.   As a proximate result of the breaches of the Agreements specified herein, Plaintiffs have been damaged in an amount to be proven at trial, not less than $12,650,000.

12

09019 003  161637.1

## SECOND CLAIM FOR RELIEF

## (Breach of Implied Covenant of Good Faith and Fair Dealing – All Plaintiffs Against the Namco Trustee)

41.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 40, inclusive, as though fully incorporated herein and made a part hereof.

42.     There was implied in the Agreements between the Namco Trustee and Plaintiffs and related documents, a covenant of good faith and fair dealing whereby Namco impliedly covenanted that it would in good faith and in the exercise of fair dealing deal with Plaintiffs fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiffs' rights.

43.     As alleged herein, Namco breached the covenant by its acts, including but not limited to, any of the acts set forth above, to the extent that such acts may be deemed not to be express breaches of contract, and, in addition:

- Failing to give notice and time prior to taking unilateral action;
- Concealing its own impaired financial status while it attempted to wrest concessions from Plaintiffs;
- Failing to consider and/or negotiate in good faith with regard to its refusal to tender consideration for the Agreements;
- Imposing improper fees and charges based on a nonexistent default;
- Asserting an interpretation of the various Agreements between Plaintiffs and the Namco Trustee, and the parties' obligations pursuant to those agreements, which were contrary to the parties' understanding of those agreements;
- Evading the spirit of the bargain reflected ;
- Abusing its power to determine compliance with the Agreement;
- Abusing its power to determine and impose fees and charges on the account;
- Filing a Notice of Default when its own conduct created the purported default;
- Otherwise failing to do everything the Agreements presupposed the parties would do to accomplish their purpose; and

13

• Engaging in deceit and untruthfulness regarding its intention to avoid performance of its obligations under the Agreements.

44. Plaintiffs have performed all conditions, covenants and promises they were required to perform in accordance with the terms and conditions of the Agreements.

45. As a proximate result of the Namco Trustee's breaches of the Agreements for which Namco's bankruptcy estate is now liable, Plaintiffs have been damaged in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (Declaratory Judgment – All Plaintiffs Against All Defendants)

46. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 45, inclusive, as though fully incorporated herein and made a part hereof.

47. The Namco Trustee has declared bogus defaults, has refused to tender any consideration pursuant to the Agreements, and has threatened to institute a wrongful judicial foreclosure.

48. Plaintiffs contend that any alleged default is fictional as Namco has never tendered any consideration for the Agreements. The Namco Trustee's conduct is itself wrongful and unlawful in that it used a spurious reason to first claim breach, and otherwise breached the written Agreements and the implied covenant of good faith and fair dealing, as alleged above and incorporated herein.

49. Further, the Pasadena project was intended to and did constitute a joint venture between and among the Plaintiffs and Namco, for the ownership and development of the properties and project. Namco violated the joint venture agreement and Namco's other obligations to Plaintiffs, by: (a) secretly borrowing $5 million on the 233 Fair Oaks property; (b) refusing to tender consideration of $12,650,000 as consideration for the Promissory Notes, and; (c) secretly selling fractional interests of these same Promissory Notes.

50. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties under the Agreements and the joint venture between Plaintiffs and Namco. To resolve the present controversy, Plaintiffs are entitled to an order that: (a)

14

99019.003 - 161637.1

the Promissory Notes are invalid because they are not supported by consideration, (b) the defaults of the Promissory Notes are null and void; (c) that no foreclosure may occur because there is no valid or legal default.

## FOURTH CLAIM FOR RELIEF

### (Preliminary Injunctive Relief – All Plaintiffs Against All Defendants –

### 11 U.S.C. § 105; FRBP 7001(7))

51.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 50, inclusive, as though fully incorporated herein and made a part hereof.

52.    As alleged herein, The Namco Trustee's threatened foreclosure on the Properties described herein, based on an alleged default which does not exist and/or was caused by Namco's own wrongful conduct and nefarious purpose, is itself wrongful and unlawful.  Namco's actions have breached the written Agreements between the parties, breached the implied covenant of good faith and fair dealing, and prevented performance under the Agreements.

53.    Plaintiffs have demanded that the Namco Trustee stop its wrongful conduct, but The Chapter 11 Trustee has refused and continues to refuse to refrain from that conduct.  Unless and until enjoined and restrained by an order of this Court, the Namco Trustee's wrongful conduct will cause great and irreparable injury to Plaintiffs.  If the Namco Trustee is permitted to refuse to tender consideration and foreclose on the Properties, Plaintiffs will forever forfeit and lose its interest in those Properties.

54.    Plaintiffs have no adequate or speedy remedy at law for the injuries which are threatened in that, if the Namco Trustee is allowed to continue on its present course of conduct before this lawsuit is prosecuted to judgment, judgment in favor of Plaintiffs permanently enjoining the Namco Trustee from taking the acts which it now seeks to take will be of no benefit since the Properties will already have been sold and the Properties will therefore already be lost.

55.    Plaintiffs are entitled to a preliminary injunction pursuant to 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 7001(7) barring the foreclosure on any piece of property securing the Promissory notes or the real property referred to as the Pasadena project.

15

09019 003 - 161637.1

## FIFTH CLAIM FOR RELIEF

### (Fraudulent Inducement – All Plaintiffs Against the Namco Trustee)

56.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 55, inclusive, as though fully incorporated herein and made a part hereof.

57.    In order to induce Plaintiffs to enter into the Agreements and related documents, Defendants through their representative Namvar made the following representations to Plaintiffs' representative Golkar during a series of meetings in June 2007 and throughout the execution of the Promissory Notes at issue:

- That Namco had sufficient capital to tender $12,650,000 as consideration for the Promissory Notes.

- That Namco would fully tender the consideration and honor its obligations under the Agreements, including tendering consideration of $12,650,000 in a timely fashion.

58.    At the time Namvar made the above representations, he was acting as Namco's agent and representative.

59.    These representations were a material part of the Agreements described herein. When Namvar made these representations he knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs and induce them to act in reliance on these representations.  In fact, Namco had no intention to tender consideration for the Promissory Notes or cooperate toward successful completion of the Pasadena project.  Namco instead intended to refuse to pay the consideration, drive the Property into foreclosure and seize it without honoring its obligations.  Namco made these representations to Plaintiffs simply to induce Plaintiffs to enter into the Agreements, spend millions of dollars of their own capital and energies before the Namco Trustee filed the Notices of Default described herein.

60.    Namco's intent to deceive Plaintiffs is evidenced by its failure and refusal to tender consideration and by Namco's lying in wait to send Notices of Default in an effort to steal Plaintiffs' interests in the Pasadena project.

09019 003 - 161637.1

61.    Plaintiffs reasonably relied on Namco's representations given that they held themselves out as experienced, finance experts with sufficient capital to tender the consideration and did not disclose its financial difficulties or sordid dealings.

62.    Namco's misrepresentations proximately caused Plaintiffs to have insufficient funds to complete the project, caused loss of tenants and rents, caused out of pocket expenditures and potentially caused the loss of the Property and all capital invested in the Property. Had Namco not made these misrepresentations, Plaintiffs would have proceeded with another lender capable of fully tendering funds in exchange for the Promissory Notes and/or loaning monies in a timely manner. Plaintiffs would have sought a partner which had no ulterior motive. Plaintiffs would have never executed the Promissory Notes in the absence of Namco's wrongful conduct.

63.    The above described misconduct caused Plaintiffs to suffer substantial losses, including increased costs of renovation, lost of tenants and rental income, increased financing costs and potential loss of the Properties, all in an amount to be proven at trial.

64.    Namco made the aforementioned intentional misrepresentations with the intention of depriving Plaintiffs of the Properties. In making these intentional misrepresentations, Namco acted in a willful, wanton and malicious manner, in callous, conscious and intentional disregard for the interests of Plaintiffs, and with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiffs. As a result, Plaintiffs are entitled to recover exemplary and punitive damages.

### SIXTH CLAIM FOR RELIEF

**(Fraud-Intentional Concealment – All Plaintiffs Against the Namco Trustee)**

63.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 62, inclusive, as though fully incorporated herein and made a part hereof.

64.    At the time Namco and Plaintiffs entered into the Agreements and related documents, and thereafter, Namco represented that it would tender the $12,650,000 as consideration. Namco represented it had sufficient capital to tender the consideration called for in the Promissory Notes. These representations were a material part of the Agreements described herein and as Namco had

17

superior knowledge of its financial resources and business strategy, it had a duty to fully disclose all material facts to Plaintiffs affecting the Agreements.

65.    However, Defendants violated that duty by failing to disclose that Namco had no intention of tendering any consideration.  They instead intended drive the Properties into foreclosure on the basis of false and illegal defaults.

66.    They made the above described representations knowing them to be false, in order to deceive and defraud Plaintiffs and induce them to act in reliance upon these representations.

67.    At the time these representations and failures to disclose were made and at the time Plaintiff took the actions alleged herein, Plaintiffs were ignorant of the falsity of Namco's representations and believed them to be true.

68.    Plaintiffs reasonably relied on Namco's representations given that they held themselves out as experienced, finance experts with sufficient capital to tender the consideration and did not disclose their financial difficulties or sordid dealings.

69.    The misrepresentations were the proximate cause of Plaintiff's having insufficient funds to complete the project, loss of tenants and rents, loss of out of pocket expenditures and potentially loss of the Property and capital invested in the Property.  Had Namco not made these misrepresentations Plaintiffs would have proceeded with another lender capable of fully funding the loan in a timely manner that had no ulterior motive.   Plaintiffs would have never executed the Promissory Notes.

70.    The above described conduct has caused Plaintiffs to suffer substantial losses, including increased costs of renovation, lost of tenants and rental income, increased financing costs and potential loss of the Properties, all in an amount to be proven at trial.

71.    The aforementioned statements were intentional misrepresentations made with the intention on the part of Namco of depriving Plaintiffs of the Properties. In making these intentional misrepresentations, Namco acted in a willful, wanton and malicious manner, in callous, conscious and intentional disregard for the interests of Plaintiffs, and with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiffs. As a result, Plaintiffs are entitled to recover exemplary and punitive damages.

09019.003 - 161637.1

18

## SEVENTH CLAIM FOR RELIEF

### (Fraud-Negligent Concealment – All Plaintiffs Against the Namco Trustee)

72.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 71, inclusive, as though fully incorporated herein and made a part hereof.

73.     At the time Namco and Plaintiffs entered into the Agreements and related documents, and thereafter, Namco represented that it would tender the $12,650,000 as consideration and had sufficient capital to tender the consideration.  These representations were a material part of the Agreements described herein.  Because Namco had superior knowledge of its financial resources and business strategy, it had a duty to fully disclose all material facts to Plaintiffs affecting the Agreements.

74.     However, Defendants violated that duty by failing to disclose that Namco had no intention of tendering any consideration.  They instead intended drive the Properties into foreclosure on the basis of false defaults.

75.     When Namco failed to disclose these facts they knew, or should have known, they were critical to Plaintiffs real estate development business.  They made these misrepresentations without any reasonable grounds for believing them to be true because of Namco's financial problems.

76.     At the time these representations and failures to disclose were made and at the time Plaintiffs took the actions alleged herein, Plaintiffs were ignorant of the falsity of Namco's representations and believed them to be true.

77.     Plaintiffs reasonably relied on Namco's representations given that they held themselves out as experienced, finance experts with sufficient capital to tender the consideration and did not disclose their financial difficulties or sordid dealings.

78.     The misrepresentations were the proximate cause of Plaintiff's lack of funds to complete the project, loss of tenants and rents, loss of out of pocket expenditures and potentially loss of the Property and capital invested in the Property.  Had Namco not made these misrepresentations

19

Plaintiffs would have proceeded with another lender capable of fully funding the loan in a timely manner that had no ulterior motive. Plaintiffs would have never executed the Promissory Notes.

79. The above described conduct has caused Plaintiffs to suffer substantial losses, including increased costs of renovation, lost of tenants and rental income, increased financing costs and potential loss of the Properties, all in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

## (Conversion—Declaration of Constructive/Resulting Trust –

## All Plaintiffs Against the Namco Trustee)

80. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 79, inclusive, as though fully incorporated herein and made a part hereof.

81. Unknown to Kamran or Golkar, Namco borrowed $5 million against the 233 Fair Oaks property. Namco was able to accomplish this because title to 233 Fair Oaks was (and still is) under Tranmar Properties, LLC instead of the promised joint venture entity, Walnut Holding. Upon information and belief, Namco borrowed this $5 million ($2,500,000 in 2005 and another $2,500,000 in 2006) from United Commercial Bank. To date, neither Namco nor the Namco Trustee has accounted to Plaintiffs for all money or the accounts where the monies are. Plaintiffs had a legal ownership interest in 233 Fair Oaks.

82. After conversion of the above-described property, Plaintiffs have expended considerable time and money in pursuit of the converted property in the form of investigation; accounting expenses and retention of attorneys to prosecute this action, all to Plaintiffs further damage in an amount to be proven at trial.

83. In converting Plaintiffs' property, Namco acted in a willful, wanton and malicious manner, in callous, conscious and intentional disregard for the interests of Plaintiffs, and with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiffs. As a result, Plaintiffs are entitled to recover exemplary and punitive damages.

20

09019 003  161637.1

84.    Plaintiffs are further entitled to an accounting of the secreted funds and the bank account in which they reside.  Plaintiffs are entitled to a declaration that the Namco Trustee is holding the $5 million in trust for Plaintiffs, and the Namco Trustee should be ordered to transfer such funds to Plaintiffs.

## NINTH CLAIM FOR RELIEF

### (Interference with Prospective Economic Advantage –

### All Plaintiffs Against the Namco Trustee)

85.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 84, inclusive, as though fully incorporated herein and made a part hereof.

86.    As alleged herein, Plaintiffs had an economic relationship with third parties which probably would have resulted in economic benefit to Plaintiffs in the Pasadena project.  In particular, Plaintiffs had a relationship with Bliss Spa, Starwood Resorts and Hotels, and Wolfgang Puck restaurants.

87.    Namco knew of this relationship, and intended to disrupt the relationship.

88.    Namco engaged in wrongful conduct including, but not limited to, conversion, breach of contract, breach of the implied covenant of good faith, and interference with contractual relations.

89.    As a proximate result of cross-defendants' conduct as alleged herein, Plaintiffs' relationship with these third parties was harmed, and Plaintiffs have been damaged in an amount to be determined at trial.

90.    In doing the acts herein alleged, Namco acted in a fraudulent, willful, wanton and malicious manner, in callous, conscious and intentional disregard for the interests of Plaintiffs, and with knowledge that their conduct was substantially likely to vex, annoy, and injure Plaintiffs.  As a result, Plaintiffs are entitled to recover exemplary and punitive damages.

/ / /

/ / /

/ / /

21

09019.003 - 161637.1

## TENTH CLAIM FOR RELIEF

### (Decree of Dissolution and Winding-Up of Joint Venture –

### All Plaintiffs Against the Namco Trustee)

91.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 90, inclusive, as though fully incorporated herein and made a part hereof.

92.    By virtue of the conduct alleged herein, the Namco Trustee and its agents have wrongfully disassociated from the joint venture and its responsibilities under the joint venture. Plaintiffs are therefore entitled, and it is necessary and appropriate, to have the Court enter an order dissolving the joint venture and appointing either (a) on or more of the Plaintiffs herein, or (b) instructing the Trustee to wind-up the joint venture's affairs and distributing to Plaintiffs the amounts set forth herein, reducing the Namco Trustee's share by the damages caused by its conduct.

## ELEVENTH CLAIM FOR RELIEF

### (To Set Aside the Fraudulent Transfer of the Assets Belonging to Plaintiffs – All Plaintiffs

### Against All Defendants and Does 1 - 100, inclusive)

93.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 92, inclusive, as though fully incorporated herein and made a part hereof.

94.    Unknown to Kamran or Golkar, Namco borrowed $5 million against the 233 Fair Oaks property. Namco was able to accomplish this because at that time the title of 233 Fair Oaks was and still is under Tranmar Properties, LLC instead of forming the joint venture Walnut Holding. Upon information and belief, Namco borrowed this $5 million ($2,500,000 in 2005 and another $2,500,000 in 2006) from United Commercial Bank.

95.    Upon information and belief, although Namco recognized and stated to Kamran that no payments and/or interest were due until the promissory note amounts were tendered to Kamran, Namco (through Namvar) secretly sold to third parties fractional interests in the null and void Promissory Notes. It is believed that Namco received approximately $11,406,200 from selling fictional interests to these third parties.

22

09019.003 - 161637.1

96.    Upon information and belief, Namco had other related entities, including Woodman Partners, LLC that has assets secretly taken from Plaintiffs. These transfers were done without any consideration and done in furtherance of the scheme to defraud Plaintiffs.

97.    Plaintiffs did not receive any monies from the 233 Fair Oaks transactions with Namco in 2005 and 2006 or any monies from the transactions with third parties. Instead, these fraudulent transfers occurred without Plaintiffs' consent, notice, or knowledge. Plaintiffs are informed and believe and on that basis allege that these transfers were actually part of a scheme to defraud the Plaintiffs.

98.    Namco paid no consideration to Plaintiffs from these transactions. At the time the transfers were made, the value of assets was in the millions of dollars. The purported transfer of these assets was consummated with the actual intent to defraud the Plaintiffs.

99.    The Defendants and others played active roles in these transactions with the actual intent to defraud the Plaintiffs. Defendants acted maliciously with a conscious disregard for the rights of the Plaintiffs. Plaintiffs are therefore entitled to exemplary or punitive damages.

### TWELFTH CLAIM FOR RELIEF

### (Rescission -- All Plaintiffs Against All Defendants)

100.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 99, inclusive, as though fully incorporated herein and made a part hereof.

101.    Defendants failed to tender any consideration to Plaintiffs despite their Agreements to do so. Defendants failed to notify and seek agreement from Plaintiffs for borrowing monies on properties despite Agreement to do so. Defendants purported to secretly transfer interests belonging to Plaintiffs in real properties to third parties without notice and/or consideration despite its obligations to do so.

102.    Defendants failed to do so with the intent to deceive Plaintiffs and deprive them of their rightful interest in the properties.

103.    Plaintiffs intend service of the summons and complaint in this action to serve as notice of rescission of all the Agreements, including without limitation the Promissory Notes, Deeds

23

09019.003 161637.1

of Trust, Notices of Default, and related documents, and hereby demand that Defendants restore them to a state prior to any of the Agreements mentioned herein.

### THIRTEENTH CLAIM FOR RELIEF

### (Cancellation – All Plaintiffs Against All Defendants)

104.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 103, inclusive, as though fully incorporated herein and made a part hereof.

105.    There are in existence certain written instruments that purport to be the loan documents between the parties, including but not limited to Promissory Notes, Deeds of Trust, and Notices of Default. Plaintiffs are informed and therein believe that the purported documents are in the possession or under control of Defendants.

106.    Plaintiffs did not receive any consideration for the Promissory Notes as alleged herein.

107.    If the recorded Notices of Default are left outstanding, Plaintiffs may lose their properties.

108.    Such dispossession will deprive Plaintiffs from their rightful share in the properties.

109.    Said documents and written instruments should be cancelled.

### FOURTEENTH CLAIM FOR RELIEF

### (Slander of Title – All Plaintiffs Against All Defendants)

110.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 109, inclusive, as though fully incorporated herein and made a part hereof.

111.    On or about November 2009, Defendants willfully, wrongfully and without justification, and without privilege caused to be recorded Notices of Default which has since encumbered the Properties in the Pasadena project.

112.    The Notices of Default were and are false and caused doubt to be cast on Plaintiffs' interest in the Pasadena project because the alleged breach of, and default in, the obligations for which the Deed of Trust is security, has not occurred in that no consideration was ever given to

24

Plaintiffs for the Promissory Notes which provide the only support for the wrongful foreclosure and Notices of Default recorded.

113.    The Namco Trustee's recording of the Notices of Default has directly impaired Plaintiffs' ability to obtain other third party interim and/or permanent financing with respect to the Pasadena project.

114.    The recording of the Notices of Default has forced Plaintiffs to retain the law firms Kaye Scholer, LLP and Cappello & Noël, LLP to bring this action to cancel the instrument casting doubt on and affecting and impairing Plaintiffs' rights, title and interests in the Pasadena project and to protect and pursue Plaintiffs' other legal rights, interests and remedies.  Plaintiffs are therefore entitled to recovery of all reasonable attorney's fees and court costs incurred in canceling the Notices of Default, in addition to any other damages which Plaintiffs is entitled to recover.

115.    By reason of the above-referenced slander of title by Defendants and as a direct and proximate result thereof, Plaintiffs have incurred and will incur costs and expenses, and has suffered and will suffer direct, indirect, consequential, general and special damages, the exact amount of which is unknown to date but will be proven at the time of trial and which amount includes the recovery of all reasonable attorney's fees and court costs incurred in canceling the Notices of Default.

116.    The above-referenced slander of title by the Defendants with respect to the recording of the Notices of Default on the Pasadena project was known to and was and is intended by Defendants to deprive Plaintiffs of its interests in the Pasadena project or legal rights or otherwise causing injury, and constituted despicable conduct which subjected Plaintiffs to unjust hardship in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages against Defendants.

/ / /

/ / /

/ / /

25

09019 003  161637.1

## FIFTEENTH CLAIM FOR RELIEF

### (For An Accounting – All Plaintiffs Against All Defendants)

117.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 116, inclusive, as though fully incorporated herein and made a part hereof.

118.   The accounts with respect to the funds received by Defendants as alleged herein, including, but not limited to, the $5 million borrowed on 233 Fair Oaks and fractional interest transactions, is so complicated that an accounting is the only method to determine where these proceeds are.

119.   Plaintiffs request that the Defendants provide an accounting of the transactions alleged herein.

## PRAYER FOR RELIEF

ON THE FIRST, SECOND, AND SEVENTH CAUSES OF ACTION:

1.   For compensatory damages in an amount to be proved at trial.

ON THE THIRD AND FOURTH CAUSES OF ACTION:

1.   For an order declaring the rights of the parties, including a declaration that the Namco Trustee wrongfully declared defaults; and,

2.   For such ancillary relief, including injunctive relief, restraining and enjoining the Namco Trustee, his representatives and agents, and each of them, from demanding continued paydowns and concessions; foreclosing on assets, including real property; and from continuing to declare a default.

ON THE FIFTH, SIXTH, NINTH, AND FOURTEENTH CAUSES OF ACTION:

1.   For compensatory damages in an amount to be proved at trial; and,

2.   For exemplary and punitive damages in an amount to be proved at trial.

ON THE EIGHTH CAUSE OF ACTION:

1.   For compensatory damages in an amount to be proved at trial;

2.   For damages related to Plaintiffs' expenses in attempting to recover the converted funds; and,

26

3. For exemplary and punitive damages in an amount to be proved at trial.

ON THE TENTH CAUSE OF ACTION:

1. For an order dissolving the joint venture and appointing either (a) on or more of the Plaintiffs herein, or (b) instructing the Namco Trustee to wind-up the joint venture's affairs and distributing to Plaintiffs the amounts set forth herein, reducing the Namco Trustee's share by the damages caused by its conduct.

ON THE ELEVENTH AND FIFTEENTH CAUSES OF ACTION:

1. That the purported transfers from the Namco and to Woodman Partners, LLC of its interest in the Pasadena project be annulled and declared void as to the Plaintiffs herein to the extent necessary set aside;

2. That the purported transfers from Namco to third parties of Plaintiffs' of its interest in the Pasadena project be annulled and declared void as to the Plaintiffs herein to the extent necessary set aside;

3. That the $5 million transactions wherein Namco borrowed against Plaintiffs' interests in the Pasadena project be annulled and declared void as to the Plaintiffs herein to the extent necessary set aside;

4. That a temporary restraining order be granted enjoining and restraining Defendants, and their attorneys, and agents from selling, transferring, conveying, or otherwise disposing of any of the property transferred;

5. That an order pendent lite be granted enjoining and restraining Defendants, and their attorneys, and agents from selling, transferring, conveying, or otherwise disposing of any of the property transferred;

6. That the judgment herein be declared a lien on the property transferred;

7. That an order be made declaring that Defendants holds all the property described above in trust for Plaintiffs; and

8. That Defendants be required to account to Plaintiffs for all proceeds earned from or taken in exchange for the property described above.

ON THE TWELFTH CAUSE OF ACTION:

27

09019.003 - 1616371

1.    For rescission of the parties' purported agreements, including:

    a.    The deeds of trust attached to and incorporated herein;

    a.    Six Promissory notes between Plaintiffs and Defendants.

2.    For punitive and exemplary damages; and

3.    For such other and further relief that is proper and just.

ON THE THIRTEENTH CAUSE OF ACTION:

1.    For cancellation of the purported deed of trust on the Properties to the Namco Trustee;

2.    For punitive and exemplary damages; and

3.    For such other and further relief that is proper and just.

ON ALL CAUSES OF ACTION:

1.    For interest at the legal rate;

2.    For attorney's fees on all applicable claims;

3.    For costs of suit incurred herein; and

4.    For such other further relief as the Court may deem just and proper.

DATED: February 24, 2010          CAPPELLO & NOËL LLP
KAYE SCHOLER LLP


By:    /s/ Marc S. Cohen
    A. Barry Cappello
    Marc S. Cohen
    Matthew Clarke
    Dugan P. Kelley
    Attorneys for Plaintiffs
    Kamran Pasadena Group, Inc. and Kamran
    Group, LLC

28

09019.003 - 161637.1