Saul Reiss, Esq.  SBN 48528
LAW OFFICES OF SAUL REISS, P.C.
2800 28TH Street
Suite 328
Santa Monica, CA 90405
Telephone 310-450-2888  Fax 310-450-2885
E-Mail saulreiss@verizon.net
Attorney for Defendant Mehrnaz Hekmatravan

FILED

APR 21 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA--LOS ANGELES DIVISION

| | |
|---|---|
| In Re: NAMCO CAPITAL GROUP, INC., a California Corporation<br>Debtor<br>KAMRAN PASADENA GROUP, INC. a California corporation; and KAMRAN GROUP, LLC a California limited liability company<br>Plaintiffs,<br>vs<br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE, etc. et. al.<br>Defendants<br>_____<br>MEHRNAZ HEKMATRAVAN<br>Counter Claimant<br>vs.<br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC., a California corporation, KAMRAN GROUP, LLC, a California Limited Liability Company, KAMRAN | Case No.: 2:08-bk-32333-BR<br>Chapter 11<br><br>Adv. No. 10-01244BR<br><br>ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN |

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-1-

GROUP, INC. a California corporation, KAMRAN PASADENA, INC. a California corporation, DAVID J. GOLKAR an individual, HAMID TABATABAI aka HAMID TABA, an individual, VIOLET KASHANY, an individual, MORTEZA HOMAYOUNJAM, an individual, ASHLAND PROPERTIES, LLC, a California Limited Liability Company, SAWTELLE PROPERTIES, LLC, JAMSHID BEHARVAR, an individual, FAYE FARANAK SARAFIAN, an individual, FARMO TRUST DATED JANUARY 1, 2007, a trust, DARIOUSH SOLEMANI, an individual, and DOES 101 through 125

Counter-Defendants

        Comes now the Defendant and Counter-Claimant MEHRNAZ HEKMATRAVAN and for ANSWER TO THE COMPLAINT and COUNTERCLAIMS against the Counter-Defendants and each of them, admits, denies and alleges as follows:

        1.      Answering Paragraphs 1 through 119 of the COMPLAINT herein, MEHRNAZ HEKMATRAVAN does not have sufficient information or belief as to the matters therein alleged to enable her to answer, and on that ground denied generally and specifically each and every one of the allegations therein contained.

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-2-

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a CLAIM FOR RELIEF)

2.      Neither the COMPLAINT, nor any purported claim for relief contained therein, states facts sufficient to constitute any claim for relief against defendant.

## SECOND AFFIRMATIVE DEFENSE

(Laches)

3.      Defendant is informed and believes and thereupon alleges that the COMPLAINT, and each of the purported causes of action contained therein, is barred by reason of laches in that Plaintiffs unjustifiably delayed in prosecuting this action to the detriment of Defendant.

## THIRD AFFIRMATIVE DEFENSE

(Estoppel)

4.      Defendant is informed and believes and thereupon alleges that the conduct of Plaintiffs estopped them from asserting the purported claims set forth in the COMPLAINT, and each of the purported causes of action contained therein, in that Defendant has reasonably relied upon such conduct to its detriment.

## FOURTH AFFIRMATIVE DEFENSE

(Waiver)

5.      Defendant is informed and believes, and thereupon alleges that Plaintiffs has knowingly and voluntarily relinquished and waived any and all rights that it may have arising from the allegations set forth in the COMPLAINT, and each of the purported causes of action contained therein.

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

## FIFTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

6.     Defendant is informed and believes, and thereupon alleges that Plaintiffs has unclean hands in connection with the purported transactions alleged in the COMPLAINT, and is thus barred from asserting the purported claims set forth in the COMPLAINT and each of the purported causes of action contained in the COMPLAINT.

## SIXTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

7.     Plaintiffs' action is barred by the Statute of Limitations.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

8.     Defendant is informed and believes, and thereupon alleges that the COMPLAINT, and each of the purported causes of action contained therein, is barred by virtue of Plaintiffs' failure to exercise reasonable diligence in avoiding and mitigating its damages, if any.

## EIGHTH AFFIRMATIVE DEFENSE

### (Plaintiffs' Fault)

9.     Defendant is informed and believes and thereupon alleges that if Plaintiffs suffered or sustained any loss, damage and/or injury as alleged in the COMPLAINT, such loss, damage and/or injury was the direct and proximate result of the acts and omissions of Plaintiffs, and not of Defendant.

---

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-4-

## NINTH AFFIRMATIVE DEFENSE

### (Fault of Others)

10.  Defendant is informed and believes, and thereupon alleges, that if Plaintiffs suffered or sustained any loss, damage and/or injury as alleged in the COMPLAINT, such loss, damage and/or injury was the direct and proximate result of the acts and omissions of other persons for whom Defendant is not responsible, and not of Defendant.

## TENTH AFFIRMATIVE DEFENSE

### (Plaintiffs' Material Breach)

11.  Defendant is informed and believes and thereupon alleges that Plaintiffs is barred from obtaining the relief it seeks in the COMPLAINT in that it has materially breached the agreement, if any, which it seeks to enforce by the COMPLAINT.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure of Conditions Precedent)

12.  Defendant is informed and believes, and thereupon alleges that Plaintiffs is barred from enforcing the provision of the agreement alleged in the COMPLAINT, if any, by virtue of the failure of conditions precedent to the enforcement against Defendant of any such agreement

## TWELFTH AFFIRMATIVE DEFENSE

### (Unconscionability)

13.  Defendant is informed and believes and thereupon alleges that the agreement alleged in the COMPLAINT, if any, is unconscionable as to Defendant and is, therefore, unenforceable by Plaintiffs against Defendant.

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-5-

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Exoneration by Plaintiffs' Conduct)

14.    Defendant is informed and believes and thereupon alleges that Plaintiffs' conduct has resulted in an exoneration of Defendant as to any purported liability alleged in the COMPLAINT.

Wherefore, this answering Defendant prays judgment as follows:

1.    That Plaintiffs take nothing by their COMPLAINT herein and that the same be dismissed.

2.    For these answering defendants reasonable attorneys fees.

3.    For and costs of suit incurred herein; and

4.    For such other and further relief as the Court may deem just and proper.

## COUNTERCLAIMS

Comes now the COUNTERCLAIMANT, MEHRNAZ HEKMATRAVAN and for Counterclaims against the Counter-Defendants, and each of them alleges as follows:

### THE PARTIES

15.    At all times material hereto, Counterclaimant, MEHRNAZ HEKMATRAVAN, an individual, was and now is a resident of the County of Los Angeles, State of California.

16.    At all times material hereto Counter-Defendant BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC., ("NAMCO") was and now is the duly appointed Chapter 11 trustee of NAMCO CAPITAL GROUP, INC.

17.    At all times material hereto Counter-Defendant KAMRAN GROUP, LLC, ("KAMRAN LLC") was and now is a California limited liability

company which was authorized to do business in and did business in the County of Los Angeles, State of California.

18. At all times material hereto Counter-Defendant KAMRAN GROUP, INC., ("KAMRAN INC.") was and now is a California corporation authorized to do business in and doing business in the County of Los Angeles, State of California.

19. At all times material hereto Counter-Defendant KAMRAN PASADENA, INC., (" KAMRAN PASADENA") was and now is a California corporation authorized to do business in and doing business in the County of Los Angeles, State of California.

20. At all times material hereto Counter-Defendant ASHLAND PROPERTIES, LLC, ("ASHLAND") was and now is a California limited liability company which was authorized to do business in and did business in the County of Los Angeles, State of California.

21. At all times material hereto Counter-Defendant SAWTELLE PROPERTIES, LLC, ("SAWTELLE") was and now is a California limited liability company which was authorized to do business in and did business in the County of Los Angeles, State of California.

22. At all times material hereto, Counter-Defendants FARMO TRUST DATED JANUARY 1, 2007, a trust, and MAHMOUD FATORECHI AND SOUSSAN HASHEMI, TRUSTEE OF THE FATORECHI-HASHEMI, FAMILY TRUST DATED MARCH 29, 2005. were and now are trusts whose trustees are residents of the State of California, County of Los Angeles.

23. At all times material hereto, Counter-Defendants DAVID J. GOLKAR ("GOLKAR") an individual, HAMID TABATABAI aka HAMID TABA, an individual, ("HAMID") VIOLET KASHANY, ("KASHANY") an individual, MORTEZA HOMAYOUNJAM, ("HOMAYOUNJAM") an individual,

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-7-

JAMSHID BEHARVAR ("BEHARVAR") an individual, FAYE FARANAK SARAFIAN ("SARAFIAN") and DARIOUSH SOLEMANI, an individual ("SOLEMANI") (were and now are residents of the County of Los Angeles, State of California.

24.   Counterclaimant is unaware of the true names and capacities of the Counter-Defendants herein designated as DOES 101 through 125, inclusive, and therefore sues such fictitiously named Counter-Defendants by such fictitious names.   Counterclaimant will seek leave of court to amend this Cross-COUNTERCLAIM when the true names and capacities of said fictitiously names Counter-Defendants are ascertained.

25.   Counterclaimant is informed and believes and based thereon alleges that each of the fictitiously named Counter-Defendants is and was at all times material hereto the agent, servant, employee or co-conspirator the other Counter-Defendants and in doing all of the things herein alleged was acting within the course and scope of such agency, service, employment or conspiracy with the full knowledge and consent of the other Counter-Defendants. Counterclaimant is further informed and believes and based thereon alleges that each of the fictitiously named Counter-Defendants is and was at all times material hereto responsible in some manner for the damages sustained by the Counterclaimant as herein alleged.

<strong>THE CONSPIRACY</strong>

26.   Counterclaimant is informed and believes and based thereon alleges that in or about May or June of 2007 Counter-Defendants KAMRAN LLC, KAMRAN INC., KAMRAN PASADENA, DAVID J. GOLKAR, HAMID and NAMCO CAPITAL GROUP, INC.("NAMCO"), and EZRI NAMVAR (EZRI")entered into a joint venture, partnership, plan, arrangement, agreement and conspiracy pursuant to which they would and did use a set of similar and confusing names for their business entities to conceal the actual

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-8-

ownership of real properties and make it virtually impossible for anyone dealing with them to know which properties secured which promissory notes.

27.   Pursuant to and in furtherance of the aforesaid conspiracy, on June 29, 2007, Counter-Defendant KAMRAN GROUP LLC made executed and delivered to NAMCO that certain promissory note in the principal amount of $3,600,000.00. (the "KAMRAN LLC NOTE") A true and complete copy of the KAMRAN LLC NOTE is attached hereto as Exhibit "A", attached hereto and made a part hereof by this reference.   On or about August 24, 2007 NAMCO caused a deed of trust executed by KAMRAN LLC to secure the KAMRAN LLC NOTE to be recorded in the Office of the County Recorder of Los Angeles County as document number 20071988920. (the "KAMRAN LLC TD").   A true and complete copy of the KAMRAN LLC TD is attached hereto as Exhibit "B", attached hereto and made a part hereof by this reference.   The property which was the subject of the KAMRAN LLC TD consisted of two vacant lots commonly known as 810 and 818 N. Marengo Avenue, Pasadena, California.   As of August 24, 2007 the value of said lots was in fact no more than $1,600,000.00 based on the current assessed value, and nowhere near the $3,600,000.00 set forth in the KAMRAN LLC NOTE and TD.

28.   Pursuant to and in furtherance of the aforesaid conspiracy, on June 29, 2007, Counter-Defendant KAMRAN PASADENA, which had previously been know as Pasadena Athletic Club, Inc. made executed and delivered to NAMCO that certain promissory note in the principal amount of $5,000,000.00. (the "KAMRAN PASADENA NOTE")   The KAMRAN PASADENA NOTE is in the identical form as the KAMRAN LLC NOTE. On or about August 24, 2007 NAMCO caused a deed of trust executed by KAMRAN PASADENA to secure the KAMRAN PASADENA NOTE to be recorded in the Office of the County Recorder of Los Angeles County as

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

document number 20071990505. (the "KAMRAN PASADENA TD").  A true and complete copy of the KAMRAN PASADENA TD is attached hereto as Exhibit "C", attached hereto and made a part hereof by this reference.  The property which was the subject of the KAMRAN LLC TD consisted of two condominium lots commonly known as 25 West Walnut Street, Units 1 and 503 Pasadena, California.  As of August 24, 2007 the value of said lots was in fact significantly more than $5,000,000.00.  Counter-Defendants demolished the condominium building which was located on Walnut Street.

29.    Also located at 25 Walnut Street were Condominium Units 501, 504 and 505. (the "UNITS")  By July 6, 2007, Counter-Defendant KAMRAN LLC had become the owner of each of said units.  True and complete copies of the deeds (the "KAMRAN LLC DEEDS") pursuant to which KAMRAN LLC became the owner of said 3 units are attached hereto as Exhibit "D" and made a part hereof by this reference.  By reason of the demolition of the condominium structure, the property owned by KAMRAN LLC and KAMRAN PASADENA became merged and inseparable.  By reason of the foregoing, KAMRAN LLC AND KAMRAN PASADENA became the alter egos of one another in that to retain the legal distinction between them would constitute a fraud on the creditors of KAMRAN LLC which had in effect transferred all of its property to KAMRAN PASADENA.

30.    Notwithstanding the fact that the UNITS had been demolished and no longer could be differentiated from the land on which they had previously been located, Pursuant to and in furtherance of the aforesaid conspiracy On September 10, 2007, Counter-Defendant KAMRAN LLC as maker, made, executed and delivered to NAMCO as payee and beneficiary three promissory notes which were secured by deeds of trust on the UNITS which were recorded in the Office of the County Recorder of Los Angeles County as follows:

---

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

| AMOUNT OF NOTE | RECORDING DATE | DOCUMENT # |
|---|---|---|
| $450,000.00 | September 17, 2007 | 20072133932 |
| $1,300,000.00 | September 17, 2007 | 20072133936 |
| $600,000.00 | September 17, 2007 | 20072133956 |

Said notes will hereafter be referred to by their amounts and collectively as the UNIT NOTES.

31.   Thereafter the UNIT NOTES were assigned to certain of the Counter-Defendants herein as set forth below:

| AMOUNT OF NOTE | RECORDING DATE | DOCUMENT NUMBER | ASSIGNEE |
|---|---|---|---|
| $450,000.00 | February 5, 2008 | 20080214974 | FARMO TRUST DATED JANUARY 1, 2007 |
| $1,300,000.00 | January 14, 2008 | 20080072494 | DARIOUSH SOLEMANI |
| $600,000.00 | January 14, 2008 | 20072133956 | THE FATORECHI-HASHEMI, FAMILY TRUST |

32.   Pursuant to and in furtherance of the aforesaid conspiracy, on September 30, 2008, Counter-Defendant KAMRAN PASADENA, made executed and delivered to NAMCO that certain promissory note in the principal amount of $1,700,000.00. (the "2008 NOTE")  The 2008 NOTE is in the identical form as the KAMRAN LLC NOTE.  On or about September 30, 2008 NAMCO caused a deed of trust executed by KAMRAN PASADENA to secure the 2008 NOTE to be recorded in the Office of the County Recorder of Los Angeles County as document number 20081747674. (the "2008 TD").   A true and complete copy of the 2008 TD is attached hereto as Exhibit "D", attached hereto and made a part hereof by this reference.   The property which was the subject of the 2008 TD consisted of two condominium lots commonly known as 25 West Walnut Street, Units 1

and 503 Pasadena, California.   The 3 condominium units owned by KAMRAN LLC were not included even though they could not physically be distinguished from the vacant land which existed on the 25 Walnut site as of September 30, 2008.   A map depicting the 25 Walnut Street property is attached hereto as Exhibit "E" and made a part hereof by this reference.

33.   NAMCO claims a lien pursuant to the 2008 NOTE and the 2008 TD in the Walnut Street Property which is junior and subordinate to the KAMRAN PASADENA NOTE and the KAMRAN PASADENA TD.

## THE LOAN TRANSACTIONS

34.   At all times material hereto Counterclaimant was a widow who reposed trust and confidence in Counter-Defendants EZRI and NAMCO based on the fact that there had been a pre-existing business relationship between said parties, they shared the same religious faith and cultural heritage, and NAMCO and EZRI had a prominent reputation in the community for assisting widows and unmarried woman in managing their financial affairs by investing with said Counter-Defendants.   The Counter-Defendants even dealt with MAHNAZ by that name which is an erroneously spelled version of her nickname NANAZ rather than her legal name.   Based on the foregoing, there existed a confidential relationship between Counterclaimant and the Counter-Defendants NAMCO and EZRI such that they owed to her the highest fiduciary duty of truth and condor in any business dealings.

35.   On or about July 17, 2006, at Los Angeles, California Counter-Defendant, NAMCO made, executed and delivered to Counterclaimant a promissory note ("NOTE") in the principal amount of One Million Nine Hundred Thousand Dollars ($1,900,000.00).   A true and complete copy of the NOTE is attached hereto as Exhibit "F", attached hereto and made a part hereof by this reference.

---

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-12-

36.    Pursuant to the terms of the NOTE, the obligations of NAMCO thereunder were personally guaranteed by EZRI.

37.    The NOTE provides for payment monthly of interest in arrears on the unpaid balance at the rate of Seven and 3/4 Percent (7.75%) per annum. The note further provided that entire balance of principal and any unpaid interest would become due and payable on 30 days advance notice. As of the date of this COUNTERCLAIM, the outstanding principal balance is the sum of One Million, Nine Hundred Thousand Dollars ($1,900,000.00). Interest has been through the end of September 2008.

38.    In or about August of 2007 Counterclaimant remanded repayment of all amounts due under the NOTE. At the time of making such demand, Counter-Defendants, NAMCO, EZRI and HAMID represented to Counterclaimant as follows:

A.    EZRI represented that if Counterclaimant would not require that her money be returned and would leave it invested with NAMCO, he and NAMCO would provide security for the NOTE in the form of an assignment of all beneficial interest in a promissory note in the principal amount of $5,000,000.00 which had been executed and delivered by Counter-Defendants KAMRAN LLC and KAMRAN PASADENA which are described herein as the KAMRAN PASADENA NOTE and the KAMRAN PASADENA TD. EZRI further represented that the property which was the subject of the deed of trust that was security for the note which was to be assigned consisted of an assemblage of parcels that was intended to be developed and sold as a hotel site. The amount of the note being assigned was in excess of the amount due pursuant to the NOTE because NAMCO had also borrowed and EZRI had guaranteed repayment of the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00) to Counterclaimant's brother-in-law Mr. Hekmat Hekmatravan and said security was intended to secure both notes. EZRI

represented that the property which secured the proposed security consisted of the KAMRAN PASADENA property as described in the KAMRAN PASADENA TD. EZRI directed HAMID to prepare a Collateral Assignment of Deed of Trust and to deliver it to Counterclaimant along with a copy of the deed of trust which was to be assigned.

B.     HAMID identified the property which was to secure the NOTE on a map located in the offices of NAMCO as the 25 Walnut property shown on Exhibit E and further identified it as a hotel site which the Counter-Defendants had been developing. HAMID then prepared and delivered to Counterclaimant an unrecorded copy of the Collateral Assignment of Deed of Trust dated August 24, 2007, to which there was attached an unrecorded copy of the $5,000,000.00 deed of trust from KAMRAN PASADENA. Because of her trust and confidence in Counter-Defendants, NAMCO, EZRI and HAMID, Counterclaimant did not check and did not notice that the Collateral Assignment and the Deed of Trust were inconsistent. A true and complete copy of the documents as delivered is attached hereto as Exhibit "G" and made a part hereof by this reference. .

C.     When, in or about October of 2008 Counterclaimant inquired of HAMID as to why the NAMCO ASSIGNMENT was not of a note and deed of trust on the hotel site on Walnut Street, he stated that he has made a mistake and had identified the wrong property in the NAMCO ASSIGNMENT even though he had originally given Counterclaimant the correct deed of trust. Hamid further represented that Counterclaimant need not worry because the WALNUT PROPERTY was on the market to be sold and when it was sold she would be paid everything that was due on the NOTE. HAMID intentionally concealed that the $5,000,000.00 KAMRAN PASADENA NOTE and the KAMRAN PASADENA TD had been assigned by NAMCO which had retained only a minor 2% interest therein. All of the

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-14-

representations made by HAMID as alleged in this paragraph C were made with the malicious intent to dissuade and prevent Counterclaimant from asserting her rights to enforce the NOTE and realize upon the security that had been promised.

39.    In reliance on the representations of NAMCO, EZRI and HAMID, Counterclaimant agreed to forebear from collection of the NOTE and accept the security as it had been identified and offered by Counter-Defendants NAMCO, EZRI and HAMID.    Had Counterclaimant known that the representations were in fact false, she would have demanded immediate repayment of the NOTE.    In August of 2007, NAMCO was capable of repaying the NOTE in immediately available funds.

40.    On September 4, 2007, NAMCO recorded the Collateral Assignment of Deed of Trust ("NAMCO ASSIGNMENT") in the form attached hereto as Exhibit "H" and made a part hereof by this reference in the office of the County Recorder of Los Angeles County as document number 20072053521. Thereafter a copy of the NAMCO ASSIGNMENT was delivered to Counterclaimant by Hamid.

41.    The representations of NAMCO, EZRI and HAMID were false in that the note which was in fact the subject of the Collateral Assignment was not for $5,000,000.00, but was for $3,600,000.00.  The property which was the subject of the deed of trust securing the note that were referred to in the COLLATERAL ASSIGNMENT was not the hotel site at 25 Walnut, but was in fact the vacant land located on Marengo as hereinabove described.

42.    The NAMCO assignment assigned 100% of the beneficial interest in the KAMRAN LLC NOTE and the KAMRAN LLC TD as hereinabove described to Counterclaimant so that Counterclaimant could enforce the obligations of KAMRAN LLC TD thereunder and retain all proceeds of such enforcement

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-15-

until they had recovered one hundred percent of the amounts due them under the NOTE.

43. Counterclaimant is informed and believes and based thereon allege that certain Counter-Defendants claim interests in the KAMRAN PASADENA NOTE and the KAMRAN PASADENA TD as follows:

| | |
|---|---|
| VIOLET KASHANY, an individual, | 3.5% |
| MORTEZA HOMAYOUNJAM, an individual, | 25% |
| ASHLAND PROPERTIES, LLC, a California Limited Liability Company, | 8% |
| SAWTELLE PROPERTIES, LLC, | 16% |
| JAMSHID BEHARVAR, an individual, | 40% |
| FAYE FARANAK SARAFIAN, an individual, | 5.5% |
| NAMCO | 2.0% |
| TOTAL | 100% |

44. The Walnut Property which is the subject of this action is commonly known as 25 Walnut Street, Pasadena California. The legal description of the property which is the subject of this action is contained in and set forth on Exhibit "I" attached hereto and made a part hereof by this reference (the "WALNUT PROPERTY").

45. The Marengo Property which is the subject of this action is commonly known as 810 and 818 N. Marengo Avenue, Pasadena California. The legal description of the property which is the subject of this action is contained in and set forth on Exhibit "J" attached hereto and made a part hereof by this reference (the "MARENGO PROPERTY").

46. Counter-Defendant KAMRAN PASADENA, INC. is the record owner of the WALNUT PROPERTY. Counter-Defendant KAMRAN GROUP, LLC is the record owner of the MARENGO PROPERTY.

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-16-

47.   The NOTE provides that, should a default occur in the payment of any installment when due, or in the performance of any obligation in the trust deed securing payment of the note, the whole sum of principal and interest shall at the election of the holder become immediately due and payable.

48.   When Counterclaimant asked Counter-Defendants NAMCO, HAMID and EZRI for the return of her money by payment in full of the NOTE they informed Counterclaimant that they are unable to pay either the principal or interest on the NOTE unless and until the WALNUT PROPERTY and the MARENGO PROPERTIES are sold and accordingly written demand for payment would be a futile act.  By this COUNTERCLAIM, Counterclaimant demands payment in full of all principal and interest under the NOTE. NAMCO and EZRI have failed and refused to pay the amount demanded, or any other amounts due under the NOTE.

49.   On or about October 6, 2008, NAMCO further breached the terms of the NOTE by notifying Counterclaimant that it would no longer pay the agreed upon interest rate of 7.5% but would pay 5%.  A true and complete copy of said notification is attached hereto as Exhibit "K" and made a part hereof by this reference.

50.   By the terms of the NOTE, the GUARANTY, the KAMRAN LLC NOTE, the KAMRAN LLC TD, the KAMRAN PASADENA NOTE, and the KAMRAN PASADENA TD a the parties executing said documents respectively  promised that if any action were commenced to enforce said documents applicable signatory Counter-Defendant would pay Counterclaimant's reasonable attorney's fees and costs. By reason of the above-mentioned defaults by Counter-Defendant it has become necessary for Counterclaimant to employ the Law Office of Saul Reiss, P.C. and Saul Reiss, Esq., an attorney at law duly licensed to practice in all the courts of the State of California, to commence and prosecute this foreclosure action.

51.   Counterclaimant hereby incorporates by reference each and all of the exhibits attached hereto as follows:

Exhibit "A": KAMRAN LLC NOTE

Exhibit "B": KAMRAN LLC TD

Exhibit "C": KAMRAN PASADENA TD

Exhibit "D": 2008 TD, ; KAMRAN LLC DEEDS

Exhibit "E": 25 WALNUT MAP

Exhibit "F": $1,900,000.00 NOTE

Exhibit "G": DELIVERED DOCUMENTS

Exhibit "H": NAMCO ASSIGNMENT

Exhibit "I": WALNUT PROPERTY

Exhibit "J": MARENGO PROPERTY

Exhibit "K": NOTICE RE NON-PAYMENT OF INTEREST

## FIRST COUNTERCLAIM FOR RELIEF

## FRAUD

**(AGAINST COUNTER-DEFENDANTS KAMRAN GROUP, LLC, KAMRAN GROUP, INC., KAMRAN PASADENA, INC. DAVID J. GOLKAR, HAMID TABATABAI aka HAMID TABA, and all DOE COUNTER-DEFENDANTS)**

52.   Counterclaimant realleges and adopts and incorporates by reference Paragraphs 15 through 51 inclusive of this COUNTERCLAIM.

53.   Counterclaimant is informed and believes and based thereon alleges that Counter-Defendants NAMCO CAPITAL GROUP, INC., KAMRAN GROUP, LLC, KAMRAN GROUP, INC., KAMRAN PASADENA, INC. DAVID J. GOLKAR, EZRI NAMVAR, HAMID TABATABAI aka HAMID TABA created the KAMRAN LLC NOTE, the KAMRAN LLC TD, the KAMRAN PASADENA NOTE, the KAMRAN PASADENA TD, the 2008 NOTE and the 2008 TD as well as the UNIT NOTES and the UNIT TDs

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

(herein collectively the "LOAN DOCUMENTS")for the purpose of allowing NAMCO to use said loan documents as collateral so that NAMCO could obtain loans or retain from third parties such as Counterclaimant.

54.    Counterclaimant is informed and believes and based thereon alleges that Counter-Defendants NAMCO CAPITAL GROUP, INC., KAMRAN GROUP, LLC, KAMRAN GROUP, INC., KAMRAN PASADENA, INC. DAVID J. GOLKAR, EZRI NAMVAR, had no intention of making or collecting any payments pursuant to the LOAN DOCUMENTS and in fact knew, based on the promises of Counter-Defendants NAMCO and EZRI that NAMCO would never seek to collect either the principal or the interest due under the LOAN DOCUMENTS, because in fact NAMCO had never loaned principal amounts set forth in the LOAN DOCUMENTS to the borrowers under said LOAN DOCUMENTS.

55.    Counterclaimant is informed and believes and based thereon alleges that Counter-Defendants NAMCO CAPITAL GROUP, INC., KAMRAN GROUP, LLC, KAMRAN GROUP, INC., KAMRAN PASADENA, INC. DAVID J. GOLKAR, EZRI NAMVAR, agreed that NAMCO and EZRI would pay a fee to the other Counter-Defendants for having created the LOAN DOCUMENTS and placed the equity in the WALNUT PROPERTY and the MARENGO PROPERTY at risk to those persons like Counterclaimant who would loan money to NAMCO based on the collateral value of the LOAN DOCUMENTS.

56.    Counterclaimant is informed and believes and based thereon alleges that Counter-Defendants NAMCO CAPITAL GROUP, INC., KAMRAN GROUP, LLC, KAMRAN GROUP, INC., KAMRAN PASADENA, INC. DAVID J. GOLKAR, EZRI NAMVAR, agreed that if at any time any person to whom the LOAN DOCUMENTS had been assigned as collateral for loans to NAMCO sought to enforce the LOAN DOCUMENTS, all of said co-

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

conspirators would claim that the LOAN DOCUMENTS were unenforceable and invalid.

57.    Counterclaimant is informed and believes and based thereon alleges that in doing the things alleged in this First COUNTERCLAIM FOR RELIEF the named Counter-Defendants in this COUNTERCLAIM FOR RELIEF intended and knew that persons such as Counterclaimant would rely on the validity of the LOAN DOCUMENTS and based on such reliance would loan money to NAMCO for the benefit of EZRI.

58.    Counterclaimant is informed and believes and based thereon alleges that in doing the things alleged in this First COUNTERCLAIM FOR RELIEF the named Counter-Defendants in this COUNTERCLAIM FOR RELIEF were acting with full knowledge that the promises contained in the LOAN DOCUMENTS were false, and that when made Counter-Defendants had no intention of performing any of said promises and NAMCO and EZRI had no intention of ever enforcing the LOAN DOCUMENTS unless the properties were sold.

59.    Counterclaimant is informed and believes and based thereon alleges that in doing all of the things alleged in this First COUNTERCLAIM FOR RELIEF the Counter-Defendants and each of them was acting fraudulently, intentionally, maliciously and with reckless disregard of the truth of the promises made in the LOAN DOCUMENTS and with total disregard of the rights of the Counterclaimant or any other person who would rely on the LOAN DOCUMENTS/

60.    In making the loan of One Million Nine Hundred Thousand Dollars ($1,900,000.00) to NAMCO Counterclaimant relied on the validity of the LOAN DOCUMENTS and their enforceability against Counter-Defendants who were the makers and trustors of said LOAN DOCUMENTS.  Had Counterclaimant known that Counter-Defendants would claim that the LOAN

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-20-

DOCUMENTS were unenforceable she would never have made the loan which is evidenced by the NOTE.

61.   By reason of the fraudulent and malicious conduct of the Counter-Defendants named in this First COUNTERCLAIM FOR RELIEF, Counterclaimant is entitled to have and recover punitive and exemplary damages according to proof at the time of trial.

## SECOND COUNTERCLAIM FOR RELIEF
### JUDICIAL FORECLOSURE OF COLLATERAL ASSIGNMENT OF KAMRAN LLC NOTE, AND KAMRAN LLC DEED OF TRUST,
### (AGAINST ALL COUNTER-DEFENDANTS)

62.   Counterclaimant realleges and adopts and incorporates by reference Paragraphs 15 through 51 inclusive of this COUNTERCLAIM.

63.   As a direct and proximate result of the facts and circumstances hereinabove alleged Counterclaimant is entitled to have and recover from the NAMCO the amounts due pursuant to the NOTE in the amount of One Nine Hundred Thousand Dollars ($1,900,00.00) in principal plus interest thereon at the rate of 8% per annum from October 1, 2008 until paid in full.

64.   As a direct and proximate result of the facts and circumstances hereinabove alleged Counterclaimant is entitled to have the its security interest in and collateral assignment of the KAMRAN LLC NOTE, and the KAMRAN LLC DEED OF TRUST, foreclosed as permitted by law, and for an order of this Court that Counterclaimant is entitled to enforce all rights under the KAMRAN LLC NOTE, and the KAMRAN LLC DEED OF TRUST, as the owner thereof and to collect all interest payments and apply all rents, proceeds of sale or ownership interests in the MARENGO PROPERTY as may be obtained by such enforcement to the satisfaction of the obligations of NAMCO under the NOTE.

## THIRD COUNTERCLAIM FOR RELIEF

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-21-

## JUDICIAL FORECLOSURE OF KAMRAN LLC DEED OF TRUST (AGAINST ALL COUNTER-DEFENDANTS CLAIMING ANY INTEREST IN THE MARENGO PROPERTY AND ALL DOES)

65. Counterclaimant realleges and adopts and incorporates by reference Paragraphs 15 through 51 inclusive of this COUNTERCLAIM.

66. Counterclaimant is informed and believes, and based thereon alleges that Counter-Defendant KAMRAN LLC has not made any of the payments required to be made pursuant to the KAMRAN NOTE, in addition, the KAMRAN NOTE has, by its terms matured on June 28, 2008 such that the entire amount due thereunder is now due and payable and by reason thereof KAMRAN LLC is in default thereunder.

67. As a direct and proximate result of the facts and circumstances hereinabove alleged Counterclaimant does hereby declare the entire amount of $3,600,000.00 in principal plus all unpaid interest thereon to be immediately due and payable.

68. The KAMRAN LLC NOTE provides that, should a default occur in the payment of any installment when due, or in the performance of any obligation in the trust deed securing payment of the note, the whole sum of principal and interest shall at the election of the holder become immediately due and shall thereafter bear interest during the period of the default at the rate of Seventeen Percent (17%) per annum compounded monthly. The NOTE by its terms specifically states that it was arranged by NAMCO CAPITAL GROUP, INC. a California licensed real estate broker and is therefore exempt from usury limitation.

69. The KAMRAN LLC NOTE provides that, should a default occur in the payment of any installment when due, the holder of the note shall be entitled to a fee based on such default equal to 10% of the amount of the defaulted

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-22-

payment.   Said amount as of the date of filing of this COUNTERCLAIM is Three Hundred Sixty Thousand Dollars ($360,000.00).

70.    As a direct and proximate result of the facts and circumstances hereinabove alleged Counterclaimant is entitled to have and recover from the Counter-Defendant, KAMRAN GROUP, LLC the amounts due pursuant to the KAMRAN LLC NOTE; to have the KAMRAN LLC TD foreclosed as permitted by law, and to have all junior liens and junior security interests in the KAMRAN LLC NOTE and the KAMRAN LLC TD declared to be subordinate to the ARTECH TD and the NAMCO ASSIGNMENT to Counterclaimant.

### FOURTH COUNTERCLAIM FOR RELIEF
### BREACH OF PERSONAL GUARANTY AGREEMENT
### (AGAINST COUNTER-DEFENDANTS DAVID J. GOLKAR AND ALL DOES)

71.    Counterclaimant realleges and adopts and incorporates by reference Paragraphs 1 through 36 inclusive of this COUNTERCLAIM.

72.    Counterclaimant is informed and believes, and based thereon alleges that, as set forth in KAMRAN LLC NOTE, the obligations of the maker are personally guaranteed by the principal of the maker, Counter-Defendant DAVID J. GOLKAR.

73.    As a direct and proximate result of the facts and circumstances hereinabove alleged Counterclaimant IS entitled to have and recover from the Counter-Defendant DAVID J. GOLKAR and all DOES, any and all amounts due pursuant to the KAMRAN LLC NOTE and the KAMRAN LLC TD.

### FIFTH COUNTERCLAIM FOR RELIEF
### DECLARATORY RELIEF
### (AGAINST ALL COUNTER-DEFENDANTS)

74.   Counterclaimant realleges and adopts and incorporates by reference Paragraphs 15 through 51 inclusive of this COUNTERCLAIM.

75.   Counterclaimant is informed and believes, and based thereon alleges that one or more of the Counter-Defendants claim to have some interest in the WALNUT PROPERTY, the UNITS, the KAMRAN PASADENA NOTE, the KAMRAN PASADENA TD, the 2008 NOTE and the 2008 TD.

76.   Counterclaimant contends that pursuant to the agreements, and representations of NAMCO, EZRI and HAMID as herein alleged, it is the lawful owner of any interest which NAMCO, EZRI or HAMID may have at this time in the WALNUT PROPERTY, the UNITS, the KAMRAN PASADENA NOTE, the KAMRAN PASADENA TD, the 2008 NOTE and the 2008 TD.

77.   Counterclaimant is entitled to a declaration and order of this Court that her contention as set forth in the preceding paragraph is correct and that any interest of NAMCO, EZRI or HAMID in the WALNUT PROPERTY, the UNITS, the KAMRAN PASADENA NOTE, the KAMRAN PASADENA TD, the 2008 NOTE and the 2008 TD be transferred to her.

## SIXTH COUNTERCLAIM FOR RELIEF
## CONSTRUCTIVE TRUST
## (AGAINST ALL COUNTER-DEFENDANTS)

78.   Counterclaimant realleges and adopts and incorporates by reference Paragraphs 1 through 46 inclusive of this COUNTERCLAIM.

79.   By reason of the acts and omissions of the Counter-Defendants NAMCO CAPITAL GROUP, INC., KAMRAN GROUP, LLC, KAMRAN GROUP, INC., KAMRAN PASADENA, INC. DAVID J. GOLKAR, EZRI NAMVAR, HAMID TABATABAI aka HAMID TABA as hereinabove alleged Counterclaimant is entitled to the imposition of a constructive trust pursuant to which said Counter-Defendants hold the WALNUT PROPERTY,

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-24-

the UNITS and the MARENGO PROPERTY for the benefit of Counterclaimant until such time as the NOTE and all obligations thereunder have been paid in full.

**WHEREFORE**, Counterclaimant prays judgment as follows:

**ON THE FIRST COUNTERCLAIM FOR RELIEF:**

1. Against Counter-Defendants KAMRAN GROUP, LLC, KAMRAN GROUP, INC., KAMRAN PASADENA, INC. DAVID J. GOLKAR, and HAMID TABATABAI aka HAMID TABA for compensatory damages in the total amount due pursuant to the NOTE as of the date of Judgment;

2. Against Counter-Defendants KAMRAN GROUP, LLC, KAMRAN GROUP, INC., KAMRAN PASADENA, INC. DAVID J. GOLKAR, and, HAMID TABATABAI aka HAMID TABA as punitive and exemplary damages an amount to be proven at the time of trial;

**ON THE SECOND COUNTERCLAIM FOR RELIEF:**

3. Against THE NAMCO TRUSTEE, Adjudging that all rights, claims, ownership, liens, titles, and demands of all other named Counter-Defendants, and all served DOE COUNTER-DEFENDANTS, jointly and severally, in or to the KAMRAN LLC NOTE and the KAMRAN LLC TD are junior, subsequent to and subject to the rights therein of Counterclaimant ;

4. Adjudging that the security interest of Counterclaimant in the KAMRAN LLC NOTE and the KAMRAN LLC

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

TD be foreclosed and that Counterclaimant is entitled to enforce all rights under the KAMRAN LLC NOTE and the KAMRAN LLC TD as the owner thereof and to collect all principal and interest payments and apply all rents, proceeds of sale or ownership interests in the MARENGO PROPERTY as may be obtained by such enforcement to the satisfaction of the obligations of NAMCO under the NOTE.;

**ON THE THIRD COUNTERCLAIM FOR RELIEF:**

5. Against Counter-Defendant KAMRAN LLC the total amount due pursuant to the KAMRAN LLC NOTE as of the date of Judgment Including principal in the amount of $3,600,000.00, a late fee of $360,000.00 plus interest thereon at the rate of 17% per annum from the date of the last interest payment actually made until paid in full.

6. Against Counter-Defendants KAMRAN LLC, for attorney's fees in an amount that the court adjudges reasonable;

7. Adjudging that all rights, claims, ownership, liens, titles, and demands of any other named Counter-Defendant and all served DOE COUNTER-DEFENDANTS, jointly and severally, are junior, subsequent to and subject to the lien of the KAMRAN TD as held by Counterclaimant;

8. Adjudging that the KAMRAN TD be foreclosed, that the MARENGO PROPERTY be sold according to law by a levying officer to be appointed by the court, that

the proceeds of the sale be applied in payment of the amounts due to Counterclaimant, that each Counter-Defendant and all persons claiming under each Counter-Defendant, after execution of Counterclaimant's trust deed, whether as lien claimant, judgment creditor, claimant under a junior trust deed, purchaser, lienholder, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the property and every part of the property when time for redemption has elapsed;

9. Adjudging that DAVID J. GOLKAR is personally liable for payment of the obligation secured by the trust deed, and that a deficiency judgment may be ordered following proceedings prescribed by law against said Counter-Defendant as guarantor of the KAMRAN LLC NOTE;

10. Permitting Counterclaimant or any parties to this action to become a purchaser at the foreclosure sale;

11. Directing the levying officer, after the time for redemption has elapsed, to execute a deed to the purchaser of the property at the sale, and directing that the purchaser be let into possession of the property on production of the levying officer's deed;

**ON THE FOURTH COUNTERCLAIM FOR RELIEF:**

12. Against Counter-Defendant DAVID J. GOLKAR, the total amount due pursuant to the KAMRAN LLC NOTE as of the date of Judgment;

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

13.    Against Counter-Defendant DAVID J. GOLKAR, for attorney's fees in an amount that the court adjudges reasonable;

**ON THE FIFTH COUNTERCLAIM FOR RELIEF:**

14.    Against all Counter-Defendants a declaration and order of this Court that Counterclaimant's contentions are correct and that any interest of NAMCO, EZRI or HAMID in the WALNUT PROPERTY, the UNITS, the KAMRAN PASADENA NOTE, the KAMRAN PASADENA TD, the 2008 NOTE and the 2008 TD be transferred to her to be applied to the satisfaction of the NOTE.

**ON THE SIXTH COUNTERCLAIM FOR RELIEF:**

15.    As against Counter-Defendants KAMRAN GROUP, LLC, KAMRAN GROUP, INC., KAMRAN PASADENA, INC. DAVID J. GOLKAR, EZRI NAMVAR, HAMID TABATABAI aka HAMID TABA for the imposition of a constructive trust declaring that said Counter-Defendants hold the WALNUT PROPERTY, the UNITS and the MARENGO PROPERTY for the benefit of Counterclaimant until such time as the NOTE and all obligations thereunder have been paid in full.

**ON ALL CAUSES OF ACTION:**

16.    For costs of suit herein incurred; and

17.    For such other and further relief as the court may deem proper.

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-28-

Dated: April 20, 2010

LAW OFFICES OF SAUL REISS, P.C.

By _____

Saul Reiss, Esq.
Attorney For Mehrnaz
Hekmatravan

ANSWER AND COUNTERCLAIMS OF MEHRNAZ HEKMATRAVAN

-29-

# PROMISSORY NOTE
# SECURED BY DEED OF TRUST
(the "Note")

$3,600,000.00

Los Angeles, California
June 29, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of Three Million Six Hundred Thousand and 00/100 Dollars ($3,600,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $30,000.00 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on June 28, 2008, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default , the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less,, the highest amount allowed by applicable law) , compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note(and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodman Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group, Inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

- 3 -

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, LLC

BY: David Golkar-Manager

-4-