Part 1 of 2

ORIGINAL

FILED

FEB 24 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Matthew Clarke (SBN 184959)
Matt@christmankelley.com
Dugan P. Kelley (SBN 207347)
Dugan@christmankelley.com
CHRISTMAN, KELLEY & CLARKE
831 State Street
Santa Barbara, California 93101
Telephone:    (805) 884-9922
Facsimile:    (866) 611-9852

Attorneys for Plaintiffs
Kamran Pasadena Group, Inc. and Kamran Group, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In Re:  NAMCO CAPITAL GROUP INC, a California corporation<br><br>Debtor. | Case No.: 2:08-bk-32333-BR<br>Chapter 11<br>Adv. No.:  2:10-ap-01244-BR |
| KAMRAN PASADENA GROUP, INC., a California corporation; and KAMRAN GROUP, LLC, a California limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC, a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR; an individual; ASHLAND PROPERTIES, LLC, A California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC; a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEES FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100<br><br>Defendants. | **DECLARATION OF DAVID GOLKAR** |

1

DECLARATION OF DAVID GOLKAR

# DECLARATION OF DAVID GOLKAR

I, David Golkar, do declare and say:

1. I am the sole member of Plaintiff, Kamran Group, LLC, a member-managed limited liability company, and the sole shareholder of Plaintiff, Kamran Pasadena Group, Inc. I make this declaration based upon my own personal knowledge. I could and would competently testify to these facts in a court of law.

**Limited Issue(s) of Lack of Consideration for Promissory Notes:**

2. I understand that the Court has limited testimony at this phase of trial to the sole issue of whether consideration was provided for certain promissory notes executed by Kamran Group, LLC and/or Kamran Pasadena Group, Inc. (collectively, the "Kamran Entities" or "Kamran"), respectively, in favor of Namco Capital Group, Inc. ("Namco"). I understand the Chapter 11 Trustee for Namco, Bradley D. Sharp (the "Trustee"), has essentially stepped into the shoes of Namco and alleges that the Kamran Entities received consideration for certain promissory notes in favor of Namco. The Trustee is making several assumptions which are inaccurate, including:

- That Namco loaned Kamran monies as set forth in certain promissory notes;
- That any monies tendered by Namco to Kamran were categorized as debt versus equity or these monies were advanced to further the joint venture relationship between Namco and Kamran;
- That Kamran was obligated to tender interest and principal payments pursuant to promissory notes;
- That Kamran failed to tender interest and/or principal payments for promissory notes; and
- As a result, Namco has the right to foreclose on the real property which secures the promissory notes.

**No Consideration Was Given by Namco/Namvar for Promissory Notes:**

3. These assumptions are false. As set forth below, Kamran had an ongoing joint venture relationship for the creation of the Pasadena project. Namco never provided any monies pursuant to the terms of the promissory notes. The monies the Trustee argues constitute

2
DECLARATION OF DAVID GOLKAR

"consideration" were paid by Namco for the acquisition of the real properties, not for consideration for promissory notes.

4. I also understand that the Trustee contends that the relationship between Namco and the Kamran Entities, respectively, was that of lender-debtor (as a bank to a borrower). **That, too, is false.** Ezri Namvar and his Namco entity were a joint venture partner with me in the Pasadena project. As more particularly detailed below, monies advanced by Namco to the Kamran Entities was in furtherance of Ezri Namvar's ("Namvar") obligation, as a joint venture partner with me., The advances were made as equity in the joint venture and for the acquisition and development of certain real property comprising the Project. The funds tendered by Namco were contributions of equity to the joint venture on behalf of Namvar, not loan proceeds paid to the Kamran Entities pursuant to promissory notes. It is important how the Court categorizes any monies transferred through any Kamran entity is important (i.e. debt vs. equity). The Trustee is arguing that Namco was a lender, not my partner. This is not correct.

5. Though the scope of the facts set forth below goes a little bit beyond the specific issue of consideration, these facts are necessary to show the Court for what purpose, and on what basis, monies were tendered by Namco. The bottom line is that all monies advanced by Namvar, including all funds from Namco, were advanced in furtherance of Namvar's obligation to contribute capital to fund the operations of the joint venture relationship, and not as consideration for any promissory notes. The conduct of the parties as articulated herein will make it clear that all financial activity on the part of Namco was in furtherance of Namvar's obligation to commit capital contributions to the joint venture with me.

**My Introduction to Joint Venture Partner Ezri Namvar/Namco:**

6. In or about late 2004, I met Mr. Ezri Namvar ("Namvar"), then president and, to the best of my knowledge, owner of Namco Capital Group, Inc. ("Namco"). I was introduced to Namvar by Ali Akbar "Alex" Helmi, a mutual friend of Namvar and mine. Mr. Namvar was introduced as a potential source of short-term financing for the development of a large tract of land (approximately 1,600 acres into several thousand residential lots) in Beaumont, California. Namvar was impressed with my development expertise and urged me to consider forming a joint venture

DECLARATION OF DAVID GOLKAR

relationship with him to develop other properties. Namvar and I solidified our intention to develop other properties and we created joint venture relationships for that purpose. At all times mentioned herein I operated through the Kamran Entities and Namvar operated through Namco and related entities.

7. Namvar and I agreed that the joint venture for the Pasadena Project would be owned 50%-50%. I would contribute my development, engineering, and architectural expertise and 10% of the capital and Namvar would contribute his finance expertise and 90% of the capital.. Our contributions were characterized as equity and credited toward our respective capital accounts. The value of my contribution of development, engineering, and architectural expertise was also credited to me as capital. The profits would be split 50-50 after Namvar and I were reimbursed for our respective financial contributions to the joint venture. At all times during the course of our relationship, the advances from Namco were treated as contributions of equity to the joint venture relationship on behalf of Namvar.

**Decision to Enter Into Joint Venture on the Pasadena Project:**

8. Throughout the remainder of 2004 and into 2005, Namvar and I (through our respective entities) looked for development ideas. In early August 2005, a real estate broker approached me with the opportunity to purchase 233 North Fair Oaks Avenue in Pasadena, California ("233 N. Fair Oaks"). This parcel was formerly used as a bank and abutted the Pasadena Athletic Club parcel located at 25 West Walnut Avenue, Unit # 503, Pasadena, California (the "PAC Parcel"). While I performed due diligence on 233 N. Fair Oaks, I was approached by the owner of the Pasadena Athletic Club, John Richards. Mr. Richards was interested in selling the PAC Parcel, the property upon which the Pasadena Athletic Club was located. Thus, Namvar and I, by and through our respective entities, agreed to pursue the purchase of 233 N. Fair Oaks and the PAC Parcel. We wanted to develop these properties into a mixed use commercial/residential property with a hotel, residential, and retail space (hereinafter referred to as the "Project").

9. Our intentions with respect to the joint venture relationship were memorialized in a Memorandum of Understanding. I prepared the Memorandum of Understanding. The Memorandum of Understanding is identified on Plaintiffs' Exhibit List attached to and made part of

4
DECLARATION OF DAVID GOLKAR

the Joint Pretrial Order as Exhibit 1. A true and correct copy of the Memorandum of Understanding is attached hereto and is incorporated herein by reference. The Memorandum of Understanding memorialized key terms of the joint venture agreement between Namvar and I, including, but not limited to: (1) that our joint venture would be owned 50%-50%, with me contributing my development, engineering, and architectural expertise and 10% of the capital, and Namvar contributing his finance expertise and 90% of the capital; and (2) that profits were to be split pursuant to the parties' 50-50 percentage ownership interest after a return of the parties' invested capital. (*See* the Memorandum of Understanding.) It was my role to manage the Project and to assemble the real property that was to comprise the Project, which included 233 N. Fair Oaks, the PAC Parcel, and any other property deemed necessary to complete the development of the Project. (*See* the Memorandum of Understanding.)

**Joint Venture Entity "Walnut Holding, LLC" Was Never Finalized/Formed Because of Namvar/Namco's Legal Problems and Complexity of Joint Venture:**

10. Namvar (through Namco) and I agreed to form a new entity, Walnut Land Holding, LLC, that would ultimately hold title to 233 N. Fair Oaks and 25 West Walnut (which included the PAC Parcel and additional residential condominiums located at 25 West Walnut Ave.). Since the entity was not formed at the time the 233 N. Fair Oaks sale closed, Namvar requested that I use the entity, Tranmar Properties, LLC, whose managing member was Namvar, to take title thereto. I understand that Namvar has stated that he needed to use Tranmar Properties, LLC for 1031 exchange purposes. Our joint venture was very complex to own, develop, and operate. The value of the Project was two hundred million dollars ($200,000,000.00). We had attorneys forming and ironing out the details for our new joint venture entity, including complex tax, ownership, and operating issues related to the following facets of the Pasadena Project:

- Starwood's hotel "W" (which we had a signed LOI for this project);
- A spa on the project;
- Retail stores;
- Nightclub;
- A Spago Restaurant; and

- Residential Condominiums.

11. The project was a huge undertaking that could not be slapped together. As a result, we could not complete the creation of the joint venture entity Walnut Land Holding, LLC prior to Namvar/Namco's legal problems (including this Chapter 11 proceeding). Regardless of the fact that Walnut Land Holding, LLC was not finalized or formed in time to be utilized by the parties in the joint vennture, Namvar and I continued to operate with our joint venture for the Pasadena project, including the acquisition, entitlements, and developing of this Pasadena project.

**Acquisition of Real Properties for Joint Venture:**

12. In furtherance of the Project, Namvar, through his entity Tranmar Properties, LLC, acquired the 233 N. Fair Oaks site and I, through Kamran Group, LLC, acquired the PAC Parcel, condominiums also located on the 25 West Walnut property, and an affordable housing site. The N. 233 Fair Oaks property was purchased on or about August 12, 2005, for $4,300,000.00. Kamran Group, LLC tendered $1,250,000 and Namco tendered $3,050,000 for the purchase of 233 N. Fair Oaks. The 233 N. Fair Oaks transaction closed on December 12, 2005.

13. The PAC Parcel was purchased for $7,650,000. The Pasadena Athletic Club was a three story athletic club with four condominiums on the fourth floor. John Richards, the owner and president of Pasadena Athletic Club offered me the opportunity to purchase his parcel and include it with the Project. Richards informed me that the Pasadena Athletic Club had over 3,500 members and he wanted to close the property transaction after approximately one year to enable him to give notification to the Club's members and ease the transition. Namvar and I agreed to this extended escrow period. Kamran Group, LLC deposited $250,000 in February 2006 and released another $500,000 for the purchase in June 2006. Namco paid $6,9000,000 towards the total purchase price. The transaction closed on June 23, 2007.

14. In addition to the PAC Parcel, there were four residential units owned by other individuals at 25 West Walnut, namely Units #402, #405, #501, and #504. The purchase prices for these individual units was as follows:

a. Condominium unit No. 405 at 25 West Walnut, Pasadena was purchased for approximately **$530,000**. Escrow opened on March 29, 2007 and Namco deposited $30,000

6

DECLARATION OF DAVID GOLKAR

to escrow. Escrow closed on April 30, 2007. At the closing, Namco deposited an additional $503,154 including closing cost.

b. Condominium unit No. 504 at 25 West Walnut, Pasadena was purchased for approximately **$1,657,847**. Escrow opened on May 10, 2007 and Namco put a $300,000 deposit in escrow. Escrow closed on July 6, 2007. At closing, Namco deposited an additional $1,357,847 to escrow including the closing cost.

c. Condominium unit No. 501 at 25 West Walnut, Pasadena was purchased for approximately **$780,000**. Escrow opened on February 27, 2007 and Namco deposited $150,000 in escrow. Escrow closed on July 3, 2007. At closing, Kamran Group, LLC deposited an additional $630,000 to escrow.

d. Condominium unit No. 402 at 25 West Walnut, Pasadena was purchased for approximately **$648,600**. Escrow opened on October 19, 2006 and Namco deposited $125,000 in escrow. The parties agreed that this unit would be exchanged and replaced with a new unit after the completion of the Project. Chris Holden, the person from whom Unit No. 402 was purchased, was carrying a mortgage of about $127,000 at that time and Kamran Group, LLC paid the mortgage thereafter. Later, on November 21, 2008, Kamran Group, LLC paid an additional $57,194 to Chris Holden for an extension of escrow. Upon information and belief, Chris Holden currently owns about 2% of this property.

15. During the course of procuring entitlements and negotiating with vendors for the new Project, Namvar and I looked into purchasing another parcel that would comply with the City's requirement that a part of the development include low income housing. In order to receive approval for the Project, 15% of the residential housing component needed to be allocated for low income housing. Such a property was found at 810-820 Marengo Avenue ("Marengo"), Pasadena, California for $3,600,000. Marengo had 18 units that satisfied the low income housing requirement and was located within one mile of 25 West Walnut. , Namco tendered payment of all funds for the purchase of the Marengo property, and the transaction closed on June 27, 2007.

16. In furtherance of Namvar's obligations to the joint venture, Namvar through Namco, made payment of the following approximate amounts in furtherance of Namvar's joint venture with

DECLARATION OF DAVID GOLKAR

me for the development of the Project on the following dates:

        a.     $150,000 on March 5, 2007;

        b.     $30,000 on March 30, 2007;

        c.     $200,000 on April 25, 2007;

        d.     $503,154.60 on April 27, 2007;

        e.     $200,000 on May 16, 2007;

        f.     $3,205,000 on June 27, 2007;

        g.     $300,000 on June 19, 2007;

        h.     $1,350,000 on June 29, 2007; and

        i.     $6,900,000 on June 20, 2007.

17. All of the foregoing purchase and development activities were performed outside the context of any Promissory Notes. Rather, all funds expended by Namco were in furtherance of Namvar's obligation to the joint venture to contribute 90% of the capital necessary, as equity therein, to fund the development of the Project.

18. After I complied with the joint venture terms, conditions, and obligations, the Kamran Entities needed cash to continue to develop the Project as well as other projects. The total acquisition price for the real properties included in the Project was $19,226,215 with $648,000 not yet closed for one outstanding condominium (Unit #402). I, through the Kamran Entities, had already contributed over $8,300,000 rather than the $1,922,621.50 I was obligated to provide (as 10% of the capital needed to fund the Project) under the terms of the joint venture agreement.

19. Rather than obtain financing from other investors or financial institutions secured by the Kamran Entities' ownership interests in the 25 West Walnut and Marengo properties, the Kamran Entities agreed to allow Namco to provide them with $12,650,000 in exchange for Promissory Notes secured by these three pieces of real property as follows:

        a.     Kamran Pasadena Group, Inc. executed a promissory note in favor of Namco in the amount of $5,000,000 dated **June 29, 2007**, and $1,700,000 dated **September 11, 2008**, with an associated deed of trust related to 25 West Walnut, Unit #503 (Pasadena Athletic Club portion);

b.    Kamran Group, LLC executed a promissory note in the amount of $3,600,000 dated **June 29, 2007**, with an associated deed of trust related to the Marengo property.

c.    Kamran Group, LLC executed a promissory note in favor of Namco in the amount of $600,000 dated **September 10, 2007**, with an associated deed of trust related to 25 West Walnut, Unit #501 (Condo unit);

d.    Kamran Group, LLC executed a promissory note in favor of Namco in the amount of $1,300,000 dated **September 10, 2007**, with an associated deed of trust related to 25 West Walnut, Unit #504;

e.    Kamran Group, LLC executed a promissory note in favor of Namco in the amount of $450,000 dated **September 10, 2007**, with an associated deed of trust related to 25 West Walnut, Unit #405 (Condo unit); and

20.    However, despite executing such Promissory Notes and Deeds of Trust, the Kamran Entities did not receive any of the funds required of Namco to be provided pursuant to and under the Promissory Notes. Moreover, Namco recognized and stated to me, as agent for the Kamran Entities, that no payments and/or interest would be due until the funds contemplated by the Promissory Notes were tendered to the Kamran Entities, respectively. Such tender of monies pursuant to the Promissory Notes never took place. A quick review of the operative dates when Namco purchased the properties and paid third parties for services rendered in the development of the Project as compared to the dates of the Promissory Notes shows that such funds could not have been pursuant to the Promissory Notes.

21.    Although the Kamran Entities executed Promissory Notes in favor of Namco, Plaintiffs never received the consideration contemplated for such Promissory Notes, i.e., the money called for under the Promissory Notes to be tendered to the Kamran Entities. Because the Kamran Entities never received the money promised under the Promissory Notes, the Kamran Entities, respectively, never made any interest or principal payments on any of the Promissory Notes. Since no monies were tendered to the Kamran Entities under the Promissory Notes, Namco never sent demands for principal or interest payments or a notice of default. Notices of Default were issued only after the Trustee was appointed and made a wrongful assumption that the consideration

9
DECLARATION OF DAVID GOLKAR

contemplated by the Notes, i.e., the funds to be tendered pursuant thereto, had been tendered.

**Failure to Give Consideration Resulted in Kamran Getting Sued:**

22. Kamran Group, LLC was sued in multiple lawsuits by contractors and vendors. The Complaints filed in certain lawsuits are identified as Plaintiffs' Exhibits 14, 15, 16 and 17 in the Joint Pretrial Order on file with the Court, and they are attached hereto and incorporated herein by reference. These suits were directly related to Namvar/Namco's inability to tender consideration for the promissory notes and fund the Pasadena project. If the Kamran Entities had received the money the Trustee is claiming it received from the promissory notes, these suits would not have occurred. Unfortunately, Namvar/Namco did not tender consideration for the promissory notes and ultimately did not fund the Pasadena project. As a result, the Kamran Entities directly paid millions of dollars to vendors and contractors in furtherance of the development of the Project, as well as defending the above referenced lawsuits. The Court can see that Namco/Namvar was directly in touch with these vendors and/or with me in connection with the entitlement and contract work on the Pasadena project. If Namco was simply a lender, why would they be involved with third parties or

///
///
///
///
///
///
///
///
///
///
///
///
///
///

10
DECLARATION OF DAVID GOLKAR

entitlement providers? The answer is simple. They would not. If the Kamran Entities had actually received millions in exchange for promissory notes (as argued by the Trustee), the Kamran Entities would have paid the entitlement professionals and continued to develop the project and avoided these lawsuits that were created by the failure of Namvar/Namco to tender consideration for promissory notes.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 23rd day of February, 2011 at Tehran, Iran.

David Golkar

DECLARATION OF DAVID GOLKAR

# Exhibit 1

(Plaintiffs' Exhibit 1 in Joint Pretrial Order)

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("Memorandum"), is intended as an outline of the general terms which the undersigned find acceptable with respect to the development of a development project located in the City of Pasadena which we commonly refer to as the Pasadena Athletic Club Project ("Project"). We have agreed to develop the Project jointly through our respective resources and expertise. David Golkar ("Golkar") will contribute his development, engineering and architectural expertise (the value of which shall be attributed to capital) in developing the Project. Likewise, he will be the point person and manager for completing the assemblage of the real property consisting of the property commonly referred to as 233 N. Fair Oaks Blvd., 25 W. Walnut Street and other necessary property/companies to complete the development of a planned mixed use commercial land residential property. The parties agree that Ezri Namvar, through his affiliate companies, will be responsible for 90% of the capital necessary for the acquisition and development of the Project and Golkar shall be responsible for 10% of the capital. After a return of the parties' capital, the parties shall divide profits as they are commonly understood, equally (50-50).

The parties understand and agree that the Project will entail the acquisition of a number of parcels and/or holding companies and that the parties will at a subsequent date, form one or more legal entities to implement the Project to the advantage of the partners.

_____

David Golkar

_____

Ezri Namvar

# Exhibit 2

(Plaintiffs' Exhibit 14 in Joint Pretrial Order)

CHRISTOPHER GONZALEZ, STATE BAR NO. 174455
PEREZ GONZALEZ, A PROFESSIONAL LAW CORP.
111 EAST BROADWAY, SUITE 210
GLENDALE, CALIFORNIA 91205
TELEPHONE NO. (818) 550-8300
FACSIMILE NO. (818) 956-1984

ATTORNEY FOR PLAINTIFF
THE TEECOR GROUP, INC.
    D/B/A KEY ENVIRONMENTAL SERVICES

**ORIGINAL FILED**

SEP 17 2008

LOS ANGELES
SUPERIOR COURT
NORTHEAST DISTRICT

LOS ANGELES SUPERIOR COURT

LOS ANGELES COUNTY, STANLEY MOSK (CENTRAL DISTRICT)

| THE TEECOR GROUP, INC., CALIFORNIA CORPORATION D/B/A KEY ENVIRONMENTAL SERVICES, | CASE NO. ᏳᏟᏟ 41526 |
|---|---|
| PLAINTIFF, | COMPLAINT FOR DAMAGES. |
| VS. | 1. BREACH OF WRITTEN CONTRACT |
| | 2. BREACH OF ORAL CONTRACT |
| | 3. QUANTUM MERUIT |
| KAMRAN PASADENA, INC., A CALIFORNIA CORPORATION, GREGORY McNICOL, AN INDIVIDUAL D/B/A, FULLSCOPE, KAMRAN GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY AND DOES 1 TO 100, INCLUSIVE, | 4. DECLARATORY RELIEF |
| | 5. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING |
| | [UNLIMITED CIVIL CASE; OVER $25,000] |
| DEFENDANTS. | |

Plaintiff alleges:

1. Plaintiff, THE TEECOR GROUP, INC., A CALIFORNIA CORPORATION D/B/A KEY ENVIRONMENTAL SERVICES ("KEY") is, and at all times herein mentioned was, a general contractor duly licensed by the State of California, License No. 783159, authorized to do business in the state of California.

- 1 -
COMPLAINT FOR DAMAGES

2. At all times herein mentioned KEY was, a corporation organized and existing under the laws of California with its principal place of business in this state in Los Angeles County, California.

3. Plaintiff is informed and believes that Defendant GREGORY McNICOL ("McNICOL") is, and at all times herein mentioned was, an individual and resident of Los Angeles County, California going business as "FULLSCOPE."

4. Plaintiff is informed and believes and thereon alleges that defendant KAMRAN PASADENA, INC. ("KAMRAN PASADENA"), is and at all times herein mentioned was, a corporation organized and existing under the laws of California.

5. Plaintiff is informed and believes and thereon alleges that defendant KAMRAN GROUP, LLC ("KAMRAN GROUP"), is and at all times herein mentioned was, a limited liability company organized and existing under the laws of California.

6. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants KAMRAN PASADENA and/or KAMRAN GROUP are and/or were the owners or reputed owners of all the certain real property situated in Los Angeles County, California located at 25 W. Walnut Street, Pasadena commonly known as the Pasadena Athletic Club (the "Property").

7. At all times herein mentioned, each of the Defendants, and each of them, were the agent, servant and/or employee of each of the remaining defendants and, in doing the things herein mentioned, was acting within the scope of such agency and employment and was responsible for the acts, errors, and/or omissions of each of the remaining defendants, and each

- 2 -
COMPLAINT FOR DAMAGES

defendant proximately caused the damages sustained by Plaintiff herein.

8. The true names and capacities of Does 1 through 100, Inclusive, and each of them, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages as herein alleged were proximately caused by those Defendants.

9. All of the obligations alleged herein were to be performed in the City of Pasadena, County of Los Angeles, State of California.

### GENERAL ALLEGATIONS

10. Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1-9 above, as though fully set forth.

11. On or about July 27, 2007, Defendant McNICOL retained Plaintiff to furnish all necessary labor, services, materials, and equipment for a commercial project on the Property (the "Project").

12. On or about July 27, 2007, Plaintiff and Defendant McNICOL entered in to a written agreement wherein Plaintiff agreed to perform the services on the Project and Defendant McNICOL agreed to pay Plaintiff for such services. A true and correct copy the agreement among the parties is attached hereto

- 3 -
COMPLAINT FOR DAMAGES

as Exhibit A and incorporated herein by this reference (the "Contract").

13.    Plaintiff completed all work required of it on the Project.

14.    After completion on the Project, Defendant KAMRAN GROUP agreed to pay for Plaintiff's services on the Project. Defendant KAMRAN GROUP confirmed this agreement when it paid Plaintiff for their services.  KAMAN GROUP made several payments and then stopped.

**FIRST CAUSE OF ACTION**

**(FOR BREACH OF WRITTEN CONTRACT**

**AGAINST DEFENDANTS GREGORY MCNICOL AND DOES 1-100)**

15.    Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1-14 above, as though fully set forth.

16.    Plaintiff and Defendants entered into the Contract. See Exhibit A.

17.    Under the Contract, Plaintiff agreed to furnish all necessary labor, services, materials, and equipment for the Project, for all of which Defendant agreed to pay.

18.    Plaintiff has performed all other conditions, covenants, and promises under the contract and change orders, on its part to be performed.

19.    Although demand has been made since the Project was completed and all necessary services, materials, and equipment were furnished, only a portion of the contract price has been paid.

- 4 -

COMPLAINT FOR DAMAGES

20. As a proximate result of the breach by Defendant, Plaintiff has suffered damages in that sum, plus interest according to the terms and conditions of the written agreement, as well as, other damages to be proven at trial. Plaintiff will seek leave of court to amend this complaint to insert the exact amount of damages when the same is known by Plaintiff.

## SECOND CAUSE OF ACTION

### (FOR BREACH OF ORAL CONTRACT

### AGAINST DEFENDANTS KARMAN GROUP, LLC AND DOES 1-100)

21. Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1-20 above, as though fully set forth.

22. After completion of the Project, KAMAN GROUP orally agreed to pay Plaintiff for its services regarding the Project.

23. Plaintiff has performed all other conditions, covenants, and promises under the contract and change orders, on its part to be performed.

24. KAMAN GROUP made several payments to Plaintiff and then stopped.

25. Although demand has been made, only a portion of the contract price has been paid.

26. As a proximate result of the breach by Defendant, Plaintiff has suffered damages in that sum, plus interest according to the terms and conditions of the written agreement, as well as, other damages to be proven at trial. Plaintiff will seek leave of court to amend this complaint to insert the exact amount of damages when the same is known by Plaintiff.

## THIRD CAUSE OF ACTION

### (FOR QUANTUM MERUIT

### AGAINST ALL DEFENDANTS AND DOES 1-100)

27.    Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1-26 above, as though fully set forth.

28.    Within the last two years, Defendants, and each of them, became indebted to Plaintiff for work, labor, services, equipment and material performed and supplied at the special instance and request of said Defendants, and each of them, for which said Defendants, and each of them, agreed to pay Plaintiff the reasonable value of its work, labor, services, equipment and material performed and supplied for the Project.  Defendants, and each of them, had knowledge of and enjoyed the use of Plaintiff's work, labor, services, equipment and material that had a reasonable value according to proof.

29.    At all times mentioned herein, Plaintiff reasonably expected to be compensated for the above-described work, labor, and services to Defendants because the work, labor, and services performed are the type ordinarily performed for compensation, and Defendants on several occasions promised to make such compensation.

30.    Defendants, and each of them, have only paid a portion of the foregoing amount to Plaintiff.  Although Plaintiff has made a demand for payment of the remaining balance, Defendants, and each of them, have failed and refused to pay the foregoing sum, and the whole thereof is now due, owing, and unpaid together with interest therein a provided by law.

- 6 -
COMPLAINT FOR DAMAGES

31. Defendants have not paid for Plaintiff's services and there is now due and unpaid from Defendants to Plaintiff. As a further proximate result of Defendants, and each of them, failure to pay for the reasonable value of Plaintiff's work, labor, services, equipment and material, Plaintiff has had to retain attorneys and incur court costs, in an amount as yet unknown, in pursuit of payment for the work of improvement. The terms and conditions of the written agreement provide for reasonable attorney's fees and court costs incurred in enforcing payment thereof. Plaintiff will seek leave of court to amend this complaint to insert the exact amount of damages when the same 's known by Plaintiff.

### FOURTH CAUSE OF ACTION

### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### AGAINST ALL DEFENDANTS AND DOES 1-10)

32. Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1-31 above, as though fully set forth.

33. The agreements between Plaintiff and Defendants contained an implied covenant of good faith and faith dealing which obligated Defendants to perform the terms and conditions of the agreements in good faith and honestly and reasonably and to refrain from doing any act that would prevent, impede or deprive Plaintiff of the benefits of their contract or impede Plaintiff from performing any and all conditions it agreed to perform.

34. Throughout their contractual relationship, Plaintiff performed its duties and conditions of the contracts save and

- 7 -

COMPLAINT FOR DAMAGES

except those terms and conditions which have been excused by Defendant's breaches thereof.

35. By Defendants' conduct as alleged herein Defendants breached the covenant of good faith and fair dealing.

36. These acts constituted a breach of the implied covenant of good faith and fair dealing in that the motivation for such conduct was extraneous to the contract and done solely to allow Defendants to gain the benefits of Plaintiff and money and to exclude Plaintiff from all benefit and bargain of the contacts with Defendants.

37. As a legal and substantial result of these breaches of the implied covenant of good faith and fair dealing, Plaintiff have suffered harm, including lost profits, all to its harm in a sum capable of proof at trial.

38. These acts in breach of the implied covenant of good faith and fair dealing also entitle each Plaintiff to exemplary damages because the motivation for such conduct was extraneous to the contract as set forth and which indicates a deliberate intention to harm Plaintiff in a despicable fashion within the definition of malice and oppression.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

ON THE FIRST, SECOND AND THIRD CAUSES OF ACTION:

1. For general damages in a sum to be determined according to proof;

2. For prejudgment interest; and

3. For reasonable attorney's fees and costs in a sum to be determined by this Court.

- 3 -
COMPLAINT FOR DAMAGES

ON THE FOURTH CAUSES OF ACTION:

1. For damages in an amount to be determined at trial.

2. For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3. For costs of suit incurred herein; and

4. For such other and further relief as the court may deem proper.

ON ALL CAUSES OF ACTION:

1. For costs of suit incurred herein;

2. For prejudgment interest; and

3. For such other and further relief as this Court deems just and proper.

Dated: September 15, 2008   PEREZ GONZALEZ, A PROF. LAW CORP.

By: _____
CHRISTOPHER GONZALEZ
Attorney for Plaintiff

- 9 -
COMPLAINT FOR DAMAGES

PEREZ GONZALEZ

# EXHIBIT A

FROM :KCSsa                    FAX NO.  :9474734              Mar. 13 2008 07:24AM  P2

FROM :KCSsa

FAX NO. :9474734

Jul. 21 2007 06:39AM

*Key Environmental*

1234 E. Hall Ave. No. 1
Los Alamitos, CA 90021
(310) 464-5434

PROPOSAL AND WORK AUTHORIZATION

CA Contractor License # 783859
FAX (681)847-4134

JOB SITE: _____  INVOICE TO: _____

ADDRESS: 35. E. Walnut   ADDRESS: 15581 Yadkell St 242

Pasadena   ZIP: 91101   Racho (Cacadoes 91762

CONTACT: _____   CONTACT: Rosemary McNicol

HOME PHONE: (   )   HOME PHONE: 818 822 1300

WORK PHONE: (   )   WORK PHONE: 818 822 1348

Key Environmental proposes to furnish all labor, materials and equipment necessary to complete the following
work:

1) Isolate work area with full visqueen including critical barriers.

2) Establish Decontamination Chamber

3) Provide Negative Air Filtration machine

4) Provide air monitoring.

5) Provide manifesting, hauling & disposal of wast

6) Removal of the following materials

Work to be started on _____ and substantially completed by _____ for $ _____

A down payment of $ _____ must be made prior to workers arrival at the jobsite and the balance is due on
completion (unless otherwise noted in this agreement).

TERMS, CONDITIONS AND EXCLUSIONS:

Responsibility Identified

Key Environmental Representative _____   Date _____

ACCEPTANCE: The above prices, specifications and conditions are satisfactory and are hereby accepted.
Key Environmental is authorized to do the work as specified. Payment will be made as outlined above.

Customer's Signature _____   Date _____

NOTICE

EPA GENERATOR ID # CAC002619731

00/00/2010   2:10-ap-01244-BR   2-349990   NATIONWIDE LEGAL

FROM :KCSsa                    FAX NO. :9474734              Mar. 13 2008 07:24AM  P3

FROM :KCSsa

FAX NO. :9474734                                Jul. 13 2007 16:41PM  P0

## Key Environmental

1450 S. Burlington Ave., Ste. A
Los Angeles, CA 90006                                   DOSH # 763
(818) 665-6034                                 CA Contractor License # 713159
                                                      FAX #(847)947-4734

### PROPOSAL AND WORK AUTHORIZATION

JOB SITE:_____  INVOICE TO:_____
ADDRESS:_____  ADDRESS:_____
_____ ZIP:_____  _____ ZIP:_____
CONTACT:_____  CONTACT:_____
HOME PHONE: (      )_____  HOME PHONE: (      )_____
WORK PHONE: (      )_____  WORK PHONE: (      )_____

Key Environmental proposes to furnish all labor, materials and equipment necessary to complete the following work

I. ASBESTOS

a) Removal of 56,000 $\square$ of joistcompound
at Basement, 1st floor, E3rd LG per survey
b) 750 $\square$ of brown/Black streaked linoleum
2nd layer at office til
c) 80 $\square$ of 'pipe fittings in basement
d) 700 $\square$ white Acrtile mastic hallway

Work is to be started on _____ and substantially completed by _____ for $ _____

A down payment of $ _____ must be made prior to workers arrival at the jobsite and the balance is due on completion (unless otherwise noted in this agreement).

TERMS, CONDITIONS AND EXCLUSIONS:

[fine print terms and conditions, illegible]

Respectfully Submitted,

_____    Date_____
Key Environmental Representative

ACCEPTANCE: The above prices, specifications and conditions are satisfactory and are hereby accepted. Key Environmental is authorized to do the work as specified. Payment will be made as outlined above.

_____    Date_____
Customer's Signature

NOTICE
[fine print notice, illegible]

AUG 03, 2007 06:39A

FROM : KCSea FAX NO. :9474734 Mar. 13 2008 07:27AM P8

FROM : KCSea FAX NO. :9474734 Jul. 21 2007 8:...0PM P3

*Key Environmental*

1451 S. Burlington Ave. Ste. A
Los Angeles, CA 90006
(213) 456-5424

DOSH # 762
CA Contractor License # 713123
FAX (661)947-4734

## PROPOSAL AND WORK AUTHORIZATION

JOB SITE: _____  INVOICE TO: _____

ADDRESS: _____  ADDRESS: _____

_____ ZIP: _____  _____ ZIP: _____

CONTACT: _____  CONTACT: _____

HOME PHONE ( ) _____  HOME PHONE ( ) _____

WORK PHONE ( ) _____  WORK PHONE ( ) _____

*Key Environmental proposes to furnish all labor, materials and equipment necessary to complete the following work:*

1) 1600 of brown mastic behind black cove base at basement north wall stairwell landing and office

2) 200 used color linoleum paper backing at k/r, kitchen in room 300

3) 2000 yellow mastic underneath wood tiles and kitchen floor tile at kitchen, dining and office at 1st floor room 300

Work is to be started on _____ and substantially completed by _____ for $ _____

A down payment of $ _____ must be made prior to workers arrival at the jobsite and the balance is due on completion (unless otherwise stated in this agreement).

TERMS, CONDITIONS, AND EXCLUSIONS

1) [illegible]
2) [illegible]
3) [illegible]
4) [illegible]
5) [illegible]
6) [illegible]
7) [illegible]
8) [illegible]
9) [illegible]

Respectfully Submitted,

_____  Date _____
Key Environmental Representative

ACCEPTANCE: The above prices, specifications and conditions are satisfactory and are hereby accepted. Key Environmental is authorized to do the work as specified. Payment will be made as outlined above.

_____  Date _____
Customer's Signature

NOTICE
[illegible fine print]

page 1

FROM :KCSsa                    FAX NO. :9474734          Mar. 13 2008 07:25AM  P4

FROM :KCSsa

FAX NO. :9474734

Jul. 43 2007 06:53PM  P5

## Key Environmental

1650 S. Burlington Ave. #Ste. A
Los Angeles, CA 90035
(310) 456-3434

DOCK # 745
CA Contractor License # 763187
FAX RESIPNT-4736

### PROPOSAL AND WORK AUTHORIZATION

JOB SITE_____    INVOICE TO:_____

ADDRESS:_____    ADDRESS:_____

_____ ZIP:_____    _____ ZIP:_____

CONTACT:_____    CONTACT:_____

HOME PHONE: (    )_____    HOME PHONE: (    )_____

WORK PHONE: (    )_____    WORK PHONE: (    )_____

*Key Environmental proposes to furnish all labor, materials and equipment necessary to complete the following work:*

A) 200 of multi color square pattern
   linoleum at kitchen 403
B) 200 of red linoleum 2nd layer Kitch - 40?
C) 250 yellow linoleum 2nd layer kitchen 404
E) linoleum compound elsewhere
   small area off lobby
II  LEAD  Total loose & flaky LSP from:

Work to be started on_____, and substantially completed by_____ for $_____.
A down payment of $_____ must be made prior to workers arrival at the jobsite and the balance is due on completion (unless otherwise stated in this agreement).

TERMS, CONDITIONS AND EXCLUSIONS:

[Fine print terms and conditions - illegible]

Respectfully Submitted,

_____        Date_____

Key Environmental Representative

ACCEPTANCE: The above prices, specifications and conditions are satisfactory and are hereby accepted. Key Environmental is authorized to do the work as specified. Payment will be made as outlined above.

_____        Date_____

Customer's Signature

NOTICE

[Fine print notice - illegible]

c a5ed

AUG 03, 2007 06:39A

00/00/2010   13:10:43   FAX 2132499990   NATIONWIDE LEGAL                                    29

FROM :KCSsa                         FAX NO. :9474734               Mar. 13 2008 07:25AM  P5

FROM :KCSsa

FAX NO. :9474734                           Jul. 21 2007 06:32AM  P1

## Key Environmental

1450 E. Burlington Ave. #2in. A
Los Angeles, CA 90006
(310) 464-9134

DOER # 765
CA Contractor License # 763169
FAX #(866)947-4734

### PROPOSAL AND WORK AUTHORIZATION

JOB SITE: _____     INVOICE TO: _____
ADDRESS: _____     ADDRESS: _____
_____ ZIP: _____     _____ ZIP: _____
CONTACT: _____     CONTACT: _____
HOME PHONE ( ) _____     HOME PHONE ( ) _____
WORK PHONE ( ) _____     WORK PHONE ( ) _____

Key Environmental proposes to furnish all labor, materials and equipment necessary to complete the following work:

a) Interior stains system, basement

b) Metal fence poles, tennis court, South end

c) Exterior stains system, north end of building

d) Wood surface, wood frame solar

e) Elevator (4th.) _____ west door & frame.

Work to be started on _____ and substantially completed by _____ for $_____

A down payment of $_____ must be made prior to workers arrival at the jobsite and the balance is due on completion (unless otherwise stated in this agreement).

TERMS, CONDITIONS AND EXCLUSIONS

[illegible fine print, 9 numbered clauses]

Respectfully Submitted,

_____     Date _____
Key Environmental Representative

ACCEPTANCE: The above prices, specifications and conditions are satisfactory and are hereby accepted. Key Environmental is authorized to do the work as specified. Payment will be made as outlined above.

_____     Date _____
Customer's Signature

NOTICE
Under the mechanics' lien law, any contractor, subcontractor, laborer, supplier or other person who helps to improve your property but is not paid for his/her work or supplies, has the right to enforce a claim against your property. This means that after a court hearing [illegible]

AUG 03, 2007 06:39L

00/00/2040 13:10 FAX 2152499790      NATIONWIDE LEGAL

FROM :KCS9a                        FAX NO. :9474734              Mar. 13 2008 07:26AM  P7

FROM :KCS9a                                  FAX NO. :9474734              Jul. 21 2007 05:33PM  P6

## Key Environmental

1650 S. Burlington Ave. #6e. A
Los Angeles, CA 90006
(310) 466-5434

BOSE # 765
CA Contractor License # 703189
FAX (661)947-4734

### PROPOSAL AND WORK AUTHORIZATION

JOB SITE:_____  INVOICE TO:_____

ADDRESS:_____  ADDRESS:_____

_____ ZIP:_____     _____ ZIP:_____

CONTACT:_____  CONTACT:_____

HOME PHONE: (   )_____   HOME PHONE: (   )_____

WORK PHONE: (   )_____   WORK PHONE: (   )_____

Key Environmental proposes to furnish all labor, materials and equipment necessary to complete the following work:

D' Encapsulate Leak Areas

Contractor Assistance 75° per hour per man (3) man crew

Work to be started on_____ and substantially completed by_____ for $ 87000

A down payment of $_____ must be made prior to workers arrival at the jobsite and the balance is due on completion (unless otherwise stated in this contract).

**TERMS, CONDITIONS AND EXCLUSIONS:**

1) [illegible]
2) [illegible]
3) [illegible]
4) [illegible]
5) [illegible]
6) [illegible]
7) [illegible]
8) [illegible]
9) [illegible]

Key Environmental Representative_____  Date_____

ACCEPTANCE: The above prices, specifications and conditions are satisfactory and are hereby accepted. Key Environmental is authorized to do the work as specified. Payment will be made as outlined above.

Customer's Signature_____  Date  7/27/07

NOTICE
[illegible fine print]

# Exhibit 3

(Plaintiffs' Exhibit 15 in Joint Pretrial Order)

Neil Papiano, Esq. (CSB #031811)
Joanna L. Orr, Esq. (CSB #229779)
**IVERSON, YOAKUM, PAPIANO & HATCH**
515 South Flower Street, 29th Floor
Los Angeles, California 90071
Phone: (213) 624-7444 * Facsimile: (213) 629-4563

Attorneys for Plaintiffs Christopher J. Holden
and Fannie Louise Holden

FILED
Los Angeles Superior Court

MAR 18 2009

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
Dorothy Swain

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| CHRISTOPHER J. HOLDEN, an individual, FANNIE LOUISE HOLDEN, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> KAMRAN GROUP, LLC, a California Limited Liability Company, and DOE 1 through DOE 10, inclusive <br><br> Defendants. | CASE NO.:       BC409988 <br><br> COMPLAINT FOR BREACH OF CONTRACT |

Plaintiffs Christopher J. Holden and Fannie Louise Holden (hereinafter "Plaintiffs") allege:

1.     Plaintiff, Christopher J. Holden, is and at all times herein mentioned was a resident of Pasadena, California.

2.     Plaintiff, Fannie Louise Holden, is and at all times herein mentioned was a resident of Pasadena, California.

3.     Defendant, Kamran Group, LLC ("KG"), is a California Limited Liability Company with its principal place of business in the State of California, County of Orange.

1

**COMPLAINT**

4.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants, Doe 1 through Doe 10, inclusive, are unknown to Plaintiffs who, therefore, sue said Doe Defendants by such fictitious names. Plaintiffs will amend this complaint to show their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of said Doe Defendants is responsible in some manner for the events and happenings, and proximately caused the injuries and damages hereinafter alleged.

## FIRST CAUSE OF ACTION

## FOR BREACH OF CONTRACT

(By Plaintiffs against Defendants KG, Doe 1 through Doe 10, inclusive, and each of them)

5.     Plaintiffs refer to and incorporate herein paragraphs 1 through 4.

6.     Plaintiffs own the condominium unit located at 25 West Walnut Street, Unit 402, Pasadena, California 91103 (the "Property").

7.     In October 2006, Plaintiffs and KG, and Doe 1 through Doe 10, inclusive, and each of them, entered into a Purchase Agreement for the purchase of the Property by KG, Doe 1 through Doe 10, inclusive, and each of them.

8.     On November 20, 2008, Plaintiffs and KG, and Doe 1 through Doe 10, inclusive, and each of them, entered into an Escrow Extension Agreement (the "Extension Agreement"). Under the terms of the Extension Agreement, if Escrow on the Property had not closed by noon on Friday, February 27, 2009, KG, and Doe 1 through Doe 10, inclusive, and each of them, were compelled to pay and accordingly owed Plaintiffs Twenty-five Thousand Dollars ($25,000) on February 29, 2009, to extend the Closing Date under the Purchase Agreement from February 27, 2009 until July 31, 2009.

9.     Plaintiffs, and each of them, have performed all the conditions, covenants, and promises required on Plaintiffs' part to be performed in accordance with the terms and conditions of the Extension Agreement.

2

**COMPLAINT**

10.    On or about February 27, 2009, Plaintiffs requested that KG, and Doe 1 through Doe 10, inclusive, and each of them, perform the Extension Agreement.

11.    On or about February 27, 2009, KG, and Doe 1 through Doe 10, inclusive, and each of them, breached the Extension Agreement by failing to pay Twenty-five Thousand Dollars ($25,000), or any part thereof, to the Plaintiffs.

12.    As a result of the breach by KG, and Doe 1 through Doe 10, inclusive, and each of them, Plaintiffs have been damaged in the amount of Twenty-five Thousand Dollars ($25,000), plus interest as provided by law.

WHEREFORE, Plaintiffs pray for a judgment against KG, and Doe 1 through Doe 10, inclusive, and each of them, as follows:

1.  Damages in the sum of $25,000;

2.  Interest on that sum as provided by law;

3.  For all costs of suit incurred herein; and

4.  For such other and further relief as the Court deems proper.

DATED: March 18, 2009                    IVERSON, YOAKUM, PAPIANO & HATCH

By: _____
                Neil Papiano, Esq.
        Attorneys for Plaintiffs Christopher J.
        Holden and Fannie Louise Holden

3

**COMPLAINT**

# Exhibit 4

(Plaintiffs' Exhibit 16 in Joint Pretrial Order)

COPY

**SUMMONS**
**SUM-100**
**(CITACION JUDICIAL)**

**NOTICE TO DEFENDANT:** THE KAMRAN GROUP; DAVID GOLKAR
**(AVISO AL DEMANDADO):**and DOES 1 through 20,

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ORIGINAL FILED

NOV 2 0 2009

LOS ANGELES
SUPERIOR COURT
NORTHEAST DISTRICT

**YOU ARE BEING SUED BY PLAINTIFF:** KKE ARCHITECTS, INC.
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>(El nombre y dirección de la corte es):<br>LOS ANGELES SUPERIOR COURT<br>300 East Walnut Street<br>Pasadena, CA 91101<br>Northeast District | CASE NUMBER:<br>(Número del Caso):<br><br>GC044150 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
BRIAN K. STEWART, SBN 126412          626-243-1100     626-243-1111
COLLINS COLLINS MUIR + STEWART LLP
1100 El Centro Street
South Pasadena, CA 91030

DATE:                        Clerk, by   JOHN A. CLARKE        MARIA AGUIRRE           , Deputy
(Fecha)     NOV 2 0 2009     (Secretario)                                              (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

CONFORMED
COPY

Brian K. Stewart, State Bar No. 126412
Ryan M. Deam, State Bar No. 252505
COLLINS COLLINS MUIR + STEWART LLP
1100 El Centro Street
South Pasadena, CA 91030
(626) 243-1100 – FAX (626) 243-1111

Attorneys for Plaintiff
KKE ARCHITECTS, INC.

ORIGINAL FILED

NOV 20 2009

LOS ANGELES
SUPERIOR COURT
NORTHEAST DISTRICT

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES— NORTHEAST DISTRICT

| | |
|---|---|
| KKE ARCHITECTS, INC., ) <br><br> Plaintiffs, ) <br><br> vs. ) <br><br> THE KAMRAN GROUP; DAVID GOLKAR ) and DOES 1 Through 20, ) <br><br> Defendants. ) | CASE NO. GC044150 <br><br> COMPLAINT FOR: <br> 1. FORECLOSURE ON DESIGN PROFESSIONALS' LIEN <br> 2. BREACH OF CONTRACT <br> 3. QUANTUM MERUIT <br> 4. COMMON COUNT <br><br> Complaint Filed: <br><br> Trial Date:        None |

COMES NOW, PLAINTIFF KKE ARCHITECTS, INC., and alleges as follows:

I.

PARTIES

1.      Plaintiff, KKE ARCHITECTS,INC. ("KKE") is, and at all times mentioned herein, was a California corporation organized and existing under the laws of the state of California with its principal place of business in Pasadena, California.

2.      KKE is informed and believes and thereon alleges that Defendant THE KAMRAN GROUP ("KAMRAN") is, and at all times mentioned was, a California corporation organized and existed under the laws of the State of California, with its principal place of business in Costa Mesa, California.

L:\15867.6\COMPLAINT.DOC.DOC

COMPLAINT

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax   (626) 243-1111

3. KKE is informed and believes and thereon alleges that Defendant DAVID GOLKAR ("GOLKAR") is, and at all times mentioned was, an individual existing and doing business under the laws of the State of California, in Costa Mesa, California.

4. KKE is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive. KKE therefore sues those Defendants by such fictitious names. KKE will amend this Complaint to allege their true names and capacities when ascertained.

5. KKE is informed and believes and on that basis alleges that at all times relevant to this Complaint, KAMRAN, GOLKAR (collectively "DEFENDANTS"), and DOES 1 through 20 were, and now are, an agent, servant, employee, subsidiary, parent, affiliate, partner, assignee, successor in interest, predecessor in interest, alter ego, and/or other representative of each of the other Defendants and acted in such capacity, within the course and scope of such agency or employment, and with the permission and consent of each other Defendant.

## II.

## GENERAL ALLEGATIONS

6. On or about April 10, 2008, GOLKAR, on behalf of DEFENDANTS, entered into an agreement with KKE whereby KKE would provide professional design services for the proposed addition of a 200-room, 6-story hotel with hotel amenities associated with a 5-star hotel, and twin condominium towers (100 units) to the development commonly referred to as the Fair Oaks + Walnut Development, located at 25 West Walnut Street, Pasadena, California ("PROJECT"). *See* Exhibit A, "AIA Standard Form Agreement B151 – 1997".

7. Thereafter, KKE performed all services which were required of it under the agreement for the PROJECT and the related supplements and amendments. DEFENDANTS, and each of them, further enjoyed the benefit of the design and project management product that was created as a result of KKE'S services. KKE has invoiced DEFENDANTS for all of the services and costs incurred in performance of its obligations under the contract. DEFENDANTS, however, despite repeated promises to pay, have failed to reimburse KKE for these services and costs in the principle amount of at least $212,425.99.

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax (626) 243-1111

L:\15867.6\COMPLAINT.DOC.DOC

2

COMPLAINT

### III.

### FIRST CAUSE OF ACTION

### FOR FORECLSOURE ON DESIGN PROFESSIONALS' LIEN

### (AS AGAINST DEFENDANTS KAMRAN AND GOLKAR)

8.    KKE alleges and incorporates by reference paragraphs 1 through 7, inclusive as though set forth in full.

9.    KKE recorded a verified Design Professionals' Lien on or about November 5, 2009 in the office of the County Recorder of Los Angeles prior to initiating this lawsuit and after providing DEFENDANTS at least ten (10) days notice of the intent to record the lien. A copy of the recorded Design Professionals' Lien is attached hereto as Exhibit B.

10.    At the time KKE recorded the Design Professionals' Lien, the amount stated in the lien claim ($212,425.99) remained owing, and unpaid and to date, remains owing and unpaid.

### IV.

### SECOND CAUSE OF ACTION

### FOR BREACH OF CONTRACT

### (AS AGAINST DEFENDANTS AND DOES 1 – 20)

11.    KKE alleges and incorporates by reference paragraphs 1 through 10, inclusive as though set forth in full.

12.    DEFENDANTS and each of them have breached the contract for the PROJECT and its related supplements and amendments in numerous respects, including, but not limited to, failing to pay for services, costs, and expenses, by entering into these contracts without the intention of honoring them, and by failing to adhere to the contract requirements. Moreover, DEFENDANTS repeatedly promised to pay and made assurances that KKE would be paid.

13.    As a proximate, legal, and direct cause of the foregoing, KKE has suffered damages in an amount that will be quantified at the time of trial, but is not less than $212,425.99.

///

///

///

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax    (626) 243-1111

L:\15867.6\COMPLAINT.DOC.DOC

3

**COMPLAINT**