## V.

## THIRD CAUSE OF ACTION

## FOR QUANTUM MERUIT

## (AS AGAINST DEFENDANTS AND DOES 1 – 20)

14. KKE alleges and incorporates herein by reference paragraphs 1 through 13, inclusive, as though set forth in full.

15. Pursuant to an agreement entered into by DEFENDANTS, and at its special request and insistence, KKE has provided services in relation to the development of the PROJECT as alleged above. The services were provided for the exclusive benefit of, and at the special request and insistence of DEFENDANTS at the PROJECT. The services were provided in reliance on DEFENDANTS' promise to pay KKE the reasonable value of the services. The reasonable value of the services that have been unpaid is no less than Two Hundred Twelve Thousand Four Hundred Twenty Five Dollars and Ninety Nine Cents ($212,425.99), not including interest collection costs or attorney's fees incurred by KKE.

16. Despite demand thereof, no part of the above said sum has been paid by DEFENDANTS to KKE and the full amount is due and owing.

17. KKE has been damaged in the sum exceeding Two Hundred Twelve Thousand Four Hundred Twenty Five Dollars and Ninety Nine Cents ($212,425.99), which is due and owing, for the services provided that have conferred a benefit to the subject PROJECT, its owners, interest holders, lessees, property managers, and contracting parties.

## VI.

## FOURTH CAUSE OF ACTION

## FOR COMMON COUNT

## (AS AGAINST DEFENDANTS AND DOES 1 – 20)

18. KKE alleges and incorporates herein by reference paragraphs 1 through 17, inclusive as though set forth in full.

19. KKE has rendered work, labor, and services pursuant to the contracts alleged above, for the exclusive benefit of, and at the special request and insistence of DEFENDANTS, and each

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax (626) 243-1111

L:\15867.6\COMPLAINT.DOC.DOC

4

**COMPLAINT**

of them. The services were rendered in reliance on DEFENDANTS' promise to pay KKE the reasonable value of said services. Amounts have been paid and properly credited. The reasonable value of the services that have been unpaid is in excess of $212,425.99.

20. Despite demand therefore, no part of the above-said sum has been paid and the full amount is due and owing.

WHEREFORE Plaintiff KKE prays for judgment as follows:

1. Special damages on all causes of action in an amount not less than $212,425.99;

2. For attorney's fees, litigation expenses, administration costs, services charges, expert fees, penalties, and other expenses and costs as allowed by law and/or the contracts referenced herein;

3. For interest at the highest legally allowable rate;

4. For costs and costs of suit incurred herein; and

5. For such other and further relief as the Court may deem just and proper.

DATED: November 16, 2009          COLLINS COLLINS MUIR + STEWART LLP


By: _____
    Brian K. Stewart, Esq.
    Ryan M. Deam. Esq.
    Attorneys for Plaintiff
    KKE ARCHITECTS

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax    (626) 243-1111

L:\15867.6\COMPLAINT.DOC.DOC

5

**COMPLAINT**

00/00/20 Case 2:10-ap-01244-BR 24 9990 Doc 71-1 Filed 02/24/11 Entered 02/24/11 16:23:15 Desc
NATIONWIDE LEGAL
Part 2 of 2 Page 3 of 25

42

# ⬛AIA® Document B151™ – 1997

## Abbreviated Standard Form of Agreement Between Owner and Architect

**AGREEMENT** made as of the Tenth day of April in the year Two Thousand Eight
*(In words, indicate day, month and year)*

BETWEEN the Architect's client identified as the Owner:
*(Name, address and other information)*

KAMRAN Group, LLC
575 Anton Boulevard, Suite 820
Costa Mesa, CA 92626

and the Architect:
*(Name, address and other information)*

KKE Architects, Inc.
525 East Colorado Boulevard, 4th Floor
Pasadena, CA 9110
Tel: 626/796-8230
Fax: 626/796-8735

For the following Project: KKE 0813.1256.01
*(Include detailed description of Project)*

**W Hotel**
**Pasadena, CA**
The Project is a new 200-room, 6-story hotel with hotel amenities associated with a 5-star hotel, and twin condominium towers (100 units) over a multi-level subterranean parking garage. All of the subterranean design work and construction documents have been completed by others. The Project has passed Pasadena's Design Review Commission and is substantially as presented in the Schematic Design package prepared by Onyx Architects, but with significant design changes to the elevations, currently represented in the work of design consultant Red Monkey. The hotel has been planned by Wimberley Allison Tong & Goo. The interior design is not yet complete; as of contract date, an interior designer has not been selected.

The Owner and Architect agree as follows.
*(Paragraph deleted)*
It is our understanding that KKE Architects, Inc. will pick up the Project with its current design as developed by your Design Architects, and will be the Architect of Record for the work above grade. The three levels of parking below grade have been designed, engineered, and are ready for plan check. The work of these three lower levels is not a part of this proposal.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Init.

AIA Document B151™ – 1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties; and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes: (142658987)

1

Λ

## ARTICLE 1   ARCHITECT'S RESPONSIBILITIES

§ 1.1 The services performed by the Architect, Architect's employees and Architect's consultants shall be as enumerated in Articles 2, 3 and 12.

§ 1.2 The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Project. The Architect shall submit for the Owner's approval a schedule for the performance of the Architect's services which may be adjusted as the Project proceeds. This schedule shall include allowances for periods of time required for the Owner's review and for approval of submissions by authorities having jurisdiction over the Project. Time limits established by this schedule approved by the Owner shall not, except for reasonable cause, be exceeded by the Architect or Owner.

§ 1.3 The Architect shall designate a representative authorized to act on behalf of the Architect with respect to the Project.

§ 1.4 The services covered by this Agreement are subject to the time limitations contained in Section 11.5.1.

## ARTICLE 2   SCOPE OF ARCHITECT'S BASIC SERVICES
### § 2.1 DEFINITION
The Architect's Basic Services consist of those described in Sections 2.2 through 2.6 and any other services identified in Article 12 as part of Basic Services.

### § 2.2 SCHEMATIC DESIGN PHASE
§ 2.2.1 The Architect shall review the program furnished by the Owner to ascertain the requirements of the Project and shall arrive at a mutual understanding of such requirements with the Owner.

§ 2.2.2 The Architect shall provide a preliminary evaluation of the Owner's program, schedule and construction budget requirements, each in terms of the other, subject to the limitations set forth in Section 5.2.1.

§ 2.2.3 The Architect shall review with the Owner alternative approaches to design and construction of the Project.

§ 2.2.4 Based on the mutually agreed-upon program, schedule and construction budget requirements, the Architect shall prepare, for approval by the Owner, Schematic Design Documents consisting of drawings and other documents illustrating the scale and relationship of Project components.

### § 2.2.5
This phase involves the following work efforts:

a.   Review of W Hotel standard criteria documents.
b.   Review of Design Architects' concept plan and program into a schematic floor plan.
c.   Review exterior building concept design for massing, roof forms, exterior expression, initial exterior materials, and overall image.
d.   Develop living unit floor plans consistent with the Owner's wishes and expanding the areas to take best advantage of the approved increases in the FAR.
e.   Coordination with engineering disciplines for initial programmatic and schematic direction.
f.   Minor modifications to existing hotel plan.

### § 2.3 DESIGN DEVELOPMENT PHASE
§ 2.3.1 Based on the approved Schematic Design Documents and any adjustments authorized by the Owner in the program, schedule or construction budget, the Architect shall prepare, for approval by the Owner, Design Development Documents consisting of drawings and other documents to fix and describe the size and character of the Project as to architectural, structural, mechanical and electrical systems, materials and such other elements as may be appropriate.

*(Paragraphs deleted)*

AIA Document B151™—1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 6/23/2008, and is not for resale. User Notes:                          (142858987)

Init.

2

### § 2.4 CONSTRUCTION DOCUMENTS PHASE

§ 2.4.1 Based on the approved Design Development Documents and any further adjustments in the scope or quality of the Project or in the construction budget authorized by the Owner, the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project.

§ 2.4.2 The Architect shall assist the Project Manager in the preparation of the necessary bidding information.

*(Paragraphs deleted)*

§ 2.4.4 The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

(Intentionally Omitted)
*(Paragraphs deleted)*

### § 2.6 CONSTRUCTION PHASE—ADMINISTRATION OF THE CONSTRUCTION CONTRACT

§ 2.6.1 The Architect's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the initial Contract for Construction and terminates at the earlier of the issuance to the Owner of the final Certificate for Payment or 120 days after the date of Substantial Completion of the Work.

§ 2.6.2 The Architect shall assist in the administration of the Contract for Construction as set forth below and in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement, unless otherwise provided in this Agreement. Modifications made to the General Conditions, when adopted as part of the Contract Documents, shall be enforceable under this Agreement only to the extent that they are consistent with this Agreement or approved in writing by the Architect.

§ 2.6.3 Duties, responsibilities and limitations of authority of the Architect under this Section 2.6 shall not be restricted, modified or extended without written agreement of the Owner and Architect with consent of the Contractor, which consent will not be unreasonably withheld.

§ 2.6.4 The Architect shall be a representative of and shall advise and consult with the Owner during the administration of the Contract for Construction. The Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement unless otherwise modified by written amendment.

§ 2.6.5 The Architect, as a representative of the Owner, shall visit the site at intervals appropriate to the stage of the Contractor's operations, or as otherwise agreed by the Owner and the Architect in Article 12, (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect shall neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents.

§ 2.6.6 The Architect shall report to the Owner known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor. However, the Architect shall not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect shall be responsible for the Architect's negligent acts or omissions, but shall not have control over or charge of and shall not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons or entities performing portions of the Work.

§ 2.6.7 The Architect shall at all times have access to the Work wherever it is in preparation or progress.

§ 2.6.8 Except as otherwise provided in this Agreement or when direct communications have been specially authorized, the Owner shall endeavor to communicate with the Contractor through the Architect and Owner's Project Manager about matters arising out of or relating to the Contract Documents. Communications by and with the Architect's consultants shall be through the Architect.

Init.

AIA Document B151™ – 1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes:                                                                                                          (142658987)

3

00/00/ Case 2:10-ap-01244-BR Doc 71-1 Filed 02/24/11 Entered 02/24/11 16:23:15 Desc
NATIONWIDE LEGAL
Part 2 of 2 Page 6 of 25

45

*(Paragraphs deleted)*

§ 2.6.10 The Architect in conjunction with the Owner's Project Manager shall have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect shall have authority to require inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees or other persons or entities performing portions of the Work.

§ 2.6.11 The Architect in conjunction with the Owner's Project Manager shall review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action shall be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 2.6.12 If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Architect shall specify appropriate performance and design criteria that such services must satisfy. Shop Drawings and other submittals related to the Work designed or certified by the design professional retained by the Contractor shall bear such professional's written approval when submitted to the Architect. The Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals.

§ 2.6.13 The Architect in conjunction with the Owner's Project Manager shall prepare Change Orders and Construction Change Directives, with supporting documentation and data if deemed necessary by the Architect as provided in Sections 3.1.1 and 3.3.3, for the Owner's approval and execution in accordance with the Contract Documents, and may authorize minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time which are consistent with the intent of the Contract Documents.

§ 2.6.14 The Architect shall conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, shall receive from the Contractor and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract Documents and assembled by the Contractor, and shall issue a final Certificate for Payment based upon a final inspection indicating the Work complies with the requirements of the Contract Documents.

*(Paragraphs deleted)*

§ 2.6.16 Interpretations and decisions of the Architect shall be consistent with the intent of and reasonably inferable from the Contract Documents and shall be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for results of interpretations or decisions so rendered in good faith.

*(Paragraphs deleted)*

Init.

/

AIA Document B151™ – 1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes:

4

(142658987)

00/00/ Case 2:10-ap-01244-BR Doc 71-1   Filed 02/24/11   Entered 02/24/11 16:23:15   Desc
NATIONWIDE LEGAL
Part 2 of 2   Page 7 of 25

46

## ARTICLE 3  ADDITIONAL SERVICES

### § 3.1 GENERAL

§ 3.1.1 The services described in this Article 3 are not included in Basic Services unless so identified in Article 12, and they shall be paid for by the Owner as provided in this Agreement, in addition to the compensation for Basic Services. The services described under Sections 3.2 and 3.4 shall only be provided if authorized or confirmed in writing by the Owner. If services described under Contingent Additional Services in Section 3.3 are required due to circumstances beyond the Architect's control, the Architect shall notify the Owner prior to commencing such services. If the Owner deems that such services described under Section 3.3 are not required, the Owner shall give prompt written notice to the Architect. If the Owner indicates in writing that all or part of such Contingent Additional Services are not required, the Architect shall have no obligation to provide those services.

### § 3.2 PROJECT REPRESENTATION BEYOND BASIC SERVICES

§ 3.2.1 If more extensive representation at the site than is described in Section 2.6.5 is required, the Architect shall, at the Owner's request, provide one or more Project Representatives to assist in carrying out such additional on-site responsibilities.

*(Paragraphs deleted)*

### § 3.3 CONTINGENT ADDITIONAL SERVICES  (All require Owner's prior approval.)

§ 3.3.1 Making revisions in drawings, specifications or other documents when such revisions are:

.1   inconsistent with approvals or instructions previously given by the Owner, including revisions made necessary by adjustments in the Owner's program or Project budget;

.2   required by the enactment or revision of codes, laws or regulations subsequent to the preparation of such documents; or

.3   due to changes required as a result of the Owner's failure to render decisions in a timely manner.

§ 3.3.2 Providing services required because of significant changes in the Project including, but not limited to, size, quality, complexity, the Owner's schedule, or the method of bidding or negotiating and contracting for construction, except for services required under Section 5.2.5.

§ 3.3.3 Preparing Drawings, Specifications and other documentation and supporting data, evaluating Contractor's proposals, and providing other services in connection with Change Orders and Construction Change Directives.

§ 3.3.4 Providing services in connection with evaluating substitutions proposed by the Contractor and making subsequent revisions to Drawings, Specifications and other documentation resulting therefrom.

§ 3.3.5 Providing consultation concerning replacement of Work damaged by fire or other cause during construction, and furnishing services required in connection with the replacement of such Work.

§ 3.3.6 Providing services made necessary by the default of the Contractor, by major defects or deficiencies in the Work of the Contractor, or by failure of performance of either the Owner or Contractor under the Contract for Construction.

*(Paragraphs deleted)*

§ 3.3.8 Providing services in connection with a public hearing, a dispute resolution proceeding or a legal proceeding except where the Architect is party thereto.

§ 3.3.9 Preparing documents for alternate, separate or sequential bids or providing services in connection with bidding, negotiation or construction prior to the completion of the Construction Documents Phase.

### § 3.4 OPTIONAL ADDITIONAL SERVICES

§ 3.4.1 Providing analyses of the Owner's needs and programming the requirements of the Project.

§ 3.4.2 Providing financial feasibility or other special studies.

Init.

/

AIA Document B151™ – 1697. Copyright © 1974, 1978, 1987 and 1987 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes:                                                                                      (142658987)

5

§ 3.4.3 Providing planning surveys, site evaluations or comparative studies of prospective sites.

§ 3.4.4 Providing special surveys, environmental studies and submissions required for approvals of governmental authorities or others having jurisdiction over the Project.

§ 3.4.5 Providing services relative to future facilities, systems and equipment.

§ 3.4.6 Providing services to investigate existing conditions or facilities or to make measured drawings thereof.

| *(Paragraphs deleted)*

§ 3.4.8 Providing coordination of construction performed by separate contractors or by the Owner's own forces and coordination of services required in connection with construction performed and equipment supplied by the Owner.

§ 3.4.9 Providing services in connection with the work of a construction manager or separate consultants retained by the Owner.

§ 3.4.10 Providing detailed estimates of Construction Cost.

§ 3.4.11 Providing detailed quantity surveys or inventories of material, equipment and labor.

§ 3.4.12 Providing analyses of owning and operating costs.

§ 3.4.13 Providing interior design and other similar services required for or in connection with the selection, procurement or installation of furniture, furnishings and related equipment.

§ 3.4.14 Providing services for planning tenant or rental spaces.

§ 3.4.15 Making investigations, inventories of materials or equipment, or valuations and detailed appraisals of existing facilities.

§ 3.4.16 Preparing a set of reproducible record drawings showing significant changes in the Work made during construction based on marked-up prints, drawings and other data furnished by the Contractor to the Architect.

§ 3.4.17 Providing assistance in the utilization of equipment or systems such as testing, adjusting and balancing, preparation of operation and maintenance manuals, training personnel for operation and maintenance, and consultation during operation.

§ 3.4.18 Providing services after issuance to the Owner of the final Certificate for Payment, or in the absence of a final Certificate for Payment, more than 120 days after the date of Substantial Completion of the Work.

§ 3.4.19 Providing services of consultants for other than architectural, structural, mechanical and electrical engineering portions of the Project.

§ 3.4.20 Providing any other services not otherwise included in this Agreement or not customarily furnished in accordance with generally accepted architectural practice.

## ARTICLE 4 OWNER'S RESPONSIBILITIES

§ 4.1 The Owner shall provide full information in a timely manner regarding requirements for and limitations on the Project, including a written program which shall set forth the Owner's objectives, schedule, constraints and criteria, including space requirements and relationships, flexibility, expandability, special equipment, systems and site requirements. The Owner shall furnish to the Architect, within 15 days after receipt of a written request, information necessary and relevant for the Architect to evaluate, give notice of or enforce lien rights.

Init.

/

AIA Document B151™ – 1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes: (142858987)

6

*(Paragraphs deleted)*

§ 4.3 The Owner shall designate a representative authorized to act on the Owner's behalf with respect to the Project. The Owner or such designated representative shall render decisions in a timely manner pertaining to documents submitted by the Architect in order to avoid unreasonable delay in the orderly and sequential progress of the Architect's services.

§ 4.4 The Owner shall furnish surveys to describe physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data with respect to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark.

§ 4.5 The Owner shall furnish the services of geotechnical engineers when such services are requested by the Architect. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate recommendations.

§ 4.6 The Owner shall furnish the services of consultants other than those designated in Section 4.5 when such services are requested by the Architect and are reasonably required by the scope of the Project.

§ 4.7 The Owner shall furnish structural, mechanical, and chemical tests; tests for air and water pollution; tests for hazardous materials; and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

§ 4.8 The Owner shall furnish all legal, accounting and insurance services that may be necessary at any time for the Project to meet the Owner's needs and interests. Such services shall include auditing services the Owner may require to verify the Contractor's Applications for Payment or to ascertain how or for what purposes the Contractor has used the money paid by or on behalf of the Owner.

§ 4.9 The services, information, surveys and reports required by Sections 4.4 through 4.8 shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

§ 4.10 The Owner shall provide prompt written notice to the Architect if the Owner becomes aware of any fault or defect in the Project, including any errors, omissions or inconsistencies in the Architect's Instruments of Service.

§ 4.11 Any direct communication between the Owner or the Owner's Designated Representative and the Contractor that affect the performance or administration of the Work shall be made or confirmed in writing, with copies to the Architect and Project Manager.

(Intentionally Omitted)
*(Paragraphs deleted)*

ARTICLE 6  USE OF ARCHITECT'S INSTRUMENTS OF SERVICE

§ 6.1 Drawings, specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service for use solely with respect to this Project. The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service and shall retain all common law, statutory and other reserved rights, including copyrights, until duly transferred to Owner.

Init.

AIA Document B151™ – 1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes:                                                                                                                        (142658987)

7

§ 6.2 Upon execution of this Agreement, the Architect grants to the Owner a nonexclusive license to reproduce the Architect's Instruments of Service solely for the purposes of constructing the Project, provided that the Owner shall comply with all obligations, including prompt payment of all sums when due, under this Agreement. Any termination of this Agreement due to the failure of the Owner to perform substantially in accordance with the terms of this Agreement prior to completion of the Project shall terminate this license. Upon such termination, the Owner shall refrain from making further reproductions of Instruments of Service and shall return to the Architect within seven days of termination all originals and reproductions in the Owner's possession or control. If the Agreement is terminated due to the Owner's convenience or Owner's claim that the Architect has failed substantially to perform in accordance with the terms of this Agreement, the Owner may elect to accept a second, nonexclusive license permitting the Owner to authorize other similarly credentialed design professionals to reproduce and, where permitted by law, to make changes, corrections or additions to the Instruments of Service solely for purposes of completing the Project, provided that the Owner releases Architect from any liability for the post-termination use of the Instruments of Service, waives any claims against the Architect for errors and omissions arising out of the post-termination use of the Instruments of Service and indemnifies Architect for the post-non-exclusive license.

§ 6.3 In the event of any non-payment or delayed payment, Architect shall be entitled to immediate return of its entire work product.

§ 6.3.1 Upon completion of the Project, provided that the Owner shall comply with all obligations, including prompt payment of all sums when due, the Architect grants to the Owner a non-exclusive license to reproduce the Architect's Instruments of Service solely for purposes of using and maintaining the Project. This non-exclusive license permits the Owner to authorize other similarly credentialed design professionals to reproduce and, where permitted by law, to make changes, corrections or additions to the Instruments of Service solely for purposes of future additions or alterations to this Project, provided that the Owner releases Architect from any liability for the post-completion use of the Instruments of Service, waives any claims against Architect for errors or omissions arising out of the post-completion use of the Instruments of Service and indemnifies Architect for the post-completion use of the Instruments of Service. In the event of any non-payment or delayed payment, Architect shall be entitled to immediate return of all of its work product.

§ 6.4 Any of the non-exclusive licenses described in this Agreement permit the Owner to authorize the Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers to reproduce applicable portions of the Instruments of Service appropriate to and for use in their execution of the Work.

§ 6.5 The reproduction of Instruments of Service pursuant to non-exclusive licenses described in this Agreement and submission or distribution of Instruments of Service to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the reserved rights of the Architect and Architect's consultants.

§ 6.6 None of the non-exclusive licenses described in this Agreement authorize use of the Instruments of Service for other projects. None of the non-exclusive licenses described in this Agreement may be assigned, delegated, sublicensed, pledged or otherwise transferred by the Owner to any party other than an institutional lender providing financing for the Project without the prior written agreement of the Architect. Any unauthorized use of the Instruments of Service shall be at the Owner's sole risk and without liability to the Architect and the Architect's consultants.

§ 6.7 Prior to the Architect providing to the Owner any Instruments of Service in electronic form or the Owner providing to the Architect any electronic data for incorporation into the Instruments of Service, the Owner and the Architect shall by separate written agreement set forth the specific conditions governing the format of such Instruments of Service or electronic data, including any special limitations or licenses not otherwise provided in this Agreement.

Init.

/

AIA Document B151™ – 1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:18:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes:

B

(142658987)

§ 6.8 Ownership of the Architectural Works  Upon receipt of Final Payment, Architect Provider hereby assigns to Owner all right, title, and interest in and to any design services included in the Services, including any drawings, specifications, and other documents, including those in electronic form, for such Services (collectively the "Architectural Works") that have been prepared or created as of the date of this Agreement. All materials developed in connection with the creation, preparation or use of the Architectural Works, including all books, papers, notes, outlines, computer disks or diskettes, letters, negatives, plates, photographs, sketches and illustrations, as well as all copies of any of the Architectural Works, will be provided to an owned by Owner exclusively. Any use by Owner of the Architectural Works subsequent to final completion of the Services, including any work, covered by the Services and acceptance of such Services, including any work, by Owner will be at Owner's sole risk and without liability to Provider and Provider's consultants unless the subsequent use is made pursuant to the written consent of Provider to that specific reuse.
*(Paragraphs deleted)*

**ARTICLE 7  DISPUTE RESOLUTION**
**§ 7.1 MEDIATION**

§ 7.1.1 The parties agree to submit all claims, disputes or controversies (whether based upon the law or contract, negligence, other common law or statute) arising out of, or in relation to, the interpretation, application or enforcement of this Agreement, including dispute resolution procedures, to sequential mandatory discussion, mediation and arbitration before, and as a condition precedent to judicial action or other remedies. The parties agree to give prompt written notice of any dispute. Within seven days after the notice, principals of each party with authority to settle the dispute shall participate in direct, informal discussions.
*(Paragraphs deleted)*

§ 7.1.2 Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party. If such matter relates to or is the subject of a lien arising out of the Architect's services, the Architect may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the matter by mediation or by arbitration.

§ 7.1.3 The Owner and Architect shall endeavor to resolve claims, disputes and other matters in question between them by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

§ 7.1.4 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

*(Paragraphs deleted)*
**§ 7.2 ARBITRATION  (Non-Binding)**
§ 7.2.1 Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to non-binding arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with Section 7.1.

§ 7.2.2 Claims, disputes and other matters in question between the parties that are not resolved by mediation shall be submitted to non-binding arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. No litigation may be visited prior to completion of the non-binding arbitration, provided however that the statute of limitations shall toll from arbitration demand to arbitration ruling.

§ 7.2.3 A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

Init.

/

AIA Document B151™ – 1997. Copyright © 1974, 1976, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes:

9

(1142658987)

§ 7.2.4 No arbitration arising out of or relating to this Agreement shall include, by consolidation or joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement and signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

§ 7.2.5 Arbitration shall occur in the State of California.

*(Paragraphs deleted)*
### § 7.3 CLAIMS FOR CONSEQUENTIAL DAMAGES
The Architect and Owner waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement. This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 8.

§ 7.3.1 Upon the condition that the Contractor waives claims against the Architect for consequential damages arising out of or relating to the contract between Owner and Contractor, the Architect waives claims against the Contractor and its consultants for consequential damages. Consequential damages, for the purposes of this Agreement, include without limitation any indirect, special, reliance, incidental, loss of use, loss of income, loss of profit, overhead, loss of rent, warranty or consequential damages as well as damages under theories of contribution or indemnity, but does not include damages for personal and bodily injuries or death. The parties further agree that any liability for any damages not waived under this Agreement are limited to an amount not-to-exceed $100,000 or the total compensation for basic and additional services under this Agreement, whichever sum is greater, but this limitation of liability does not apply to damages for personal and bodily injuries or death.

§ 7.3.2 The parties further agree that if, due to the Architect's error, any required item or component of the Project is omitted from the Construction Documents, any claims against the Architect shall not include the cost or expense of any addition to the Project that provides betterment, upgrades or enhancement of the Project.

### ARTICLE 8 TERMINATION OR SUSPENSION
§ 8.1 If the Owner fails to make payments to the Architect in accordance with this Agreement, such failure shall be considered substantial nonperformance and cause for termination or, at the Architect's option, cause for suspension of performance of services under this Agreement. If the Architect elects to suspend services, prior to suspension of services, the Architect shall give fourteen days' written notice to the Owner. In the event of a suspension of services, the Architect shall have no liability to and shall be indemnified by the Owner for delay or damage caused the Owner or others because of such suspension of services. Before resuming services, the Architect shall be paid all sums due prior to suspension and any expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted. Such suspension of services by Architect may include holding documents for governing agency approvals, holding construction documents for bidding or permitting, or not appearing at requested meetings on behalf of the Owner.

§ 8.2 If the Project is suspended by the Owner for more than 30 consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect shall be compensated for expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.

§ 8.3 If the Project is suspended or the Architect's services are suspended for more than 90 consecutive days, the Architect may terminate this Agreement by giving not less than seven days' written notice.

§ 8.4 This Agreement may be terminated by either party upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

AIA Document B151™ – 1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes: (142656987)

§ 8.5 This Agreement may be terminated by the Owner upon not less than seven days' written notice to the Architect for the Owner's convenience and without cause.

§ 8.6 In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Section 8.7.

§ 8.7 Termination Expenses are in addition to compensation for the services of the Agreement and include expenses directly attributable to termination for which the Architect is not otherwise compensated.

### ARTICLE 9  MISCELLANEOUS PROVISIONS

§ 9.1 This Agreement shall be governed by the laws of the State of California.

§ 9.2 Terms in this Agreement shall have the same meaning as those in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

§ 9.3 Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion, whichever occurs last. In no event shall such statutes of limitations commence to run any later than the date when the Architect's services are substantially completed.

§ 9.4 To the extent damages are covered by property insurance during construction, the Owner and Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. The Owner or the Architect, as appropriate, shall require of the contractors, consultants, agents and employees of any of them similar waivers in favor of the other parties enumerated herein.

§ 9.5 The Owner and Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither the Owner nor the Architect shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to an institutional lender providing financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under this Agreement. The Architect shall execute all consents reasonably required to facilitate such assignment.

§ 9.6 This Agreement represents the entire and integrated agreement between the Owner and the Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

§ 9.7 Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

§ 9.8 Unless otherwise provided in this Agreement, the Architect and Architect's consultants shall have no responsibility for the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials or toxic substances in any form at the Project site.

§ 9.9 The Architect shall have the right to include photographic or artistic representations of the design of the Project among the Architect's promotional and professional materials. The Architect shall be given reasonable access to the completed Project to make such representations. However, the Architect's materials shall not include the Owner's confidential or proprietary information if the Owner has previously advised the Architect in writing of the specific information considered by the Owner to be confidential or proprietary. The Owner shall provide professional credit for the Architect in the Owner's promotional materials for the Project.

Init.

/

AIA Document B151™ – 1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA®
Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any
portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document
was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes:

11

(142858967)

**§ 9.10** If the Owner requests the Architect to execute certificates, the proposed language of such certificates shall be submitted to the Architect for review at least 14 days prior to the requested dates of execution. The Architect shall not be required to execute certificates that would require knowledge, services or responsibilities beyond the scope of this Agreement.

**§ 9.11** The Architect shall not be responsible for the identification, discovery, removal, remediation of or any harm caused by hazardous substances present at the Site. The Owner shall be responsible for the identification, discovery, removal, remediation of any hazardous substances present at the Site. If any such hazardous substances are discovered while the Project is in progress, schedules and budgets shall be adjusted as necessary for the removal or remediation of any such hazardous substances.

## ARTICLE 10  PAYMENTS TO THE ARCHITECT
(Intentionally Omitted)
*(Paragraphs deleted)*
### § 10.2 REIMBURSABLE EXPENSES
**§ 10.2.1** Reimbursable Expenses are in addition to compensation for Basic and Additional Services and include expenses incurred by the Architect and Architect's employees and consultants directly related to the Project, as identified in the following Clauses:

    .1    transportation in connection with the Project, authorized out-of-town travel and subsistence, and electronic communications;

    .2    fees paid for securing approval of authorities having jurisdiction over the Project;

    .3    reproductions, plots, standard form documents, postage, handling and delivery of Instruments of Service;

    .4    expense of overtime work requiring higher than regular rates if authorized in advance by the Owner;

    .5    renderings, models and mock-ups requested by the Owner;

    .6

*(Paragraphs deleted)*
    other similar direct Project-related expenditures, if authorized by Owner in advance.

### § 10.3 PAYMENTS ON ACCOUNT OF BASIC SERVICES

*(Paragraphs deleted)*
**§ 10.3.2** Subsequent payments for Basic Services shall be made monthly and, where applicable, shall be in proportion to services performed within each phase of service, on the basis set forth in Section 11.2.2.

**§ 10.3.3** If and to the extent that the time initially established in Section 11.5.1 of this Agreement is exceeded or extended through no fault of the Architect, compensation for any services rendered during the additional period of time shall be computed in the manner set forth in Section 11.3.2.

*(Paragraphs deleted)*
### § 10.4 PAYMENTS ON ACCOUNT OF ADDITIONAL SERVICES
Payments on account of the Architect's Additional Services and for Reimbursable Expenses shall be made monthly — upon presentation of the Architect's statement of services rendered or expenses incurred.

### § 10.5 PAYMENTS WITHHELD
No deductions shall be made from the Architect's compensation on account of penalty, liquidated damages or other sums withheld from payments to contractors, or on account of the cost of changes in the Work other than those for which the Architect has been adjudged to be liable.

### § 10.6 ARCHITECT'S ACCOUNTING RECORDS
Records of Reimbursable Expenses and expenses pertaining to Additional Services and services performed on the basis of hourly rates or a multiple of Direct Personnel Expense shall be available to the Owner or the Owner's authorized representative at mutually convenient times.

Init.

/

AIA Document B151™ – 1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA™ Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes:

12

(142658987)

00/00/2010   13:10:43 FAX 2132499999   RATFORD DE, LEGAL

## ARTICLE 11  BASIS OF COMPENSATION

The Owner shall compensate the Architect as follows:

**§ 11.1** An Initial Payment of   Zero   ($  -0-  ) shall be made upon execution of this Agreement and credited to the Owner's account at final payment.

### § 11.2 BASIC COMPENSATION

**§ 11.2.1** For Basic Services, as described in Article 2, and any other services included in Article 12 as part of Basic Services, Basic Compensation shall be computed as follows:

*A fixed fee of One Million Three Hundred Thousand Dollars ($1,300,000.00).*  [handwritten: 1,250,000.00]

**§ 11.2.2** Where compensation is based on a stipulated sum or percentage of Construction Cost, progress payments for Basic Services in each phase shall total the following percentages of the total Basic Compensation payable:

| PHASE | PHASE FEE | PERCENT | |
|---|---|---|---|
| Schematic Design Phase: | $150,000.00 | percent (Twelve | 12 %) |
| Design Development Phase: | $340,000.00 | percent (Twenty-Six | 26 %) |
| Construction Documents Phase: | $610,000.00 | percent (Forty-Seven | 47 %) |
| *(Row deleted)* | | | |
| Construction Phase: | $200,000.00 | percent (Fifteen | 15 %) |
| Total Basic Compensation | $1,300,000.00  [handwritten: 1,250,000.00] | percent (One Hundred | 100.00 %) |

**§ 11.2.3** See Appendix A – Prevailing Hourly Rates.

### § 11.3 COMPENSATION FOR ADDITIONAL SERVICES

**§ 11.3.1** For Project Representation Beyond Basic Services, as described in Section 3.2, compensation shall be computed as follows:

**§ 11.3.2** For Additional Services of the Architect, as described in Articles 3 and 12, other than (1) Additional Project Representation, as described in Section 3.2, and (2) services included in Article 12 as part of Basic Services, but excluding services of consultants, compensation shall be computed as follows:

See Exhibit A for Prevailing Hourly Rates.

Init.

/

**AIA Document B151™ – 1997. Copyright** © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. **WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
User Notes:                                                                                                                                   (142658987)

13

§ 11.3.3 For Additional Services of Consultants, including additional structural, mechanical and electrical engineering services and those provided under Section 3.4.19 or identified in Article 12 as part of Additional Services, a multiple of one and one-quarter ( 1.25 ) times the amounts billed to the Architect for such services.

§ 11.4 REIMBURSABLE EXPENSES
For Reimbursable Expenses, as described in Section 10.2, and any other items included in Article 12 as Reimbursable Expenses, a multiple of one and one-tenth ( 1.10 ) times the expenses incurred by the Architect, the Architect's employees and consultants directly related to the Project.

§ 11.4.1 See Appendix B – Prevailing Reimbursable Expenses.

§ 11.4.2 The Owner will pay any taxes currently in force or imposed in the future in addition to the fees and expenses.

§ 11.5 ADDITIONAL PROVISIONS
§ 11.5.1 If the Basic Services covered by this Agreement have not been completed within thirty-six ( 36 ) months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Sections 10.3.3 and 11.3.2.

§ 11.5.2 Payments are due and payable thirty ( 30 ) days from the date of the Architect's invoice. Amounts unpaid sixty ( 60 ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.
(Insert rate of interest agreed upon.)
Interest on unpaid invoices after sixty (60) days will accrue at the maximum legal rate.

§ 11.5.3 The rates and multiples set forth for Additional Services shall be adjusted in accordance with the normal salary review practices of the Architect.

ARTICLE 12  OTHER CONDITIONS OR SERVICES
(Insert descriptions of other services, identify Additional Services included within Basic Compensation and modifications to the payment and compensation terms included in this Agreement.)

This Agreement entered into as of the day and year first written above.

OWNER

_____
(Signature)
David Golkar
Kamran Group, LLC
(Printed name and title)

ARCHITECT

_____
(Signature)
John Deenihan, AIA
KME Architects, Inc.
(Printed name and title)

AIA Document B151™ – 1997. Copyright © 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:16:09 on 04/30/2008 under Order No.1000315850_5 which expires on 8/23/2008, and is not for resale.
Init.
/
User Notes:                                                                                                                    (142658987)
14

APN: 5713-009-040
APN: 5713-009-041
APN: 5713-009-042
RECORDING REQUESTED BY:
KKE ARCHITECTS, INC.

WHEN RECORDED MAIL TO:
KKE ARCHITECTS, INC.
c/o Brian K. Stewart, Esq.
Collins, Collins, Muir & Stewart
1100 El Centro Street
South Pasadena, CA 91030



COPY of Doc........

11/05/2009

Has no

Origina      *20091671617*

processing has been completed.

LOS ANGELES COUNTY REGISTRAR - RECORDER

## NOTICE OF LIEN

**NOTICE:** A design lien, pursuant to Civil Code §3081.1 – 3081.10, is hereby created in favor of KKE ARCHITECTS, INC. on the real property described as follows:

A parcel of land located in the State of California, County of Los Angeles, with a situs address of 25 West Walnut Street, Unit 501, Pasadena California 91103-3677 and being the same property more fully described as:
APN: 5713-009-042; Map Book 896, Page 84; *TR=33536, Condominium Unit 4, Lot Number 1;

A parcel of land located in the State of California, County of Los Angeles, with a situs address of 25 West Walnut Street, Unit 505, Pasadena California 91103-3677 and being the same property more fully described as:
APN: 5713-009-040; Map Book 896, Page 84; *TR=33536, Condominium Unit 2, Lot Number 1;

A parcel of land located in the State of California, County of Los Angeles, with a situs address of 25 West Walnut Street, Unit 504, Pasadena California 91103-3677 and being the same property more fully described as:
APN: 5713-009-041; Map Book 896, Page 84; *TR=33536, Condominium Unit 3, Lot Number 1.

The real property is owned by the Kamran Group, LLC at the time of recordation.

The amount of the lien is of Two Hundred Twelve Thousand Four Hundred Twenty Five Dollars and Ninety Nine Cents ($212,425.99).

The real property has been the subject of the following government approval: The design professional services which form the basis of this Design Professional Lien were furnished purusant to a written contract dated April 10, 2008, including all related supplements and addendums, and were subject to an increase in the floor area ratio allowance.

Dated: October ___, 2009

KKE ARCHITECTS, INC.

By: _____
Brian Arial, AIA

## ACKNOWLEDGEMENT

State of California    )
                       )
County of Los Angeles  )

On Oct. 26, 09 before me, Joany Reymann a notary public, personally appeared Brian Arial who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under Penalty of Perjury under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Notary Public _____

JOANY REYMANN
Commission #1821522
Notary Public - California
Los Angeles County
My Comm. Expires Nov. 3, 2012

B

## VERIFICATION

I, Brian Arial, declare that I am an authorized representative of KKE ARCHITECTS, INC. named as Claimant in the foregoing Claim of Design Professionals' Lien and make this verification for and on behalf of the Corporation.

I have read the Claim of Design Professionals' Lien and know the contents thereof.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26 day of October, 2009 at PASADENA , California

Brian Arial, AIA, NCARB

L:\15867.6\VERIFICATION (LIEN).DOC

VERIFICATION

ollins Collins
uir + Stewart LLP
20 El Centro Street
Pasadena, CA 91030
one (626) 243-1200
( (626) 243-1111

# Exhibit 5

(Plaintiffs' Exhibit 17 in Joint Pretrial Order)

00/00/2010   13:10:43 FAX 2132409999                                                          ↳59

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, Stat___ ___r number, and address): | | PLD-C-001 |
|---|---|---|
| Howard Goodman, State Bar #76570<br>LAW OFFICES OF HOWARD GOODMAN<br>18321 Ventura Blvd.<br>Suite 915<br>Tarzana, California 91356<br>TELEPHONE NO: 818-996-8903   FAX NO. (Optional): 818-996-2942 F<br>E-MAIL ADDRESS (Optional): HOWARD@HOWARDGOODMAN.NET<br>ATTORNEY FOR (Name): PLAINTIFF | | FOR COURT USE ONLY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 300 E. Walnut Street
MAILING ADDRESS: 300 E. Walnut Street       6028 A
CITY AND ZIP CODE: Pasadena, CA 91101       91103
BRANCH NAME: NORTHEAST DISTRICT-PASADENA COURT

FILED
LOS ANGELES SUPERIOR COURT
APR 2 0 2009
JOHN A. CLARKE, CLERK
BY MARIA AGUIRRE DEPUTY

PLAINTIFF: B.L. PRICE CO., INC.;

DEFENDANT: FULLSCOPE PROJECT MANAGEMENT, INC.; TRANMAR PROPERTIES, LLC., KAMRAN GROUP, LLC.; PASADENA ATHLETIC CLUB INC.; NAMCO CAPITAL GROUP INC.;
[X] DOES 1 TO   20

**CONTRACT**
[X] COMPLAINT        [ ] AMENDED COMPLAINT (Number):
[ ] CROSS-COMPLAINT  [ ] AMENDED CROSS-COMPLAINT (Number):

**Jurisdiction (check all that apply):**
[ ] ACTION IS A LIMITED CIVIL CASE
  Amount demanded [ ] does not exceed $10,000
                  [ ] exceeds $10,000, but does not exceed $25,000
[X] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint
    [ ] from limited to unlimited
    [ ] from unlimited to limited

CASE NUMBER:
GC042809

1. **Plaintiff\*** (name or names): B.L. PRICE CO., INC.

alleges causes of action against **defendant\*** (name or names): FULLSCOPE PROJECT MANAGEMENT, INC.; TRANMAR PROPERTIES, LLC., KAMRAN GROUP, LLC.; PASADENA ATHLETIC CLUB INC.; NAMCO CAPITAL GROUP INC.; DOES 1-20

2. This pleading, including attachments and exhibits, consists of the following number of pages:

3. a. Each plaintiff named above is a competent adult
     [X] except plaintiff (name): B.L. PRICE CO., INC.
       (1) [X] a corporation qualified to do business in California
       (2) [ ] an unincorporated entity (describe):
       (3) [ ] other (specify):

   b. [X] Plaintiff (name): B.L. PRICE CO., INC.
      a. [ ] has complied with the fictitious business name laws and is doing business under the fictitious name (specify):
      b. [X] has complied with all licensing requirements as a licensed (specify): CONTRACTOR

   c. [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.

4. a. Each defendant named above is a natural person
     [X] except defendant (name): FULLSCOPE PROJECT MANAGEMENT, INC.
       (1) [ ] a business organization, form unknown
       (2) [X] a corporation
       (3) [ ] an unincorporated entity (describe):
       (4) [ ] a public entity (describe):
       (5) [ ] other (specify):

     [X] except defendant (name): TRANMAR PROPERTIES, LLC.
       (1) [ ] a business organization, form unknown
       (2) [ ] a corporation
       (3) [X] an unincorporated entity (describe): A LIMITED LIABILITY COMPANY
       (4) [ ] a public entity (describe):
       (5) [ ] other (specify):

\* If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.

| SHORT TITLE: PRICE VS. FULLSCOPE | PLD-C-001 |
|---|---|
| | CASE NUMBER: |

4. *(Continued)*

   b. The true names of defendants sued as Does are unknown to plaintiff.

     (1) ☐ Doe defendants *(specify Doe numbers):* _____ were the agents or employees of the named defendants and acted within the scope of that agency or employment.

     (2) ☐ Doe defendants *(specify Doe numbers):* _____ are persons whose capacities are unknown to plaintiff.

   c. ☒ Information about additional defendants who are not natural persons is contained in ~~Attachment~~ para. 9

   d. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

5. ☐ Plaintiff is required to comply with a claims statute, and

   a. ☐ has complied with applicable claims statutes, or

   b. ☐ is excused from complying because *(specify):*

6. ☐ This action is subject to ☐ Civil Code section 1812.10 ☐ Civil Code section 2984.4.

7. This court is the proper court because

   a. ☐ a defendant entered into the contract here.

   b. ☐ a defendant lived here when the contract was entered into.

   c. ☐ a defendant lives here now.

   d. ☐ the contract was to be performed here.

   e. ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.

   f. ☒ real property that is the subject of this action is located here.

   g. ☐ other *(specify):*

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

   ☒ Breach of Contract

   ☒ Common Counts

   ☒ Other *(specify):* FORECLOSURE OF MECHANIC'S LIEN

9. ☒ Other allegations:

   KAMRAN GROUP, LLC. is a limited liability company organized on California. PASADENA ATHLETIC CLUB INC. is a California domestic stock corporation. NAMCO CAPITAL GROUP INC. is a California domestic stock corporation.

10. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for

   a. ☒ damages of: $ 245,500.00

   b. ☒ interest on the damages

     (1) ☒ according to proof

     (2) ☐ at the rate of *(specify):* _____ percent per year from *(date):* _____

   c. ☒ attorney's fees

     (1) ☐ of: $

     (2) ☒ according to proof.

   d. ☒ other *(specify):*

     FORECLOSURE OF MECHANIC'S LIEN;

     DETERMINATION OF THE PRIORITY OF PLAINTIFF'S MECHANIC'S LIEN

11. ☐ The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*

Date: APRIL 15, 2009

Howard Goodman, State Bar #76570

(TYPE OR PRINT NAME)            ▶ _____ (SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

PLD-C-001 [Rev. January 1, 2007]     **COMPLAINT—Contract**     Page 2 of 2

In re: NAMCO CAPITAL GROUP, INC.

Debtor(s).

CHAPTER 11
CASE NUMBER: 2:08-bk-32333-BR
ADVERSARY PROC. NO.: 2:10-ap-01244-BR

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 831 State Street, Santa Barbara, California 93101. A true and correct copy of the foregoing document described **DECLARATION OF DAVID GOLKAR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On **February 23, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge __will be__ completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 23, 2011**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge __will be__ completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2/23/11 | Kathy Koester | |
|---|---|---|
| Date | Type Name | Signature |

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
January 2009
09019.003 - 163624.1
F 9013-3.1

| In re: NAMCO CAPITAL GROUP, INC. | CHAPTER 11 |
|---|---|
| | CASE NUMBER: 2:08-bk-32333-BR |
| Debtor(s). | ADVERSARY PROC. NO.: 2:10-ap-01244-BR |

**United States Trustee (LA)**
725 S Figueroa St # 2600
Los Angeles, CA 90017-5413

**Sawtelle Properties LLC**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Soussan Hashemi**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**John M. Rygh**
915 Wilshire Blvd, Suite 2100
Los Angeles, CA 90017

**Ashland Properties, LLC**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Mahmoud Fatorechi**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Morteza Homayounjam**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Saul Reiss**
Law Offices of Saul Reiss, P.C.
2800 28th St Ste 328
Santa Monica, CA 90405

### III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:

#### SERVED BY E-MAIL:

- David M. Poitras         dpoitras@jmbm.com
- Robyn B. Sokol          rsokol@ebg-law.com; ecf@ebg-law.com
- Joseph A. Eisenberg    jeisenberg@jmbm.com
- Gregory M. Salvato     gsalvato@salvatolawoffices.com; gsalvato@pmcos.com
- Saul Reiss                  saulreiss@verizon.net

#### SERVED BY PERSONAL DELIVERY:

**Honorable Barry Russell**
**United States Bankruptcy Court – Central District of California**
**Edward R. Roybal Federal Building and Courthouse**
**255 E. Temple Street, Suite 1660**
**Los Angeles, CA 90012**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 9013-3.1**
09019.003 - 163624.1

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 831 State Street, Santa Barbara, California 93101. A true and correct copy of the foregoing document described **DECLARATION OF DAVID GOLKAR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):

On **February 23, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge **will be** completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 23, 2011**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge **will be** completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2/23/11 | Kathy Koester | _____ |
|---|---|---|
| Date | Type Name | Signature |

**II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009
09019.003 - 163624.1

**F 9013-3.1**

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
| --- | --- |

**United States Trustee (LA)**
725 S Figueroa St # 2600
Los Angeles, CA 90017-5413

**Sawtelle Properties LLC**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Soussan Hashemi**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**John M. Rygh**
915 Wilshire Blvd, Suite 2100
Los Angeles, CA 90017

**Ashland Properties, LLC**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Mahmoud Fatorechi**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Morteza Homayounjam**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Saul Reiss**
Law Offices of Saul Reiss, P.C.
2800 28th St Ste 328
Santa Monica, CA 90405

III.     SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:

SERVED BY E-MAIL:

- **David M. Poitras**     dpoitras@jmbm.com
- **Robyn B. Sokol**     rsokol@ebg-law.com; ecf@ebg-law.com
- **Joseph A. Eisenberg**     jeisenberg@jmbm.com
- **Gregory M. Salvato**     gsalvato@salvatolawoffices.com; gsalvato@pmcos.com
- **Saul Reiss**     saulreiss@verizon.net

SERVED BY PERSONAL DELIVERY:

**Honorable Barry Russell**
**United States Bankruptcy Court – Central District of California**
**Edward R. Roybal Federal Building and Courthouse**
**255 E. Temple Street, Suite 1660**
**Los Angeles, CA 90012**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                 **F 9013-3.1**
09019.003 - 163624.1