ORIGINAL

FILED

FEB 24 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

Matthew Clarke (SBN 184959)
Matt@christmankelley.com
Dugan P. Kelley (SBN 207347)
Dugan@christmankelley.com
CHRISTMAN, KELLEY & CLARKE
831 State Street
Santa Barbara, California 93101
Telephone:   (805) 884-9922
Facsimile:   (866) 611-9852

Attorneys for Plaintiffs
Kamran Pasadena Group, Inc. and Kamran Group, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

In Re:  NAMCO CAPITAL GROUP INC, a California corporation

Debtor.

KAMRAN PASADENA GROUP, INC., a California corporation; and KAMRAN GROUP, LLC, a California limited liability company

Plaintiffs,

v.

BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC, a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR; an individual; ASHLAND PROPERTIES, LLC, A California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC; a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEES FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100

Defendants.

Case No.: 2:08-bk-32333-BR
Chapter 11
Adv. No.: 2:10-ap-01244-BR

**DECLARATION OF MATTHEW M. CLARKE AS OFFER OF PROOF**

1
DECLARATION OF MATTHEW M. CLARKE AS OFFER OF PROOF

## DECLARATION OF MATTHEW CLARKE AS OFFER OF PROOF

I, Matthew M. Clarke, do declare and say:

1. I am an attorney licensed to practice law in the State of California, and a partner in the law firm of Christman, Kelley & Clarke, attorneys of record for Plaintiffs. I make this declaration based upon my own personal knowledge. I could and would competently testify to these facts in a court of law.

2. Our firm has served Mr. Ezri Namvar with a trial subpoena to appear before the Court at trial in this cause. Mr. Namvar has repeatedly represented to me (as recent as yesterday, February 22, 2011) that he will appear for his testimony at trial and would also appear for a deposition. However, Mr. Namvar has also informed me that he is unwilling to sign a substantive declaration.

3. On October 22, 2010, Mr. Namvar gave his oral deposition ("Deposition") in the bankruptcy proceeding, *In re: Namco Capital Group, Inc., a California corporation*, Case No. 2:08-bk-32333-BR, within which this adversary proceeding is pending, at 12424 Wilshire Boulevard, Suite 720, Los Angeles, California 90025. The deposition was conducted by Mr. Raymond Aver (counsel for Ashland Properties, LLC; Jamshid Baharvar and/or Shohreh Baharvar; Farmo Trust dated January 1, 2007; Mahmoud Fatorechi and Soussan Hashemi, Trustees of the Fatorechi-Hashemi Family Trust dated March 29, 2005; Morteza Homayounjam; Faranak Faye Sarafian; Sawtelle Properties, LLC; and Darioush Soleimani) and by Mr. Daniel Gill, of Ezra Brutzkus Gubner LLP (special counsel for Bradley Sharp, Chapter 11 Trustee for Namco Capital Group, Inc.).

4. Attached hereto as Exhibit "A" and incorporated herein by reference is a true and correct copy of the transcript of Mr. Namvar's Deposition.

5. Based upon my conversations with Mr. Namvar, I have a clear understanding of his testimony. Mr. Namvar would testify as follows:

- Mr. Namvar, through his entities, entered into a joint venture relationship with Mr. David Golkar ("Golkar"), to be owned 50%-50% for the purpose of the development of real property; and, specifically, a mixed-use commercial residential project in Pasadena, California (the "Project").

- Under the terms of the joint venture agreement, Mr. Namvar, through his entity

2

DECLARATION OF MATTHEW M. CLARKE AS OFFER OF PROOF

Namco Capital Group, Inc. ("Namco"), was responsible for contributing the capital necessary for the acquisition and development of the Project, and that such contributions would be as equity in and to the joint venture. After being reimbursed for their capital contributions or advances, the parties would split the profits associated with joint venture 50-50 in accordance with their ownership interests.

- Trustee's contentions that: (1) Namco's relationship with the Kamran Entities was that of lender-borrower, and (2) that funds advanced by Namco Capital Group, Inc. ("Namco") to Kamran Group, LLC and Kamran Pasadena Group, Inc. (collectively the "Kamran Entities"), respectively, were consideration for the Promissory Notes, are inaccurate. Namco made payment of funds pursuant to Namvar's obligation as a joint venture partner, and as equity in the joint venture, for the development of the Project.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 23rd day of February, 2011, at Los Angeles, California.

Matthew M. Clarke

3
DECLARATION OF MATTHEW M. CLARKE AS OFFER OF PROOF

# Exhibit 1

Case 2:10-ap-01244-BR  Doc 72  Filed 02/24/11  Entered 02/24/11 16:25:09  Desc
Main Document  Page 4 of 40

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA (LOS ANGELES DIVISION)

In re:                    )
                          )
NAMCO CAPITAL GROUP, INC., a )
California corporation,
                          )
         Debtor.      ) Case No. 2:08-bk-32333-BR
_____ )

DEPOSITION OF EZRI NAMVAR

OCTOBER 22, 2009

REPORTED BY GRISELDA R. CABANGON-OLSON, CSR NO. 8585

CENTURY COURT REPORTERS 1-800-555-0014

Deposition of EZRI NAMVAR,

taken on behalf of Movants, at

12424 Wilshire Boulevard, Suite 720,

Los Angeles, California 90025

commencing at 10:10 a.m.,

Thursday, October 22, 2009, before

Griselda R. Cabangon-Olson, C.S.R. No. 8585.

            * * *

APPEARANCES OF COUNSEL:

For Movants Ashland Properties, LLC; Jamshid Baharvar
and/or Shohreh E. Baharvar; Farmo Trust Dated
January 1, 2007; Mahmoud Fatorechi and Soussan
Hashemi, Trustees of Fatorechi-Hashemi Family
Trust Dated March 29, 2005; Morteza Homayounjam;
Faranak Faye Sarafian; Sawtelle Properties, LLC;
and Darioush Soleimani:

    LAW OFFICES OF RAYMOND H. AVER
    BY: RAYMOND H. AVER
      12424 Wilshire Boulevard
      Suite 720
      Los Angeles, California 90025
      (310) 571-3511

For Chapter 11 Trustee Bradley D. Sharp:

    EZRA BRUTZKUS GUBNER LLP
      BY: DANIEL H. GILL
      21350 Oxnard Street
      Suite 500
      Woodland Hills, California 91367
      (818) 827-9000

Also Present:

MORTEZA HOMAYOUNJAM
ABRAHAM YERMIAN

2

CENTURY COURT REPORTERS 1-800-555-0014

INDEX

WITNESS EXAMINATION PAGE

EZRI NAMVAR BY MR. AVER 6

BY MR. GILL 69

EXHIBITS

Movants':

A (1-9) Subpoena in a Case Under the
Bankruptcy Code 6

B-1 (a-d) Promissory Note Secured by Deed
of Trust 28

B-2 (a-l) Long Form Deed of Trust and
Assignment of Rents 28

C-1 (a-d) Promissory Note Secured by Deed
of Trust 28

C-2 (a-e) Long Form Deed of Trust and
Assignment of Rents 28

D-1 (a-d) Promissory Note Secured by Deed
of Trust 28

D-2 (a-e) Long Form Deed of Trust and
Assignment of Rents 28

E-1 (a-d) Promissory Note Secured by Deed
of Trust 28

E-2 (a-e)    Long Form Deed of Trust and
            Assignment of Rents            28

F-1 (a-b)    Promissory Note              36

F-2 (a-h)    Collateral Assignment of Deed
            of Trust                     36

G-1 (a-b)    Promissory Note              36

3

CENTURY COURT REPORTERS 1-800-555-0014

I N D E X

E X H I B I T S

Movants':                               Page

G-2 (a-i)    Collateral Assignment of Deed
            of Trust                     36

H-1 (a-b)    Promissory Note              36

H-2 (a-i)    Collateral Assignment of Deed
            of Trust                     36

I-1 (a-b)    Promissory Note 36

I-2 (a-i)    Collateral Assignment of Deed
            of Trust                     36

I-3 (a-b)    Promissory Note              44

J-1 (a-b)    Promissory Note 36

J-2 (a-d)    Collateral Assignment of Deed
            of Trust                     36

K-1 (a-b)    Promissory Note              36

K-2 (a-b)    Collateral Assignment of Deed
            of Trust                     36

L-1 (a-b)    Promissory Note              36

L-2 (a-d)   Collateral Assignment of Deed
            of Trust 36

M-1 (a-b)   Promissory Note                36

M-2 (a-k)   Collateral Assignment of Deed
            of Trust                36

N-1         Namco Capital Group, Inc., Account
            QuickReport             56

N-2         Namco Capital Group, Inc., Account
            QuickReport             56

4

CENTURY COURT REPORTERS 1-800-555-0014

I N D E X

E X H I B I T S

Movants':                          Page

N-3         Namco Capital Group, Inc., Account
            QuickReport             56

N-4         Namco Capital Group, Inc., Account
            QuickReport             56

N-5         Namco Capital Group, Inc., Account
            QuickReport             56

O (1-21)    Purchase and Sale Agreement with
            Escrow Instructions         61

P (1-4)     Collateral Assignment of Deed of Trust 61

CENTURY COURT REPORTERS 1-800-555-0014

Los Angeles, California

Thursday, October 22, 2009

10:10 a.m.

EZRI NAMVAR,

the Witness herein, having been first duly

affirmed, was deposed and testified as follows:

EXAMINATION

BY MR. AVER:

Q   Good morning, Mr. Namvar.

A   Good morning.

Q  We're here today pursuant to a subpoena in a case under the bankruptcy code. My name is Raymond Aver, and I represent Ashland Properties, LLC; Jamshid Baharvar and/or Shohreh Baharvar; Farmo Trust; Mahmoud Fatorechi and Soussan Hashemi, Trustees of the Fatorechi-Hashemi Family Trust dated March 29, 2005; Morteza Homayounjam; Faranak Faye Sarafian; Sawtelle Properties, LLC; and Darioush Soleimani.

I'd like to mark as Exhibit A to the transcript a copy of the subpoena in the case under the bankruptcy code.

(Movants' Exhibit A (1-9) was marked for identification and is included herewith.)

6

CENTURY COURT REPORTERS 1-800-555-0014

Q  BY MR. AVER: But before we get there, let me go through a couple of preliminaries. Mr. Namvar, have you ever had your deposition taken before?

A  Yes.

Q  Approximately how many times?

A  Too many times to count.

Q  All right.

A  More than 30.

Q  More than 30.

So you're familiar with the proceedings, and I'll just go through things very, very quickly.

You understand that you've been sworn under oath?

A   I do.

Q   And you understand that your testimony today is as if you were in a court of law in front of a judge or jury?

A   I do.

Q   And is there any reason why you can't give honest and truthful answers to the questions I'm going to ask you today?

A   No.

Q   Have you ingested any alcohol in the last 12 hours?

A   Very little last night.

7

CENTURY COURT REPORTERS 1-800-555-0014

Q   Would that impair your ability to give honest and truthful answers?

A   No.

Q   Are you on any prescription medication that it would impair your ability to give honest and truthful answers?

A   No.

Q   The deposition today is being transcribed by the court reporter. And so there's --

A   I want to go back to the previous question because it was compound. I take some medication, but it's not going to impair my giving the truth answer. So -- because the no doesn't apply -- it was two-parted question. So I just want to make sure --

Q   Fair enough.

A   -- it's clear.

Q   Fair enough. I understand. Thank you for the clarification.

There are some discovery procedural rules that we adhere to so that we can have a clear -- or try and get a clear transcript.

First of all, please wait for me to finish my question before giving me an answer, and I will endeavor to wait for you to finish giving your answer before I ask my next question. Okay?

8

CENTURY COURT REPORTERS 1-800-555-0014

A   Is that a question?

Q   That's a question, yeah. Please.

A   Yeah.

Q Everything is being taken down verbally. So if you shake your head or you shrug your shoulders, the court reporter can't take that down. So yes, no, we have to give verbal answers. Okay?

A Okay.

Q All right. Don't guess at a question. If I ask a question and you're not clear what kind -- what the question is, then please ask me to rephrase it, and I will attempt to do so.

If you answer a question, it is assumed that you understand the question. You understand that?

A Yes.

Q The testimony that you're giving today will be transcribed into a typed booklet. And you will have an opportunity to review that booklet and make any changes you deem necessary.

Off the record for a quick second.

(Break taken at 10:15 a.m.)

(Deposition resumed at 10:15 a.m.)

Q BY MR. AVER: But while you may make changes to the booklet, I can comment or Mr. Gill, for example, can comment about anything that -- any changes that you make.

9

CENTURY COURT REPORTERS 1-800-555-0014

So it's important that you give full, honest and truthful answers today.

You understand that?

A Yes.

Q Would you please state and spell your name for the record?

A Ezri Namvar, E-z-r-i N-a-m-v-a-r.

Q Have you ever used any other names?

A Yes.

Q What other names have you used?

A My last name used to be a two-parted last name. Namvar, dash, Moghadam, M-o-g-h-a-d-a-m.

Q And --

MR. GILL: I'm sorry. Would you spell that again. I was too slow.

THE WITNESS: M-o-g-h-a-d-a-m.

MR. GILL: Thank you.

THE WITNESS: Namvar, dash, Moghadam.

Q BY MR. AVER: And have you legally changed your name?

A Yes.

Q And other than Ezri Namvar and Ezri Namvar-Moghadam, have you used any other names?

A No.

Q When were you born?

10

CENTURY COURT REPORTERS 1-800-555-0014

A   In August of 1951.

Q   And where were you born?

A   Tehran, Iran.

Q   When did you come to the United States?

A   September of 1969.

Q   And I'd like to just get a little bit of educational background.  Where did you go to high school?

A   In Tehran.

Q   And did you graduate from high school?

A   Yes.

Q   Do you recall what year?

A   1969.

Q   Did you subsequently have any further formal education?

A   Yes.

Q   Can you please just go through it just by way of background?

A   1969 through 1974, Kansas University.  Learning English at the beginning.  Maybe for one semester.  And then graduating in 1974 from the school of electrical engineering.  Immediately after the summer of '74, I enrolled at UCLA's Anderson School of Management.  Got my MBA from UCLA.  Was taking some courses toward my PhD program.  And I interrupted my education to go back to

Iran in 1978.

11

CENTURY COURT REPORTERS 1-800-555-0014

Do you want more?  There's no other education I think.  But do you want more or --

Q   No.  No.  That's okay.

You were going to get your PhD in business?

A   Yes.

Q   And you never went back to school basically after that?

A   I did not.

Q   Okay.

A   I went to real estate school but that --

Q   Yeah.  I mean --

A   I went to Iran.  I served in the army.  Came back.  The revolution happened while I was in the army.  So my army service was interrupted also.  Came back to the U.S.  I think toward the end of 1979 or 1980, I went to Anderson school of real estate, got my broker's license, and did various type of businesses.

Q   The Anderson school of real estate, did you get a degree from that --

A   I got my broker -- no.  Not from them, but they prepared me to get my real estate broker's license from

the state.

Q Okay.

A That's one of those intensive training schools.

Q Did you form a company known as Namco Capital

12

CENTURY COURT REPORTERS 1-800-555-0014

Group, Inc.?

A Yes.

Q Do you recall approximately when you formed that
corporation?

A No. I can guess. It's probably about 1984.

Q And you were the president of Namco Capital
Group, Inc.?

A Yes.

Q And you were the chief executive officer of
Namco Capital Group, Inc.?

A We did not have that title.

Q You were a director?

A I believe so, yes.

Q And you were an employee?

A I believe I started drawing salary from Namco
Capital at some point, yes. I don't know when.

Q All right. And you were the president, a
director, and an employee until about February 10 of

2009?

A   Whatever the court record shows regarding the bankruptcy.

Q   Okay.

A   But that sounds perhaps right.

Q   All right.  I'm holding in my hand a multipage document which I'll identify for the record as Debtors

13

CENTURY COURT REPORTERS 1-800-555-0014

Statement of Financial Affairs, and I'm looking at attachment 22 B.

MR. GILL:  Are we marking this, Ray?

MR. AVER:  I'm not there yet.

I'm looking at attachment B, former officers, directors, and shareholders.  I'd like to show that to you, Mr. Namvar.

The actual 22 B is set forth toward the middle of the document, and that provides that you were the president, CEO, and director and you were terminated on February 10, 2009.

A   Where does it say I was terminated?

Q   It says -- if you take a look at the very last page --

A   I don't know the context of -- by looking at

this page alone.

Q    All right. If you take a look at the statement of financial affairs -- it's a form document. If you go to the page -- the 15th page of this document --

A    Give me yours and take this one.

Q    Sure.

MR. GILL: Are you referring to this page?

MR. AVER: I'm referring to the page where it has former -- it says No. 22, former partners, officers, and directors and shareholders.


14


CENTURY COURT REPORTERS 1-800-555-0014


MR. GILL: Thank you.

THE WITNESS: Did I sign something like this?

MR. AVER: I don't think you did, Mr. Namvar.

THE WITNESS: So I cannot testify to anything in here.

MR. AVER: Okay.

THE WITNESS: But I would testify, if it's okay with Mr. Gill, that at some point we replace directors and I did either -- I don't think I was terminated. I believe I resigned. I remember those discussions.

That period of time is not very clear in my mind because I was under tremendous amount of stress. So I

remember either at the time of an appointment of a

trustee or right before that we changed directors. We --

I don't know whether I was terminated or I was replaced

or I resigned. I really don't remember any of that.

MR. AVER: All right. Just for the record --

THE WITNESS: Especially as to the dates for sure.

As to the dates, I don't remember.

Q   BY MR. AVER: Okay. But for the record I would

note that if you page -- two more pages afterward, you'll

see that this appears to have been signed on March 15,

2009, by Howard Grobstein whose title is chief

restructuring officer.

A   Did he sign it?

15

CENTURY COURT REPORTERS 1-800-555-0014

Q   Well, I don't know. It looks -- there's a

signature above his name. So --

A   Well, that's his -- so we're assuming that's his

signature.

Q   So -- that's right.

So just for the record you were the president, a

director, and an employee of Namco Capital for many years

until approximately the early part of 2009?

A   That would be a correct statement.

Q   All right.

A   Again, my question is the same as Mr. Gill.  Are you marking this or not?

Q   I don't -- I don't think we're going to mark it.

A   Then you can have it.

Q   And during the period of time that you were an employee of Namco Capital Group, you received compensation for the services you performed?

A   During all the time?

Q   During the period that you were an employee of the company.

A   I can testify that at least for five years prior to the date we talked about, at least, I was drawing salary.  Maybe more.

Q   So we're looking at a rough timeframe of 2002, 2003, till about 2008, '9?

16

CENTURY COURT REPORTERS 1-800-555-0014

A   At least.  At least.

Q   All right.

A   Maybe even further beyond -- I mean before that.

Q   And during that four- or five-year period of time, you were a real estate broker licensed by the California Department of Real Estate?

A  I personally was.

Q  Yes.

A  So was Namco, separately, through my license.

Q  And you were the individual designated by the California Department of Real Estate as Namco's -- Namco Capital -- Namco Capital's designated officer?

A  Correct.

Q  My understanding is that an involuntary bankruptcy case was filed against Namco in or around late December of 2008. Is that your recollection?

A  Yes.

Q  And prior to the filing of the involuntary bankruptcy case, Namco Capital was in the -- was engaged in the business of making real estate investments?

A  Indirectly. There's some LLCs. I mean that's a very technical question. I don't know how that is going to come to play. Namco either made direct investments which is rare which it could have -- could have. I don't -- but mostly the investments were made through

17

CENTURY COURT REPORTERS 1-800-555-0014

some other LLCs that Namco loaned the money to.

Q  For example, Tranmar Properties?

A  Tranmar was one of them.

Q   All right.  And prior to the Chapter 11 involuntary bankruptcy filing, Namco Capital was engaged in the making and servicing of real estate secured loans?

A   Mostly.

Q   When you say "mostly," help me out a little bit.

A   We did make some unsecured loans also.

Q   Oh, okay.  But it did make real estate secured loans?

A   Yes.  Most -- most of the loans were real estate.  Secured or -- a lot of it was also the loans to these LLCs.

Q   Okay.

A   The loans to various LLCs as well.

Q   All right.  And prior to the Chapter 11 involuntary filing, you in connection with your work for Namco Capital were involved in the solicitation of loans?

A   Yes.

Q   And prior to the Chapter 11 involuntary filing, you in connection with your work at Namco Capital were involved in arranging real estate loans?

A   Yes.  Arranging and making.

Q   And negotiating those loans?

18

CENTURY COURT REPORTERS 1-800-555-0014

A   Negotiating and making the loans, yes.

Q   And you did this on behalf of Namco Capital prior to 2007, during 2007, and on into 2008 on behalf of Namco Capital?

A   Onto most of 2008 until the filing, correct.

Q   Would it be fair to say that in 2006 you on behalf of Namco Capital were involved in the solicitation, arrangement, and negotiation of eight or more real estate secured loans?

MR. GILL: Objection. Leading question.

But you can answer it if you understand it.

THE WITNESS: I don't know. I mean it sounds like correct.

Q   BY MR. AVER: Isn't it true that Namco Capital made dozens of loans in 2006?

A   Yes. To these LLCs mostly.

Q   All right. And would it be fair to say that you as an employee of Namco Capital Group was involved in the solicitation, arrangement, and negotiation of eight or more real estate secured loans in 2007?

A   It could be, yes.

Q   In fact, dozens probably?

A   Again, the same answer as before.

Q   All right. And --

MR. GILL: Just for the record, the same objection.

19

CENTURY COURT REPORTERS 1-800-555-0014

Q   BY MR. AVER:  And isn't it true that you through Namco Capital Group were involved in the solicitation, arrangement, and negotiation of eight or more real estate loans on behalf of Namco Capital in 2008?

MR. GILL:  Same objection.

THE WITNESS:  I really don't know about 2008.

MR. AVER:  Okay.

THE WITNESS:  But I would guess yes.

MR. GILL:  Don't guess.

Q   BY MR. AVER:  I don't want to you guess.

A   Right.  So I don't know.

MR. AVER:  Off the record for a second.

(Break taken at 10:33 a.m.)

(Deposition resumed at 10:34 a.m.)

Q   BY MR. AVER:  Was the standard business model that Namco Capital Group used that it would borrow funds and would use those funds to then lend?

MR. GILL:  Objection to the form of the question.

THE WITNESS:  Especially the word "standard."

MR. GILL:  I would suggest just for the record and request that the questions be formed in a way that are asking the witness what he did rather than asking him to confirm or deny what you're saying he did.

MR. AVER:  Well, I'll try and -- I'll try and follow

your direction, but this is an adverse witness, and I

20

CENTURY COURT REPORTERS 1-800-555-0014

think I'm entitled to ask leading questions and do that,

you know, that type of thing.

Q   Okay.  Mr. Namvar, you've testified that Namco

Capital Group lent money and many of the loans were to

related LLCs; correct?

A   Correct.

Q   Where did Namco Capital Group get the money that

it loaned to these related entities and others?

A   Mostly from individuals.

Q   All right.  And in most cases would Namco

Capital Group give the individual from whom it was

borrowing the money a promissory note to evidence the

loan?

A   Yes.

Q   And in many cases would Namco Capital Group

collateralize that promissory note with some property?

a   Yes.

Q   And in many cases, would that property consist

of a promissory note made by another individual or entity

in favor of Namco Capital Group and secured by real

estate?

file:///C|/...20David%20Golkar/Transcripts/10-22-2009%20EZRI%20NAMVAR%20DEPOSITION%20by%20RAY%20AVER%20(pdf).txt[2/23/2011 3:42:08 PM]

A Basically, yes.

Q Okay. When you say "basically, yes," what are you hedging?

A That -- I'm not hedging. It's just the form of

21

CENTURY COURT REPORTERS 1-800-555-0014

collateralization. It wasn't always the same.

Q All right. But many of the loans followed that basic formula; correct?

A Yes.

Q In rough numbers -- and I know I'm asking you to guess, but I can -- I can ask for a guesstimate here.

In rough numbers, during the period of let's say 2006 through 2008, how many of these loans did -- were you involved in on behalf of Namco Capital Group where Namco borrowed money, gave a promissory note to the lender, and secured that loan with a promissory note made by a third party and secured by a deed of trust?

A I'm not going there because I would not know no matter how many times you ask this question in different ways. I wouldn't know. I don't have the records. And --

Q Well, more than a dozen?

A I don't -- I don't know. I'm not going to

guess. I don't know, but I can testify that I would take responsibility for all of those notes in that category, whether it was 2 or 2,000. I was the one doing it.

Q All right. In most --

A Can I get some water, please?

Q Oh, absolutely.

Off the record.

22

CENTURY COURT REPORTERS 1-800-555-0014

(Break taken at 10:38 a.m.)

(Deposition resumed at 10:39 a.m.)

Q BY MR. AVER: Now in these transactions where Namco Capital Group borrowed money from individuals and gave those individuals a promissory note and secured the promissory note with a note and deed of trust -- can we call that a collateral note and deed of trust? Will you know what I'm referring to?

A For our purposes, call it collateral, yes.

Q All right.

This transaction, would there be both a promissory note made by Namco Capital in favor of the lender as well as a document called a collateral assignment of the collateral note and deed of trust?

A Of the original note and deed of trust, yes.

Q   All right. And the documentation, the promissory note and the collateral assignment, that would be prepared by Namco Capital Group under your direction?

A   Yes.

Q   And the collateral assignments would be recorded in the office of the county recorder in the county in which the real estate was located?

A   Usually.

Q   And under these collateral assignments, the collateral notes and deeds of trust would be endorsed and

23

CENTURY COURT REPORTERS 1-800-555-0014

assigned to the lender, the individual lender?

A   Correct.

Q   Did Namco service these collateral notes, or did Namco leave it to the third party lenders to service the collateral notes?

MR. GILL: Objection. Compound.

THE WITNESS: I'll answer it. As far as I remember, we serviced all of them. If there is one or two that we did not service, I'm not aware of, but we serviced almost all of them.

Q   BY MR. AVER: And by "service," do you mean that Namco took all necessary action or steps to obtain

payment of or payment due under the terms of the collateral note?

A Yes.

Q And Namco was responsible for making the payments to the third party lenders who had received these collateral notes and deeds of trust?

A Yes.

MR. GILL: Could you restate the question? I'm objecting on a vague and ambiguous grounds but --

MR. AVER: He's answered it.

MR. GILL: I understand. But I want to make a record.

Would you repeat the question?

24

CENTURY COURT REPORTERS 1-800-555-0014

MR. AVER: If you want to make a -- if you want to object after the fact on grounds of vague and ambiguous, you're welcome to.

MR. GILL: I know. But I'd like to hear the question.

MR. AVER: Oh, sure.

MR. GILL: Because maybe there's a clarification that you'll agree with me on.

MR. AVER: That's fine.

(The question was read as follows:

"And Namco was responsible for making

the payments to the third party lenders who

had received these collateral notes and deeds

of trust?")

MR. GILL: I just misheard it. That's why I wanted

to hear it.

Thank you.

I withdraw my objection.

Q   BY MR. AVER: If payment was not forthcoming

from the collateral notemaker, would Namco Capital

nonetheless ensure that payment was made to the third

party lender who held the collateral note and deed of

trust?

A   In most cases. Just for clarification, it's not

necessarily forthcoming or not forthcoming. In a lot of

25

CENTURY COURT REPORTERS 1-800-555-0014

these notes we would add the interest to the note,

especially on the development type notes and properties

that had no cash flow. It would be an open-ended trust

deed in a lot of cases that it would just -- as long as

we had cushion, we would just keep adding the payments on

our book entry as some sort of compounding, whether it

file:///C|/...20David%20Golkar/Transcripts/10-22-2009%20EZRI%20NAMVAR%20DEPOSITION%20by%20RAY%20AVER%20(pdf).txt[2/23/2011 3:42:08 PM]

00/00/2010   13:10:43 FAX 213249    NATIONWIDE LEGAL                                     35

was annually or semiannually or quarterly or monthly, depending on the case.

Q   So if I understand your answer correctly, on some of these collateral notes secured by deeds of trust, with regard to the servicing by Namco Capital, some of them -- the makers were not making regular payments to Namco Capital?

A   Yeah.  Especially the related entries.

Q   And even though that was the case, Namco Capital would in most cases take care of the third party lenders --

A   That's right.

Q   -- and make sure they got paid what they were due under the promissory note made by Namco Capital Group in favor of that third party lender?

A   Correct.

MR. GILL:  Could we go off the record for a second.

MR. AVER:  Sure.

(Discussion held off the record at 10:44 a.m.)


26


CENTURY COURT REPORTERS 1-800-555-0014


(Deposition resumed at 10:45 a.m.)

MR. GILL:  Back on the record.

Mr. Namvar, what did you mean when you answered

yes to the question that you take care of the third party

lenders?

THE WITNESS: Usually paying the payment on the note

according -- on the Namco collateral note given to the

individual lender according to its term.

MR. GILL: Thank you.

Q BY MR. AVER: And when you say -- in that

explanation when you said "you," you meant Namco Capital

Group?

A Correct. Thank you for clarifying that.

Q Does the name Kamran Group mean anything to you?

A Is that David Golkar's entity?

Q I believe that's correct.

A Then that would, yes.

Q And was Kamran Group a borrower from Namco

Capital Group?

A The entity was.

Q Kamran Group was?

A Yeah.

Q And between June of 2007 and September of 2007,

Namco made four real estate secured loans to Kamran

Group?

27

CENTURY COURT REPORTERS 1-800-555-0014

A It could be correct. I can't testify unless I look at some records.

Q Fair enough.

We're going to do some marking.

I don't know which is easier to do but --

We're off the record.

(Break taken at 10:48 a.m.)

(Deposition resumed at 10:52 a.m.)

(Movants' Exhibits B-1 (a-d), B-2 (a-d), C-1 (a-d), C-2 (a-e), D-1 (a-d), D-2 (a-e), E-1 (a-d) and E-2 (a-e) were marked for identification and are included herewith.)

Q BY MR. AVER: Mr. Namvar, if you could take a look at the documents that have been marked as Exhibit B-1, which for the record is a Promissory Note Secured by Deed of Trust dated June 29, 2007, in the amount of $5 million. On page 4 appears the signature of David Golkar - President, Kamran Group Pasadena.

And Exhibit B-2 which is a Long Form Deed of Trust and Assignment of Rents bearing recording stamp 20071990505, which also bears the signature of David Golkar for Kamran Group on the third page of Exhibit B-2, the deed of trust.

A Is there a question pending?

Q No. No.

28

CENTURY COURT REPORTERS 1-800-555-0014

After you -- let me ask you.  Do you recognize these documents?

A    These look to be -- are form of note and deed of trust.  One of the forms.

Q    And do you recall Namco Capital Group making one or more loans to Kamran --

A    Yes.

Q    -- Group?

A    Yes.

Q    And would this promissory note be evidence of one of the loans which has been marked as Exhibit B-1 in the amount of $5 million?

A    Only the promissory note or the note and deed of trust?

Q    The note and deed of trust.

A    Yes.

Q    All right.  Please take a look at Exhibit C-1 and C-1.

A    (Deponent complies.)

MR. AVER:  Exhibit C-1 for the record is a Promissory Note Secured by Deed of Trust dated September 10, 2007, in the amount of $450,000.  At page 4 it is signed by David Golkar, manager of Kamran Group, LLC.

Exhibit C-2 is a short -- is a Long Form Deed of

Trust and Assignment of Rents bearing recording

29

CENTURY COURT REPORTERS 1-800-555-0014

No. 20072133932. On page 2 it is -- also appears to be

signed by David Golkar as the manager of Kamran Group.

Q   Is this, Mr. Namvar, a second note and deed of

trust that was made by Namco Capital Group in favor of --

excuse me -- that was made by Kamran Group in favor of

Namco Capital Group evidencing a loan of approximately

$450,000 to Kamran Group?

A   The word "second," if you will, could be

confusing.  I don't believe this is a second deed of

trust, but it is another, a different deed of trust.  I

don't know its position.  I believe it would be first in

a different parcel.

Q   The only -- when I said "second," I only --

A   I know what you meant.

Q   -- I mean second -- second note.  Yeah.

A   I think I knew what you meant, but I wanted to

make the record clear.

MR. GILL:  That's a good clarification.

MR. AVER:  All right.

THE WITNESS:  Do you think I would pass for a

paralegal?

MR. GILL: Are you hiring?

MR. AVER: Okay.

THE WITNESS: No. I take too many of these.

Q BY MR. AVER: I'd like you to take a look,

30

CENTURY COURT REPORTERS 1-800-555-0014

Mr. Namvar, at what has been marked as Exhibit D-1 which is a third Promissory Note Secured by Deed of Trust dated September 10th, 2007, in the face amount of 1.3 million. On page 4 it appears to have been signed by David Golkar on behalf of Kamran Group.

MR. GILL: Objection. Vague and ambiguous as to the term "third."

MR. AVER: Third promissory note.

THE WITNESS: Same objection here.

MR. AVER: Yes, very well.

I'm just taking it in sequence of --

THE WITNESS: Can you use rather than third the word "different"?

Q BY MR. AVER: Sure.

Different promissory note.

A Or another, yes.

Q Or another.

A Yes. That's better.

Q   Another promissory note.

And then Exhibit D-2, I'll describe as a conformed copy of a Long Form Deed of Trust and Assignment of Rents bearing recording No. 20072133936. Also appears to have been signed by David Golkar, manager on behalf of Kamran Group, LLC.

Do you recognize these documents?

31

CENTURY COURT REPORTERS 1-800-555-0014

A   Same answers to those questions. Yes, I do.

Q   All right. And as with the prior two sets of documents, these evidence a loan made by Namco Capital Group to Kamran Group which was secured by the real estate reflected in the Long Form Deed of Trust and Assignment of Rents?

A   I would say, yes, if you change the word "a" because there's two of them. So two different other loans. Yes.

Q   All right. And then lastly, I'd like you to take a look at what has been marked as Exhibit E-1 and E-2 which I'll describe for the record as a Promissory Note Secured by Deed of Trust dated September 10, 2007, in the face amount of $600,000 which appears to be signed by David Golkar on behalf of Kamran Group, together with

file:///C|/...20David%20Golkar/Transcripts/10-22-2009%20EZRI%20NAMVAR%20DEPOSITION%20by%20RAY%20AVER%20(pdf).txt[2/23/2011 3:42:08 PM]

a corresponding Long Form Deed of Trust and Assignment of

Rents marked as Exhibit E-2 bearing recording No.

20072133956 which also appears to have been signed by

David Golkar on behalf of Kamran Group.

    Do you recognize this set of documents?

A  Same answers throughout.

Q  All right.  And this note and this deed of trust

evidences a loan made by Namco Capital Group to Kamran

Group --

A  You already said that.


    32

CENTURY COURT REPORTERS 1-800-555-0014


Q  -- in the amount of 600,000?

A  Didn't he say that in the previous question?

You already asked that question.

Q  I did?

A  Yes.

Q  So the answer is "yes"?

A  I said the same answers.

Q  "Yes?"  Is that a "yes"?

A  Yes.

Q  Other than --

A  Off the record.

Q  Sure.