

Matthew Clarke (SBN 184959)
Matt@christmankelley.com
Dugan P. Kelley (SBN 207347)
Dugan@christmankelley.com
CHRISTMAN, KELLEY & CLARKE
831 State Street
Santa Barbara, California 93101
Telephone:    (805) 884-9922
Facsimile:    (866) 611-9852

Attorneys for Plaintiffs
Kamran Pasadena Group, Inc. and Kamran Group, LLC

ORIGINAL

FILED

FEB 24 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk
ᘓᔜ

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

In Re:  NAMCO CAPITAL GROUP INC, a
California corporation

Debtor.

_____

KAMRAN PASADENA GROUP, INC., a
California corporation; and KAMRAN GROUP,
LLC, a California limited liability company

Plaintiffs,

v.

BRADLEY D. SHARP, CHAPTER 11
TRUSTEE OF NAMCO CAPITAL GROUP
INC, a California corporation; WOODMAN
PARTNERS, LLC, a California limited liability
company; FIDELITY NATIONAL TITLE
COMPANY, a California corporation DANIEL
JACOB ISSAC, an individual; FAY FRANAK
SARAFIAN, an individual; DARIOUSH
SOLEIMANI, an individual; MORTEZA
HOMAYOUNJAM, an individual; MEHRNAZ
HEKMATRAVAN, an individual; JAMSHID
BAHARVAR; an individual; ASHLAND
PROPERTIES, LLC, A California limited
liability company; FARMCO TRUST,
SAWTELLE PROPERTIES, LLC; a California
limited liability company; MAHMOUD
FATORECHI AND SOUSSAN HASHEMI AS
TRUSTEES FOR THE FATORECHI-
HASHEMI TRUST; and
DOES 1 THROUGH 100

Defendants.

Case No.: 2:08-bk-32333-BR
Chapter 11
Adv. No.:  2:10-ap-01244-BR

**PLAINTIFFS KAMRAN GROUP, LLC
AND KAMRAN PASADENA GROUP,
INC.'S TRIAL BRIEF**

00/00/2010   13:10:43 FAX 2132499990

## I.   INTRODUCTION

The key facts of this case clearly establish that David Golkar ("Golkar") and Ezri Namvar ("Namvar"), through Namco Capital Group, Inc. ("Namco"), entered into a joint venture relationship to develop a mixed-use commercial/residential property located in Pasadena, California, and that they utilized their respective businesses, Kamran Group, LLC and Kamran Pasadena Group, Inc. (collectively, the "Kamran Entities") for David Golkar, and Namco for Ezri Namvar to advance the development of the Project. All monies provided by Namco were in furtherance of Namvar's obligation as a joint venture partner to contribute capital to the enterprise, as equity therein and not debt. Contrary to Trustee Bradley Sharp's position that Namco and the Kamran Entities were in nothing more than a lender-borrower relationship, the facts make it clear that the parties were acting in furtherance of the referenced joint venture relationship, and that all monies provided were properly characterized as equity in the joint venture and not debt owed by one party to the other. Monies were never advanced by Namco to the Kamran Entities under the promissory notes executed by Kamran Entities in favor of Namco and, thus, were procured without consideration. As a result, the promissory notes are unenforceable.

## II.   STATEMENT OF FACTS

### A.   Development of the Joint Venture

In or around late 2004, David Golkar ("Golkar"), the sole member of Kamran Group, LLC, a member-managed limited liability company, and the sole shareholder of Kamran Pasadena Group, Inc., met Ezri Namvar ("Namvar"), then president and principal of Namco. (*See* Declaration of David Golkar, ¶ 6, which is filed concurrently herewith.) Namvar was impressed with Golkar's development expertise, and suggested that the two form a joint venture to develop property. (Golkar Decl. ¶ 6.) The parties agreed that the joint venture would be owned 50%-50%, with Golkar contributing his development, engineering, and architectural expertise and 10% of the capital, as equity in the joint venture, and Namvar contributing his finance expertise and 90% of the capital, as equity in the joint venture. (Golkar Decl. ¶ 7.) The funds paid by each party were credited toward the parties' respective capital accounts as equity in and to the joint venture. (Golkar Decl. ¶ 7.) The value of Golkar's contribution of development, engineering, and architectural expertise was also

1

credited to him as capital. (Golkar Decl. ¶ 7.) The joint venture called for profits to be split pursuant to the parties' 50-50 percentage ownership interest after Namvar and Golkar were reimbursed for their respective financial contributions advanced to the joint venture. (Golkar Decl. ¶ 7.) At all times during the course of their relationship, the advances from Namco were contributions of equity to the joint venture relationship on behalf of Namvar. (Golkar Decl. ¶ 7.)

### B.    The Pasadena Project

In or around early August 2005, a real estate broker approached Golkar with the opportunity to purchase real property located at 233 N. Fair Oaks Ave., Pasadena, California ("233 N. Fair Oaks"). (Golkar Decl. ¶ 8.) While Golkar was performing due diligence on 233 N. Fair Oaks, he was approached by John Richards, the owner of the Pasadena Athletic Club, with the opportunity to purchase the Club, located at 25 W. Walnut, Unit #503, Pasadena, California (the "PAC Parcel"), which abutted the 233 N. Fair Oaks property. (Golkar Decl. ¶ 8.) Golkar and Namvar agreed to purchase both properties, by and through their respective entities, and develop them into a mixed use commercial/residential property with hotel, residential, and retail space (the "Project"). (Golkar Decl. ¶ 8.)

The intentions of the parties with respect to the joint venture relationship, and an outline of the general terms thereof, as it pertained to the development of the Project were made manifest by a Memorandum of Understanding. (Golkar Decl. ¶ 9.) As reflected in the Memorandum of Understanding, Golkar and Namvar agreed that: (1) both parties would own a one-half interest in the joint venture; (2) Golkar would contribute his development, engineering, and architectural expertise, and ten percent of the capital to the Pasadena Project; (3) Namvar would contribute ninety percent of the capital to the Pasadena Project; and (4) Golkar and Namvar would each have an equal share of profits and a return of their respective capital contributions ("Pasadena Joint Venture Agreement"). (Golkar Decl. ¶ 9.)

Namvar (through Namco) and Golkar agreed to form a new entity, Walnut Land Holding, LLC, that would ultimately hold title to the 233 N. Fair Oaks and 25 West Walnut properties (which consisted of the PAC Parcel and certain residential condominium units also located at 25 West Walnut Avenue). (Golkar Decl. ¶ 10.) Since the entity was not formed at the time the 233 N. Fair

Oaks sale closed, Namvar requested that Golkar agree to use the entity, Tranmar Properties, LLC, whose managing member was Namvar, to take title thereto. (Golkar Decl. ¶ 10.) It was understood that Namvar needed to use the Tranmar Properties, LLC for 1031 exchange purposes. (Golkar Decl. ¶ 10.) The joint venture was a very complex venture to own, develop, and operate the multi-use Project that was valued by Golkar at two hundred million dollars ($200,000,000.00). (Golkar Decl. ¶ 10.)

The project was a huge undertaking that could not simply be slapped together. (Golkar Decl. ¶ 11.) As a result, the parties never completed the creation of the joint venture entity Walnut Land Holding, LLC prior to Namvar/Namco's legal problems (including this Chapter 11 proceeding). (Golkar Decl. ¶ 11.) Regardless of the fact that Walnut Land Holding, LLC was not finalized or formed in time to be utilized in the joint venture, Namvar and Golkar continued to operate the joint venture for the Project, including the acquisition, entitlements, and developing of the Project. (Golkar Decl. ¶ 11.)

In furtherance of development of the Pasadena Project, Namvar purchased 233 N. Fair Oaks through his entity Tranmar Properties, LLC ("Tranmar"), and Golkar, through Kamran Group, LLC, purchased the PAC Parcel, condominiums also located on the 25 West Walnut property, and an affordable housing site. (Golkar Decl. ¶ 12.) The N. 233 Fair Oaks property was purchased on or about August 12, 2005, for $4,300,000.00. (Golkar Decl. ¶ 12.) Kamran Group, LLC tendered $1,250,000 and Namco tendered $3,050,000 for the purchase of 233 N. Fair Oaks. The 233 N. Fair Oaks property transaction closed on December 12, 2005. (Golkar Decl. ¶ 12.)

The PAC Parcel was purchased for $7,650,000. (Golkar Decl. ¶ 13.) The Pasadena Athletic Club was a three story athletic club with four condominiums on the fourth floor. (Golkar Decl. ¶ 13.) John Richards, the owner and president of Pasadena Athletic Club offered Kamran Group, LLC the opportunity to purchase his parcel and include it with the Project. (Golkar Decl. ¶ 13.) Richards informed Kamran Group LLC that the Pasadena Athletic Club had over 3,500 members and he wanted to close the property transaction after approximately one year later to enable him to give notification to the Club's members and ease the transition. (Golkar Decl. ¶ 13.) Namvar and Golkar agreed to this extended escrow period. (Golkar Decl. ¶ 13.) Kamran Group, LLC deposited

$250,000 in February 2006 and released another $500,000 for the purchase in June 2006. (Golkar Decl. ¶ 13.) Namco made payment of $6,9000,000 towards the total purchase price. The transaction closed on June 23, 2007. (Golkar Decl. ¶ 13.)

In addition to the PAC Parcel, there were four residential units owned by other individuals at 25 West Walnut, namely Units #402, #405, #501, and #504. (Golkar Decl. ¶ 14.) The purchase prices for these individual units was as follows:

a.   Condominium unit No. 405 at 25 West Walnut, Pasadena was purchased for approximately $530,000. Escrow was opened on March 29, 2007 and Namco deposited $30,000 to escrow. Escrow was closed on April 30, 2007. At the closing, Namco deposited an additional $503,154 including closing cost.

b.   Condominium unit No. 504 at 25 West Walnut, Pasadena was purchased for approximately $1,657,847. Escrow opened on May 10, 2007 and Namco put a $300,000 deposit in escrow. Escrow was closed on July 6, 2007. At closing, Namco deposited an additional $1,357,847 to escrow including the closing cost.

c.   Condominium unit No. 501 at 25 West Walnut, Pasadena was purchased for approximately $780,000. Escrow was opened on February 27, 2007 and Namco deposited $150,000 in escrow. Escrow closed on July 3, 2007. At closing, Kamran Group, LLC deposited an additional $630,000 to escrow.

d.   Condominium unit No. 402 at 25 West Walnut, Pasadena was purchased for approximately $648,600. Escrow opened on October 19, 2006 and Namco deposited $125,000 in escrow. The parties agreed that this unit would be exchanged and replaced with a new unit after the completion of the the Project. Chris Holden, the person from whom Unit No. 402 was being purchased, was carrying a mortgage of about $127,000 at that time and Kamran Group, LLC paid the mortgage thereafter. Later, on November 21, 2008, Kamran Group, LLC paid an additional $57,194 to Chris Holden for an extension of escrow. Upon information and belief, Chris Holden currently owns about 2% of this property. (Golkar Decl. ¶ 14.)

During the course of procuring entitlements and negotiating with vendors for the new

4

Project, Namvar and Golkar looked into purchasing another parcel that would comply with the City's requirement that a part of the development also include low income housing. (Golkar Decl. ¶ 15.) In order to receive approval for the Project, 15% of the residential housing component needed to be allocated for low income housing. (Golkar Decl. ¶ 15.) Such a property was found at 810-820 Marengo Avenue ("Marengo"), Pasadena, California for $3,600,000. (Golkar Decl. ¶ 15.) Marengo had 18 units that satisfied the low income housing requirement and was located within one mile of 25 West Walnut. (Golkar Decl. ¶ 15.) Namco tendered payment of all funds for the purchase of the Marengo property, and the transaction closed on June 27, 2007. (Golkar Decl. ¶ 15.)

In furtherance of Namvar's obligations to the joint venture, Namvar through Namco made payment of the following amounts in furtherance of Namvar's joint venture with Golkar for the development of the Project on the following dates:

a.    $150,000 on March 5, 2007;

b.    $30,000 on March 30, 2007;

c.    $200,000 on April 25, 2007;

d.    $503,154.60 on April 27, 2007;

e.    $200,000 on May 16, 2007;

f.    $3,205,000 on June 27, 2007;

g.    $300,000 on June 19, 2007;

h.    $1,350,000 on June 29, 2007; and

i.    $6,900,000 on June 20, 2007. (Golkar Decl. ¶ 16.)

All of the foregoing purchase and development activities were performed outside the context of any purported Promissory Notes. (Golkar Decl. ¶ 17.) Rather, all funds expended by Namco were in furtherance of Namvar's obligation pursuant to the joint venture agreement to contribute 90% of the capital necessary, as equity therein, to fund the development of the Project. (Golkar Decl. ¶ 17.)

C.    **Execution of the Promissory Notes**

After Golkar and the Kamran Entities fully complied with the terms and conditions of the Pasadena Joint Venture Agreement, and his obligations therein, Golkar discovered that he needed

cash to continue to develop the Pasadena Project. (Golkar Decl. ¶ 18.) The total acquisition price for the real properties included in the Pasadena Project was $19,226,215, with $648,000 not yet closed for outstanding condominium (Unit #402). (Golkar Decl. ¶ 18.) Golkar, through Kamran, contributed approximately $8,300,000 to the Pasadena Project even though he was only obligated to contribute $1,922,621.50, under the terms of the Pasadena Joint Venture Agreement with Namvar (i.e., ten percent of the capital). (Golkar Decl. ¶ 18.)

Rather than obtain financing from investors or financial institutions, secured by the Kamran Group, LLC's ownership interest in 25 W. Walnut and Marengo, the Kamran Entities agreed to allow Namco to provide them with $12,650,000 *in exchange* for Promissory Notes secured by the following properties: (1) a promissory note in favor of Namco in the amount of $5,000,000 dated June 29, 2007, and $1,700,000 dated September 11, 2008, with an associated deed of trust related to the PAC Parcel; (2) a promissory note in favor of Namco in the amount of $600,000 dated September 10, 2007, with an associated deed of trust related related to 25 W. Walnut, Unit #501; (3) a promissory note in favor of Namco in the amount of $1,300,000 dated September 10, 2007, with an associated deed of trust related related to 25 West Walnut, Unit #504; (4) a promissory note in favor of Namco in the amount of $450,000 dated September 10, 2007, with an associated deed of trust related related to 25 West Walnut, Unit #405 (Condo unit); and (4) a promissory note in the amount of $3,600,000 dated June 29, 2007, with an associated deed of trust related related to Marengo (referred to herein collectively as the "Promissory Notes"). (Golkar Decl. ¶ 19.)

Despite executing the Promissory Notes, Kamran did not receive any of the funds from Namvar or Namco to be provided pursuant to and under the Promissory Notes. (Golkar Decl. ¶ 20.) Moreover, Namco recognized and stated to Golkar that no payments and/or interest would be due until the funds contemplated by the Promissory Notes were tendered to the Kamran Entities, respectively. (Golkar Decl. ¶ 20.) The tender of the $12,650,000 owed by Namco never occurred and, correspondingly, Namco never sent demands to Kamran for payment of principal and/or interest, or a notice of default, under the Promissory Notes. (Golkar Decl. ¶ 20.) Since no monies were tendered to the Kamran Entities under the Promissory Notes, Namco never sent demands for principal or interest payments or a notice of default. (Golkar Decl. ¶ 21.) Notices of Default were

6

issued only after the Trustee was appointed and made a wrongful assumption that the consideration contemplated by the Notes, i.e., the funds to be tendered pursuant thereto, had been tendered. (Golkar Decl. ¶ 21.)

## III. LEGAL THEORIES IMPLICATED AT TRIAL

The one legal issue to be adjudicated at trial is that of consideration; and, in particular, whether the Promissory Notes are unenforceable due to lack of consideration.

### A. The Promissory Notes Lack the Essential Element of Consideration

The Promissory Notes executed by the Kamran Entities, respectively, in favor of Namco are invalid because they lack consideration. It is well recognized that an essential element of a contract is sufficient consideration. Cal. Civ. Code § 1550 (West 2011); *Marshall & Co. v. Weisel*, 51 Cal. Rptr. 183, 187 (Ct. App. 1966). Consideration is sufficient to support a contract if there is either a benefit to the promisor or a detriment to the promisee. Cal. Civ. Code § 1605 (West 2011); *City of Los Angeles v. Anchor Cas. Co.*, 22 Cal. Rptr. 278, 281 (Ct. App. 1962). Additionally, the consideration must actually be bargained for and given in exchange for a promise (i.e., mutuality). *Simmons v. California Institute of Technology*, 209 P.2d 581, 585 (Cal. 1949).

Here, the Kamran Entities agreed to execute the Promissory Notes in favor of Namco in exchange for Namco's agreement to tender $12,650,000 to the Kamran Entities. (Golkar Decl. ¶ 19.) On their face, the Promissory Notes seem to contain sufficient consideration. Specifically: (1) the Kamran Entities, respectively, agreed to execute the Promissory Notes in favor of Namco, which constituted a benefit to Namco and a detriment to Kamran; and (2) Namco agreed to tender $12,650,000 to the Kamran Entities in exchange for the Promissory Notes, which constituted a benefit to the Kamran Entities and a detriment to Namco.

However, Namco *never* tendered payment of the $12,650,000 to the Kamran Entities, respectively, after Kamran executed the Promissory Notes in Namco's favor. (Golkar Decl. ¶ 20.) The Kamran Entities agreed to execute the Promissory Notes in favor of Namco, but received no benefit in return from Namco. All monies paid by Namco was in furtherance of Namvar's, through Namco, obligation to contribute 90% of the capital necessary to fund the Project, based upon his position as a joint venture partner with Golkar. (Golkar Decl. ¶ 17.) Thus, the monies were paid as

equity contributions to the joint venture and not in consideration for debt obligations of the Kamran Entities. The Kamran Entites and Namco agreed that these payments would constitute Namvar's and Namco's capital contributions to the Project, pursuant to the terms of the Pasadena Joint Venture Agreement. (Golkar Decl. ¶ 17.) Therefore, Namco never tendered any monies to Kamran in exchange for Kamran's execution of the Promissory Notes. As a result, there is a lack of mutuality, which is a requirement for legally sufficient consideration. *See Simmons*, 209 P.2d at 585. Thus, the Promissory Notes are not supported by legally sufficient consideration.

**B.    The Notices of Default on the Promissory Notes are Unenforceable because the Promissory Notes are Invalid for Lack of Consideration**

The Promissory Notes are invalid and unenforceable because they lack consideration. In order for a contract to be valid, the parties to the contract must exchange mutual promises that constitute legal obligations to one another. *Scottsdale Ins. Co. v. Essex Ins. Co.*, 119 Cal. Rptr. 2d 62, 69 (Ct. App. 2002). A promise that is not supported by sufficient consideration has no binding force or effect, and is not enforceable at law. *U.S. Ecology, Inc. v. State of California*, 111 Cal. Rptr. 2d 689, 701 (Ct. App. 2001).

As noted above, Kamran agreed to execute the Promissory Notes, *in exchange* for Namco's agreement to tender $12,650,000. (Golkar Decl. ¶ 19.) The facts clearly indicate that Namco never tendered any payment to the Kamran Entities in exchange for the Promissory Notes, as promised. (Golkar Decl. ¶ 20.) The Trustee may argue that Namco agreed to tender payment to the Kamran Entities in exchange for the Kamran Entities' promise to execute the Promissory Notes in Namco's favor, but the fact remains that all monies paid by Namco were in furtherance of Namvar's obligation as a joint venture partner with Golkar to provide 90% of the capital necessary to fund the Project being developed by the joint venture. (Golkar Decl. ¶ 17.) All such payments were properly characterized as equity in and to the joint venture.

**IV.    CONCLUSION**

Based on the foregoing, it is apparent that: (1) Golkar and Namvar, through Namco, entered into a joint venture partnership for the development of the Project; (2) all monies paid by Namco were in furtherance of Namvar's obligation as a joint venture partner to contribute 90% of the capital

8

necessary to fund the Project, which was a payment into equity and not debt; and (3) no monies were ever tendered to the Kamran Entities under the Promissory Notes, rendering them unenforceable for lack of consideration.

DATED: February 23, 2011                    CHRISTMAN, KELLEY & CLARKE

By: _____
Matthew M. Clarke
Dugan P. Kelley
Attorneys for Plaintiffs and Counter-Defendants
Kamran Pasadena Group, Inc. and Kamran
Group, LLC

| In re: NAMCO CAPITAL GROUP, INC. | CHAPTER 11 |
|---|---|
| | CASE NUMBER: 2:08-bk-32333-BR |
| Debtor(s). | ADVERSARY PROC. NO.: 2:10-ap-01244-BR |

**NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 831 State Street, Santa Barbara, California 93101. A true and correct copy of the foregoing document described **PLAINTIFFS KAMRAN GROUP, LLC AND KAMRAN PASADENA GROUP, INC.'S TRIAL BRIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On **February 23, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 23, 2011**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2/23/11 | Kathy Koester | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
09019.001 - 163624.1

**F 9013-3.1**

| In re: NAMCO CAPITAL GROUP, INC. | CHAPTER 11 |
|---|---|
| | CASE NUMBER: 2:08-bk-32333-BR |
| Debtor(s). | ADVERSARY PROC. NO.: 2:10-ap-01244-BR |

## II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL

United States Trustee (LA)
725 S Figueroa St # 2600
Los Angeles, CA 90017-5413

Sawtelle Properties LLC
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Soussan Hashemi
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

John M. Rygh
915 Wilshire Blvd, Suite 2100
Los Angeles, CA 90017

Ashland Properties, LLC
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Mahmoud Fatorechi
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Morteza Homayounjam
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Saul Reiss
Law Offices of Saul Reiss, P.C.
2800 28th St Ste 328
Santa Monica, CA 90405

## III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:

### SERVED BY E-MAIL:

- David M. Poitras       dpoitras@jmbm.com
- Robyn B. Sokol         rsokol@ebg-law.com; ecf@ebg-law.com
- Joseph A. Eisenberg    jeisenberg@jmbm.com
- Gregory M. Salvato     gsalvato@salvatolawoffices.com; gsalvato@pmcos.com
- Saul Reiss             saulreiss@verizon.net

### SERVED BY PERSONAL DELIVERY:

Honorable Barry Russell
United States Bankruptcy Court – Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009
09019.003 - 163624.1

F 9013-3.1