DAVID M. POITRAS P.C. (Bar No. 141309)
DAN P. SEDOR P.C. (Bar No. 139091)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-4308
Telephone:    310.203.8080
Facsimile:    310.203.0567
Email:    dpoitras@jmbm.com

Attorneys for Defendant, Bradley D. Sharp
Chapter 11 Trustee for Namco Capital Group Inc.

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>NAMCO CAPITAL GROUP, INC.,<br>a California corporation,<br><br>Debtor. | Case No.:  2:08-bk-32333-BR<br><br>Chapter 11<br><br>Adversary No.:  2:10-ap-01244 BR |
| KAMRAN PASADENA GROUP, INC., a California corporation and KAMRAN GROUP, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC., a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation; DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR, an individual; ASHLAND PROPERTIES, LLC, a California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC, a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEE FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100,<br><br>Defendant(s). | **TRIAL BRIEF OF DEFENDANT BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC.**<br><br>Trial Date: April 27, 2011<br>Time:       10:00 a.m.<br>Place: Courtroom 1668<br>           255 E. Temple Street<br>           Los Angeles, CA 90012 |

PRINTED ON

RECYCLED PAPER

7639859v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

## I.   INTRODUCTION

Plaintiffs Kamran Pasadena Group, Inc. ("KPGI") and Kamran Group, LLC ("KGL" and collectively with KPGI, "Plaintiffs") agree that the sole legal issue to be adjudicated at trial is whether Plaintiffs' Promissory Notes (Trial Exhibits 101 through 106) are unenforceable due to lack of consideration. As shown in the declaration of defendant Bradley D. Sharp ("Sharp Decl."), the Chapter 11 Trustee of Namco (the "Trustee"), and in Trial Exhibit 107, the bank and accounting records of Namco Capital Group, Inc. ("Namco") establish that Namco in fact paid out approximately $12,838,155 to fund real property acquisitions associated with Plaintiffs' real estate development project in Pasadena, California (the "Project"). Those funds were the consideration for Plaintiffs' subsequent promises in the Promissory Notes to repay Namco $12,650,000.

Plaintiffs do not dispute that they received the $12,838,155 from Namco or that they executed the Promissory Notes and corresponding Deeds of Trust. Instead, they argue that those funds were not intended by their principal David Golkar ("Golkar") and Namco principal Ezri Namvar ("Namvar") to be consideration for the repayment of the Promissory Notes. Plaintiffs contend that the Namco funds actually were intended to represent Namvar's equitable contribution to the joint venture that Plaintiffs contend he agreed to form with Golkar to develop the Project.

Plaintiffs' argument is unsupported by any competent evidence. Although Plaintiffs claim that Namvar will appear at trial to corroborate their version of the events in question, they failed to take his deposition despite having nearly nine months to do so, and they concede that he refused to provide them with a declaration for submission to the Court in this case.

Worse for Plaintiffs, the only available sworn testimony of Namvar contradicts their version of events, and will impeach Namvar if he appears at trial and seeks to corroborate that version. In the deposition transcript submitted by Plaintiffs (Clark Declaration, Exh. A ("Namvar Tr.")), Namvar testified that any deal between him and Golkar to share in the profits of the Project, which was being "financed" by Namco, was separate from the Promissory Notes, which first required repayment of Namco's advances, plus interest. As Namvar put it, "there was no question on the validity of the loans. The loans stood on their own." Namvar Tr. 33:19 - 35:4. Not once did Namvar say that the "financing" Namco supplied was to be an equity investment, not a loan.

PRINTED ON
RECYCLED PAPER

7639859v1

- 2 -

That leaves the declarations of Golkar (who refused to appear in person for his properly noticed deposition) and Ali Akbar Helmi as the sole support for Plaintiffs' contentions. Those declarations make assertions that lack any proper foundation, are rife with speculation, and are inadmissible for the additional reasons set forth in the concurrently filed evidentiary objections. The trial exhibits discussed by Golkar in his declaration are inadmissible as well, as set forth in the objections to those trial exhibits in the parties' Joint Pretrial Order. Plaintiffs, who have burden of proving that the monies admittedly paid by Namco for the Project were not in fact consideration for the Promissory Notes, have provided insufficient evidence to carry that burden.

Moreover, the competent evidence shows that Plaintiffs cannot carry their burden and that their story is just that -- a story. Although Plaintiffs contend that Namco improperly "sold to third parties fractional interests in the null and void Promissory Notes" (Complaint, ¶ 29), Golkar admitted the validity of those fractional interests in emails relating to the Project (Trial Exhibits 108 and 109). Obviously, if Golkar believed that those fractional interests were valid, he could not honestly have believed that the Promissory Notes that collateralized them were invalid and unsupported by consideration. The Promissory Notes are in fact valid and supported by consideration and the Court should rule that the Trustee may enforce them according to their terms.

## II.   STATEMENT OF THE RELEVANT FACTS

Plaintiffs' execution of the Promissory Notes totaling $12,650.000 is admitted in section A of the Joint Pretrial Order, as well as in Golkar's declaration. Joint Pretrial Order [Document 69] ("JPE"), § A, at 1-2; Golkar Decl., ¶ 19. Trial Exhibits 101 through 106 consist of copies of the Promissory Notes and their associated deeds of trust on the properties in the Project purchased with the loaned funds, and are identical to the copies of the Promissory Notes and associated deeds of trust that are attached to and authenticated in Plaintiffs' complaint. Complaint [Document 724] ¶ 28 and Exhs. A through F;[1] Declaration of Bradley D. Sharp ("Sharp Decl."), ¶ 4, Exhs. 1-6 (Trial

---

[1] As a result, Plaintiffs' evidentiary objections to the admissibility of to the Promissory Notes and the associated deeds of trust should be overruled.

PRINTED ON
RECYCLED PAPER

7639859v1

- 3 -

Exhibits ("TE") 101-106). The Trustee has possession of the originals of the Promissory Notes (Sharp Decl., ¶ 4), which were executed and secured as follows:

- KPGI executed a Promissory Note dated September 11, 2008, for $1,700,000. Sharp Decl., Ex. 1 (TE 101); JPE § A.2. This Promissory Note was secured by the property known as "Walnut Unit 1" (referred to by Plaintiffs as the "PAC Parcel"). Golkar Decl., ¶ 19(a). The Walnut 1 property was purchased with $6,900,000 of Namco's funds. Golkar Decl., ¶ 13. Most of that contribution by Namco was in two payments -- $1,700,000 loaned pursuant to KPGI's September 11, 2008 Promissory Note, and $5,000,000 loaned pursuant to an earlier Promissory Note executed by KPGI on June 29, 2007 (covered below).

- KGL executed a Promissory Note dated September 10, 2007, for $600,000. Sharp Decl., Ex. 2 (TE 102); JPE § A.3. This Promissory Note was secured by the property known as "Walnut Unit 501." Golkar Decl., ¶ 19(c). The Walnut Unit 501 property was purchased with $150,000 of Namco's funds. Golkar Decl., ¶ 14(c).

- KGL executed a Promissory Note dated September 10, 2007, for $1,300,000. Sharp Decl., Ex. 3 (TE 103); JPE § A.4. This Promissory Note was secured by the property known as "Walnut Unit 504." Golkar Decl., ¶ 19(d). The Walnut Unit 504 property was purchased with $1,357,847 of Namco's funds, including closing costs. Golkar Decl., ¶ 14(b).

- KGL executed a Promissory Note dated September 10, 2007, for $450,000. Sharp Decl., Ex. 4 (TE 104); JPE § A.5. Golkar Decl., ¶ 19(e). This Promissory Note was secured by the property known as "Walnut Unit 505," or "No. 405." The Walnut Unit 505 property was purchased with $533,154 of Namco's funds, including closing costs. Golkar Decl., ¶ 14(a).

- KGL executed a Promissory Note dated June 29, 2007, for $3,600,000. Sharp Decl., Ex. 5 (TE 105); JPE § A.6. This Promissory Note was secured by the property known as "810-820 Marengo Avenue," or "Marengo." Golkar Decl., ¶ 19(b). The Marengo property was purchased with $3,600,000 of Namco's funds. Golkar Decl., ¶ 15.

- KPGI executed a Promissory Note dated June 29, 2007, for $5,000,000. Sharp Decl., Ex. 6 (TE 106); JPE § A.7. This Promissory Note was one of two that was secured by the Walnut Unit 1 property. Golkar Decl., ¶ 19(a).

Plaintiffs also admit that Namco tendered approximately $12,838,155 to Commerce Escrow or others in connection with the Project, which Plaintiffs contend was to fund various real property acquisitions associated with the Project. Specifically, and as graphically illustrated on the first page of Trial Exhibit 107[2] (the pertinent portions of which are set forth in the following table), the Trustee's examination of the bank and accounting records of Namco revealed that Namco paid out the amounts in the column labeled "Namco Funding," which the Trustee testifies in his declaration correspond to each of the Promissory Note amounts set forth above and in the column labeled "Note Amount." All of these amounts were paid from March through June of 2007:

| Property | Borrower | Note Amount | Ref. | Note Date | Namco Funding | Ref. | Funding Date |
|---|---|---|---|---|---|---|---|
| Marengo | KGL | 3,600,000 | [A] | 6/29/2007 | 200,000 | [A1] | 4/25/2007 |
| | | | | | 200,000 | [A2] | 5/16/2007 |
| | | 3,600,000 | | | 3,205,000 | [A3] | 6/27/2007 |
| | | | | | 3,605,000 | | |
| Walnut Unit 504 | KGL | 1,300,000 | [B] | 9/10/2007 | 300,000 | [B1] | 6/19/2007 |
| | | | | | 1,350,000 | [B2] | 6/29/2007 |
| | | 1,300,000 | | | 1,650,000 | | |
| Walnut Unit 501 | KGL | 600,000 | [C] | 9/10/2007 | 150,000 | [C] | 3/5/2007 |
| Walnut Unit 505 (aka No. 405) | KGL | 450,000 | [D] | 9/10/2007 | 30,000 | [D1] | 3/30/2007 |
| | | | | | 503,155 | [D2] | 4/27/2007 |
| | | 450,000 | | | 533,155 | | |
| Walnut Unit 1 | KPGI | 5,000,000 | [Ea] | 6/29/2007 | 6,900,000 | [E] | 6/20/2007 |
| | | 1,700,000 | [Eb] | 9/11/2008 | | | |
| | | 6,700,000 | | | 6,900,000 | | |
| Total | | $12,650,000 | | | $12,838,155 | | |

Sharp Decl., ¶¶ 5-6; TE 107.

---

[2] The first page of Trial Exhibit 107, numbered "NAMCO 3038," is a summary that was prepared by the Trustee's staff at his direction to illustrate how they tracked each of the Namco payments using Namco's bank and accounting records and to compare the total amounts of the payments by Namco to the loan amounts reflected in the Promissory Notes. Sharp Decl., ¶ 5. The ensuing pages, which consist of the accounting records, bank statements, escrow statements and a cancelled check that actually evidence the payments, were prepared or maintained at or near the time of the transactions in question by Namco employees, were kept in the regular course of Namco's business, and it was the regular practice of Namco to prepare or maintain them. *Id.*, ¶¶ 3, 5.

PRINTED ON

RECYCLED PAPER

7639859v1

The alphanumeric codes in the "Reference" column next to the Note Amounts correspond to each of the six Promissory Notes and were marked by the Trustee's staff at his direction on the copies of each of the Promissory Notes contained in Trial Exhibit 107. Sharp Decl., ¶ 6. The alphanumeric codes in the "Reference" column next to the Namco Funding amounts correspond to each of the loans made by Namco to Plaintiffs in connection with the purchase of the particular property in the Project that secured the Promissory Note for that particular property. Those codes were marked by the Trustee's staff at his direction on the copies of the Namco bank and account records which evidence the loans made by Namco that are also contained in Trial Exhibit 107. *Id.*

Specifically, the second page of Trial Exhibit 107, numbered NAMCO 3039, is a Namco Quickbooks account report printout which shows all transactions in the "Tranmar Properties, LLC" accounts receivable account on Namco's books. In the "Amount" column, the Trustee's staff hand-coded each of the outgoing cash transfers reflected in that printout with the alphanumeric "Namco Funding" reference code assigned to that payment on the first page of Trial Exhibit 107 and in the table above. Each of those "Namco Funding" reference codes was again coded by the Trustee's staff on each of the underlying bank statements, escrow statements and a cancelled check that they were able to find that reflected the same loan amounts and dates. Sharp Decl., ¶ 6.

For example, the first entry on the first page of Exhibit 107 and the table above is the Marengo property. It reflects a Promissory Note, referenced as [A], in the amount of $3,600,000 and executed on 6/29/2007 (corresponding to Trial Exhibit 105), and three separate payments by Namco of $200,000 [A1] on 4/25/2007, $200,000 [A2] on 5/16/2007, and $3,205,000 [A3] on 6/27/2007, for total payments of $3,605,000. The [A1], [A2] and [A3] codes are hand-coded next to those same payment amounts and dates on the Quickbooks report at the second page of Exhibit 107, numbered NAMCO 3039. NAMCO 3040 is copy of the Marengo property Promissory Note marked with the [A] reference code. NAMCO 3041 is a copy of a Commerce Escrow statement again reflecting the three Marengo property payment amounts and dates, each marked with the corresponding [A1], [A2] and [A3] codes. NAMCO 3042, 3043 and 3044 are copies of Namco bank statements likewise reflecting each of the three Marengo property payment amounts and dates, each marked with the corresponding [A1], [A2] and [A3] codes. In this same fashion, and as set

forth in his declaration, the Trustee and his staff have compiled and presented evidence which tracks all of the other Namco loans listed in Trial Exhibit 107 and in the table above.[3]

_____

[3] Specifically, like the Marengo loan, the other loans are tracked as follows:

The second entry on NAMCO 3038 is the Walnut Unit 504 property. It reflects a Promissory Note, referenced as [B], in the amount of $1,300,000 and executed on 9/10/2007 (corresponding to Trial Exhibit 103), and two separate payments by Namco of $300,000 [B1] on 6/19/2007, and $1,350,000 [B2] on 6/29/2007, for total payments of $1,650,000. The [B1] and [B2] codes are hand-coded next to those same payment amounts and dates on the Quickbooks report at the second page of Exhibit 107, numbered NAMCO 3039. NAMCO 3045 is copy of the Walnut Unit 504 Promissory Note marked with the [B] reference code. NAMCO 3046 is a copy of a Commerce Escrow statement again reflecting the two Walnut Unit 504 property payment amounts and dates, each marked with the corresponding [B1] and [B2] codes. NAMCO 3047 is a copy of a Namco bank statement likewise reflecting each of the two Walnut Unit 504 property payment amounts and dates, each marked with the corresponding [B1] and [B2].

The third entry on NAMCO 3038 is the Walnut Unit 501 property. It reflects a Promissory Note, referenced as [C], in the amount of $600,000 and executed on 9/10/2007 (corresponding to Trial Exhibit 102), and one payment by Namco of $150,000 [C] on 3/5/2007. The [C] code is hand-coded next to the same payment amount and date on the Quickbooks report at the second page of Exhibit 107, numbered NAMCO 3039. NAMCO 3048 is copy of the Walnut Unit 501 Promissory Note marked with the [C] reference code. NAMCO 3049 is a copy of a United General Title settlement statement again reflecting the Walnut Unit 501 property payment amount and date, marked with the corresponding [C]. NAMCO 3050 is a copy of a Namco bank statement likewise reflecting the Walnut Unit 501 property payment amount and date, marked with the corresponding [C].

The fourth entry on NAMCO 3038 is the Walnut Unit 505 property. It reflects a Promissory Note, referenced as [D], in the amount of $450,000 and executed on 9/10/2007 (corresponding to Trial Exhibit 104), and two separate payments by Namco of $30,000 [D1] on 3/30/2007, and $503,155 [D2] on 4/27/2007, for total payments of $533,155. The [D1] and [D2] codes are hand-coded next to those same payment amounts and dates on the Quickbooks report at the second page of Exhibit 107, numbered NAMCO 3039. NAMCO 3051 is copy of the Walnut Unit 505 Promissory Note marked with the [D] reference code. NAMCO 3052 is a copy of a Commerce Escrow statement again reflecting the two Walnut Unit 505 property payment amounts and dates, each marked with the corresponding [D1] and [D2] codes. NAMCO 3053 and 3054 are copies of Namco bank statements likewise reflecting each of the two Walnut Unit 505 property payment amounts and dates, each marked with the corresponding [D1] and [D2].

Finally, the fifth entry on NAMCO 3038 is the Walnut Unit 1 property. It reflects two Promissory Notes, referenced as [Ea] in the amount of $5,000,000 and executed on 6/29/2007 (corresponding to Trial Exhibit 106), and as [Eb] on the amount of $1,700,000 and executed in 9/11/2008 (corresponding to Trial Exhibit 101) and one payment by Namco of $6,900,000 [E] on 6/20/2007. The [E] code is hand-coded next to the same payment amount and date on the Quickbooks report at the second page of Exhibit 107, numbered NAMCO 3039. NAMCO 3055 is a copy of the first Walnut Unit 1 Promissory Note marked with the [Ea] reference code and NAMCO 3056 is a copy of the second Walnut Unit 1 Promissory Note marked with the [Eb] reference code. NAMCO 3057 is a copy of a Namco bank statement likewise reflecting the Walnut Unit 1 property payment amount and date, marked with the corresponding [E], and NAMCO 3058 is a copy of the cancelled check also coded [E] and reflecting the same payment amount and date.

Plaintiffs do not dispute that they received the foregoing funds from Namco. To the contrary, Golkar concedes in his declaration that all of these amounts were funded by Namco on the referenced dates. Golkar Decl., ¶¶ 14-16. What Plaintiffs argue is that these amounts were not paid in consideration for the Promissory Notes, but instead were paid "in furtherance of Namvar's joint venture with Golkar for the development of the Project." As stated in their trial brief, Plaintiffs' position is that "[a]ll monies paid by Namco was [sic] in furtherance of Namvar's, through Namco, obligation, to contribute 90% of the capital necessary to fund the Project, based on his position as a joint venture partner with Golkar. . . . Thus, the monies were paid as equity contributions to the joint venture and not in consideration for debt obligations of the Kamran Entities." Plaintiffs' Trial Brief at 7-8 . Plaintiffs have proffered no admissible documentary evidence that supports this claim.[4]

Golkar's bare assertion that this was the case is contradicted by Namvar's deposition testimony. As noted above, Namvar testified that Namco expected to be paid on the Promissory Notes that he said "stood on their own." Namvar Tr. 33:19 - 35:4.[5] Namvar also testified that Namco actually did make the loans to Plaintiffs that are the subject of the Promissory Notes:

Q.    And do you recall Namco Capital Group making one or more loans to Kamran --

A.    Yes.

Q.    -- Group?

A.    Yes.

Q.    And would this promissory note be evidence of one of the loans which has been marked as Exhibit B-1 in the amount of $5 million?

A.    Only the promissory note or the note and deed of trust?

---

[4] Golkar contends that the parties' alleged agreement was "memorialized in a Memorandum of Understanding," attached to his declaration as Exhibit 1. However, that document is unsigned and is inadmissible hearsay.

[5] The relevant excerpts from the transcript of Namvar's testimony are attached collectively as Exhibit 1 to the accompanying Declaration of Dan P. Sedor ("Sedor Decl.")

PRINTED ON
RECYCLED PAPER

7639859v1
- 8 -

Q.     The note and deed of trust.

A.     Yes.

Namvar Tr. 29:5-16; *see also id.*, 29:17 - 33:9; 36:7-14.

Namvar further testified that "the verbal agreement we had with Golkar was that we would finance a hundred percent of the [Project]" and "get interest rate" and "[a]fter we get all of our moneys paid plus the 10 percent, the profits would be 50/50 at our choice." Namvar Tr. 73:4-20. This testimony again not only confirms that consideration was paid by Namco for the Promissory Notes, it also contradicts Plaintiffs' assertion that the parties agreed that Namvar would contribute 90% of the capital needed to fund the Project and Golkar would contribute 10%. Golkar Decl., ¶ 7.

Nothing in Namvar's testimony proffered by Plaintiffs suggests that any of the funds Namco actually tendered were capital contributions to a joint venture, as Plaintiffs contend. Rather, Namvar's use of the term "advances" to describe what Namco contributed (Namvar Tr. 33:19 - 34:1) confirms that he viewed the money being paid by Namco to purchase properties in the Project as loans subject to the Promissory Notes.

Aside from Golkar's characterization of the parties' alleged joint venture agreement and the purportedly intended purpose of Namco's payments, the only "facts" Plaintiffs offer in support of their argument are that the Promissory Notes were executed after the transfer of funds by Namco, and that Plaintiffs never made and Namco never demanded any payments on the Promissory Notes (ostensibly because Namco never tendered its consideration under the Promissory Notes). Golkar Decl., ¶¶ 20, 21. Plaintiffs apparently believe that these facts prove that Namco's payments of funds "could not have been pursuant to the Promissory Notes." *Id.*, ¶ 20.[6]

---

[6] Golkar also argues that if Plaintiffs had received consideration pursuant to the Promissory Notes, Plaintiffs would not have had to pay millions of dollars to vendors and contractors or to defend lawsuits brought by vendors and contractors on the failed Project. Golkar Decl., ¶ 22. Again, Namvar's testimony refutes Golkar's conclusions in this regard (which also lack any proper foundation and are complete speculation), Namvar testified that in August of 2008, he told Golkar to forget about the Project, which Namvar viewed as "grandiose" and ambitious, because the hotel market at the time was "taking a nose-dive." He also told Golkar to sell the Project, at a loss if necessary, so that Namco could get repaid and pay back the third parties to whom Namvar had sold fractional interests in the Promissory Notes. Namvar Tr. 58:16 - 61:21. The facts that Golkar took it upon himself to pay certain expenses on a project that Namvar ultimately pulled out of, and that some vendors and contractors may not have gotten paid because the project failed, are irrelevant.

JMBM   Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

7639859v1

The problem with these arguments is that they are, again, refuted by the deposition testimony of Namvar, discussed above. The "timing" argument (which Plaintiffs fail to support with any citation to the terms of the Promissory Notes or any legal authority) is refuted by Namvar's testimony confirming that the loans recited in the Promissory Notes were actually made and were expected to be repaid. Moreover, nothing in the language of the Promissory Notes suggests that the loans they reflect were required to be funded after the Promissory Notes were executed, as opposed to before they were executed. The "nonpayment" argument is refuted by Namvar's testimony that Plaintiffs were not required to make monthly payments under the Promissory Notes because the properties in the Project had no cash flow (Namvar Tr. 74:9-16) and Namco added the unpaid interest to the principal amount of the Promissory Notes. Namvar Tr. 35:5-19.

Plaintiffs' self-serving and uncorroborated "evidence" is insufficient refute the clear documentary record that Namco transferred funds to Plaintiffs in the approximate amount of the notes that Plaintiffs admit they executed. Indeed, Golkar himself has conceded the validity of the Promissory Notes by admitting the validity of fractional interests in them that Namvar had pledged to third parties. In two emails in late November and early December 2009, Golkar sought to assure a group of third parties to whom Plaintiffs contend Namvar had sold fractional interests in the Promissory Notes and who were prepared to commence foreclosure proceedings that he was working on a deal to bring in a "new partner" and pay off the third parties, to whom he referred repeatedly as the "lien holders." He also informed them that deeds and promissory notes, presumably to transfer their fractional interests and to provide for repayment of the money they gave Namco for those interests, needed to be finalized and put into escrow. Trial Exhibits 108, 109. If Golkar really believed that Namco had never paid any consideration under the Promissory Notes, he would also have believed that the fractional interests held by the third parties were void and would therefore have had no reason to refer to them as "lien holders" or to put together a deal providing for the transfer of their interests and the repayment of their funds.

## III.   ARGUMENT

A breach of contract claim has four elements: "(1) a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages." *Poseidon Development, Inc. v. Woodland Lane Estates, LLC,*

152 Cal. App. 4th 1106, 1111 (2007); *see also Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1388 (1990) ("A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.").

The sole dispute before the Court is the second element -- whether Namco performed under the Promissory Notes by paying Plaintiffs the agreed-upon consideration of $12,650,000. The Promissory Notes recite that Plaintiffs' promises to repay them were made "FOR VALUE RECEIVED," i.e., that they were made in exchange for Namco funding to Plaintiffs the amounts set forth in the Promissory Notes. Plaintiffs concede that they executed the Promissory Notes and admit, as they must, that Namco advanced $12,838,155 -- more than the face amount of the Promissory Notes -- to them to purchase various properties in the Project. Under California law, this is presumptive evidence that consideration was indeed provided by Namco. Cal. Civ. Code § 1614 ("A written instrument is presumptive evidence of a consideration"). The burden of producing evidence thus shifts to Plaintiffs to rebut that presumption. Fed. R. Evid. 301. But Plaintiffs also carry the heavier burden of proving by a preponderance of the evidence that no consideration was provided. Cal. Civ. Code § 1615 ("The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it").

Plaintiffs have failed to carry either of their burdens.[7] To avoid liability under the Promissory Notes, Plaintiffs claim that the money Namco paid to them was not loaned and was not the consideration provided for in the notes, but was instead intended to represent Namvar's equity contribution to the purported joint venture allegedly orally agreed to by the parties. But Plaintiffs' "evidence" in support of this argument consists of the declaration of Helmi, which is completely

---

[7] To the extent that KPGI is seeking relief here as a plaintiff, it appears that it may not be entitled to prosecute this action or present any proof that it did not receive consideration for the $6,700,000 in Promissory Notes secured by the Walnut Unit 1 property. The California Secretary of State website indicates that KPGI has been suspended by the California Department of Corporations. *See* Sedor Decl., ¶ 3 and Exh. 2. Under California law, a suspended corporation lacks the capacity to sue or defend. Cal. Rev. & Tax. Code § 23301.

PRINTED ON
RECYCLED PAPER

7639859v1

- 11 -

lacking in foundation, and the declaration of Golkar, whose testimony regarding the parties' intent as to the Promissory Notes and Namco's payments is both largely inadmissible and flatly contradicted by Namvar's deposition testimony. Golkar's assertion that the money admittedly paid by Namco was not the consideration called for by the Promissory Notes is further undercut because it is also based on the irrelevant facts that the Promissory Notes were executed after Namco provided the funds, that Plaintiffs made no interest payments on the Promissory Notes, and that KGL paid and was sued by various contractors and vendors on the Project.

As Plaintiffs point out, "[c]onsideration is sufficient to support a contract if there is either a benefit to the promisor or a detriment to the promise [and] the consideration must actually be bargained for and given in exchange for a promise (i.e., mutuality)." Plaintiffs' Trial Brief at 7. Plaintiffs concede that the Promissory Notes "on their face" contain "sufficient consideration," but claim that there is a lack of mutuality because the consideration was never paid. *Id.* at 7-8. However, the admissible evidence shows that the consideration recited in the Promissory Notes was in fact paid. Plaintiffs are therefore liable for the $12,650,000 loaned and memorialized by the Promissory Notes, which Promissory Notes are secured by their associated Deeds of Trust.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Trustee is entitled to a finding that the Promissory Notes and associated Deeds of Trust are enforceable according to their terms.

Dated: March 9, 2010                    JEFFER MANGELS BUTLER & MITCHELL LLP


By: */s/ David M. Poitras*
    DAVID M. POITRAS P.C.
    Attorneys for Defendant, Bradley D. Sharp, Chapter 11
    Trustee for Namco Capital Group Inc.

PRINTED ON
RECYCLED PAPER

7639859v1

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1900 Avenue of the Stars, Seventh Floor, Los Angeles, California  90067-4308

A true and correct copy of the foregoing document described as ***TRIAL BRIEF OF DEFENDANT BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC.*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***March 9, 2011***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***March 9, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Served By Overnight Mail:
Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***March 9, 2011,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Dugan P. Kelley      dugan@christmankelley.com
Matthew M. Clarke      matt@christmankelley.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| March 9, 2011 | Claudean Brandon | |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                              **F 9013-3.1.PROOF.SERVICE**

**I.  TO BE SERVED BY THE COURT VIA NEF:**

- Matthew M Clarke     mclarke@cappellonoel.com
- Marc S Cohen     mcohen@kayescholer.com
- Ashleigh A Danker     adanker@kayescholer.com
- Joseph A Eisenberg     jae@jmbm.com
- David M Poitras     dpoitras@jmbm.com
- Gregory M Salvato     gsalvato@pmcos.com, calendar@salvatolawoffices.com
- Gregory M Salvato     gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com
- Robyn B Sokol     ecf@ebg-law.com, rsokol@ebg-law.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                          **F 9013-3.1.PROOF.SERVICE**