DAVID M. POITRAS P.C. (Bar No. 141309)
DAN P. SEDOR P.C. (Bar No. 139091)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone:    310.203.8080
Facsimile:    310.203.0567
Email:        dpoitras@jmbm.com

Attorneys for Bradley D. Sharp
Chapter 11 Trustee for Namco Capital Group Inc.

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:08-bk-32333-BR |
| NAMCO CAPITAL GROUP, INC., a California corporation, | Chapter 11 |
| Debtor. | Adversary No.: 2:10-ap-01244 BR |
| KAMRAN PASADENA GROUP, INC., a California corporation and KAMRAN GROUP, LLC, a California limited liability company, | **TRIAL DECLARATION OF BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC.** |
| Plaintiffs, | |
| vs. | Trial Date:   April 27, 2011<br>Time:        10:00 a.m.<br>Place:       Courtroom 1668<br>255 E. Temple Street<br>Los Angeles, CA 90012 |
| BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC., a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation; DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR, an individual; ASHLAND PROPERTIES, LLC, a California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC, a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEE FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100, | |
| Defendant(s). | |

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

7640102v1

# DECLARATION OF BRADLEY D. SHARP

I, BRADLEY D. SHARP, hereby declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, I would competently testify thereto.[1]

2. I am the chapter 11 trustee for the bankruptcy estate of Namco Capital Group, Inc. ("Namco").

3. I make this declaration for trial in this adversary proceeding by plaintiffs Kamran Pasadena Group, Inc. ("KPGI") and Kamran Group, LLC ("KGL" and with KPGI, "Plaintiffs"). During the 21 months since I have been the Chapter 11 Trustee of Namco, I have become generally familiar with Namco's books and records and I am specifically familiar with Namco's books and records as they relate to Namco's transactions with Plaintiffs. After an investigation that included interviews with Namco employees, some of which are still employed by Namco, I have determined and otherwise believe that Namco's records which relate to Namco's transactions with Plaintiffs were prepared or maintained at or near the time of the transactions in question by Namco employees, were kept in the regular course of Namco's business, and it was the regular practice of Namco to prepare or maintain them. Unless a different source of information is specified below, all of the information contained in this declaration was obtained from Namco's books and records or my personal knowledge. I have reviewed the documents attached as exhibits to this declaration.

4. Trial Exhibits 101 through 106, true and correct copies of which are attached hereto as Exhibits 1 through 6, respectively, consist of true and correct copies of the following promissory notes and their associated deeds of trust (collectively, the "Promissory Notes"). The originals of the Promissory Notes are in my possession, and the copies attached hereto are the same as the copies of the Promissory Notes that are attached to and authenticated in Plaintiffs' complaint in this adversary proceeding.

---

[1] Capitalized terms used herein and not specifically defined herein shall have the meaning ascribed to such terms in Defendant's Trial Brief.

PRINTED ON
RECYCLED PAPER

7640102v1

- 2 -

a.    A Promissory Note dated September 11, 2008, in the amount of $1,700,000, and the associated Deed of Trust (Trial Exhibit 101).

b.    A Promissory Note dated September 10, 2007, in the amount of $600,000, and the associated Deed of Trust (Trial Exhibit 102).

c.    A Promissory Note dated September 10, 2007, in the amount of $1,300,000, and the associated Deed of Trust (Trial Exhibit 103).

d.    A Promissory Note dated September 10, 2007, in the amount of $450,000, and the associated Deed of Trust (Trial Exhibit 104).

e.    A Promissory Note dated June 29, 2007, in the amount of $3,600,000, and the associated Deed of Trust (Trial Exhibit 105).

f.    A Promissory Note dated June 29, 2007, in the amount of $5,000,000, and the associated Deed of Trust (Trial Exhibit 106).

5.    The first page of Trial Exhibit 107 (a true and correct copy of Trial Exhibit 107 is attached hereto as Exhibit 7), numbered "NAMCO 3038," is a summary that was prepared by my staff at my direction to illustrate how we tracked each of the loans made by Namco to Plaintiffs using Namco's bank and accounting records and to compare the total amounts of the loans by Namco to the loan amounts reflected in the Promissory Notes. The ensuing pages of Trial Exhibit 107 consist of true and correct copies of the accounting records, bank statements, cancelled checks and escrow statements of Namco, the originals of which are in my possession, that evidence the loans from Namco to Plaintiffs of those amounts. These records reflect that the loans to Plaintiffs memorialized in the Promissory Notes were actually funded by Namco in roughly the amounts set forth in the Promissory Notes.

6.    The alphanumeric codes in the "Reference" column next to the Note Amounts on the first page of Trial Exhibit 107 correspond to each of the six Promissory Notes and were marked by my staff at my direction on the copies of each of the Promissory Notes that are contained in Trial Exhibit 107. The alphanumeric codes in the "Reference" column next to the Namco Funding amounts correspond to each of the transfer/loans made by Namco in connection with the purchase of the particular property in the Project that secured the Promissory Note for that particular

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

7640102v1

- 3 -

property. Those codes were marked by my staff at my direction on the copies of the Namco bank and account records which evidence the loans made by Namco to Plaintiffs that are also contained in Trial Exhibit 107. Specifically, the second page of Trial Exhibit 107, numbered NAMCO 3039, is a Namco Quickbooks account report printout which shows all transactions in the "Tranmar Properties, LLC" accounts receivable account on Namco's books. In the "Amount" column, my staff hand-coded each of the outgoing transfers reflected in that printout with the alphanumeric "Namco Funding" reference code assigned to that payment on the first page of Trial Exhibit 107. Each of those "Namco Funding" reference codes was again coded by my staff on each of the underlying bank statements or escrow statements we were able to find that reflected the same loan amounts and dates.

7.     Trial Exhibits 108 and 109, true and correct copies of which are attached hereto as Exhibits 8 and 9, are true and correct copies of email threads dated in late November and early December 2009 that were contained in the production of documents in this adversary proceeding by defendant Ashland Properties, LLC in response to requests for production of documents.

I declare under penalty of perjury under the United States of America that the foregoing is true and correct and that this declaration is being executed this 8th day of March 2011 at Los Angeles, California.

_____
BRADLEY D. SHARP

PRINTED ON
RECYCLED PAPER

7640102v1

PAGES 5 THRU 12
DELIBERATELY OMITTED

# EXHIBIT 1
# (Trial Exhibit 101)

## PROMISSORY NOTE
## SECURED BY DEED OF TRUST
(the "Note")

$1,700,000.00

Los Angeles, California
September 11, 2008

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of One Million Seven Hundred Thousand Dollars and 00/100($1,700,000.00), together with interest at the rate of seven (7%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $9,916.67 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on December 31, 2009 , at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default , the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less,, the highest amount allowed by applicable law) , compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note(and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Dimes LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group,Inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

EXHIBIT "1"-14

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, Pasadena Inc.
Formerly known as Pasadena Athletic Club, Inc.

BY:
David Golkar-President

-4-

EXHIBIT "1"-16

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

NAME Namco Capital Group, Inc,

ADDRESS 12121 Wilshire Blvd., #1400

CITY  Los Angeles
STATE & ZIP  CA 90025

09/30/08

20081747674

Original will be returned when
processing has been completed.
LOS ANGELES COUNTY REGISTRAR - RECORDER

corded

TITLE ORDER NO._____     ESCROW NO._____     APN NO._____

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS (INDIVIDUAL)

This Deed of Trust, made this      11th           day of   September 2008

between Pasadena Athletic Club, Inc., a California corporation

, herein called Trustor,

whose address is  575 Anton Blvd, #820  Costa Mesa CA 92626

Dimes LLC, a California limited liability company , herein called Trustee, and Namco Capital Group, Inc., a California corporation
, herein called Beneficiary,
Witnesseth:  That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF
SALE, that property in  Los Angeles                                                                                         County,
California, described as:

Set Forth in Exhibit "A" attached hereto and made a part hereof

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by
paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.
For the Purpose of Securing:  1. Performance of each agreement of Trustor incorporated by reference or contained herein.  2.  Payment of the indebtedness
evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $1,700,000.00 executed by Trustor in
favor of Beneficiary or order.  3.   Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by
another note (or notes) reciting it is so secured.
     To Protect the Security of This Deed of Trust, Trustor Agrees: By the execution and delivery of this Deed of Trust and the note secured hereby, that
provisions (1) to (14), inclusive, of the fictitious deed of trust recorded October 23, 1961, in the book and at the page of Official Records in the office of the
county recorder of the county where said property is located, noted below opposite the name of such county, viz.:

| COUNTY | DATE | BOOK PAGE | COUNTY | DATE | BOOK PAGE | COUNTY | DATE | BOOK | PAGE | COUNTY | DATE | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IMPERIAL | 1/1/65 | 1257 574 | ORANGE | 2/5/65 | 574 147 | SAN BERNARDINO | 9/4/65 | 7650 | 14 | SANTA BARBARA | 5/5/65 | 2244 | 622 |
| KERN | 8/4/65 | 4195 883 | VENTURA | 3/5/65 | 2563 64 | SAN LUIS OBISPO | 8/5/65 | 1469 | 429 | LOS ANGELES | 2/3/66 | T6016 | 662 |
| RIVERSIDE | 8/1/65 | | ACCOUNT # 67097 YEAR 1963 | | | SAN DIEGO | 8/10/65 | | | SERIES 9 BOOK 1963 PAGE 165620 | | | |

(which provisions, identical in all counties, are printed on the reverse hereof) hereby are adopted and incorporated herein and made a part hereof as fully as
though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions
shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.
     The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore
set forth.

Kamran Group, Pasadena Inc.
Formerly known as Pasadena Athletic Club , Inc.

BY:

David Gelker-President

STATE OF California ,
COUNTY OF Los Angeles  ,

On September 11th , 2008 , before me, Alpha Giles Notary Public personally appeared  David J. Gelker                                    , who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

ALPHA C. GILES
Commission # 1707444
Notary Public - California
Los Angeles County
My Comm. Expires Nov 25, 2010

**DO NOT RECORD**

The following is a copy of provisions (1) to (14), inclusive, of the fictitious deed of trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

DO NOT RECORD
## REQUEST FOR FULL RECONVEYANCE
To be used only when note has been paid.

To GATEWAY TITLE COMPANY, Trustee:                                    Dated

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

By

MAIL RECONVEYANCE TO:

By

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

EXHIBIT "1"-19

Order No.: 603805453-1807

## LEGAL DESCRIPTION
### (continued)

SURFACE THEREOF, AS RESERVED BY GEORGE G. HOLTZ AND JAME HOLTZ, HUSBAND AND WIFE, IN DEED RECORDED FEBRUARY 15, 1974 AS INSTRUMENT NO. 159 OF OFFICIAL RECORDS.

(B)   UNIT 1 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

PARCEL B:

A CONDOMINIUM COMPRISED OF:

(A) AN UNDIVIDED 4.56 PERCENT INTEREST IN AND TO LOT 1 OF TRACT NO. 33536, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 896, PAGES 84 AND 85 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 THROUGH 6 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED JULY 17, 1978 AS INSTRUMENT NO. 78-752467 OF OFFICIAL RECORDS.

ALSO EXCEPT FROM LOT 31, OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND THAT PORTION OF CYPRESS AVENUE ADJOINING SAID LOT 31 ON THE NORTHEAST THAT WOULD PASS BY A LEGAL CONVEYANCE OF THE ABOVE PARCEL, ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THE ABOVE DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY AMBROSE MALDONADO AND RUTH D. MALDONADO, HUSBAND AND WIFE, IN DEED RECORDED JANUARY 21, 1974.

EXCEPTING ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THAT PORTION OF LOT 29 OF THE RESUBDIVISION OF THE TURNER TRACT IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; BOUNDED ON THE NORTHEAST BY A LINE THAT IS PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT AND DISTANT 62.00 FEET SOUTHWESTERLY THEREFROM, MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT 29; AND BOUNDED ON THE SOUTHWEST BY A LINE THAT IS PARALLEL WITH THE SOUTHWESTERLY LINE (AND THE SOUTHEASTERLY PROLONGATION THEREOF) OF LOT 30 OF SAID TRACT AND DISTANT 36.00 FEET NORTHEASTERLY THEREFROM MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT 29, DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY VINCENT LUCIDO AND DORA LUCIDO, HUSBAND AND WIFE, IN DEED RECORDED JANUARY 21, 1974 AS INSTRUMENT NO. 71 OF OFFICIAL RECORDS.

CLTA Preliminary Report Form (Rev 1/1/85)

Page 6

EXHIBIT "1"-20

Order No.: 603803453-3407

# LEGAL DESCRIPTION
(continued)

EXCEPT FROM PARCEL 1 THROUGH 7 INCLUSIVE DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 28 AND THE SOUTHERLY 4 FEET OF THE WESTERLY 85 FEET OF LOT 27 OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE NORTHERLY 4 FEET OF THE EASTERLY 85.00 FEET OF LOT 28.

PARCEL 2:

LOT 27 OF THE RESUBDIVISION OF TURNER TRACT, A SUBDIVISION OF PART OF DIVISION "D" OF SAN GABRIEL ORANGE GROVE ASSOCIATION, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTHERLY 4 FEET OF THE WESTERLY 85 FEET OF SAID LAND. ALSO EXCEPT THAT PORTION OF LOT 27, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST WESTERLY CORNER OF SAID LOT 27; THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SAID LOT, A DISTANCE OF 4.05 FEET; THENCE NORTHEASTERLY IN A DIRECT LINE TO A POINT IN THE NORTHEASTERLY LINE OF SAID LOT DISTANT SOUTHEASTERLY THEREON 38.68 FEET FROM THE MOST NORTHERLY CORNER OF SAID LOT, THENCE NORTHWESTERLY ALONG SAID NORTHEASTERLY LINE 38.68 FEET TO SAID MOST NORTHERLY CORNER; THENCE SOUTHWESTERLY ALONG THE NORTHWESTERLY LINE OF SAID LOT TO THE POINT OF BEGINNING.

PARCEL 3:

THE NORTHERLY 4 FEET OF THE EASTERLY 85.90 FEET OF LOT 28 OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 4:

LOT 4 OF THE ESTHER TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 7 PAGE 89 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXHIBIT "1" -21

Order No.: 603803453-M07

## LEGAL DESCRIPTION
(continued)

PARCEL 5:

LOT 3 AND THE SOUTHEASTERLY 3.00 FEET OF LOT 4 OF THE RESUBDIVISION OF THE TURNER TRACT, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, EXCEPT THAT PORTION DESCRIBED AS WHOLE AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHWESTERLY LINE OF SAID SOUTHEASTERLY 3.00 FEET OF LOT 4, WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 10.00 FEET, MEASURED AT RIGHT ANGLES FROM THE NORTHEASTERLY LINES OF SAID LOTS 3 AND 4; THENCE SOUTH 34° 42' 46" EAST, ALONG SAID PARALLEL LINE 18.78 FEET TO A CURVE CONCAVE SOUTHERLY AND HAVING A RADIUS OF 1,973.00 FEET, THENCE FROM A TANGENT BEARING SOUTH 69° 10' 25" WEST, WESTERLY ALONG SAID CURVE THROUGH AN ANGLE OF 2° 13' 09" AN ARC DISTANCE OF 76.42 FEET TO A POINT IN SAID NORTHWESTERLY LINE OF THE SOUTHEASTERLY 3.00 FEET OF LOT 4 DISTANT THEREON SOUTHWESTERLY 74.54 FEET FROM SAID INTERSECTION; THENCE NORTHEASTERLY ALONG LAST SAID LINE 74.54 FEET TO THE POINT OR BEGINNING.

EXCEPT THEREFROM THAT PORTION THEREOF INCLUDED WITHIN THE LIMITS OF LINCOLN AVENUE AND OF FAIR OAKS AVENUE AS WIDENED.

PARCEL 6:

THAT PORTION OF CYPRESS AVENUE ADJOINING SAID PARCELS 1, 2 AND 4 ON THE WEST THAT WOULD PASS BY A LEGAL CONVEYANCE OF SAID PARCELS 1, 2 AND 4.

PARCEL 7:

THAT PORTION OF LOT 4 OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, AS CONVEYED TO THE STATE OF CALIFORNIA, BY DEED (STATE PARCEL 43020), RECORDED IN BOOK D-4340 PAGE 165, OFFICIAL RECORDS, BOTH RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, BOUNDED NORTHWESTERLY BY THE FOLLOWING DESCRIBED LINES:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF SAID SOUTHEASTERLY LINE OF PARCEL 1 OF THE LAND CONVEYED TO SAID STATE BY DEED (STATE PARCEL 48019), RECORDED IN BOOK D-4415 PAGE 340 OF OFFICIAL RECORDS, IN SAID OFFICE; THENCE ALONG THE PROLONGATION OF SAID SOUTHEASTERLY LINE NORTH 65° 20' 05" EAST 32.26 FEET TO A TANGENT CURVE CONCAVE SOUTHEASTERLY AND HAVING A RADIUS OF 1975.00 FEET; THENCE NORTHEASTERLY ALONG SAID CURVE TO THE SOUTHWESTERLY TERMINUS OF THE SOUTHEASTERLY LINE OF PARCEL 2 OF SAID LAND CONVEYED TO SAID STATE BY SAID DEED (STATE PARCEL 48019) RECORDED IN BOOK D-4415 PAGE 340 OF OFFICIAL RECORDS.

CLTA Preliminary Report Form (Rev 1/1/95)

Page 5

EXHIBIT "1"-22

Order No.: 603803453-3407

## LEGAL DESCRIPTION
(continued)

ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THE ABOVE DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY GEORGE G. HOLTZ AND JANE R. HOLTZ, IN DEED RECORDED FEBRUARY 15, 1974 AS INSTRUMENT NO. 162 OF OFFICIAL RECORDS.

EXCEPT FROM THE NORTHEASTERLY .62 FEET OF LOT 29, MEASURED ALONG THE NORTHWESTERLY LINE THEREOF, OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND THAT PORTION OF CYPRESS AVENUE ADJOINING SAID LOT 29 ON THE NORTHEAST THAT WOULD PASS BY A LEGAL CONVEYANCE OF SAID LOT 29, ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THE ABOVE DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY GEORGE G. HOLTZ AND JAME HOLTZ, HUSBAND AND WIFE, IN DEED RECORDED FEBRUARY 15, 1974 AS INSTRUMENT NO. 159 OF OFFICIAL RECORDS.

(B) UNIT 6 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

END OF LEGAL DESCRIPTION

CLTA Preliminary Report Form (Rev 1/185)

Page 9

EXHIBIT "1"-23

# EXHIBIT 2
# (Trial Exhibit 102)

## PROMISSORY NOTE
## SECURED BY DEED OF TRUST
(the "Note")

$600,000.00

Los Angeles, California
September 10, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of Four Hundred Fifty Thousand and 00/100 Dollars ($600,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $5,000.00 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on September 10, 2008, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default, the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less, the highest amount allowed by applicable law), compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

EXHIBIT "2" -24

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note (and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodman Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group, Inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

EXHIBIT "2"-26

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, LLC

BY: David Golkar-Manager

-4-

EXHIBIT "2"-27

09/17/07

20072133956

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO
Namco Capital Group, Inc.
12121 Wilshire Blvd. #1400
Los Angeles, CA 90025

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LONG FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

**This Deed of Trust,** made this 10th day of September 2007, between
Kamran Group, LLC, a California limited liability company                    hereinafter called TRUSTOR,

whose address is 8891 Research Drive, Irvine CA 92618
(number and street)                                  (city)        (zone)       (state)

Woodman Partners LLC, a California limited liability company                 herein called TRUSTEE, and
Namco Capital Group, Inc., a California corporation                          herein called BENEFICIARY.

**Witnesseth:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in
Los Angeles                                                     County, California, described as:

SET FORTH IN EXHIBIT "ONE" ATTACHED HERETO AND MADE A PART HEREOF.

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing:
1. Performance of each agreement of Trustor herein contained. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $600,000.00 executed by Trustor in favor of Beneficiary or order.

To Protect the Security of This Deed of Trust, Trustor Agrees:

(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumeration herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

EXHIBIT "2"-28

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(15) In the event (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of Lender's right to accelerate shall be effective unless it is in writing.

(16). Trustor acknowledges that the transfer or further encumbrance of the Property which is encumbered by this Deed of Trust could significantly and materially alter, impair or reduce Beneficiary's security for the note secured hereby (the "Note"). Among other things, Trustor acknowledges that Beneficiary has relied upon the principals of Trustor and their experience in owning and operating the Property in connection with the closing of the loan evidenced by the Note. Accordingly, in the event that the Property or any part thereof or interest therein shall be sold, conveyed, disposed of, alienated, hypothecated, assigned, pledged, mortgaged, further encumbered or otherwise transferred or Trustor shall be divested of its title to the Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Beneficiary being first obtained (which consent may be withheld in Beneficiary's sole and absolute discretion), then, the same shall constitute an Event of Default hereunder and under the Note and Beneficiary shall have the right, at its option, to declare any or all of the indebtedness secured hereby, irrespective of the maturity date specified herein, immediately due and payable and to otherwise exercise any of its other rights and remedies contained herein. Without limiting the generality of the foregoing, it is agreed that the sale, conveyance, transfer or disposition of any of the interest in of any entity which is named as a Trustor herein; or the sale, conveyance, transfer or disposition of any of the interest in any entity whose shares or membership interest may have been pledged to Beneficiary under any other loan document between the parties shall be deemed to be a transfer of an interest in the Property. If any consent to a transfer is given, the transferee by such transfer shall automatically become subject to and obligated by the terms of this Note and all of the other Loan Documents, but Trustor, and any other maker or guarantor of this Note shall not in any way be released from any liability or from any of Trustor's obligations hereunder. Consent to any one transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

Signature of Trustor                                                    Signature of Trustor

Kamran Gisop, LLC.

By: David Geller-Manager

Page 2 of 3

4

STATE OF CALIFORNIA,
COUNTY OF Los Angeles
On September 10, 2002 before me, Alpha C. Giles, Notary Public
Notary Public in and for said County and State, personally appeared _____ personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument.

Signature _____

WITNESS my hand and official seal.

ALPHA C. GILES
Commission # 1707444
Notary Public - California
Los Angeles County
My Comm. Expires Nov 25, 2060

DO NOT RECORD

DO NOT RECORD

## REQUEST FOR FULL RECONVEYANCE
To be used only when note has been paid.
Dated _____

FULL RECONVEYANCE TO:

Deed of Trust
WITH POWER OF SALE
(Long Form)

Page 3 of 3

EXHIBIT "2"-30

5

## Exhibit 1

A CONDOMINIUM COMPRISED OF:

A) AN UNDIVIDED 2.21 PERCENT INTEREST IN LOT 1 OF TRACT NO. 33536, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 898 PAGE(S) 84 AND 85 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 TO 6 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED JULY 12, 1978 AS INSTRUMENT NO. 78-762467, IN SAID OFFICE OF THE COUNTY RECORDER.

ALSO EXCEPT FROM PORTIONS OF SAID LAND, ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES, WITHOUT, HOWEVER THE RIGHT OF SURFACE ENTRY, AS PROVIDED FOR IN THE DEEDS RECORDED JANUARY 21, 1974 AS INSTRUMENT NO. 71, JANUARY 21, 1974 AS INSTRUMENT NO. 82, FEBRUARY 15, 1974 AS INSTRUMENT NO. 160 AND FEBRUARY 15, 1974 AS INSTRUMENT NO. 162, ALL IN SAID OFFICE OF THE COUNTY RECORDER.

B) UNIT 4 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN REFERRED TO ABOVE.

APN: 5713-009-042

# EXHIBIT 3
# (Trial Exhibit 103)

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST
(the "Note")

$1,300,000.00

Los Angeles, California
September 10, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of One Million Three Hundred Thousand and 00/100 Dollars ($1,300,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $10,833.34 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on September 10, 2008, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default, the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less, the highest amount allowed by applicable law), compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower, and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

EXHIBIT "3"-32

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note(and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodman Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group,Inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

EXHIBIT "3"-33

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation; the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, LLC

BY: David Golkar-Manager

-4-

EXHIBIT "3"-35

**This page is part of your document - DO NOT DISCARD**

 **20072133956** Pages: 005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

Fee: 31.00
Tax: 0.00
Other: 0.00
Total: 31.00

09/17/07 AT 12:19PM

1173335        200703170010063    Mail

## TITLE(S) :



LEAD SHEET

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown

**THIS FORM IS NOT TO BE DUPLICATED**

09/17/07



20072133936

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO
Namco Capital Group, Inc.
12121 Wilshire Blvd. #1400
Los Angeles, CA 90025

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LONG FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

, between

This Deed of Trust, made this 10th day of September 2007                                          hereinafter called TRUSTOR,
                            Kamran Group, LLC, a California limited liability company

whose address is 8391 Research Drive, Irvine CA 92618                              (city)    (zone)    (state)
(number and street)

                                                                                                herein called TRUSTEE, and
        Woodman Partners LLC, a California limited liability company ·                          herein called BENEFICIARY,
        Namco Capital Group, Inc., a California corporation

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in
                                                                        County, California, described as
Los Angeles

SET FORTH IN EXHIBIT "ONE" ATTACHED HERETO AND MADE A PART HEREOF.

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing:
        1. Performance of each agreement of Trustor herein contained. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $1,300,000.00 executed by Trustor in favor of Beneficiary or order.

To Protect the Security of This Deed of Trust, Trustor Agrees:
        (1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumeration herein not excluding the general.
        (2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.
        (3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.
        (4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.
        Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.
        (5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.
        (6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.
        (7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.
        (8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

EXHIBIT "3"-37

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(15) In the event (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of Lender's right to accelerate shall be effective unless it is in writing.

(16). Trustor acknowledges that the transfer or further encumbrance of the Property which is encumbered by this Deed of Trust could significantly and materially alter, impair or reduce Beneficiary's security for the note secured hereby (the "Note"). Among other things, Trustor acknowledges that Beneficiary has relied upon the principals of Trustor and their experience in owning and operating the Property in connection with the closing of the loan evidenced by the Note. Accordingly, in the event that the Property or any part thereof or interest therein shall be sold, conveyed, disposed of, alienated, hypothecated, assigned, pledged, mortgaged, further encumbered or otherwise transferred or Trustor shall be divested of its title to the Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Beneficiary being first obtained (which consent may be withheld in Beneficiary's sole and absolute discretion), then, the same shall constitute an Event of Default hereunder and under the Note and Beneficiary shall have the right, at its option, to declare any or all of the indebtedness secured hereby, irrespective of the maturity date specified herein, immediately due and payable and to otherwise exercise any of its other rights and remedies contained herein. Without limiting the generality of the foregoing, it is agreed that the sale, conveyance, transfer or disposition of any of the interest in any entity whose shares or membership interest may have been pledged named as a Trustor herein; or the sale, conveyance, transfer or disposition of any of the interest in any entity an interest in the Property. If any consent to a transfer is given, the to Beneficiary under any other loan document between the parties shall be deemed to be a transfer of an interest in the Property, but Trustor, and any other transferee by such transfer shall automatically become subject to and obligated by the terms of this Note and all of the other Loan Documents, but Trustor, and any other maker or guarantor of this Note shall not in any way be released from any liability or from any of Trustor's obligations hereunder. Consent to any one transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

Signature of Trustor                                         Signature of Trustor

Karum Group, LLC

By: David Hollar-Manager

EXHIBIT "3"-38

4

STATE OF CALIFORNIA,
COUNTY OF _____
On _____ before me, _____ a
Notary Public in and for said County and State, personally appeared
_____, personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument.

Signature: _____

WITNESS my hand and official seal.

ALPHA C. GILES
Commission # 1707444
Notary Public - California
Los Angeles County
My Comm. Expires Nov 25, 2010

DO NOT RECORD

DO NOT RECORD

## REQUEST FOR FULL RECONVEYANCE
To be used only when note has been paid.
Dated _____

MAIL RECONVEYANCE TO:

**Deed of Trust
WITH POWER OF SALE
(Long Form)**

Page 3 of 3

EXHIBIT "3"-39

Exhibit 1

A CONDOMINIUM COMPRISED OF:

A) AN UNDIVIDED 5.581 PERCENT INTEREST IN LOT 1 OF TRACT NO. 33536, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 896 PAGE(S) 84 AND 85 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 TO 6 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED JULY 12, 1978 AS INSTRUMENT NO. 78-752467, IN SAID OFFICE OF THE COUNTY RECORDER.

ALSO EXCEPT FROM THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, AS RESERVED IN VARIOUS DEEDS OF RECORD, ONE OF THEM BEING THE DEED RECORDED JANUARY 21, 1974 AS INSTRUMENT NO. 71 OF OFFICIAL RECORDS.

B) UNIT 3 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN REFERRED TO ABOVE.

APN: 5713-009-041

# EXHIBIT 4
# (Trial Exhibit 104)

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST
### (the "Note")

$450,000.00

Los Angeles, California
September 10, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $3,750.00 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on September 10, 2008, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default, the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less, the highest amount allowed by applicable law), compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

EXHIBIT "4"-41

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note(and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodman Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group,Inc., a California corporation and licensed California real estate broker. and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

EXHIBIT "4"-42

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

EXHIBIT "4"-43

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, LLC

BY: David Golkar-Manager

-4-

EXHIBIT "4"-44

This page is part of your document - DO NOT DISCARD

 **20072133932** Pages: 005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

09/17/07 AT 12:16PM

Fee: 31.00
Tax: 0.00
Other: 0.00
Total: 31.00

1173432        200709170010061    Mail

**TITLE(S) :**



**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown

**THIS FORM IS NOT TO BE DUPLICATED**

EXHIBIT "4"-45



09/17/07

20072133932

SPACE ABOVE THIS LINE FOR RECORDER'S USE

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO
Namco Capital Group, Inc.
12121 Wilshire Blvd.#1400
Los Angeles, CA 90025

## LONG FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

This Deed of Trust, made this 10th day of September 2007                                    hereinafter called TRUSTOR,
                                   Kamran Group, LLC, a California limited liability company

whose address is 8891 Research Drive, Irvine CA 92618                (city)        (zone)        (state)
                        (number and street)

                                                                                    herein called TRUSTEE, and
        Woodman Partners LLC, a California limited liability company                 herein called BENEFICIARY,
        Namco Capital Group, Inc., a California corporation

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in
                                                                                    County, California, described as:
Los Angeles

SET FORTH IN EXHIBIT "ONE" ATTACHED HERETO AND MADE A PART HEREOF.

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing:
        1. Performance of each agreement of Trustor herein contained. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension of renewal thereof, in the principal sum of $450,000.00 executed by Trustor in favor of Beneficiary or order.

To Protect the Security of This Deed of Trust, Trustor Agrees:
        (1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumeration herein not excluding the general.
        (2) To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.
        (3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.
        (4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.
        Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.
        (5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.
        (6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.
        (7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.
        (8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

EXHIBIT "4"-46

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(15) In the event (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of Lender's right to accelerate shall be effective unless it is in writing.

(16). Trustor acknowledges that the transfer or further encumbrance of the Property which is encumbered by this Deed of Trust could significantly and materially alter, impair or reduce Beneficiary's security for the note secured hereby (the "Note"). Among other things, Trustor acknowledges that Beneficiary has relied upon the principals of Trustor and their experience in owning and operating the Property in connection with the closing of the loan evidenced by the Note. Accordingly, in the event that the Property or any part thereof or interest therein shall be sold, conveyed, disposed of, alienated, hypothecated, assigned, pledged, mortgaged, further encumbered or otherwise transferred or Trustor shall be divested of its title to the Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Beneficiary being first obtained (which consent may be withheld in Beneficiary's sole and absolute discretion), then, the same shall constitute an Event of Default hereunder and under the Note and Beneficiary shall have the right, at its option, to declare any or all of the indebtedness secured hereby, irrespective of the maturity date specified herein, immediately due and payable and to otherwise exercise any of its other rights and remedies contained herein. Without limiting the generality of the foregoing, it is agreed that the sale, conveyance, transfer or disposition of any of the interest in of any entity which is named as a Trustor herein; or the sale, conveyance, transfer or disposition of any of the interest in any entity whose shares or membership interest may have been pledged to Beneficiary under any other loan document between the parties shall be deemed to be a transfer of an interest in the Property. If any consent to a transfer is given, the transferee by such transfer shall automatically become subject to and obligated by the terms of this Note and all of the other Loan Documents, but Trustor, and any other maker or guarantor of this Note shall not in any way be released from any liability or from any of Trustor's obligations hereunder. Consent to any one transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

Signature of Trustor                                        Signature of Trustor

Kinneg Group, LLC

By: David Golkar-Manager

Page 2 of 3

EXHIBIT "4"-47

STATE OF CALIFORNIA,
COUNTY OF Los Angeles
On September 14, 2007 before me, Alpha C. Giles Notary Public, a
Notary Public in and for said County and State, personally appeared
David Dather , personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s); or the entity upon behalf of which
the person(s) acted, executed the instrument.

Signature Alpha C. Giles

WITNESS my hand and official seal.

ALPHA C. GILES
Commission # 1707444
Notary Public - California
Los Angeles County
My Comm. Expires Nov 28, 2010

(Space above this line for official notarial seal)

**Deed of Trust
WITH POWER OF SALE
(Long Form)**

DO NOT RECORD

DO NOT RECORD

## REQUEST FOR FULL RECONVEYANCE
To be used only when note has been paid.
Dated _____

MAIL RECONVEYANCE TO:

Page 3 of 3

EXHIBIT "4"-48

## Exhibit 1

A CONDOMINIUM COMPRISED OF:

A) AN UNDIVIDED 0.87 PERCENT INTEREST IN LOT 1 OF TRACT NO. 33536, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 898 PAGE(S) 84 AND 85 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 TO 6 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED JULY 12, 1978 AS INSTRUMENT NO. 78-752467, IN SAID OFFICE OF THE COUNTY RECORDER.

ALSO EXCEPT FROM THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, AS RESERVED IN VARIOUS DEEDS OF RECORD, ONE OF THEM BEING THE DEED RECORDED JANUARY 21, 1974 AS INSTRUMENT NO. 71 OF OFFICIAL RECORDS.

B) UNIT 2 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN REFERRED TO ABOVE.

APN: 5713-009-040