# EXHIBIT 5
# (Trial Exhibit 105)

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST
### (the "Note")

$3,600,000.00

Los Angeles, California
June 29, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of Three Million Six Hundred Thousand and 00/100 Dollars ($3,600,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $30,000.00 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on June 28, 2008, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default, the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less,, the highest amount allowed by applicable law), compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

EXHIBIT "5"-50

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note (and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodman Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group, Inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

EXHIBIT "5" -51

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

EXHIBIT "5" -52

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, LLC

BY: David Golkar-Manager

-4-

EXHIBIT "5"-53

This page is part of your document - DO NOT DISCARD



**20071988920**  Pages: 007

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/24/07 AT 11:25AM

Fee: 37.00
Tax: 0.00
Other: 0.00
Total: 37.00

1089407      200708240760043   Mail

**TITLE(S) :**



L E A D   S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.      Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

EXHIBIT "5"-54

08/24/07

20071988920

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO
Namco Capital Group, Inc.
12121 Wilshire Blvd. #1400
Los Angeles, CA 90025

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LONG FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

This Deed of Trust, made this    29th    day of    June 2007    , between
Kamran Group, LLC, a California limited liability company    hereinafter called TRUSTOR,
whose address is 2891 Research Drive, Irvine CA 92618
(number and street)    (city)    (zone)    (state)

Woodman Partners LLC, a California Limited liability company    herein called TRUSTEE, and
Namco Capital Group, Inc., a California corporation    herein called BENEFICIARY.

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in
Los Angeles    County, California, described as:

SET FORTH IN EXHIBIT "ONE" ATTACHED HERETO AND MADE A PART HEREOF.

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing:
1. Performance of each agreement of Trustor herein contained.  2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $3,600,000.00  executed by Trustor in favor of Beneficiary or order.

To Protect the Security of This Deed of Trust, Trustor Agrees:

(1)  To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonable necessary, the specific enumeration herein not excluding the general.

(2)  To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)  To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)  To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6)  That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)  That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)  That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

EXHIBIT "5"-55

3

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(15) In the event (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of Lender's right to accelerate shall be effective unless it is in writing.

(16) Trustor acknowledges that the transfer or further encumbrance of the Property which is encumbered by this Deed of Trust could significantly and materially alter, impair or reduce Beneficiary's security for the note secured hereby (the "Note"). Among other things, Trustor acknowledges that Beneficiary has relied upon the principals of Trustor and their experience in owning and operating the Property in connection with the closing of the loan evidenced by the Note. Accordingly, in the event that the Property or any part thereof or interest therein shall be sold, conveyed, disposed of, alienated, hypothecated, assigned, pledged, mortgaged, further encumbered or otherwise transferred or Trustor shall be divested of its title to the Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Beneficiary being first obtained (which consent may be withheld in Beneficiary's sole and absolute discretion), then, the same shall constitute an Event of Default hereunder and under the Note and Beneficiary shall have the right, at its option, to declare any or all of the indebtedness secured hereby, irrespective of the maturity date specified herein, immediately due and payable and to otherwise exercise any of its other rights and remedies contained herein. Without limiting the generality of the foregoing, it is agreed that the sale, conveyance, transfer or disposition of any of the interest in of any entity which is named as a Trustor herein, or the sale, conveyance, transfer or disposition of any of the interest in any entity whose shares or membership interest may have been pledged to Beneficiary under any other loan document between the parties shall be deemed to be a transfer of an interest in the Property. If any consent to a transfer is given, the transferee by such transfer shall automatically become subject to and obligated by the terms of this Note and all of the other Loan Documents, but Trustor, and any other maker or guarantor of this Note shall not in any way be released from any liability or from any of Trustor's obligations hereunder. Consent to any one transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

Signature of Trustor                                                          Signature of Trustor

Kazran Group, LLC

By: David Golkar-Manager

Page 2 of 3

EXHIBIT "5"-56

4

STATE OF CALIFORNIA,
COUNTY OF _Los Angeles_
On _July 25, 2009_ before me, _Alpha C. Giles_
Notary Public in and for said County and State, personally appeared
_David Orellar_ _____ personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument.

Signature _Alpha Giles_

WITNESS my hand and official seal.

ALPHA C. GILES
Commission # 1707444
Notary Public - California
Los Angeles County
My Comm. Expires Nov 25, 2010

(This line for official notarial seal)

DO NOT RECORD

DO NOT RECORD

## REQUEST FOR FULL RECONVEYANCE
To be used only when note has been paid.
Dated _____

| MAIL RECONVEYANCE TO: | | |
|---|---|---|
| | | |
| | | |
| | | |

By: _____

By: _____

**Deed of Trust WITH POWER OF SALE (Long Form)**

Page 3 of 3

EXHIBIT "5"-57



EXHIBIT "ONE"

Order Number: 8003-292437NP01
Page Number: 6

## LEGAL DESCRIPTION

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

PARCEL 1:

THAT PORTION OF BLOCK "V" OF THE SUBDIVISION OF LAND BELONGING TO J .H. PAINTER AND B. F. BALL, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 4 PAGE 549 OF MISCELLANEOUS RECORDS; IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WEST LINE OF SAID BLOCK "V"; DISTANT THEREON 515 FEET SOUTH OF THE NORTHWEST CORNER; THENCE EAST 317 FEET; THENCE SOUTH 64.52 FEET TO THE NORTH LINE OF THE LAND CONVEYED BY DEED RECORDED IN BOOK 2632 PAGE 225 OF DEEDS; THENCE WESTERLY ALONG SAID NORTH LINE 317 FEET TO THE WEST LINE OF SAID BLOCK "V"; THENCE NORTHERLY ALONG SAID WESTERLY LINE 64.52 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM THAT PORTION CONVEYED TO WILLIAM H. YOUNG AND WIFE, BY DEED RECORDED IN BOOK 6662 PAGE 191, OFFICIAL RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF LOT 9 OF BARNHART, PETRIE, CRAWFORD AND SAWYER'S SUBDIVISION, AS PER MAP RECORDED IN BOOK 13 PAGE 16 OF MISCELLANEOUS RECORDS OF SAID COUNTY; THENCE WEST ALONG THE SOUTH LINE OF LOT 9, 70 FEET; THENCE SOUTH PARALLEL WITH THE SOUTH PROLONGATION OF THE EAST LINE OF SAID LOT 9, 64.52 FEET TO THE NORTH LINE OF THE LAND CONVEYED BY DEED RECORDED IN BOOK 2632 PAGE 225, OF DEEDS; THENCE EAST ALONG SAID NORTH LINE, 95 FEET TO THE EAST LINE OF THE LAND CONVEYED BY DEED RECORDED IN BOOK 2629 PAGE 162 OF DEEDS; THENCE NORTH ALONG SAID LAST MENTIONED EAST LINE 64.52 FEET TO THE EAST PROLONGATION OF THE SOUTH LINE OF SAID LOT 9; THENCE WEST ALONG THE SAID EAST PROLONGATION 25 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THE WEST 4 FEET THEREOF CONVEYED TO THE CITY OF PASADENA, BY DEED RECORDED IN BOOK 3738 PAGE 261 OF DEEDS.

PARCEL 2:

A PORTION OF BLOCK "V" OF SUBDIVISION OF LANDS OF J. H. PAINTER AND B. F. BALL, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 4 PAGE 549 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WESTERLY LINE OF SAID BLOCK "V" DISTANT 579.52 FEET SOUTH OF THE NORTHWEST CORNER OF SAID BLOCK "V"; THENCE EAST 220.4 FEET; THENCE SOUTH 64.53 FEET; THENCE WEST 220.4 FEET TO THE WESTERLY LINE OF SAID BLOCK; THENCE NORTH ALONG SAID WESTERLY LINE 64.53 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM THE WESTERLY 4 FEET THEREOF AS CONVEYED TO THE CITY OF PASADENA, BY DEED RECORDED IN BOOK 3812 PAGE 55 OF DEEDS.

*United General Title Insurance Company*

EXHIBIT "5"-59

Order Number: 8003-292437NFB1
Page Number: 7

APN: 5725-021-024 (Affects: Parcel 2) and 5725-021-025 (Affects: Parcel 1)

*United General Title Insurance Company*

EXHIBIT "5"-60

# EXHIBIT 6
# (Trial Exhibit 106)

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST
### (the "Note")

$5,000,000.00

Los Angeles, California
June 29, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of Five Million and 00/100 Dollars ($5,000,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $41,666.67 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on June 28, 2008, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default, the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less,. the highest amount allowed by applicable law), compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

EXHIBIT "6"-61

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note(and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodman Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group, Inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

EXHIBIT "6"-63

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group Pasadena, Inc
Formerly known as  Pasadena Athletic Club, Inc.

BY: David Golkar-President

-4-

EXHIBIT "6"-64

**This page is part of your document - DO NOT DISCARD**

 **20071990505** Pages: 012

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/24/07 AT 03:57PM

Fee: 52.00
Tax: 0.00
Other: 0.00
Total: 52.00

1095069　200708240030048　Mail

## TITLE(S) :



L E A D　S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.　Number of AIN's Shown

 **THIS FORM IS NOT TO BE DUPLICATED**

EXHIBIT "6"-65



08/24/07

20071990505

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO
Namco Capital Group, Inc.
12121 Wilshire Blvd.#1400
Los Angeles, CA 90025

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LONG FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

This Deed of Trust, made this   29th   day of   June 2007                                                                , between

Pasadena Athletic Club, Inc., a California corporation                                        hereinafter called TRUSTOR,

whose address is  8891 Research Drive, Irvine CA 92618                        (city)          (zone)          (state)
(number and street)

Woodman Partners LLC, a California limited liability company                              herein called TRUSTEE, and
Namco Capital Group, Inc., a California corporation                                          herein called BENEFICIARY,

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in
Los Angeles                                                                                              County, California, described as:

SET FORTH IN EXHIBIT "ONE" ATTACHED HERETO AND MADE A PART HEREOF.

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing:
1. Performance of each agreement of Trustor herein contained. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $5,000,000.00  executed by Trustor in favor of Beneficiary or order.

To Protect the Security of This Deed of Trust, Trustor Agrees:
(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumeration herein not excluding the general.
(2) To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.
(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.
(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.
Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.
(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.
(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.
(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.
(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

EXHIBIT "6"-66

(9) That upon written request of Beneficiary, stating that all sums secured hereby have been paid, and to surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(15) In the event (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of Lender's right to accelerate shall be effective unless it is in writing.

(16). Trustor acknowledges that the transfer or further encumbrance of the Property which is encumbered by this Deed of Trust could significantly and materially alter, impair or reduce Beneficiary's security for the note secured hereby (the "Note"). Among other things, Trustor acknowledges that Beneficiary has relied upon the principals of Trustor and their experience in owning and operating the Property in connection with the closing of the loan evidenced by the Note. Accordingly, in the event that the Property or any part thereof or interest therein shall be sold, conveyed, disposed of, alienated, hypothecated, assigned, pledged, mortgaged, further encumbered or otherwise transferred or Trustor shall be divested of its title to the Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Beneficiary being first obtained (which consent may be withheld in Beneficiary's sole and absolute discretion), then, the same shall constitute an Event of Default hereunder and under the Note and Beneficiary shall have the right, at its option, to declare any or all of the indebtedness secured hereby, irrespective of the maturity date specified herein, immediately due and payable and to otherwise exercise any of its other rights and remedies contained herein. Without limiting the generality of the foregoing, it is agreed that the sale, conveyance, transfer or disposition of any of the interest in of any entity which is named as a Trustor herein, or the sale, conveyance, transfer or disposition of any of the interest in any entity whose shares or membership interest may have been pledged to Beneficiary under any other loan document between the parties shall be deemed to be a transfer of an interest in the Property. If any consent to a transfer is given, the transferee by such transfer shall automatically become subject to and obligated by the terms of this Note and all of the other Loan Documents, but Trustor, and any other maker or guarantor of this Note shall not in any way be released from any liability or from any of Trustor's obligations hereunder. Consent to any one transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

Signature of Trustor

Kamran Group, Pasadena Inc.

Formerly Known as Pasadena Athletic Club, Inc.

By: David Gokur

Signature of Trustor

EXHIBIT "6" -67

STATE OF CALIFORNIA,
COUNTY OF Los Angeles
On July 30, 2007 before me, Alpha C. Giles
Notary Public in and for said County and State, personally appeared
David Galkar                                                , personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument.

Signature Alpha C. Giles

WITNESS my hand and official seal.

ALPHA C. GILES
Commission # 1707444
Notary Public - California
Los Angeles County
My Comm. Expires Nov 25, 2010

DO NOT RECORD

DO NOT RECORD

## REQUEST FOR FULL RECONVEYANCE
To be used only when note has been paid.
Dated _____

MAIL RECONVEYANCE TO:

Deed of Trust
WITH POWER OF SALE
(Long Form)

**EXHIBIT "ONE"**

EXHIBIT "6"-69

Order No.: 603503453-M07

## LEGAL DESCRIPTION

PARCEL A:

A CONDOMINIUM COMPRISED OF:

(A)    AN UNDIVIDED 84.859 PERCENT INTEREST IN AND TO LOT 1 OF TRACT NO. 33536, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 896 PAGES 84 AND 85 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 THROUGH 6 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED JULY 12, 1978 AS INSTRUMENT NO. 78-752467 OF OFFICIAL RECORDS.

ALSO EXCEPT FROM LOT 31, OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND THAT PORTION OF CYPRESS AVENUE ADJOINING SAID LOT 31 ON THE NORTHEAST THAT WOULD PASS BY A LEGAL CONVEYANCE OF THE ABOVE PARCEL, ALL, OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THE ABOVE DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY AMBROSIO MALDONADO AND RUTH D. MALDONADO, HUSBAND AND WIFE, IN DEED RECORDED JANUARY 21, 1974.

EXCEPTING ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THAT PORTION OF LOT 29 OF THE RESUBDIVISION OF THE TURNER TRACT IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; BOUNDED ON THE NORTHEAST BY A LINE THAT IS PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT AND DISTANT 62.00 FEET SOUTHWESTERLY THEREFROM, MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT 29; AND BOUNDED ON THE SOUTHWEST BY A LINE THAT IS PARALLEL WITH THE SOUTHWESTERLY LINE (AND THE SOUTHEASTERLY PROLONGATION THEREOF) OF LOT 30 OF SAID TRACT AND DISTANT 36.00 FEET NORTHEASTERLY THEREFROM MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT 29, DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY VINCENT LUCIDO AND DORA LUCIDO, HUSBAND AND WIFE, IN DEED RECORDED JANUARY 21, 1974 AS INSTRUMENT NO. 71 OF OFFICIAL RECORDS.

EXCEPT FROM PARCEL 1 THROUGH 7 INCLUSIVE DESCRIBED AS FOLLOWS:

PARCEL I:

LOT 28 AND THE SOUTHERLY 4 FEET OF THE WESTERLY 25 FEET OF LOT 27 OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

CLTA Preliminary Report Form (Rev 1/1/95)                 Page 3

EXHIBIT "6"-70

Order No.: 603803453-M07

## LEGAL DESCRIPTION
(continued)

EXCEPT THE NORTHERLY 4 FEET OF THE EASTERLY 85.00 FEET OF LOT 28.

PARCEL 2:

LOT 27 OF THE RESUBDIVISION OF THE TURNER TRACT, A SUBDIVISION OF PART OF DIVISION "B" OF SAN GABRIEL ORANGE GROVE ASSOCIATION, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTHERLY 4 FEET OF THE WESTERLY 85 FEET OF SAID LAND. ALSO EXCEPT THAT PORTION OF LOT 27, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST WESTERLY CORNER OF SAID LOT 27; THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SAID LOT, A DISTANCE OF 4.86 FEET; THENCE NORTHEASTERLY IN A DIRECT LINE TO A POINT IN THE NORTHEASTERLY LINE OF SAID LOT DISTANT SOUTHEASTERLY THEREON 38.68 FEET FROM THE MOST NORTHERLY CORNER OF SAID LOT, THENCE NORTHWESTERLY ALONG SAID NORTHEASTERLY LINE 38.68 FEET TO SAID MOST NORTHERLY CORNER; THENCE SOUTHWESTERLY ALONG THE NORTHWESTERLY LINE OF SAID LOT TO THE POINT OF BEGINNING.

PARCEL 3:

THE NORTHERLY 4 FEET OF THE EASTERLY 85.90 FEET OF LOT 28 OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 4:

LOT 4 OF THE ESTHER TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 7 PAGE 89 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 5:

LOT 3 AND THE SOUTHEASTERLY 3.00 FEET OF LOT 4 OF THE RESUBDIVISION OF THE TURNER TRACT, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, EXCEPT THAT PORTION DESCRIBED AS WHOLE AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHWESTERLY LINE OF SAID SOUTHEASTERLY 3.00 FEET OF LOT 4, WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 10.00 FEET, MEASURED AT RIGHT ANGLES FROM THE NORTHEASTERLY LINES OF SAID LOT 3 AND 4; THENCE SOUTH 34° 42' 46" EAST, ALONG SAID PARALLEL LINE 18.78 FEET TO A CURVE CONCAVE SOUTHERLY AND HAVING A RADIUS OF 1,973.00 FEET, THENCE FROM A TANGENT BEARING SOUTH 69° 10' 25" WEST,

CLTA Preliminary Report Form (Rev 1/1/95)

Page 4

EXHIBIT "6"-71

Order No.: 603803453-M07

## LEGAL DESCRIPTION
### (continued)

WESTERLY ALONG SAID CURVE THROUGH AN ANGLE OF 2° 13' 09" AN ARC DISTANCE OF 76.42 FEET TO A POINT IN SAID NORTHWESTERLY LINE OF THE SOUTHEASTERLY 3.00 FEET OF LOT 4 DISTANT THEREON SOUTHWESTERLY 74.54 FEET FROM SAID INTERSECTION; THENCE NORTHEASTERLY ALONG LAST SAID LINE 74.54 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM THAT PORTION THEREOF INCLUDED WITHIN THE LIMITS OF LINCOLN AVENUE AND OF FAIR OAKS AVENUE AS WIDENED.

PARCEL 6:

THAT PORTION OF CYPRESS AVENUE ADJOINING SAID PARCELS 1, 2 AND 4 ON THE WEST THAT WOULD PASS BY A LEGAL CONVEYANCE OF SAID PARCELS 1 2 AND 4.

PARCEL 7:

THAT PORTION OF LOT 4 OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, AS CONVEYED TO THE STATE OF CALIFORNIA, BY DEED (STATE PARCEL 43020), RECORDED IN BOOK D-4340 PAGE 165, OF OFFICIAL RECORDS, BOTH RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, BOUNDED NORTHWESTERLY BY THE FOLLOWING DESCRIBED LINES:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF THE SOUTHEASTERLY LINE OF PARCEL 1 OF THE LAND CONVEYED TO SAID STATE BY DEED (STATE PARCEL 48019), RECORDED IN BOOK D-4415 PAGE 340, OFFICIAL RECORDS, IN SAID OFFICE; THENCE ALONG THE PROLONGATION OF SAID SOUTHEASTERLY LINE NORTH 65° 20' 05" EAST 32.26 FEET TO A TANGENT CURVE CONCAVE SOUTHEASTERLY AND HAVING A RADIUS OF 1973.00 FEET; THENCE NORTHEASTERLY ALONG SAID CURVE TO THE SOUTHWESTERLY TERMINUS OF THE SOUTHEASTERLY LINE OF PARCEL 2 OF SAID LAND CONVEYED TO SAID STATE BY SAID DEED (STATE PARCEL 48019) RECORDED IN BOOK D-4415 PAGE 340 OF OFFICIAL RECORDS.

ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THE ABOVE DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY GEORGE G. HOLTZ AND JANE R. HOLTZ, IN DEED FEBRUARY 15, 1974 AS INSTRUMENT NO. 162, OF OFFICIAL RECORDS.

EXCEPT FROM THE NORTHEASTERLY 62 FEET OF LOT 29, MEASURED ALONG THE NORTHWESTERLY LINE THEREOF, OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND THAT PORTION OF CYPRESS AVENUE ADJOINING SAID LOT 29 ON THE NORTHEAST THAT WOULD PASS BY A LEGAL CONVEYANCE OF SAID LOT 29, ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THE ABOVE DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE

EXHIBIT "6"-72

Order No.: 603803453-M07

# LEGAL DESCRIPTION
## (continued)

SURFACE THEREOF, AS RESERVED BY GEORGE G. HOLTZ AND JAME HOLTZ, HUSBAND AND WIFE, IN DEED RECORDED FEBRUARY 15, 1974 AS INSTRUMENT NO. 159 OF OFFICIAL RECORDS.

(B)   UNIT 1 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

PARCEL B:

A CONDOMINIUM COMPRISED OF:

(A) AN UNDIVIDED 4.56 PERCENT INTEREST IN AND TO LOT 1 OF TRACT NO. 33536, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 896, PAGES 84 AND 85 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 THROUGH 6 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED JULY 12, 1978 AS INSTRUMENT NO. 78-752467 OF OFFICIAL RECORDS.

ALSO EXCEPT FROM LOT 31, OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND THAT PORTION OF CYPRESS AVENUE ADJOINING SAID LOT 31 ON THE NORTHEAST THAT WOULD PASS BY A LEGAL CONVEYANCE OF THE ABOVE PARCEL, ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THE ABOVE DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY AMBROSIO MALDONADO AND RUTH D. MALDONADO, HUSBAND AND WIFE, IN DEED RECORDED JANUARY 21, 1974.

EXCEPTING ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THAT PORTION OF LOT 29 OF THE RESUBDIVISION OF THE TURNER TRACT IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; BOUNDED ON THE NORTHEAST BY A LINE THAT IS PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT AND DISTANT 62.00 FEET SOUTHWESTERLY THEREFROM, MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT 29; AND BOUNDED ON THE SOUTHWEST BY A LINE THAT IS PARALLEL WITH THE SOUTHWESTERLY LINE (AND THE SOUTHEASTERLY PROLONGATION THEREOF) OF LOT 30 OF SAID TRACT AND DISTANT 36.00 FEET NORTHEASTERLY THEREFROM MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT 29, DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY VINCENT LUCIDO AND DORA LUCIDO, HUSBAND AND WIFE, IN DEED RECORDED JANUARY 21, 1974 AS INSTRUMENT NO. 71 OF OFFICIAL RECORDS.

CLTA Preliminary Report Form (Rev 1/1/95)                    Page 6

EXHIBIT "6"-73

Order No.: 603803453-M07

## LEGAL DESCRIPTION
(continued)

EXCEPT FROM PARCEL 1 THROUGH 7 INCLUSIVE DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 28 AND THE SOUTHERLY 4 FEET OF THE WESTERLY 85 FEET OF LOT 27 OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE NORTHERLY 4 FEET OF THE EASTERLY 85.00 FEET OF LOT 28.

PARCEL 2:

LOT 27 OF THE RESUBDIVISION OF TURNER TRACT, A SUBDIVISION OF PART OF DIVISION "B" OF SAN GABRIEL ORANGE GROVE ASSOCIATION, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTHERLY 4 FEET OF THE WESTERLY 85 FEET OF SAID LAND. ALSO EXCEPT THAT PORTION OF LOT 27, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST WESTERLY CORNER OF SAID LOT 27; THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SAID LOT, A DISTANCE OF 4.06 FEET; THENCE NORTHEASTERLY IN A DIRECT LINE TO A POINT IN THE NORTHEASTERLY LINE OF SAID LOT DISTANT SOUTHEASTERLY THEREON 38.68 FEET FROM THE MOST NORTHERLY CORNER OF SAID LOT, THENCE NORTHWESTERLY ALONG SAID NORTHEASTERLY LINE 38.68 FEET TO SAID MOST NORTHERLY CORNER; THENCE SOUTHWESTERLY ALONG THE NORTHWESTERLY LINE OF SAID LOT TO THE POINT OF BEGINNING.

PARCEL 3:

THE NORTHERLY 4 FEET OF THE EASTERLY 85.90 FEET OF LOT 28 OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 4:

LOT 4 OF THE ESTHER TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 7 PAGE 89 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

CLTA Preliminary Report Form (Rev 1/1/95)

Page 7

EXHIBIT "6"-74

Order No.: 603803453-M07

## LEGAL DESCRIPTION
(continued)

PARCEL 5:

LOT 3 AND THE SOUTHEASTERLY 3.00 FEET OF LOT 4 OF THE RESUBDIVISION OF THE TURNER TRACT, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, EXCEPT THAT PORTION DESCRIBED AS WHOLE AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHWESTERLY LINE OF SAID SOUTHEASTERLY 3.00 FEET OF LOT 4, WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 10.00 FEET, MEASURED AT RIGHT ANGLES FROM THE NORTHEASTERLY LINES OF SAID LOTS 3 AND 4; THENCE SOUTH 34° 42' 46" EAST, ALONG SAID PARALLEL LINE 18.78 FEET TO A CURVE CONCAVE SOUTHERLY AND HAVING A RADIUS OF 1,973.00 FEET, THENCE FROM A TANGENT BEARING SOUTH 69° 10' 25" WEST, WESTERLY ALONG SAID CURVE THROUGH AN ANGLE OF 2° 13' 09" AN ARC DISTANCE OF 76.42 FEET TO A POINT IN SAID NORTHWESTERLY LINE OF THE SOUTHEASTERLY 3.00 FEET OF LOT 4 DISTANT THEREON SOUTHWESTERLY 74.54 FEET FROM SAID INTERSECTION; THENCE NORTHEASTERLY ALONG LAST SAID LINE 74.54 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM THAT PORTION THEREOF INCLUDED WITHIN THE LIMITS OF LINCOLN AVENUE AND OF FAIR OAKS AVENUE AS WIDENED.

PARCEL 6:

THAT PORTION OF CYPRESS AVENUE ADJOINING SAID PARCELS 1, 2 AND 4 ON THE WEST THAT WOULD PASS BY A LEGAL CONVEYANCE OF SAID PARCELS 1, 2 AND 4.

PARCEL 7:

THAT PORTION OF LOT 4 OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, AS CONVEYED TO THE STATE OF CALIFORNIA, BY DEED (STATE PARCEL 43020), RECORDED IN BOOK D-4340 PAGE 165, OFFICIAL RECORDS, BOTH RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, BOUNDED NORTHWESTERLY BY THE FOLLOWING DESCRIBED LINES:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF SAID SOUTHEASTERLY LINE OF PARCEL 1 OF THE LAND CONVEYED TO SAID STATE BY DEED (STATE PARCEL 48019), RECORDED IN BOOK D-4415 PAGE 340 OF OFFICIAL RECORDS, IN SAID OFFICE; THENCE ALONG THE PROLONGATION OF SAID SOUTHEASTERLY LINE NORTH 65° 20' 05" EAST 32.26 FEET TO A TANGENT CURVE CONCAVE SOUTHEASTERLY AND HAVING A RADIUS OF 1973.00 FEET; THENCE NORTHEASTERLY ALONG SAID CURVE TO THE SOUTHWESTERLY TERMINUS OF THE SOUTHEASTERLY LINE OF PARCEL 2 OF SAID LAND CONVEYED TO SAID STATE BY SAID DEED (STATE PARCEL 48019) RECORDED IN BOOK D-4415 PAGE 340 OF OFFICIAL RECORDS.

CLTA Preliminary Report Form (Rev 1/1/95)                    Page 8

EXHIBIT "6"-75

Order No.: 603303453-M07

## LEGAL DESCRIPTION
(continued)

ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THE ABOVE DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY GEORGE G. HOLTZ AND JANE R. HOLTZ, IN DEED RECORDED FEBRUARY 15, 1974 AS INSTRUMENT NO. 162 OF OFFICIAL RECORDS.

EXCEPT FROM THE NORTHEASTERLY 62 FEET OF LOT 29, MEASURED ALONG THE NORTHWESTERLY LINE THEREOF, OF THE RESUBDIVISION OF THE TURNER TRACT, IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10 PAGE 26 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND THAT PORTION OF CYPRESS AVENUE ADJOINING SAID LOT 29 ON THE NORTHEAST THAT WOULD PASS BY A LEGAL CONVEYANCE OF SAID LOT 29, ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER ALL OF THE ABOVE DESCRIBED REAL PROPERTY, BUT WITHOUT ANY RIGHT TO PENETRATE USE OR DISTURB THE PROPERTY WITHIN 500 FEET OF THE SURFACE THEREOF, AS RESERVED BY GEORGE G. HOLTZ AND JANE HOLTZ, HUSBAND AND WIFE, IN DEED RECORDED FEBRUARY 15, 1974 AS INSTRUMENT NO. 159 OF OFFICIAL RECORDS.

(B) UNIT 6 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

END OF LEGAL DESCRIPTION

CLTA Preliminary Report Form (Rev 1/1/95)          Page 9

EXHIBIT "6"-76

# EXHIBIT 7
# (Trial Exhibit 107)

## Namco: Kamran Group Receivables

| Property | Borrower | Note Amount | Ref. | Note Date | Namco Funding | Ref. | Funding Date |
|----------|----------|-------------|------|-----------|---------------|------|--------------|
| Marengo | Kamran Group LLC | 3,600,000 | [A] | 6/29/2007 | 200,000 | [A1] | 4/25/2007 |
| | | | | | 200,000 | [A2] | 5/16/2007 |
| | | | | | 3,205,000 | [A3] | 6/27/2007 |
| | | 3,600,000 | | | 3,605,000 | | |
| Walnut Unit 504 | Kamran Group LLC | 1,300,000 | [B] | 9/10/2007 | 300,000 | [B1] | 6/19/2007 |
| | | | | | 1,350,000 | [B2] | 6/28/2007 |
| | | 1,300,000 | | | 1,650,000 | | |
| Walnut Unit 501 | Kamran Group LLC | 600,000 | [C] | 9/10/2007 | 150,000 | [C] | 3/5/2007 |
| Walnut Unit 505 | Kamran Group LLC | 450,000 | [D] | 9/10/2007 | 30,000 | [D1] | 3/30/2007 |
| | | | | | 503,155 | [D2] | 4/27/2007 |
| | | 450,000 | | | 533,155 | | |
| Walnut Unit 1 | Kamran Group Pasadena, Inc. | $5,000,000 | [Ea] | 6/29/2007 | $6,900,000 | [E] | 6/20/2007 |
| | Kamran Group Pasadena, Inc. | 1,700,000 | [Eb] | 9/11/2008 | | | |
| | | 6,700,000 | | | 6,900,000 | | |
| Walnut Unit 502 (Holden) | In Escrow | | | | $125,000 | [F] | 10/27/2006 |
| | Total | $12,650,000 | | | $12,963,155 | | |

3/12/2010  10:39 AM

NAMCO 3038

EXHIBIT "7" –77

2:59 PM
07/05/09
Accrual Basis

# NAMCO CAPITAL GROUP, INC.
## Account QuickReport
### All Transactions

| Type | Date | Num | Name | Source Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| 120.00 · ACCOUNTS RECEIVABLE | | | | | | | | |
| 133.95 · Tranmar Properties, LLC | | | | | | | | |
| General J... | 8/4/2004 | | Tranmar Properties... | Tranmar Properties... | VOID; | 999.00 · Susp... | 0.00 | 0.00 |
| General J... | 8/4/2004 | | Tranmar Properties... | | Purchase of L... | 999.00 · Susp... | 2,981,720.24 | 2,981,720.24 |
| Check | 8/16/2004 | 45499 | Tranmar Properties... | CL@S INFORMAT... | Delaware SL... | 101.00 · Secu... | 86.00 | 2,981,806.24 |
| Check | 8/18/2004 | 45500 | Tranmar Properties... | CL@S INFORMAT... | CA filing LLC... | 101.00 · Secu... | 200.00 | 2,982,006.24 |
| Check | 10/25/2004 | 45728 | Tranmar Properties... | SECRETARY OF ... | VOID; LLC 1... | 101.00 · Secu... | 0.00 | 2,982,006.24 |
| Check | 10/25/2004 | 45729 | Tranmar Properties... | Franchise Tax Board | FTB 3522 20... | 101.00 · Secu... | 800.00 | 2,982,806.24 |
| Deposit | 11/16/2004 | | Coach 20 LLC | American Commer... | loan repaym... | 101.01 · Secu... | -1,405,732.00 | 1,577,074.24 |
| Check | 11/30/2004 | 45800 | Tranmar Properties... | NATIONAL REGIS... | filing fee ren... | 101.00 · Secu... | 64.00 | 1,577,138.24 |
| Check | 12/22/2004 | 46022 | Tranmar Properties... | SECRETARY OF ... | LLC12R filin... | 101.00 · Secu... | 20.00 | 1,577,158.24 |
| Check | 1/11/2005 | 46122 | Tranmar Properties... | CL@S INFORMAT... | DE filing, Sta... | 101.00 · Secu... | 372.00 | 1,577,530.24 |
| General J... | 10/1/2005 | | Tranmar Properties... | Tranmar Properties... | adjust merco... | 999.00 · Susp... | 77,216.08 | 1,654,746.32 |
| Deposit | 10/5/2005 | | Tranmar Properties... | Commerce Escrow | loan repaym... | 101.00 · Secu... | -1,862,446.29 | -207,699.97 |
| Check | 11/23/2005 | 47970 | Tranmar Properties... | NATIONAL REGIS... | DE LLC yr 2... | 101.00 · Secu... | 112.00 | -207,587.97 |
| General J... | 12/5/2005 | | Tranmar Properties... | Tranmar Properties... | Funds borro... | 999.00 · Susp... | 1,400,000.00 | 1,192,412.03 |
| Check | 12/7/2005 | | Tranmar Properties... | Lawyers Title Com... | loan re: Escf... | 101.00 · Secu... | 410,030.00 | 1,602,442.03 |
| General J... | 12/7/2005 | | Tranmar Properties... | | | 999.00 · Susp... | 800,000.00 | 2,402,442.03 |
| General J... | 12/7/2005 | | Tranmar Properties... | | | 999.00 · Susp... | 850,000.00 | 3,252,442.03 |
| Check | 12/16/2005 | 48159 | Tranmar Properties... | CL@S INFORMAT... | CA filing (LL... | 101.00 · Secu... | 42.00 | 3,252,484.03 |
| General J... | 12/31/2005 | | Tranmar Properties... | | Reclass Na... | 899.00 · Susp... | -3,460,164.00 | -207,699.97 |
| General J... | 12/31/2005 | | Tranmar Properties... | Tranmar Properties... | Write off Tra... | 505.00 · Inter... | 207,699.97 | 0.00 |
| General J... | 1/8/2006 | | Tranmar Properties... | Tranmar Properties... | Legal fees Tr... | 951.00 · Profe... | 264.00 | 264.00 |
| Check | 3/10/2006 | | Tranmar Properties... | Chicago Title Co | Loan | 101.00 · Secu... | 1,191,899.59 | 1,192,163.69 |
| Check | 3/14/2006 | 48750 | Tranmar Properties... | United Commercial... | loan | 101.00 · Secu... | 6,000.00 | 1,198,163.69 |
| Check | 3/27/2006 | 48826 | Tranmar Properties... | LOS ANGELES C... | Property Tax... | 101.00 · Secu... | 12,331.85 | 1,210,495.44 |
| Check | 3/28/2006 | Wire ... | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 50,000.00 | 1,260,495.44 |
| Check | 3/30/2006 | Wire ... | Tranmar Properties... | Fidelity National Til... | Loan | 101.00 · Secu... | 1,764,308.59 | 3,024,804.03 |
| Check | 3/30/2006 | Wire ... | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 327,330.00 | 3,352,134.03 |
| General J... | 3/31/2006 | | Tranmar Properties... | | namco pmts... | 999.00 · Susp... | -3,352,134.03 | 0.00 |
| Check | 4/13/2006 | 48993 | Tranmar Properties... | Franchise Tax Board | Tranmar Pro... | 101.00 · Secu... | 800.00 | 800.00 |
| Check | 4/27/2006 | 49121 | Tranmar Properties... | Tranmar Properties... | Money Trans... | 101.00 · Secu... | 24,000.00 | 24,800.00 |
| Check | 5/18/2006 | 49245 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 6,000.00 | 30,800.00 |
| Check | 6/31/2006 | 49310 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 6,000.00 | 36,800.00 |
| Check | 6/27/2006 | 49484 | Tranmar Properties... | Namco Insurance ... | Insurance bill... | 101.00 · Sect... | 1,023.61 | 39,823.61 |
| General J... | 6/30/2006 | | Tranmar Properties... | | Namco pmts... | 999.00 · Susp... | -39,823.61 | 0.00 |
| Deposit | 7/3/2006 | Dep | Tranmar Properties... | Tranmar Properties... | Loan | 101.01 · Secu... | -2,300,000.00 | -2,300,000.00 |
| General J... | 7/3/2006 | | Tranmar Properties... | Tranmar Properties... | Reclass to B... | 999.00 · Susp... | 2,300,000.00 | 0.00 |
| Check | 9/24/2006 | 49833 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 80,000.00 | 80,000.00 |
| Check | 10/11/2006 | 50119 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 5,000.00 | 85,000.00 |
| Check | 10/17/2006 | 50161 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 50,000.00 | 135,000.00 |
| Check | 10/27/2006 | Wire ... | United General Titl... | United General Titl... | Investment w... | 101.00 · Secu... | 125,030.00 | 260,030.00 |
| Check | 10/30/2006 | 50222 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 4,000.00 | 264,030.00 |
| Check | 12/11/2006 | 50505 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 20,000.00 | 284,030.00 |
| Check | 12/12/2006 | 50525 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 20,000.00 | 304,030.00 |
| Deposit | 12/26/2006 | Dep | Tranmar Properties... | Tranmar Properties... | Loan Repay... | 101.00 · Secu... | -24,000.00 | 280,030.00 |
| General J... | 12/31/2006 | | Tranmar Properties... | | Reclass Na... | 999.00 · Susp... | -280,030.00 | 0.00 |
| Check | 2/28/2007 | 51051 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 65,000.00 | 65,000.00 |
| Check | 3/5/2007 | Wire ... | United General Titl... | United General Titl... | 25 W Walnut... | 101.00 · Secu... | 150,030.00 | 215,030.00 |
| Check | 3/30/2007 | Wire ... | United General Titl... | Commerce Escrow | 25 w.Walnut... | 101.00 · Secu... | 30,000.00 | 245,030.00 |
| General J... | 3/31/2007 | | Tranmar Properties... | | Reclass Na... | 999.00 · Susp... | -245,030.00 | 0.00 |
| Check | 4/25/2007 | Wire ... | Tranmar Properties... | Commerce Escrow | Deposit on 8... | 101.00 · Secu... | 200,000.00 | 200,000.00 |
| Check | 4/27/2007 | Wire ... | Tranmar Properties... | Commerce Escrow | Deposit - 25 ... | 101.00 · Secu... | -503,154.60 | 703,154.60 |
| Check | 5/18/2007 | Wire ... | Tranmar Properties... | Commerce Escrow | 810-820 Mar... | 101.00 · Secu... | 200,000.00 | 903,154.60 |
| Check | 5/19/2007 | Wire ... | Tranmar Properties... | Commerce Escrow | Deposit - 25 ... | 101.00 · Secu... | 300,000.00 | 1,203,164.60 |
| Check | 6/20/2007 | 51941 | Tranmar Properties... | Fox Consulting Gr... | Purchase - 2... | 101.00 · Secu... | 6,900,000.00 | 8,103,154.60 |
| Check | 6/27/2007 | Wire ... | Tranmar Properties... | Commerce Escrow | Escrow clos... | 101.00 · Secu... | 3,205,000.00 | 11,305,154.60 |
| Check | 6/29/2007 | Wire ... | Tranmar Properties... | Commerce Escrow | Escrow Dep ... | 101.00 · Secu... | 1,350,000.00 | 12,655,154.60 |
| General J... | 6/30/2007 | | Tranmar Properties... | | Reclass Na... | 999.00 · Susp... | -12,655,154.60 | 0.00 |
| Check | 7/31/2007 | 52153 | Tranmar Properties... | Fox Consulting Gr... | Loan to Tran... | 101.00 · Secu... | 488,685.35 | 488,685.35 |
| Deposit | 8/14/2007 | Dep | Tranmar Properties... | Tranmar Properties... | Loan Repay... | 101.00 · Secu... | -140,000.00 | 348,685.35 |
| Check | 9/4/2007 | 52413 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 10,000.00 | 358,685.35 |
| Check | 9/12/2007 | 52470 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 310,000.00 | 668,685.35 |
| Check | 9/17/2007 | 52477 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 350,000.00 | 1,018,685.35 |
| General J... | 9/30/2007 | | Tranmar Properties... | | Reclass Tra... | 999.00 · Susp... | -1,018,685.35 | 0.00 |
| Check | 10/5/2007 | 52611 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 10,000.00 | 10,000.00 |
| Check | 11/5/2007 | 52763 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 10,000.00 | 20,000.00 |
| Check | 12/10/2007 | 53008 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 65,000.00 | 85,000.00 |
| Check | 12/18/2007 | 53049 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 13,000.00 | 66,000.00 |
| Check | 12/18/2007 | 53053 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 10,000.00 | 76,000.00 |
| Check | 12/19/2007 | 53064 | Kamran Group, LLC | Kamran Group, LLC | Loan | 101.00 · Secu... | 200,000.00 | 276,000.00 |
| General J... | 12/31/2007 | | Tranmar Properties... | | Reclass Tra... | 999.00 · Susp... | -276,000.00 | 0.00 |
| Check | 2/20/2008 | 53427 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 4,000.00 | 4,000.00 |
| Check | 3/10/2008 | 53562 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 10,000.00 | 14,000.00 |
| Check | 4/7/2008 | 53770 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 35,000.00 | 49,000.00 |
| Check | 4/8/2008 | 53799 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 6,000.00 | 55,000.00 |
| Check | 4/9/2008 | 53805 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 3,500.00 | 58,500.00 |
| Check | 4/10/2008 | 53833 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 60,000.00 | 118,500.00 |
| Check | 4/24/2008 | 53005 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 20,000.00 | 138,500.00 |
| Deposit | 4/30/2008 | Dep | Tranmar Properties... | Tranmar Properties... | loan repaym... | 101.00 · Secu... | -100,000.00 | 38,500.00 |
| Check | 5/20/2008 | 54067 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 10,000.00 | 48,500.00 |
| Check | 6/3/2008 | 54137 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 200,000.00 | 248,500.00 |
| Check | 6/27/2008 | 54279 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 10,000.00 | 258,500.00 |
| General J... | 6/30/2008 | | Tranmar Properties... | | Reclass Tra... | 999.00 · Susp... | -248,500.00 | 10,000.00 |
| Check | 8/1/2008 | 54631 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 25,000.00 | 35,000.00 |
| Check | 8/20/2008 | 54732 | Tranmar Properties... | Tranmar Properties... | Loan | 101.00 · Secu... | 5,000.00 | 40,000.00 |
| Deposit | 12/9/2008 | Dep | Tranmar Properties... | Tranmar Properties... | Loan Repay... | 101.00 · Secu... | -15,000.00 | 25,000.00 |
| General J... | 12/31/2008 | | Tranmar Properties... | Tranmar Properties... | Reclass Tra... | 999.00 · Susp... | -25,000.00 | 0.00 |
| Total 133.95 · Tranmar Properties, LLC | | | | | | | 0.00 | 0.00 |
| Total 120.00 · ACCOUNTS RECEIVABLE | | | | | | | 0.00 | 0.00 |
| TOTAL | | | | | | | 0.00 | 0.00 |

Page 1

EXHIBIT "7" -78

NAMCO 3039

[A]  $3.6m — MARENGO    6/29/07

PROMISSORY NOTE
SECURED BY DEED OF TRUST
(the "Note")

$3,600,000.00

Los Angeles, California
June 29, 2007

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

*[remainder of body text illegible]*

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, repurchase or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

*[illegible block of text]*

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to this Note or any of the Loan Documents and/or the nature of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or terms as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder, or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

*[illegible block of text]*

-1-

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, LLC

BY: David Golban, Manager

-4-

EXHIBIT "7"-79

NAMCO 3040

MARENGO – 6/27/07



## COMMERCE ESCROW COMPANY

1545 Wilshire Blvd., Suite 600, Los Angeles, California 90017
Tel.: (213) 484-0855 (310) 284-5700 (888) 732-6723
Fax (213) 484-0417
COMMERCE ESCROW COMPANY IS LICENSED BY THE DEPARTMENT OF CORPORATIONS
STATE OF CALIFORNIA LICENSE # 963 0684

Buyer's Estimated Closing Statement
Escrow No.: 07-51241-RZ
Estimated Closing Date: JUNE 27, 2007
KAMRAN GROUP, LLC
In escrow with
Nathaniel N. Holden

Property: 810 - 820 N. MARENGO STREET, PASADENA, CA

| | DEBITS | CREDITS |
|---|---|---|
| Total Consideration | $2,840,000.00 | |
| Reimbursement for Development Expenses | $760,000.00 | |
| | 3.6 M | |
| Deposits to escrow: | | |
| On: Deposit on 4-26-07 | | $200,000.00  A₁ |
| On: Deposit on 5-16-07 | NGG | $280,000.00  A₂ |
| Interest Earned | | ??? |
| Now First Trust Deed: | | |
| Title & Escrow Charges: | | |
| ALTA (Lender) Title Policy | | |
| Recording fee | $175.00 | |
| Endorsement | $200.00 | |
| 1/2 Sub-escrow fee | $125.00 | |
| 1/2 escrow fee | $3,250.00 | |
| Loan tie in fee | $250.00 | |
| Messenger fee | $50.00 | |
| Prorations and/or Adjustments: | | |
| Taxes Based on $215.63/6 months @ $1.198/diem | | |
| Fr. 6-27-07   To: 07/01/07 (4 Days) | $4.79 | $0.00 |
| Other charges: | | |
| Estimated amt returned to Buyer at closing | NGG | |
| Approx. balance needed to close | | $3,204,054.79  A₃ |
| **TOTALS** | **$3,604,054.79** | **$3,604,054.79** |

This is a preaudit of your closing. Exact figures will be secure and more information will follow.
Please advise if you have any changes.

Read and approved by:

011 00001 00 L    PAGE:   8
ACCOUNT:   )  1028928   04/30/2007

 **SECURITY PACIFIC BANK**
12121 Wilshire Blvd., Ste. 150 · Los Angeles, CA 90025

NAMCO CAPITAL GROUP, INC

BUSINESS CHECKING ACCOUNT 1028928

```
- - - - - - - - - -  CHECKS  - - - - - - - - - -
CHECK #..DATE......AMOUNT   CHECK #..DATE......AMOUNT   CHECK #..DATE......AMOUNT
  51554 04/26      160.97    51594*04/26    8,500.00     51600 04/26  7000,000.00
  51555 04/26    1,766.72    51596*04/27   45,000.00     51601 04/27   100,000.00
  51556*04/26     167.90     51598 04/27   50,000.00
  51558*04/27   3,829.99     51599 04/26   20,000.00
```

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE

```
- - - - - - - - - - OTHER DEBITS - - - - - - - - - -
```

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| WIRE TRANSFER DEBIT | 04/02 | 20,030.00 |
| WIRE TRANSFER DEBIT | 04/02 | 100,030.00 |
| WIRE TRANSFER DEBIT | 04/02 | 245,030.00 |
| Wire to United Building Management | 04/03 | 437,203.37 |
| Wire to Parham Minoo | 04/05 | 200,030.00 |
| Wire to First American Title | 04/06 | 200,030.00 |
| PAYCHEX ETR-INVOICE X22874300024825 | 04/10 | 154.02 |
| Wire to Cancam Properties LLC | 04/11 | 75,377.22 |
| WIRE TRANSFER DEBIT | 04/12 | 100,030.00 |
| WIRE TRANSFER DEBIT | 04/12 | 228,255.11 |
| WIRE TRANSFER DEBIT | 04/12 | 228,255.11 |
| WIRE TRANSFER DEBIT | 04/12 | 228,255.11 |
| WIRE TRANSFER DEBIT | 04/12 | 259,479.23 |
| PAYCHEX TPS TAXES 0027232216293 | 04/13 | 22,693.69 |
| Wire to Daniel Klaristenfield | 04/16 | 5,030.00 |
| Wire to Barbara M Sheedy | 04/16 | 170,030.00 |
| Wire to Brenden Broumand | 04/17 | 6,530.00 |
| Wire to Ezri Namvar | 04/17 | 15,030.00 |
| Wire to Angel Echevarria | 04/17 | 30,030.00 |
| Wire to Louis Kestenbaum | 04/17 | 500,030.00 |
| Wire to First American Title | 04/17 | 1,000,030.00 |
| Wire to Morad Ben Neman & Sion Neman | 04/18 | 500,030.00 |
| Wire to Morad Ben Neman & Sion Neman | 04/18 | 1,500,030.00 |
| wire to Shaw Blackstone LLC | 04/20 | 300,030.00 |
| Wire to Exchangepoint Properties LLC | 04/20 | 1,700,030.00 |
| Wire to Koorosh Gidanian | 04/25 | 29,030.00 |
| Wire to Commerce Escrow | 04/25 | 200,030.00 |
| Wire to Rew De Soto Investments | 04/25 | 201,920.00 |
| Wire to LTLR Inc | 04/25 | 600,030.00 |
| Wire to Commerce Escrow | 04/27 | 503,184.60 |
| Wire to Westland Development | 04/27 | 2,400,030.00 |
| Wire to Commerce Escrow | 04/27 | 6,450,030.00 |
| Wire to Commerce Escrow | 04/30 | 200,030.00 |
| Wire to Merrill Lynch Mortgage | 04/30 | 344,030.00 |

*** CONTINUED ***

 

EXHIBIT "7"-81

NAMCO 3042

011 00001 00  PAGE:  8
ACCOUNT:  ) 1028928  05/31/2007

 **SECURITY PACIFIC BANK**
12121 Wilshire Blvd., Ste. 1150 · Los Angeles, CA 90025

NAMCO CAPITAL GROUP, INC

=================================================================

BUSINESS CHECKING ACCOUNT 1028928

=================================================================

– – – – – – – OTHER DEBITS – – – – – – –

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| Wire to Safco Holding | 05/02 | 100,030.00 |
| Wire to Advance Title Co | 05/02 | 300,030.00 |
| Wire to David Pourbaba | 05/03 | 200,030.00 |
| Wire to 87 Pedria LLC | 05/08 | 50,030.00 |
| Wire to Arlington 360 Assos/Burton Buckner Assoc | 05/08 | 70,562.03 |
| Wire to Lancam Properties | 05/08 | 72,946.67 |
| Wire to Burton 25/Burtonam Properties | 05/08 | 129,442.14 |
| Wire to Republic Title of Texas | 05/08 | 250,030.00 |
| Wire to United Building Mgt | 05/08 | 290,030.00 |
| Wire to Republic Title of Texas | 05/08 | 750,030.00 |
| Wire to Cardinal Pacific Escrow | 05/09 | 500,030.00 |
| Wire to Nam 5 | 05/09 | 1,500,030.00 |
| PAYCHEX EIB INVOICE X23166100015824 | 05/10 | 162.77 |
| Wire to Nam 5 LLC | 05/10 | 1,500,000.00 |
| Wire to Chicago Title | 05/11 | 50,030.00 |
| Wire to EMAX Escrow | 05/11 | 100,030.00 |
| Wire to Parisa Al Hashim | 05/11 | 500,030.00 |
| 771669 INTERNET TRANSFER TO CHECKING 1717626 ON 5/11/07 AT 14:07 | 05/11 | 8,900,000.00 |
| Wire to Chicago Title Agency | 05/14 | 50,030.00 |
| Wire to First American Title | 05/14 | 200,030.00 |
| Wire to Ezri Namvar | 05/15 | 15,030.00 |
| PAYCHEX TPS TAXES 0027232216435 | 05/15 | 21,748.69 |
| Wire to First American Title | 05/15 | 3,175,030.00 |
| Wire to First American Title | 05/15 | 8,120,404.75 |
| Wire to Commerce Escrow Co | 05/16 | 200,030.00 |
| Wire to Wilshire Ardmore | 05/17 | 700,030.00 |
| 632781 INTERNET TRANSFER TO CHECKING 1717626 ON 5/18/07 AT 14:25 | 05/18 | 5,000,000.00 |
| Wire to Title Independence Co | 05/24 | 100,030.00 |
| Wire to Windmill Market LLC | 05/30 | 25,030.00 |
| Wire to H. David Nahai | 05/30 | 50,030.00 |
| Wire to Westland Group LLC | 05/30 | 53,530.00 |
| Wire to Red Feather LLC | 05/30 | 82,030.00 |
| Wire to Flamingo 26 LLC | 05/30 | 126,930.00 |
| Wire to Julius Klein | 05/30 | 390,040.00 |
| Wire to Beverly Hills Escrow | 05/30 | 500,030.00 |
| PAYCHEX TPS TAXES 0027232216513 | 05/31 | 21,728.52 |

– – – – – – – DAILY BALANCE – – – – – – –

| DATE..........BALANCE | DATE..........BALANCE | DATE..........BALANCE |
|---|---|---|
| 05/01  5,239,552.09 | 05/02  3,395,477.89 | 05/03  2,333,740.42 |

\* \* \* C O N T I N U E D \* \* \*

 **FDIC**

 Equal Housing LENDER

EXHIBIT "7"-82

**NAMCO 3043**



011 00001 00   PAGE:   7
ACCOUNT:   ) 1028928   06/29/2007

## SECURITY PACIFIC BANK
12121 Wilshire Blvd., Ste. 1150 • Los Angeles, CA 90025

NAMCO CAPITAL GROUP, INC

=========================================================================

BUSINESS CHECKING ACCOUNT 1028928

=========================================================================

- - - - - - - - OTHER DEBITS - - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| Wire to First American Title | 06/11 | 72,030.00 |
| Wire to West Exchange Inc | 06/11 | 1,000,030.00 |
| Wire to United Building Management | 06/12 | 150,030.00 |
| Wire to United Building Management | 06/12 | 200,030.00 |
| Wire to Russ August and Kabat Client Trust | 06/12 | 208,030.00 |
| Wire to La Jolla Pacific Dev | 06/13 | 250,030.00 |
| Wire to Cathay Bank | 06/15 | 13,030.00 |
| PAYCHEX TPS TAXES 0027232216588 | 06/15 | 21,689.44 |
| Wire to Fiftyninth and Broadway LLC | 06/15 | 32,530.00 |
| Wire to Thomas J Hall, Esq | 06/15 | 65,030.00 |
| Wire to Chicago Title | 06/15 | 100,030.00 |
| Wire to Jeffry Belle | 06/15 | 200,030.00 |
| Wire to Dynasty 1 Tower LLC | 06/18 | 150,030.00 |
| Wire to Arizona Commercial Group LLC | 06/18 | 167,530.00 |
| Wire to Commerce Escrow | 06/19 | 300,030.00 |
| Wire to Lancaam Properties LLC | 06/20 | 75,377.22 |
| Wire to West Exchange Inc | 06/20 | 1,806,075.17 |
| Wire to EastContinental Gems | 06/21 | 18,030.00 |
| Wire to OceanAtlantic Chicago | 06/21 | 25,030.00 |
| Wire to H David NAhai | 06/21 | 35,030.00 |
| Wire to Manaso Investment | 06/21 | 1,234,681.99 |
| RETURNED DEPOSIT ITEMS | 06/22 | 15,312.50 |
| Wire to Brian Novack MD | 06/27 | 200,030.00 |
| Wire to Commerce Escrow | 06/27 | 3,205,030.00 |
| wire to H. David Nahai | 06/28 | 150,030.00 |
| wire to Dynasty 1 Tower LLC | 06/28 | 1,000,030.00 |
| wire to Commerce escrow | 06/28 | 3,500,030.00 |
| PAYCHEX TPS TAXES 0027232216658 | 06/29 | 21,044.77 |
| Wire to Greenberg Traurig | 06/29 | 65,030.00 |
| Wire to Lawyers Title | 06/29 | 200,030.00 |
| Wire to Commerce Escrow | 06/29 | 1,350,030.00 |

- - - - - - - DAILY BALANCE - - - - - - - -

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 06/01 | 5,200,148.58 | 06/12 | 2,088,074.78 | 06/21 | 916,817.78 |
| 06/04 | 3,801,288.71 | 06/13 | 2,158,060.94 | 06/22 | 789,886.69 |
| 06/05 | 4,008,822.47 | 06/14 | 1,403,110.46 | 06/25 | 656,780.84 |
| 06/06 | 3,530,152.61 | 06/15 | 686,724.45 | 06/26 | 6,311,419.74 |
| 06/07 | 3,358,539.93 | 06/18 | 5,336,960.25 | 06/27 | 2,964,913.59 |
| 06/08 | 2,790,002.94 | 06/19 | 2,137,160.19 | 06/28 | 5,531,418.57 |
| 06/11 | 1,553,052.42 | 06/20 | 1,839,606.91 | 06/29 | 1,988,842.34 |



FDIC



Equal Housing LENDER

EXHIBIT "7"-83

NAMCO 3044

[B] $1.3m — #504    9/10/07

PROMISSORY NOTE
SECURED BY DEED OF TRUST
(the "Note")

$1,300,000.00

Los Angeles, California
September 10, 2007

MAKER:

Kamran Group, LLC

BY: David Gottar, Manager

EXHIBIT "7"-84

NAMCO 3045



**COMMERCE ESCROW COMPANY**
4590 MacArthur Blvd., Suite 285, Newport Beach, California 92660
TELEPHONE: (949) 870-3300 (213) 484-0855 (310) 284-5700 (888) 432-6723
Fax 949) 670-3333

COMMERCE ESCROW COMPANY IS LICENSED BY THE DEPARTMENT OF CORPORATIONS
STATE OF CALIFORNIA, LICENSE # 063 0884

Buyer's Closing Statement
Escrow No. 07-20129A-LC
Closing Date: July 6, 2007
KAMRAM GROUP, INC.
In escrow with
THE DAVIS 1998 CHARITABLE REMAINDER UNITRUST DATED 12/29/98

Property: 25 Walnut St., Unit 504, Pasadena, Ca

| | DEBITS | CREDITS |
|---|---|---|
| Total Consideration | $1,650,000.00 | |
| Deposits to escrow: | | $300,000.00 |
| | | $1,350,000.00 |
| | | $6,000.00 |
| | | $1,800.00 |
| Title & Escrow Charges: | | |
| CLTA Owner's Title Policy | $2,864.00 | |
| Recording fee | $17.00 | |
| All escrow fee | $2,500.00 | |
| Messenger fee | $125.00 | |
| Documentary Transfer Tax | $1,815.00 | |
| Prorations: | | |
| 1st 1/2 of 2007-2008 Taxes Based on 2nd 1/2 of 2006-2007 Taxes fr 7-1-07 to 7-6-07 | | $47.75 |
| Other charges: | | |
| Amt returned to Buyer at closing | $526.75 | |
| | | $0.00 |
| TOTALS | $1,657,847.75 | $1,657,847.75 |

SAVE FOR INCOME TAX PURPOSES

EXHIBIT "7"-85

NAMCO 3046

011 00001 00            PAGE:      7
ACCOUNT:          )   1028928   06/29/2007

# SECURITY PACIFIC BANK
12121 Wilshire Blvd., Ste. 150 · Los Angeles, CA 90025

NAMCO CAPITAL GROUP, INC

================================================================

BUSINESS CHECKING ACCOUNT 1028928

================================================================

– – – – – – – – OTHER DEBITS – – – – – – – –

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| Wire to First American Title | 06/11 | 72,030.00 |
| Wire to West Exchange Inc | 06/11 | 1,000,030.00 |
| Wire to United Building Management | 06/12 | 150,030.00 |
| Wire to United Building Management | 06/12 | 200,030.00 |
| Wire to Russ August and Kabat Client Trust | 06/12 | 208,030.00 |
| Wire to La Jolla Pacific Dev | 06/13 | 250,030.00 |
| Wire to Cathay Bank | 06/15 | 13,030.00 |
| PAYCHEX TPS TAXES 0027232216588 | 06/15 | 21,689.44 |
| Wire to Fiftyninth and Broadway LLC | 06/15 | 32,530.00 |
| Wire to Thomas J Hall, Esq | 06/15 | 65,030.00 |
| Wire to Chicago Title | 06/15 | 100,030.00 |
| Wire to Jeffry Belle | 06/15 | 200,030.00 |
| Wire to Dynasty 1 Tower LLC | 06/18 | 150,030.00 |
| Wire to Arizona Commercial Group LLC | 06/18 | 167,530.00 |
| Wire to Commerce Escrow | 06/19 | 300,030.00 |
| Wire to Lancaam Properties LLC | 06/20 | 75,377.22 |
| Wire to West Exchange Inc | 06/20 | 1,806,075.17 |
| Wire to Easte Continental Gems | 06/21 | 18,030.00 |
| Wire to Ocean Atlantis Chicago | 06/21 | 25,030.00 |
| Wire to H David Nahai | 06/21 | 35,030.00 |
| Wire to Manaso Investment | 06/21 | 1,234,681.99 |
| RETURNED DEPOSIT ITEMS | 06/22 | 15,312.50 |
| Wire to Brian Novack MD | 06/27 | 200,030.00 |
| Wire to Commerce Escrow | 06/27 | 3,205,030.00 |
| wire to H. David Nahai | 06/28 | 150,030.00 |
| wire to Dynasty 1 Tower LLC | 06/28 | 1,000,030.00 |
| wire to Commerce escrow | 06/28 | 3,500,030.00 |
| PAYCHEX TPS TAXES 0027232216658 | 06/29 | 21,044.77 |
| Wire to Greenberg Traurig | 06/29 | 65,030.00 |
| Wire to Lawyers Title | 06/29 | 200,030.00 |
| Wire to Commerce Escrow | 06/29 | 1,350,030.00 |

– – – – – – – – DAILY BALANCE – – – – – – – –

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 06/01 | 5,200,148.58 | 06/12 | 2,088,074.78 | 06/21 | 916,817.78 |
| 06/04 | 3,801,288.71 | 06/13 | 2,158,060.94 | 06/22 | 789,886.69 |
| 06/05 | 4,008,822.47 | 06/14 | 1,403,110.46 | 06/25 | 656,780.84 |
| 06/06 | 3,530,152.61 | 06/15 | 686,724.45 | 06/26 | 6,311,419.74 |
| 06/07 | 3,358,539.93 | 06/18 | 5,336,960.25 | 06/27 | 2,964,913.59 |
| 06/08 | 2,790,002.94 | 06/19 | 2,137,160.19 | 06/28 | 5,531,418.57 |
| 06/11 | 1,553,052.42 | 06/20 | 1,839,606.91 | 06/29 | 1,988,842.34 |

 FDIC

 Equal Housing LENDER

EXHIBIT "7"-86

**NAMCO 3047**

C  $600K     #501      9/10/07

PROMISSORY NOTE
SECURED BY DEED OF TRUST
(the "Note")

$600,000.00

Los Angeles, California
September 10, 2007



MAKER:

Kamran Group, LLC

By: David Gobar, Manager

*United General Title Insurance Co*
*National Commercial Division*
1200 Newport Center, Suite 180 · Newport Beach, CA 92660

*Buyer's Estimated Settlement Statement*

Property: 25 West Walnut Street #501, Pasadena, CA

File No: 282512-KT
Officer: Kellie S. Thompson/kst
Settlement Date: 07/03/2007
Disbursement Date: 07/03/2007
Print Date: 7/3/2007, 12:34 PM

Buyer: Kamran Group, LLC
Seller: Gay C. Utier

| Charge Description | Buyer Charge | Buyer Credit |
|---|---|---|
| Consideration: | | |
| Total Consideration | 780,000.00 | |
| | | |
| Deposits in Escrow: | | |
| Receipt No. 8003649 on 03/05/2007 by David J. Golkar | | 150,000.00 |
| Receipt No. 80031008 on 07/02/2007 by Kamran Group, LLC | | 631,203.73 |
| | | |
| Prorations: | | |
| 2007/08 1st Installment County Tax 07/01/07 to 07/03/07 @5989.83/semi | | 16.27 |
| | | |
| Title/Escrow Charges to: | | |
| Closing-Escrow Fee - United General Title Insurance Co National Commercial Division | 710.00 | |
| Wire Transfer Service - United General Title Insurance Co National Commercial Division | 25.00 | |
| Overnight Delivery Service - United General Title Insurance Co National Commercial Division | 35.00 | |
| | | |
| Cash (X To) Buyer/Borrower | 450.00 | |
| | | |
| Totals | 781,220.00 | 781,220.00 |

Notice - This Estimated Settlement Statement is subject to changes, corrections or additions at the time of final computation of the Settlement Statement.

United General Title Insurance Co National Commercial Division, Newport Beach
PR. NATLAC Ofc: 8005 (5684) (kst/kst)
DATE: 07/03/2007 FILE NO. 8008-282512NPB1 SETTLEMENT DATE: 07/03/2007

CHECK NO. 800311204
CHECK AMOUNT: $ 450.00

BUYER: Golkar SELLER: Utier

Property Address: 25 West Walnut Street #501, Pasadena, CA

Buyer Refund

{ Re:

Charge Debits/
buyer raised

Thank you for doing business with United General Title Insurance Co National Commercial Division

Page 1 of 1

EXHIBIT "7"-88

NAMCO 3049

011 00001 00          PAGE:      7
ACCOUNT:     (   )   1028928  03/30/2007



# SECURITY PACIFIC BANK
12121 Wilshire Blvd., Ste. 1350 - Los Angeles, CA 90025

NAMCO CAPITAL GROUP, INC

============================================================

BUSINESS CHECKING ACCOUNT 1028928

============================================================

- - - - - - - - - CHECKS - - - - - - - - - -

| CHECK #..DATE......AMOUNT | CHECK #..DATE......AMOUNT | CHECK #..DATE......AMOUNT |
|---|---|---|
| 51259 03/30        134.55 | 51267 03/30        28.52 | 51275 03/27     1,000.00 |
| 51260*03/30      1,329.75 | 51268 03/27     5,000.00 | 51276 03/29     6,000.00 |
| 51262 03/26     50,000.00 | 51269 03/30     8,371.82 | 51277*03/30   151,810.44 |
| 51263 03/27     40,000.00 | 51270 03/27    40,000.00 | 51293*03/30   375,000.00 |
| 51264*03/29      1,500.00 | 51271 03/27    20,000.00 | 51303 03/30     7,604.17 |
| 51266 03/30        800.00 | 51272*03/27   250,000.00 | |

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE

- - - - - - - - OTHER DEBITS - - - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| WIRE TRANSFER DEBIT | 03/01 | 280,030.00 |
| WIRE TRANSFER DEBIT | 03/01 | 360,066.85 |
| WIRE TRANSFER DEBIT | 03/01 | 5,000,030.00 |
| WIRE TRANSFER DEBIT | 03/02 | 25,030.00 |
| WIRE TRANSFER DEBIT | 03/02 | 53,510.00 |
| WIRE TRANSFER DEBIT | 03/02 | 100,030.00 |
| WIRE TRANSFER DEBIT | 03/02 | 100,030.00 |
| WIRE TRANSFER DEBIT | 03/02 | 150,030.00 |
| WIRE TRANSFER DEBIT | 03/05 | 150,030.00 |
| WIRE TRANSFER DEBIT | 03/07 | 38,072.53 |
| WIRE TRANSFER DEBIT | 03/07 | 45,723.67 |
| WIRE TRANSFER DEBIT | 03/07 | 264,030.00 |
| WIRE TRANSFER DEBIT | 03/07 | 1,700,030.00 |
| Wire to Westland Group plus fee | 03/09 | 133,974.33 |
| Wire to Marc Mirbod plus fee | 03/09 | 500,030.00 |
| PAYCHEX EIB INVOICE X22576100007048 | 03/12 | 156.64 |
| WIRE TRANSFER DEBIT | 03/12 | 1,575,728.13 |
| WIRE TRANSFER DEBIT | 03/13 | 13,030.00 |
| WIRE TRANSFER DEBIT | 03/13 | 300,030.00 |
| WIRE TRANSFER DEBIT | 03/13 | 650,030.00 |
| WIRE TRANSFER DEBIT | 03/13 | 1,000,030.00 |
| WIRE TRANSFER DEBIT | 03/14 | 30,030.00 |
| WIRE TRANSFER DEBIT | 03/14 | 150,030.00 |
| WIRE TRANSFER DEBIT | 03/14 | 835,030.00 |
| PAYCHEX TPS TAXES 0027232216150 | 03/15 | 23,764.97 |
| WIRE TRANSFER DEBIT | 03/15 | 1,250,030.00 |
| WIRE TRANSFER DEBIT | 03/16 | 68,085.56 |
| RETURNED DEPOSIT ITEMS | 03/21 | 30,000.00 |
| WIRE TRANSFER DEBIT | 03/23 | 150,030.00 |
| Wire to Rafi Abrishami | 03/26 | 10,030.00 |
| Wire to Chicago Title | 03/26 | 100,030.00 |
| Wire to Har-Black Canyon LLC | 03/28 | 50,030.00 |

* * * CONTINUED * * *





EXHIBIT "7"-89

NAMCO 3050

D  $450K   #505   9/10/07

**PROMISSORY NOTE**
**SECURED BY DEED OF TRUST**
(the "Note")

$450,000.00

Los Angeles, California
September 10, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, indemnion, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $3,750.00 per month, in arrears, commencing on the 3rd day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on September 10, 2008, at which time the full balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with its paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right of any other right.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request thereof by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate.

-3-

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note(and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodstem Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described/defined in the Deed of Trust. Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

-2-

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, LLC

Dr. David Delijani-Manager

-4-

EXHIBIT "7" -90

NAMCO 3051



# COMMERCE ESCROW COMPANY

4590 MAC ARTHUR BLVD., SUITE 295, NEWPORT BEACH, CA 92660
TEL: (949) 870-3300 / (888) 732-6723 / FAX: (949) 870-3333

COMMERCE ESCROW COMPANY IS LICENSED BY THE DEPARTMENT OF CORPORATIONS
STATE OF CALIFORNIA. LICENSE # 963 0884

**BUYER'S FINAL SETTLEMENT STATEMENT**
Escrow Officer: Luisa P. Chi
Escrow No. 07-20091-LC
Statement Date: April 30, 2007
Closing Date: April 30, 2007
Kamran Group, LLC
In escrow with
Sylvia Gordon, Trustee of the Sylvia Gordon Declaration of Trust dated April 27, 1978

Property Address:    25 West Walnut, #188, Pasadena, CA
#505

|  | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** |  |  |
| Total Consideration | 530,000.00 |  |
| Deposit from Namco Capital Group Inc. |  | 30,000.00 |
| Deposit from Wire: Namco Capital Group, Inc. |  | 503,154.60 |
| Interest earned on deposit |  | 58.77 |
| **TITLE/TAXES/RECORDING CHARGES** |  |  |
| Owners Title Policy Fee to UNTIED GENERAL TITLE INSURANCE CO. | 1,306.00 |  |
| Recording Grant Deed | 37.00 |  |
| Documentary Transfer Tax | 583.00 |  |
| **ESCROW CHARGES** |  |  |
| Escrow Fee | 1,000.00 |  |
| **PRORATIONS/ADJUSTMENTS** |  |  |
| 2nd half 2006-2007 at $473.91/semi-annually from 04/30/2007 to 07/01/2007 | 160.60 |  |
| **OTHER DEBITS/CREDITS** |  |  |
| Commerce Escrow Company for Messenger Fee | 55.00 |  |
| Refund | 71.77 |  |
| TOTAL | $ 533,213.37 | $ 533,213.37 |

SAVE THIS STATEMENT FOR INCOME TAX PURPOSES

EXHIBIT "7"-91

**NAMCO 3052**

011 00001 00      PAGE:      8
ACCOUNT:   (   1028928  03/30/2007

**S SECURITY PACIFIC BANK**
12121 Wilshire Blvd., Ste. 1150 · Los Angeles, Ca. 90025

NAMCO CAPITAL GROUP, INC

BUSINESS CHECKING ACCOUNT 1028928

- - - - - - - - OTHER DEBITS - - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| Wire to Chicago Title | 03/28 | 50,030.00 |
| Wire to Commonwealth Land Title | 03/28 | 1,805,030.00 |
| Wire to Madeline Levy | 03/29 | 20,030.00 |
| Wire to Stewart Title | 03/29 | 201,830.00 |
| Wire to Fidelity Title | 03/29 | 1,959,030.00 |
| Wire to Stewart Title of Nevada | 03/29 | 2,206,430.00 |
| Wire to First American Title | 03/29 | 3,300,030.00 |
| PAYCHEX TPS TAXES 0027232216226 | 03/30 | 23,716.52 |
| WIRE TRANSFER DEBIT | 03/30 | 30,030.00 |
| WIRE TRANSFER DEBIT | 03/30 | 200,030.00 |

- - - - - - - DAILY BALANCE - - - - - - -

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 03/01 | 2,290,687.20 | 03/13 | 1,327,217.87 | 03/23 | 1,036,523.35 |
| 03/02 | 6,817,892.49 | 03/14 | 1,126,979.78 | 03/26 | 859,616.26 |
| 03/05 | 10,887,251.85 | 03/15 | 1,348,807.05 | 03/27 | 806,969.94 |
| 03/06 | 11,002,146.83 | 03/16 | 1,023,312.08 | 03/28 | 3,892,568.66 |
| 03/07 | 2,802,460.85 | 03/19 | 989,730.93 | 03/29 | 11,886,654.97 |
| 03/08 | 2,654,407.15 | 03/20 | 1,128,966.74 | 03/30 | 3,668,449.15 |
| 03/09 | 2,974,483.38 | 03/21 | 1,297,165.82 | | |
| 03/12 | 1,423,963.34 | 03/22 | 1,065,897.95 | | |

SECURITY PACIFIC





EXHIBIT "7"-92

**NAMCO 3053**



011 00001 00 L      PAGE:      8
ACCOUNT:          )      1028928  04/30/2007

**SECURITY PACIFIC BANK**
12121 Wilshire Blvd., Ste. 150 - Los Angeles, CA 90025

NAMCO CAPITAL GROUP, INC

BUSINESS CHECKING ACCOUNT 1028928

- - - - - - - - - CHECKS - - - - - - - - - -

| CHECK #..DATE......AMOUNT | CHECK #..DATE......AMOUNT | CHECK #..DATE......AMOUNT |
|---|---|---|
| 51554 04/26     160.97 | 51594*04/26    8,500.00 | 51600 04/26 7000,000.00 |
| 51555 04/26   1,766.72 | 51596*04/27   45,000.00 | 51601 04/27  100,000.00 |
| 51556*04/26     167.90 | 51598 04/27   50,000.00 | |
| 51558*04/27   3,829.99 | 51599 04/26   20,000.00 | |

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE

- - - - - - - - - OTHER DEBITS - - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| WIRE TRANSFER DEBIT | 04/02 | 20,030.00 |
| WIRE TRANSFER DEBIT | 04/02 | 100,030.00 |
| WIRE TRANSFER DEBIT | 04/02 | 245,030.00 |
| Wire to United Building Management | 04/03 | 437,203.37 |
| Wire to Parham Minoo | 04/05 | 200,030.00 |
| Wire to First American Title | 04/06 | 200,030.00 |
| PAYCHEX EIB-INVOICE X22874300024825 | 04/10 | 154.02 |
| Wire to Lancam Properties LLC | 04/11 | 75,377.22 |
| WIRE TRANSFER DEBIT | 04/12 | 100,030.00 |
| WIRE TRANSFER DEBIT | 04/12 | 228,255.11 |
| WIRE TRANSFER DEBIT | 04/12 | 228,255.11 |
| WIRE TRANSFER DEBIT | 04/12 | 228,255.11 |
| WIRE TRANSFER DEBIT | 04/12 | 259,479.23 |
| PAYCHEX TPS TAXES 0027232216293 | 04/13 | 22,693.69 |
| Wire to Daniel Klaristenfield | 04/16 | 5,030.00 |
| Wire to Barbara M Sheedy | 04/16 | 170,030.00 |
| Wire to Brenden Broumand | 04/17 | 6,530.00 |
| Wire to Ezri Namvar | 04/17 | 15,030.00 |
| Wire to Angel Echevarria | 04/17 | 30,030.00 |
| Wire to Louis Kestenbaum | 04/17 | 500,030.00 |
| Wire to First American Title | 04/17 | 1,000,030.00 |
| Wire to Morad Ben Neman & Sion Neman | 04/18 | 500,030.00 |
| Wire to Morad Ben Neman & Sion Neman | 04/18 | 1,500,030.00 |
| wire to Shaw Blackstone LLC | 04/20 | 300,030.00 |
| Wire to Exchangepoint Properties LLC | 04/20 | 1,700,030.00 |
| Wire to Koorosh Gidanian | 04/25 | 29,030.00 |
| Wire to Commerce Escrow | 04/25 | 200,030.00 |
| Wire to Rew De Soto Investments | 04/25 | 201,920.00 |
| Wire to LTLR Inc | 04/25 | 600,030.00 |
| Wire to Commerce Escrow | 04/27 | 503,184.60 |
| Wire to Westland Development | 04/27 | 2,400,030.00 |
| Wire to Commerce Escrow | 04/27 | 6,450,030.00 |
| Wire to Commerce Escrow | 04/30 | 200,030.00 |
| Wire to Merrill Lynch Mortgage | 04/30 | 344,030.00 |

* * * C O N T I N U E D * * *




Equal Housing
LENDER

EXHIBIT "7"-93

NAMCO 3054

$E_A$ | $5.0m | #1 | 6/29/07

**PROMISSORY NOTE**
**SECURED BY DEED OF TRUST**
(the "Note")

$5,000,000.00

Los Angeles, California
June 29, 2004

*[body text illegible]*

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

*[body text illegible]*

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with its interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

*[body text illegible]*

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

*[body text illegible]*

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or Interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kenron Group Pasadena, Inc.
Formerly known as Pasadena Athletic Club, Inc.

BY: David Gokal-President

EXHIBIT "7"-94

NAMCO 3055

$\boxed{E_B}$  $1.7m$   #1   9/11/08

## PROMISSORY NOTE
### SECURED BY DEED OF TRUST
(The "Note")

$1,700,000.00

Los Angeles, California
September 11, 2008

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on December 31, 2008, at which time the balance of the outstanding principal sum of the Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and or dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security hereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or client statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kavaran Group, Pasadena Inc.
Formerly known as Pasadena Athletic Club, Inc.

BY: _____
David Gakian-President

EXHIBIT "7" -95

NAMCO 3056

011 00001 00          PAGE:        6
ACCOUNT:    (   )       1028928   06/29/2007



# SECURITY PACIFIC BANK

12121 Wilshire Blvd., Sta. 1E0 · Los Angeles, CA 90025

NAMCO CAPITAL GROUP, INC

===============================================================================

BUSINESS CHECKING ACCOUNT 1028928

===============================================================================

- - - - - - - - CHECKS - - - - - - - - -

| CHECK #..DATE......AMOUNT | CHECK #..DATE......AMOUNT | CHECK #..DATE......AMOUNT |
|---|---|---|
| 51869 06/14    29,076.62 | 51899*06/25      149.33 | 51934 06/26        53.91 |
| 51870 06/13    50,000.00 | 51901 06/14 16500000.00 | 51935 06/26     3,675.00 |
| 51871 06/15   107,946.93 | 51902 06/20       50.00 | 51936 06/25       125.00 |
| 51872 06/14    31,610.81 | 51903 06/19    11,000.00 | 51937 06/25   140,008.33 |
| 51873 06/15    59,427.04 | 51904 06/20     1,250.00 | 51938 06/25    48,877.78 |
| 51874 06/14       929.17 | 51905 06/20    30,000.00 | 51939 06/25    51,086.11 |
| 51875 06/11     8,000.00 | 51906 06/29       96.00 | 51940 06/22     5,000.00 |
| 51876 06/18     3,500.00 | 51907*06/22    18,113.18 | 51941 06/20  6900,000.00 |
| 51877 06/20       234.42 | 51909*06/19     2,165.00 | 51942*06/21    15,000.00 |
| 51878 06/18       545.06 | 51912 06/15    70,000.00 | 51944 06/29       541.74 |
| 51879 06/15     3,828.00 | 51913 06/21     7,222.22 | 51945 06/26       707.39 |
| 51880 06/22       150.00 | 51914 06/21    15,000.00 | 51946 06/26       780.00 |
| 51881 06/18        38.13 | 51915 06/19    25,000.00 | 51947 06/28     1,092.00 |
| 51882 06/18       400.00 | 51916 06/25    15,312.50 | 51948 06/25       103.20 |
| 51883 06/19       668.75 | 51917 06/18       526.00 | 51949 06/29       594.00 |
| 51884 06/15        15.33 | 51918 06/25    17,713.73 | 51950 06/27     1,077.25 |
| 51885 06/14     3,034.17 | 51919 06/29     6,340.42 | 51951 06/26     1,241.54 |
| 51886 06/12    20,000.00 | 51920 06/26     8,673.75 | 51952 06/26   110,000.00 |
| 51887 06/13    50,116.67 | 51921 06/21     3,000.00 | 51953 06/25    35,000.00 |
| 51888 06/15    10,000.00 | 51922 06/25     6,340.42 | 51954 06/25   300,000.00 |
| 51889 06/14   500,000.00 | 51923 06/19    50,000.00 | 51955 06/29    19,674.24 |
| 51890 06/14    15,000.00 | 51924 06/20    55,000.00 | 51956*06/28       506.50 |
| 51891 06/13    22,500.00 | 51925 06/19  6000,000.00 | 51958*06/26   150,000.00 |
| 51892 06/13  5000,000.00 | 51926 06/20   770,000.00 | 51963 06/29        80.45 |
| 51893 06/14   300,000.00 | 51927 06/22    70,130.00 | 51964 06/28    32,000.00 |
| 51894*06/22     3,478.01 | 51928*06/22    70,478.65 | 51965*06/28   650,000.00 |
| 51896 06/20     1,485.42 | 51930 06/25    14,059.53 | 51967*06/28  8000,000.00 |
| 51897 06/18       179.00 | 51931 06/21     8,883.45 | 51972 06/29  2000,000.00 |
| 51898 06/25       159.00 | 51932*06/26     1,333.33 | |

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE

- - - - - - - - - OTHER DEBITS - - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| Wire to Raymond Kohan | 06/04 | 60,030.00 |
| Wire to Commerce Escrow | 06/04 | 471,030.00 |
| Wire to Arlington 360 Assoc/Burton Buckner | 06/05 | 70,562.03 |
| Wire to Burton 25 LLC | 06/05 | 129,442.14 |
| Wire to United Building Mgt | 06/05 | 309,307.75 |
| Wire to United Building Mgt | 06/05 | 471,433.52 |
| Wire to Saied and Jilla Isaacson Fam Trust | 06/05 | 2,000,030.00 |
| Wire to Nam 5 Ltd | 06/06 | 1,000,000.00 |
| PAYCHEX EIB INVOICE X23516200015683 | 06/11 | 161.42 |

* * * C O N T I N U E D * * *





EqualHousing LENDER

EXHIBIT "7"–96

NAMCO 3057





$6,900,000.00

#51941   6/20/07

EXHIBIT "7"-97

NAMCO 3058

F

#502-HOLDEN



For HOLDEN #502
- NEVER CLOSED
- IN ESCROW

NAMCO 3059

# EXHIBIT 8
# (Trial Exhibit 108)



**YAHOO! MAIL** Classic

Re: Walnut & Fairoak, Pasadena                                           Thursday, November 20, 2008 5:48 PM

**From:** "dgolkar@sbcglobal.net" <dgolkar@sbcglobal.net>
**To:** abeyermian@yahoo.com

This escrow was only opened to handle the lien holders and deliver a free and clear title to the new partner  *[handwritten: ?]*
The property is not being sold
Therefore                                    *[handwritten: finalized Friday (today)*
No escrow is required                        *the Funds in early next week]*
In our side
Hope this clarifies it
Sent via BlackBerry from T-Mobile

---

**From:** Abraham Yermian <abeyermian@yahoo.com>
**Date:** Thu, 20 Nov 2008 15:44:23 -0800 (PST)
**To:** <dgolkar@sbcglobal.net>
**CC:** Dariush Soleimani<dariushsol@aol.com>; Jamshid Baharvar<drbaharvar@yahoo.com>; Morteza
Homayounjam<mhomayounjam@yahoo.com>; Jack Yermian<jayinvestments@hotmail.com>; Faramarz
Masachi<eofhollywood@aol.com>; Faye Sarafian<fayesarafian@yahoo.com>; Mahmood Fatorechi<fatorechi@aol.com>
**Subject:** Re: Walnut & Fairoak, Pasadena
**Mr. Golkar,**
Checking with Escrow , The Escrow officer ( Louisa Chi) has NO knowledge of this Transaction - There is No Contract, No
money in Escrow. Apparently knows nothing.                      *[handwritten: Is funds in Escrow ?]*

**Escrow Tel # (949) 8703302.**

We are very confused. Please clarify ASAP.
Thanks.

Abraham Yermian, President
*1st Trust Deed Mortgage Co.*
Phone: (310) 444-7404 Fax: (310) 444-1801
11022 Santa Monica Blvd. Suite 280
Los Angeles, CA 90025

--- On Thu, 11/20/08, dgolkar@sbcglobal.net <dgolkar@sbcglobal.net> wrote:

> From: dgolkar@sbcglobal.net <dgolkar@sbcglobal.net>
> Subject: Re: Walnut & Fairoak, Pasadena
> To: abeyermian@yahoo.com
> Cc: "Dariush Soleimani" <dariushsol@aol.com>, "Jamshid Baharvar" <drbaharvar@yahoo.com>, "Morteza
> Homayounjam" <mhomayounjam@yahoo.com>, "Faye Sarafian" <fayesarafian@yahoo.com>, "Jack Yermian"
> <jayinvestments@hotmail.com>, "Faramarz Masachi" <eofhollywood@aol.com>
> Date: Thursday, November 20, 2008, 2:33 PM
>
> We are working to close our deal by tomorrow and funding by early next week
> As part of closing we must have every ones. Deed and promissery notes negociated and finalized and in escrow prior
> to the payments released
>
> My attorny is working with some of you to finalize but we may still be short that we need to work out
> I am happy to announce that after over 90 days in our side that the deal is getting concluded
> pending the resolution of all note holders and I need every ones coperation to finally close this transaction
> I appreciate your paitience and understanding
> If you have any question
> Please call me
> Sent via BlackBerry from T-Mobile
>
> ---
> From: Abraham Yermian <abeyermian@yahoo.com>
> Date: Thu, 20 Nov 2008 12:04:29 -0800 (PST)
> To: <dgolkar@sbcglobal.net>
> CC: Dariush Soleimani<dariushsol@aol.com>; Jamshid Baharvar<drbaharvar@yahoo.com>; Morteza
> Homayounjam<mhomayounjam@yahoo.com>; Faye Sarafian<fayesarafian@yahoo.com>; Jack
> Yermian<jayinvestments@hotmail.com>; Faramarz Masachi<eofhollywood@aol.com>

EXHIBIT "8"-99

1-5

From: dgolkar@sbcglobal.net <dgolkar@sbcglobal.net>
Subject: Re: Walnut & Fairoak, Pasadena
To: abeyermian@yahoo.com
Date: Monday, November 17, 2008, 3:00 PM

We are working day and night to get it done
I think it is extremely a bad idea to take such an action since every one is in the first position and we are so
close to get our deal done
It is in every ones best interst to allow this deal happens without any distraction
Whatever happens to EZRI will not impact this deal
So please be patient
We are in final stretches
Thank u for your understanding
Sent via BlackBerry from T-Mobile

From: Abraham Yermian <abeyermian@yahoo.com>
Date: Mon, 17 Nov 2008 11:04:15 -0800 (PST)
To: <dgolkar@sbcglobal.net>
CC: Dariush Soleimani<dariushsol@aol.com>; Jamshid Baharvar<drbaharvar@yahoo.com>; Morteza
Homayounjam<mhomayounjam@yahoo.com>; Faye Sarafian<fayesarafian@yahoo.com>; Jack
Yermian<jayinvestments@hotmail.com>
Subject: Re: Walnut & Fairoak, Pasadena
**Mr. Golkar,**
Thank you for your Email.
As a courtesy to you,and a heads up, our group is all set up to
to initiate the foreclosure & related law suites on Monday November 24, 2008, if your DEAL does not go
through (for any reason) on or before Friday November 21, 2008 .
Please advise.
Thank you.

**Abraham Yermian, President**
_1st Trust Deed Mortgage Co._
Phone: (310) 444-7404 Fax: (310) 444-1801
11022 Santa Monica Blvd. Suite 280
Los Angeles, CA 90025

--- On Thu, 11/13/08, DAVID GOLKAR <_dgolkar@sbcglobal.net_> wrote:

From: DAVID GOLKAR <dgolkar@sbcglobal.net>
Subject: Re: Walnut & Fairoak, Pasadena
To: abeyermian@yahoo.com
Cc: "Morteza Homayounjam" <mhomayounjam@yahoo.com>, "Dariush Soleimani"
<dariushsol@aol.com>, "Jack Yermian" <jayinvestments@hotmail.com>, drbaharvar@yahoo.com,
fayesarafian@yahoo.com
Date: Thursday, November 13, 2008, 4:34 PM

Dear Mr. Yermian

EXHIBIT "8"-100

1-6

> Please let us know the Status of your Transaction with Ezri
> today.
> Thank you.
> Abraham Yermian
>
>
> Abraham Yermian, President
> 1st Trust Deed Mortgage Co.
> Phone: (310) 444-7404 Fax: (310) 444-1801
> 11022 Santa Monica Blvd. Suite 280
> Los Angeles, CA 90025

EXHIBIT "8"-101

1-7

# EXHIBIT 9
# (Trial Exhibit 109)



**Pasadena Mixed Use Development**                              Thursday, December 11, 2008 1:11 PM

**From:** "Shadi Dejam" <shdejam@roxcgi.com>
  **To:** "'Abrahim Yeramian'" <abeyermian@yahoo.com>, "'Morteza Homayounjam'"
    <mhomayounjam@yahoo.com>, "'Jamshid Baharvar'" <drbaharvar@yahoo.com>, "'Jack
    Yermian'" <jayinvestments@hotmail.com>, "'Faye Sarafian'"
    <fayesarafian@yahoo.com>, "'Mahmood Fatorechi' <fatorechi@aol.com>, "'Dariush
    Soleimani'" <dariushsol@aol.com>
  **Cc:** "'Hamid Taba'" <Hamid@namcocapital.com>, dgolkar@roxcgi.com, "'David Golkar'"
    <dgolkar@sbcglobal.net>


Hi Everyone,

Per David Golkar please see the e-mail below.

Thanks,

**Shadi Dejam**
Rox Consulting Group, Inc.
575 Anton Blvd.
Suite 820
Costa Mesa, CA , 92626
Tel: (949) 502-8118
Fax: (949) 502-8111
shdejam@roxcgi.com

---

**From:** DAVID GOLKAR [mailto:dgolkar@sbcglobal.net]
**Sent:** Thursday, December 11, 2008 12:50 PM
**To:** shadi dejam
**Subject:** Fw: Pasadena


Please forward this to all lien holders and Hamid.
Thanks
David
--- On **Thu, 12/11/08, RobEntler@aol.com** <*RobEntler@aol.com*> wrote:

> From: RobEntler@aol.com <RobEntler@aol.com>
> Subject: Pasadena
> To: dgolkar@sbcglobal.net
> Date: Thursday, December 11, 2008, 12:28 PM
>
> I have your letter done, however I'm still awaiting a final sign off which I was expecting yesterday
> morning but yet to receive. I will get today, hopefully soon and when I do will send letter and release
> docs.
>
> I understand you're under extreme pressure from the lien holders and doing everything to get sign off
> so we can conclude. If there is anything else besides closing the deal, let me know.

EXHIBIT "9" -102

> **************
> Make your life easier with all your friends, email, and favorite sites in one place. Try it now.

1-8

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1900 Avenue of the Stars, Seventh Floor, Los Angeles, California  90067-4308

A true and correct copy of the foregoing document described as ***TRIAL DECLARATION OF BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC.*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***March 9, 2011,*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***March 9, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Served By Overnight Mail:
Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***March 9, 2011,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Dugan P. Kelley       dugan@christmankelley.com
Matthew M. Clarke       matt@christmankelley.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| March 9, 2011 | Claudean Brandon | |
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                       **F 9013-3.1.PROOF.SERVICE**

**I. TO BE SERVED BY THE COURT VIA NEF:**

- Matthew M Clarke     mclarke@cappellonoel.com
- Marc S Cohen     mcohen@kayescholer.com
- Ashleigh A Danker     adanker@kayescholer.com
- Joseph A Eisenberg     jae@jmbm.com
- David M Poitras     dpoitras@jmbm.com
- Gregory M Salvato     gsalvato@pmcos.com, calendar@salvatolawoffices.com
- Gregory M Salvato     gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com
- Robyn B Sokol     ecf@ebg-law.com, rsokol@ebg-law.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                     **F 9013-3.1.PROOF.SERVICE**