DAVID M. POITRAS P.C. (Bar No. 141309)
DAN P. SEDOR P.C. (Bar No. 139091)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone:    310.203.8080
Facsimile:    310.203.0567
Email:    dpoitras@jmbm.com

Attorneys for Bradley D. Sharp
Chapter 11 Trustee for Namco Capital Group Inc.

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>NAMCO CAPITAL GROUP, INC.,<br>a California corporation,<br><br>Debtor. | Case No.: 2:08-bk-32333-BR<br><br>Chapter 11<br><br>Adversary No.: 2:10-ap-01244 BR |
| KAMRAN PASADENA GROUP, INC., a California corporation and KAMRAN GROUP, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC., a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation; DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR, an individual; ASHLAND PROPERTIES, LLC, a California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC, a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEE FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100,<br><br>Defendant(s). | **TRIAL DECLARATION OF DAN P. SEDOR**<br><br>Trial Date:    April 27, 2011<br>Time:    10:00 a.m.<br>Place:    Courtroom 1668<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

7642768v1

# DECLARATION OF DAN P. SEDOR

I, DAN P. SEDOR, hereby declare as follows:

1.    I am a partner in the firm of Jeffer Mangels Butler & Mitchell LLP, counsel of record herein for defendant Bradley D. Sharp, the chapter 11 trustee (the "Trustee") for the bankruptcy estate of Namco Capital Group, Inc., in this adversary proceeding. I make this declaration for trial in this adversary proceeding by plaintiffs Kamran Pasadena Group, Inc. and Kamran Group, LLC. I have personal knowledge of the facts set forth herein and, if called as a witness, I would competently testify thereto.

2.    Attached hereto as Exhibit 1 are true and correct copies of excerpts from the deposition of Ezri Namvar, taken in connection with another contested matter in this Chapter 11 case on October 22, 2009. The portions of Mr. Namvar's testimony cited in the Trustee's concurrently filed Trial Brief are bracketed in the left margin of the transcript excerpts.

3.    On March 8, 2011, I conducted a search of the California Secretary of State's website for "Kamran Pasadena." The search result, a true and correct copy of which is attached hereto as Exhibit 2, indicates that the entity named "Kamran Pasadena Inc." is a suspended corporation.

I declare under penalty of perjury under the United States of America that the foregoing is true and correct and that this declaration is being executed this 9th day of March 2011 at Los Angeles, California.

_____
DAN P. SEDOR

7642768v1

- 2 -

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA (LOS ANGELES DIVISION)

In re:                      )
                            )
NAMCO CAPITAL GROUP, INC., a )
   California corporation,
                            )
          Debtor.     ) Case No. 2:08-bk-32333-BR
_____  )

DEPOSITION OF EZRI NAMVAR

OCTOBER 22, 2009

REPORTED BY GRISELDA R. CABANGON-OLSON, CSR NO. 8585

EXHIBIT "1"-3

CENTURY COURT REPORTERS 1-800-555-0014

After you -- let me ask you.  Do you recognize these documents?

A   These look to be -- are form of note and deed of trust.  One of the forms.

Q   And do you recall Namco Capital Group making one or more loans to Kamran --

A   Yes.

Q   -- Group?

A   Yes.

Q   And would this promissory note be evidence of one of the loans which has been marked as Exhibit B-1 in the amount of $5 million?

A   Only the promissory note or the note and deed of trust?

Q   The note and deed of trust.

A   Yes.

Q   All right.  Please take a look at Exhibit C-1 and C-1.

A   (Deponent complies.)

MR. AVER:  Exhibit C-1 for the record is a Promissory Note Secured by Deed of Trust dated September 10, 2007, in the amount of $450,000.  At page 4 it is signed by David Golkar, manager of Kamran Group, LLC.

Exhibit C-2 is a short -- is a Long Form Deed of

EXHIBIT  "1" -4

Trust and Assignment of Rents bearing recording

29

CENTURY COURT REPORTERS 1-800-555-0014

No. 20072133932. On page 2 it is -- also appears to be signed by David Golkar as the manager of Kamran Group.

Q   Is this, Mr. Namvar, a second note and deed of trust that was made by Namco Capital Group in favor of -- excuse me -- that was made by Kamran Group in favor of Namco Capital Group evidencing a loan of approximately $450,000 to Kamran Group?

A   The word "second," if you will, could be confusing.  I don't believe this is a second deed of trust, but it is another, a different deed of trust.  I don't know its position.  I believe it would be first in a different parcel.

Q   The only -- when I said "second," I only --

A   I know what you meant.

Q   -- I mean second -- second note.  Yeah.

A   I think I knew what you meant, but I wanted to make the record clear.

MR. GILL:  That's a good clarification.

MR. AVER:  All right.

THE WITNESS:  Do you think I would pass for a paralegal?

EXHIBIT "1"-5

MR. GILL: Are you hiring?

MR. AVER: Okay.

THE WITNESS: No. I take too many of these.

Q   BY MR. AVER: I'd like you to take a look,

30

CENTURY COURT REPORTERS 1-800-555-0014

Mr. Namvar, at what has been marked as Exhibit D-1 which is a third Promissory Note Secured by Deed of Trust dated September 10th, 2007, in the face amount of 1.3 million. On page 4 it appears to have been signed by David Golkar on behalf of Kamran Group.

MR. GILL: Objection. Vague and ambiguous as to the term "third."

MR. AVER: Third promissory note.

THE WITNESS: Same objection here.

MR. AVER: Yes, very well.

I'm just taking it in sequence of --

THE WITNESS: Can you use rather than third the word "different"?

Q   BY MR. AVER: Sure.

Different promissory note.

A   Or another, yes.

Q   Or another.

A   Yes. That's better.

EXHIBIT "1" -6

Q   Another promissory note.

And then Exhibit D-2, I'll describe as a conformed copy of a Long Form Deed of Trust and Assignment of Rents bearing recording No. 20072133936. Also appears to have been signed by David Golkar, manager on behalf of Kamran Group, LLC.

Do you recognize these documents?

31

CENTURY COURT REPORTERS 1-800-555-0014

A   Same answers to those questions.  Yes, I do.

Q   All right.  And as with the prior two sets of documents, these evidence a loan made by Namco Capital Group to Kamran Group which was secured by the real estate reflected in the Long Form Deed of Trust and Assignment of Rents?

A   I would say, yes, if you change the word "a" because there's two of them.  So two different other loans.  Yes.

Q   All right.  And then lastly, I'd like you to take a look at what has been marked as Exhibit E-1 and E-2 which I'll describe for the record as a Promissory Note Secured by Deed of Trust dated September 10, 2007, in the face amount of $600,000 which appears to be signed by David Golkar on behalf of Kamran Group, together with

EXHIBIT "1"-7

a corresponding Long Form Deed of Trust and Assignment of

Rents marked as Exhibit E-2 bearing recording No.

20072133956 which also appears to have been signed by

David Golkar on behalf of Kamran Group.

     Do you recognize this set of documents?

A   Same answers throughout.

Q   All right. And this note and this deed of trust

evidences a loan made by Namco Capital Group to Kamran

Group --

A   You already said that.

32

CENTURY COURT REPORTERS 1-800-555-0014

Q   -- in the amount of 600,000?

A   Didn't he say that in the previous question?
You already asked that question.

Q   I did?

A   Yes.

Q   So the answer is "yes"?

A   I said the same answers.

Q   "Yes?" Is that a "yes"?

A   Yes.

Q   Other than --

A   Off the record.

Q   Sure.

EXHIBIT "1"-8

You need to take a break?

A No. I'm just getting too old. Go ahead.

Q The relationship between Kamran Group and Namco Capital Group, was it other than lender and borrower, or was there more to it than simply lender and borrower?

A Yes.

Q Could you please describe the relationship between Namco Capital Group and Kamran Group?

A The agreement was -- and I don't know whether it was reduced to writing. Mr. Gill may have the records -- that after paying Namco all the advances, the profits, if any, would be split 50/50. Advances plus interest according to the notes. Then the profits thereafter

33

CENTURY COURT REPORTERS 1-800-555-0014

would be split 50/50.

Q And that was in agreement that you made on behalf of Namco Capital Group with David Golkar on behalf of Kamran Group?

A The business terms are basically true, but we talked about various -- different variations. Whether at that point we would put it all in a different LLC and refinance through an institution to pay Namco off or Namco down partially, I'm not completely aware.

EXHIBIT "1"-9

The reason I have to testify correctly because I don't know what's going to come from Kamran Group later on. So those things did not really get tied down hundred percent.

But the basic agreement was the profits would be split 50/50. Whether they would be split 50/50 with Namco or a party related to Namco like these other LLCs, that wasn't cleared out.

And whether he could deliver -- because it was my choice to become -- it was my choice that an entity of ours would become a partner or not. Because his duty was to deliver all the parcels.

And I remember until I was keeping track there was one hold-out, a small piece that was a hold-out, and I don't know what happened.

Q   Holding?

34

CENTURY COURT REPORTERS 1-800-555-0014

A   Because he was assembling a whole block.

Q   Okay. So --

A   But the loans, there was no question on the validity of the loans. The loans stood on their own.

Q   So even though each of these four promissory notes provide for interest payments, monthly interest

EXHIBIT "1" -10

file:///C|/...20David%20Golkar/Transcripts/10-22-2009%20EZRI%20NAMVAR%20DEPOSITION%20by%20RAY%20AVER%20(pdf).txt[2/23/2011 3:42:08 PM]

payments, Namco Capital Group wasn't collecting monthly interest payments from Kamran Group?

A    I don't believe we were, but we were adding it to their note. Because I believe our standard note which I don't review or I didn't review as a practice every day and somebody else was in charge of preparing it, at least the original loan that I use as a template would have provided or did provide -- and I believe maybe even these -- that we have the right to do that.

MR. GILL: The right to do what?

THE WITNESS: The compounding. The addition of interest to the principal. The adding. My English is not very good. The adding of interest to the principal.

Q    BY MR. AVER: Can you tell, Mr. Namvar, by looking at the legal descriptions attached to the deeds of trust whether each of these four promissory notes was secured by property on Walnut Street in Pasadena, California?

A    Not necessarily by looking at the legal

35

CENTURY COURT REPORTERS 1-800-555-0014

descriptions because they're just a bunch of numbers and plot maps. But the purposes of these notes and deeds of trust was to secure that assemblage which we called

EXHIBIT " 1 " -11

Walnut and 134 Freeway and another street, another famous

street. It was a whole square block. So it would border

more than one.

Q   Okay. And you were involved in the solicitation, arrangement, structuring and negotiation of each of these four promissory notes marked B-1, C-1, D-1, and E-1 --

A   Yes.

Q   -- on behalf of Namco Capital?

A   Yes. And the deed of trust that went with it.

The deeds of trust that went with it. Plural.

Can I take a break now?

Q   Oh, for sure. Any time.

(Break taken at 11:05 a.m.)

(Deposition resumed at 11:25 a.m.)

(Movants' Exhibits F-1 (a-b), F-2 (a-h),

G-1 (a-b), G-2 (a-i), H-1 (a-b), H-2 (a-i),

I-1 (a-b), I-2 (a-l), J-1 (a-b), J-2 (a-d),

K-1 (a-b), K-2 (a-b), L-1 (a-b), L-2 (a-d)

and M-1 (a-b) and M-2 (a-k) were marked for

identification and are included herewith.)

Q   BY MR. AVER: During our little break, we had

36

CENTURY COURT REPORTERS 1-800-555-0014

EXHIBIT "1"-12

But as to each item, each date, each deposit, each withdrawal, I cannot testify because I wasn't the one handling this function.

Q   Fair enough.


57


CENTURY COURT REPORTERS 1-800-555-0014


A   And then if you want to ask additional questions on N-2, I printed the stuff. My testimony would be the same, and the handwritten stuff I haven't read it yet. So if you want to ask me questions, I'll read it. Otherwise, we'll just --

Q   No. I'm not -- actually I'm not interested at all in the handwritten.

A   Okay.

MR. GILL: Ray, are you aware of whose handwriting that is?

MR. AVER: I wouldn't know for sure, but my educated speculation would be it's Dr. Baharvar's handwriting.

MR. GILL: Is that who gave you this document?

MR. AVER: Correct.

MR. GILL: Thank you.

Q   BY MR. AVER: Beginning in or around August of 2008, were you involved in efforts to sell the Walnut Street/134 Freeway assemblage?

EXHIBIT " 1 " -13

A    That's a loaded question.  The word "involved" is very broad.  I will answer your question to the best of my ability.  I told David Golkar to forget about his grandiose plan of building the condos and the hotel with the picture or the rendering hanging on my wall.  It was an ambitious project.

I tried to get loans for him which I couldn't.

58

CENTURY COURT REPORTERS 1-800-555-0014

And at least at that time I for one believed that if I can't get a loan, nobody can.  Maybe a little bit of arrogance involved there, but hotel market was going -- taking a nose-dive.

David was too optimistic and didn't want to believe it.  So finally he agreed to sell it.  I instructed him please sell it even to apartment developers because it could work for apartment.  And I also suggested if he had to take a loss, he should do that.

The next I knew was that he was communicating with my office --

MR. GILL:  I'm sorry.  This may be in the question.  But when was all this happening?

THE WITNESS: Just about the summer of '08.  End

EXHIBIT " 1" -14

of -- he said August 08-ish.

MR. GILL:  Thank you.

THE WITNESS:  And I know through third parties -- and
I don't think -- and my office that he was put in touch
with the note-holders on the property, the individual
investors.  They had one or more meetings.

He was telling us and them that this is going to
close in a week, in a month.  My investor is coming from
San Diego.

I have no reason to believe that he was lying.

59

CENTURY COURT REPORTERS 1-800-555-0014

I think he was sincere and he believed that whoever the
buyer was was there.  And escrow was opened.  I had
nothing to do with any of that, the logistics end of
this.

He was put in touch with our staff, Mr. Hamid
Taba, for the accounting and handling of the logistics of
the documents.  And I believe -- and I'm not sure -- our
in-house counsel, Mr. Nick -- well, strike that.  He's
not an in-house counselor.  Nick Klein, who rented
office -- Nicholas Klein -- in our space and handled a
lot of our related transactional legal work -- may have
been involved with making comments on the escrows or

EXHIBIT "1"-15

trying to shore it up.

But it was basically Namco wanted to get paid and pay the investors. The investors -- or the creditors that I will call them in this case would have got paid through the closing of this escrow.

In a couple of occasions based on conversations that I had with Golkar and subsequently with Mr. Soleimani, and Mr. Homayounjam, I believed -- and this is during the fall of '08 -- that we were very close to a sale.

We also had a buyer. Verbally. Somebody we knew, and somebody we knew of all his capabilities and was involved with my brother in other projects who made

60

CENTURY COURT REPORTERS 1-800-555-0014

an offer to buy it. A very clean verbal offer.

I don't think it was even reduced in writing, but it could have been some sort of proposal from him, Mr. Ed Miller, who's an experienced developer. And I believe the price also was $23 million.

And Golkar said no. I'll bring somebody to buy it for that. And I also believed that he was going to be part of the deal with the new buyer -- David Golkar was going to be, on a going forward basis, which I didn't

EXHIBIT "1" -16

mind as long as we could get most of our money in a

diving market. My mind-set was just to cash this out as

quickly as possible.

The word "involved" is also -- I encouraged him.

I said don't put all your eggs in one basket. Deal with

others. And if you come in and the buyer needs

financing, we would prefer -- and I can convince my

individual creditors to carry some paper, even, if the

deal was clean and some new money came in.

So I hope that narrative answers a lot of your

questions about the word "involved." That is the extent

of my involvement.

MR. AVER: Saves a lot of time, that's for sure, and

I appreciate it.

(Movants' Exhibit O (1-21) was marked

for identification and is included herewith.)

61

CENTURY COURT REPORTERS 1-800-555-0014

MR. AVER: Exhibit O. I've marked to the transcript

a document Exhibit O which is a multipage document, and

I'll identify it as a purchase and sale agreement with

escrow instructions. It appears to be dated December 5,

2008, between Tranmar Properties, LLC, and Kamran Group,

LLC.

EXHIBIT "1"-17

But are you saying that Namco was supposed to pay as part of its loan proceeds certain vendors or other third parties?

A   Namco, the verbal agreement we had with Golkar was that we would finance a hundred percent of the Pasadena project. I believe we put an upper limit of 26 or 27 million. I don't remember. Maybe 30. I don't remember.

But we were supposed to do hundred percent financing, get interest rate. I believe it was the rate of 10 percent. After we get all of our moneys paid plus the 10 percent, the profits would be 50/50 at our choice.

Q   You're referring to an ultimate sale at the conclusion of the project?

A   Or building it and making the profit. Our money would come first, plus the 10 percent interest compounded at a certain basis and then -- which was very usual in my formats but -- and then the profits would be 50/50.

Q   In other words, you would split the back end?

A   Yes.

Q   All right. Well, that's not entirely what I was asking. My question is -- it's pretty simple, but you said it was complicated. So --

A   No. I said indirectly he paid.

Q   Wait. Let me finish. I did hear you say that

73

EXHIBIT "1"-18

CENTURY COURT REPORTERS 1-800-555-0014

it was indirectly.

Okay. So still trying to explore your answer.
The payments that Golkar made to third parties was booked as payments -- was booked as interest payments owed to Namco? Is that what you were saying?

A   It was booked as credit to Golkar, and I don't know how else it was booked unless you go through the Namco records and see how it was booked.

But between me and Golkar, it was in lieu of, and between me and Golkar, although the notes might say monthly payments, these properties, none of them, had any cash flow or any proceeds from them. If it did, we would have applied it to interest first.

Q   Did Golkar ever make any direct interest payments monthly?

A   He was not supposed to.

Q   Well, when I say -- okay. Strike that. Strike that.

When I said "Golkar," I used that name improperly.

A   His entities, I understand.

Q   His entities.

To me if you look -- let's take a look at the promissory note. Let's look at Exhibit A which is not

EXHIBIT "1" -19

one of the promissory notes. Sorry.

74

CENTURY COURT REPORTERS 1-800-555-0014

Look at Exhibit C. Do you have that there in front of you?

A   No. I don't need to look at it.

Q   Okay. You don't need to see it.

This note does provide that --

A   For monthly payment.

Q   Let me finish, please.

Okay. I understand that you see where I'm going.

A   Sorry. Go ahead.

Q   I just need to make the record.

A   Yeah. My fault.

Q   The note provides that monthly payments are due monthly; correct?

A   Correct.

Q   Were monthly payments ever made on any of these notes?

MR. AVER: Objection. That's been asked and answered. Mr. Namvar answered it.

Q   BY MR. GILL: Were any -- you could still answer the question. Were they ever made directly -- was a

EXHIBIT " 1" -20

# EXHIBIT 2

# Business Entity Detail

Data is updated weekly and is current as of Friday, March 04, 2011. It is not a complete or certified record of the entity.

| | |
|---|---|
| Entity Name: | KAMRAN PASADENA, INC. |
| Entity Number: | C0748619 |
| Date Filed: | 12/30/1975 |
| Status: | SUSPENDED |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 8891 RESEARCH DR |
| Entity City, State, Zip: | IRVINE CA 92618 |
| Agent for Service of Process: | DAVID J GOLKAR |
| Agent Address: | 8891 RESEARCH DR |
| Agent City, State, Zip: | IRVINE CA 92618 |

.* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code section 2114 for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

Privacy Statement | Free Document Readers

Copyright © 2011   California Secretary of State

EXHIBIT "2"-21

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1900 Avenue of the Stars, Seventh Floor, Los Angeles, California  90067-4308

A true and correct copy of the foregoing document described as ***TRIAL DECLARATION OF DAN P. SEDOR*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***March 9, 2011***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***March 9, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Served By Overnight Mail:
Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***March 9, 2011,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Dugan P. Kelley      dugan@christmankelley.com
Matthew M. Clarke      matt@christmankelley.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 9, 2011 | Claudean Brandon | *[signature]* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                    **F 9013-3.1.PROOF.SERVICE**

**I. TO BE SERVED BY THE COURT VIA NEF:**

- Matthew M Clarke    mclarke@cappellonoel.com
- Marc S Cohen    mcohen@kayescholer.com
- Ashleigh A Danker    adanker@kayescholer.com
- Joseph A Eisenberg    jae@jmbm.com
- David M Poitras    dpoitras@jmbm.com
- Gregory M Salvato    gsalvato@pmcos.com, calendar@salvatolawoffices.com
- Gregory M Salvato    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com
- Robyn B Sokol    ecf@ebg-law.com, rsokol@ebg-law.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                    **F 9013-3.1.PROOF.SERVICE**