DAVID M. POITRAS P.C. (State Bar No. 141309)
DAN P. SEDOR (State Bar No. 139091)
THOMAS M. GEHER (State Bar No. 130588)
JEFFER, MANGELS, BUTLER & MARMARO LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone:     (310) 203-8080
Facsimile:     (310) 203-0567
Email:         dpoitras@jmbm.com

Counsel for Bradley D. Sharp, Chapter 11 Trustee
for Namco Capital Group, Inc.

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:08-BK-32333-BR |
| NAMCO CAPITAL GROUP, INC., a California corporation, | Chapter 11 |
| Debtor. | Adversary No.: 2:10-AP-01244-BR |
| KAMRAN PASADENA GROUP, INC., a California corporation and KAMRAN GROUP, LLC, a California limited liability company, | **EVIDENTIARY OBJECTIONS OF DEFENDANT BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC., TO REPLY DECLARATION OF DAVID GOLKAR** |
| Plaintiffs, | |
| vs. | Trial Date:   April 27, 2011 |
| BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC., a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation; DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR, an individual; ASHLAND PROPERTIES, LLC, a California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC, a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEE FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100, | Time:        10:00 a.m.<br>Place:       Courtroom 1668<br>              255 E. Temple Street<br>              Los Angeles, CA 90012 |
| Defendant(s). | |

PRINTED ON
RECYCLED PAPER

7723760v1

EVIDENTIARY OBJECTIONS

Bradley D. Sharp, the duly appointed, qualified and acting chapter 11 trustee (the "Trustee" and "Defendant") of Namco Capital Group, Inc. ("Namco") hereby submits the following Evidentiary Objections to the Reply Declaration of David Golkar (the "Golkar Reply Declaration"). A copy of the Golkar Reply Declaration is attached hereto as Exhibit 1.

I.    **INTRODUCTION AND SUMMARY OF OBJECTIONS**

The Golkar Reply Declaration, like Mr. Golkar's original declaration, is fraught with unreliable, misleading, and unsupported statements, and with legal opinions and conclusions that constitute improper argument instead of the proper presentation of admissible evidence. Much of the Golkar Reply Declaration lacks proper foundation, and is irrelevant, speculative and conclusory argument characterizing the purported legal nature of the parties' relationship. Plaintiffs did not file any formal reply brief in response to the Trustee's Trial Brief that the Golkar Reply Declaration, and it appears from the high level of argument contained in the Golkar Reply Declaration that Plaintiffs intended that declaration to function as their reply brief. This is an improper purpose for an evidentiary declaration.

The Trustee has articulated his specific objections to the Golkar Reply Declaration in Part II below, and requests that the Court sustain those specific objections and strike the purported evidence to which they refer.

II.   **SPECIFIC EVIDENTIARY OBJECTIONS TO THE GOLKAR REPLY DECLARATION**

1.    Page 2, Paragraph 2: "In reply to the Trustee's trial brief and declaration of Bradley D. Sharp, I would point out that Mr. Sharp has absolutely no personal knowledge of the understanding and conduct of the parties with respect to the joint venture relationship. The Trustee's only evidence admissible toward the relevant issue in this case, whether there was consideration for the promissory notes, is based upon the promissory notes themselves, the deeds of trust, and the deposition testimony of Mr. Namvar. The promissory notes themselves prove nothing concerning whether consideration was actually paid under the notes. While it is undisputed that Namvar's companies paid $12,838,155.00 toward the joint venture, and that promissory notes were executed in the amount of $12,650,000.00, there is absolutely no evidence presented by the Trustee,

other than the misconstrued and out-of-context quotations from Namvar's deposition that the amounts paid by Namco represented the funding of the notes."

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704).**

2.    Page 2, Paragraph 3: "On the other hand, I was a party to these transactions and personally experienced and witnessed the intent of both Mr. Namvar and myself through our conversations and dealings on the project. My testimony, unlike the Trustee's speculation, is based upon statements made to me by Mr. Namvar, statements made by me to Mr. Namvar, and the course of business dealings under which we operated acquiring property for the project at issue. Unlike the Trustee, I have personal knowledge concerning why Namco paid the $12,838,155.00 for the 'take-down' of the property. I also have personal knowledge as to the timing and intent of the promissory notes, which do not reflect the same amount of funds paid by Namco to purchase the real property for the project. I have personal knowledge that I did not receive the money that the Trustee is claiming is consideration for the promissory notes. The Trustee does not."

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704); inadmissible hearsay (FRE 801).**

3.    Pages 2-3, Paragraph 4: "Mr. Namvar's testimony, taken as a whole, supports my understanding of the joint venture relationship and the terms under which it would operate. My testimony with respect to the intent of the parties to the joint venture is not speculation but my understanding of the arrangement and why monies were paid when they were paid, in the amount they were paid, and for the purpose they were paid."

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704).**

4.    Page 3, heading lines 4-5: "**THE MEMORANDUM OF UNDERSTANDING REPRESENTS THE INTENT OF THE PARTIES**"

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704).**

PRINTED ON
RECYCLED PAPER

7723760v1

EVIDENTIARY OBJECTIONS

5. Page 3, Paragraph 5: "I personally prepared the Memorandum of Understanding which is Exhibit 1 to the joint pretrial order. I prepared it in conjunction with Ezri's involvement and our joint venture partnership. That Memorandum of Understanding ('MOU') represents our understanding and intent concerning the joint venture relationship on this project. It also explains why the parties conducted themselves as they did. Because of the speed at which the project progressed and the necessity of taking down a number of properties for the project, we were unable to put together our new entity, Walnut Land Holding, LLC. Because we were unable to formalize our new entity and proceed with property acquisition in the name of that entity, we never got around to signing the MOU. Nevertheless, at all times, both Mr. Namvar and I conducted ourselves pursuant to the terms of the MOU."

OBJECTION: Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704); inadmissible hearsay (FRE 801); best evidence rule (FRE 1004).

6. Page 3, Paragraph 6: "Mr. Namvar's deposition testimony (where neither I nor any lawyer representing me was present) completely supports the MOU in that he admits that the project was intended to be financed primarily by Namvar through his companies and that I (through my entities) would be in charge of project development and execution. Namvar's testimony also reinforces the MOU concerning the 50/50 profit share that would be instituted once the parties got their primary investment back. There is no dispute that the investment dollars contributed to the project by Namco were paid with no promissory notes in place at the time. This demonstrates that Mr. Namvar was performing his part of the deal pursuant to the terms of the MOU. I, pursuant to the terms of the MOU, was identifying and negotiating the prices of the properties necessary for the project. The timing of Mr. Namvar's contributions to the project is critical in that it demonstrates he and I were conducting ourselves pursuant to the MOU rather than funding promissory notes which were executed after the fact."

OBJECTION: Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704); inadmissible hearsay (FRE 801); best evidence rule (FRE 1004).

PRINTED ON
RECYCLED PAPER

7723760v1

EVIDENTIARY OBJECTIONS

7.    Page 4, heading line 1: "THE PURPOSE OF THE PROMISSORY NOTES"

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704).**

8.    Page 4, Paragraph 7: "The Trustee has not and cannot dispute my testimony that the project needed additional funding to proceed. Mr. Namvar and I agreed that we needed to raise additional capital to proceed with the project. The Kamran Entities executed promissory notes for this additional funding in favor of Namco with the understanding that the additional funds would help press the project to completion."

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704) ; inadmissible hearsay (FRE 801); best evidence rule (FRE 1004).**

9.    Page 4, Paragraph 8: "However, it was my understanding based upon conversations with Mr. Namvar that his companies began to suffer from financial pressures, including involuntary bankruptcy, which caused Namco to be unable to fund the promissory notes as agreed. It should be noted that the amounts of the promissory notes do not reflect the same amounts already contributed by Namco toward the project. What investor would secure his investment with promissory notes in an amount less than the actual investment? Based on my personal knowledge and understanding of the intent of the parties, the reason the amount of the promissory notes and the amount of Namvar's contributions to the project do not match is that the amounts contributed by Namvar were separate and distinct from the amounts reflected in the promissory notes, which would have been new capital in the project. As can be easily seen in the Trustee's trial brief on Page 5, none of the note amounts in the notes reflect the actual amount of funding contributed by Namco for the properties acquired. Although the Trustee attempts to match properties funded by Namco with notes executed by Kamran Entities, none of the amounts match. For example:

- Marengo Property was purchased for $3,605,000.00. The note that the Trustee attempts to match with this purchase was for $3,600,000.00.
- Walnut Unit 504 was funded at $1,650,000.00. The note the Trustee attempted to match with this purchase was for $1,300,000.00.

PRINTED ON
RECYCLED PAPER

7723760v1

- Walnut Unit 501 was purchased for $150,000.00. The Trustee attempts to match a note for $600,000.00.
- Walnut Unit 504 (a/k/a No. 405) was acquired at $533,155.00. The Trustee attempts to match a note for $450,000.00.
- Walnut Unit 1 was acquired for $6,900,000.00. The Trustee attempts to match a note totaling $6,700,000.00."

OBJECTION: Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704); inadmissible hearsay (FRE 801); best evidence rule (FRE 1004).

10.    Page 5, Paragraph 9: "Obviously, the amounts contributed by Namco do not match the amounts reflected in the promissory notes executed by my companies in favor of Namco. The reason they do not match is because the promissory notes were supposed to represent new money and not money already in the deal. Unfortunately, for various reasons, Namvar was unable to come up with the money to fund the promissory notes."

OBJECTION: Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704); inadmissible hearsay (FRE 801); best evidence rule (FRE 1004).

11.    Page 5, heading line 6: "PAYMENTS WERE NEVER MADE ON THE NOTES"

OBJECTION: Irrelevant (FRE 401, 402).

12.    Page 5, Paragraph 10: "Although the promissory notes specifically set out that monthly interest payments were to be made, I never made any interest payments on the notes through my entities. When Mr. Namvar was directly asked questions in this regard at his deposition on Page 74, he stated 'Q: Did Golkar ever make any interest payments monthly? A: He was not supposed to.' If the promissory notes had been fully funded by Mr. Namvar, I could have and would have made interest payments on a monthly basis as required under the notes. I also would have paid the various vendors and subcontractors who were owed money and who would have been paid with the funds distributed pursuant to the notes."

PRINTED ON
RECYCLED PAPER

7723760v1

EVIDENTIARY OBJECTIONS

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704).**

13. Page 5, Paragraph 11: "Although I was able to make some payments to the vendors out of my own pocket, I was unable to keep up with the vendor payments because the promissory notes were never funded. As a result of not funding, several law suits were filed by vendors, contractors, and consultants. (See Trial Exhibits 14, 15, 16, 17). That is why Mr. Namvar stated in his deposition on Page 72 that "David Golkar paid a lot of money out of his pocket when he was not supposed to." That is also why Mr. Namvar stated in his deposition on page 74 that payments I made to third-parties would be booked as interest payments under the notes and credited to me."

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704); inadmissible hearsay (FRE 801); best evidence rule (FRE 1004).**

14. Page 5, paragraph 12: "Although Mr. Namvar and I may not completely agree as to all of the understandings and arrangements as part of the project, there is no dispute that I did not make interest payments or principal payments under the promissory notes at any time. If I had not made such payments and this relationship was merely that of lender and borrower, these notes would have been in default. The notes were never declared in default. The reason the notes were never declared in default and why payments I made to third-parties were credited to me by Mr. Namvar as interest payments is because he never funded the notes."

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704).**

15. Page 6, Paragraph 13: "Although Mr. Namvar testified that 'the notes stood on their own,' this statement, taken in context, does not mean that he funded the promissory notes as agreed. The notes certainly would have and could have stood on their own had they been fully funded as intended by the parties. On Page 74 of Mr. Namvar's deposition he states that none of the properties had any cash flow. He also stated that this lack of cash flow is why there were never any interest payments made on the notes. If the notes truly did stand on their own, the lack of cash flow from the properties would have made no difference as to my obligation to pay interest on the notes.

PRINTED ON
RECYCLED PAPER

7723760v1

EVIDENTIARY OBJECTIONS

However, because this was a joint venture, and because there was no cash flow from the property, Mr. Namvar's equity/advance was not recaptured. The interest payments were not made on the promissory notes because he never funded the notes. This is why Mr. Namvar's deposition testimony, taken as a whole, supports my position and not that of the Trustee."

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704); best evidence rule (FRE 1004).**

16.  Page 6, heading lines 12-13: **"THE EMAILS CONCERNING THE 'LIEN HOLDERS' DO NOT PRESUME VALIDITY OF THE PROMISSORY NOTES"**

17.  OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704).**

18.  Page 6, Paragraph 14: "Exhibits 108 and 109 do not represent some admission on my part that the promissory notes had actually been funded. Fractional interests were apparently sold to these 'lien holders' by Mr. Namvar. My emails encouraging them not to attempt foreclosure or sue was simply an effort to forestall further complication concerning the project. I hoped to speak with Mr. Namvar to understand his deal with the 'lien holders.'"

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704); best evidence rule (FRE 1004).**

19.  Page 6, Paragraph 15: "As reflected in the emails, I was attempting to move the project forward despite Mr. Namvar's financial problems and bankruptcy issues. It was a far simpler solution to simply acquire additional funding from other sources to save this project, rather than declaring to the purported lien holders that their lien positions were invalid since the promissory notes had not been funded. Such a course of action would obviously have resulted in immediate lawsuits and further complications to the project that was already under distress. My description of the fractional interest holders as 'lien holders' and my attempts to find some satisfaction to their alleged positions does not mean that the promissory notes were funded or that I have admitted as much. The only thing that can be taken from the emails is that I was attempting to save this project from further complication and legal entanglement."

PRINTED ON
RECYCLED PAPER

7723760v1

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704); best evidence rule (FRE 1004).**

20.    Page 7, Paragraph 16: "The bottom line is that the Trustee is now operating as my joint venture partner and taking any opportunity to restructure or redefine the relationship and joint venture I had with Ezri's company. There was never any dispute between Ezri and myself regarding whether he could or had the ability to foreclose on my interests. The reason is simple. He didn't have a vehicle or the right to do so. Now the Trustee (who has no knowledge of our joint venture partnership) is attempting to assert he has the right to take my properties away. This is not fair, nor is it right."

OBJECTION: **Irrelevant (FRE 401, 402); lack of foundation (FRE 602); improper opinion/legal conclusion (FRE 701, 702, 704).**

Respectfully submitted,

Dated: April 6, 2011                JEFFER MANGELS BUTLER & MITCHELL LLP


By: */s/ David M. Poitras*
DAVID M. POITRAS P.C.
Attorneys for Defendant, Bradley D. Sharp, Chapter 11
Trustee for Namco Capital Group Inc.

# EXHIBIT 1

Matthew Clarke (SBN 184959)
Matt@christmankelley.com
Dugan P. Kelley (SBN 207347)
Dugan@christmankelley.com
CHRISTMAN, KELLEY & CLARKE
831 State Street
Santa Barbara, California 93101
Telephone: (805) 884-9922
Facsimile: (866) 611-9852

Attorneys for Plaintiffs
Kamran Pasadena Group, Inc. and Kamran Group, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In Re: NAMCO CAPITAL GROUP INC, a California corporation<br><br>Debtor.<br><br>_____<br><br>KAMRAN PASADENA GROUP, INC., a California corporation; and KAMRAN GROUP, LLC, a California limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC, a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR; an individual; ASHLAND PROPERTIES, LLC, A California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC; a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEES FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100<br><br>Defendants. | Case No.: 2:08-bk-32333-BR<br>Chapter 11<br>Adv. No.: 2:10-ap-01244-BR<br><br>REPLY DECLARATION OF DAVID J. GOLKAR |

REPLY DECLARATION OF DAVID GOLKAR

Exhibit 1 - 9

## REPLY DECLARATION OF DAVID GOLKAR

I, David Golkar, do declare and say as follows:

1. I make this declaration based upon my own personal knowledge. I could and would competently testify to these facts in a court of law.

### TRUSTEE HAS NO PERSONAL KNOWLEDGE

2. In reply to the Trustee's trial brief and declaration of Bradley D. Sharp, I would point out that Mr. Sharp has absolutely no personal knowledge of the understanding and conduct of the parties with respect to the joint venture relationship. The Trustee's only evidence admissible toward the relevant issue in this case, whether there was consideration for the promissory notes, is based upon the promissory notes themselves, the deeds of trust, and the deposition testimony of Mr. Namvar. The promissory notes themselves prove nothing concerning whether consideration was actually paid under the notes. While it is undisputed that Namvar's companies paid $12,838,155.00 toward the joint venture, and that promissory notes were executed in the amount of $12,650,000.00, there is absolutely no evidence presented by the Trustee, other than the misconstrued and out-of-context quotations from Namvar's deposition that the amounts paid by Namco represented the funding of the notes.

3. On the other hand, I was a party to these transactions and personally experienced and witnessed the intent of both Mr. Namvar and myself through our conversations and dealings on the project. My testimony, unlike the Trustee's speculation, is based upon statements made to me by Mr. Namvar, statements made by me to Mr. Namvar, and the course of business dealings under which we operated acquiring property for the project at issue. Unlike the Trustee, I have personal knowledge concerning why Namco paid the $12,838,155.00 for the "take-down" of the property. I also have personal knowledge as to the timing and intent of the promissory notes, which do not reflect the same amount of funds paid by Namco to purchase the real property for the project. I have personal knowledge that I did not receive the money that the Trustee is claiming is consideration for the promissory notes. The Trustee does not.

4. Mr. Namvar's testimony, taken as a whole, supports my understanding of the joint venture relationship and the terms under which it would operate. My testimony with respect to the

2

REPLY DECLARATION OF DAVID J. GOLKAR

Exhibit 1 - 10

intent of the parties to the joint venture is not speculation but my understanding of the arrangement and why monies were paid when they were paid, in the amount they were paid, and for the purpose they were paid.

### THE MEMORANDUM OF UNDERSTANDING REPRESENTS THE INTENT OF THE PARTIES

5.      I personally prepared the Memorandum of Understanding which is Exhibit 1 to the joint pretrial order. I prepared it in conjunction with Ezri's involvement and our joint venture partnership. That Memorandum of Understanding ("MOU") represents our understanding and intent concerning the joint venture relationship on this project. It also explains why the parties conducted themselves as they did. Because of the speed at which the project progressed and the necessity of taking down a number of properties for the project, we were unable to put together our new entity, Walnut Land Holding, LLC. Because we were unable to formalize our new entity and proceed with property acquisition in the name of that entity, we never got around to signing the MOU. Nevertheless, at all times, both Mr. Namvar and I conducted ourselves pursuant to the terms of the MOU.

6.      Mr. Namvar's deposition testimony (where neither I nor any lawyer representing me was present) completely supports the MOU in that he admits that the project was intended to be financed primarily by Namvar through his companies and that I (through my entities) would be in charge of project development and execution. Namvar's testimony also reinforces the MOU concerning the 50/50 profit share that would be instituted once the parties got their primary investment back. There is no dispute that the investment dollars contributed to the project by Namco were paid with **no promissory notes in place at the time.** This demonstrates that Mr. Namvar was performing his part of the deal pursuant to the terms of the MOU. I, pursuant to the terms of the MOU, was identifying and negotiating the prices of the properties necessary for the project. The timing of Mr. Namvar's contributions to the project is critical in that it demonstrates he and I were conducting ourselves pursuant to the MOU rather than funding promissory notes which were executed after the fact.

\\\

3
REPLY DECLARATION OF DAVID J. GOLKAR

Exhibit 1 - 11

**THE PURPOSE OF THE PROMISSORY NOTES**

7.      The Trustee has not and cannot dispute my testimony that the project needed additional funding to proceed.  Mr. Namvar and I agreed that we needed to raise additional capital to proceed with the project.  The Kamran Entities executed promissory notes for this additional funding in favor of Namco with the understanding that the additional funds would help press the project to completion.

8.      However, it was my understanding based upon conversations with Mr. Namvar that his companies began to suffer from financial pressures, including involuntary bankruptcy, which caused Namco to be unable to fund the promissory notes as agreed.  It should be noted that the amounts of the **promissory notes do not reflect the same amounts already contributed** by Namco toward the project.  What investor would secure his investment with promissory notes in an amount less than the actual investment?  Based on my personal knowledge and understanding of the intent of the parties, the reason the amount of the promissory notes and the amount of Namvar's contributions to the project do not match is that the amounts contributed by Namvar were separate and distinct from the amounts reflected in the promissory notes, which would have been new capital in the project.  As can be easily seen in the Trustee's trial brief on Page 5, none of the note amounts in the notes reflect the actual amount of funding contributed by Namco for the properties acquired.  Although the Trustee attempts to match properties funded by Namco with notes executed by Kamran Entities, none of the amounts match.  For example:

- Marengo Property was purchased for $3,605,000.00.  The note that the Trustee attempts to match with this purchase was for $3,600,000.00.

- Walnut Unit 504 was funded at $1,650,000.00.  The note the Trustee attempted to match with this purchase was for $1,300,000.00.

- Walnut Unit 501 was purchased for $150,000.00.  The Trustee attempts to match a note for $600,000.00.

- Walnut Unit 504 (a/k/a No. 405) was acquired at $533,155.00.  The Trustee attempts to match a note for $450,000.00.

- Walnut Unit 1 was acquired for $6,900,000.00.  The Trustee attempts to match a note totaling $6,700,000.00.

4

REPLY DECLARATION OF DAVID J. GOLKAR

Exhibit 1 - 12

9. Obviously, the amounts contributed by Namco do not match the amounts reflected in the promissory notes executed by my companies in favor of Namco. The reason they do not match is because the promissory notes were supposed to represent new money and not money already in the deal. Unfortunately, for various reasons, Namvar was unable to come up with the money to fund the promissory notes.

**PAYMENTS WERE NEVER MADE ON THE NOTES**

10. Although the promissory notes specifically set out that monthly interest payments were to be made, I never made any interest payments on the notes through my entities. When Mr. Namvar was directly asked questions in this regard at his deposition on Page 74, he stated "Q: Did Golkar ever make any interest payments monthly? A: He was not supposed to." If the promissory notes had been fully funded by Mr. Namvar, I could have and would have made interest payments on a monthly basis as required under the notes. I also would have paid the various vendors and subcontractors who were owed money and who would have been paid with the funds distributed pursuant to the notes.

11. Although I was able to make some payments to the vendors out of my own pocket, I was unable to keep up with the vendor payments because the promissory notes were never funded. As a result of not funding, several law suits were filed by vendors, contractors, and consultants. (See Trial Exhibits 14, 15, 16, 17). That is why Mr. Namvar stated in his deposition on Page 72 that "David Golkar paid a lot of money out of his pocket when he was not supposed to." That is also why Mr. Namvar stated in his deposition on page 74 that payments I made to third-parties would be booked as interest payments under the notes and credited to me.

12. Although Mr. Namvar and I may not completely agree as to all of the understandings and arrangements as part of the project, there is no dispute that I did not make interest payments or principal payments under the promissory notes at any time. If I had not made such payments and this relationship was merely that of lender and borrower, these notes would have been in default. The notes were never declared in default. The reason the notes were never declared in default and why payments I made to third-parties were credited to me by Mr. Namvar as interest payments is because he never funded the notes.

5

REPLY DECLARATION OF DAVID J. GOLKAR

Exhibit 1 - 13

13.     Although Mr. Namvar testified that "the notes stood on their own," this statement, taken in context, does not mean that he funded the promissory notes as agreed. The notes certainly would have and could have stood on their own had they been fully funded as intended by the parties. On Page 74 of Mr. Namvar's deposition he states that none of the properties had any cash flow. He also stated that this lack of cash flow is why there were never any interest payments made on the notes. If the notes truly did stand on their own, the lack of cash flow from the properties would have made no difference as to my obligation to pay interest on the notes. However, because this was a joint venture, and because there was no cash flow from the property, Mr. Namvar's equity/advance was not recaptured. The interest payments were not made on the promissory notes because he never funded the notes. This is why Mr. Namvar's deposition testimony, taken as a whole, supports my position and not that of the Trustee.

**THE EMAILS CONCERNING THE "LIEN HOLDERS" DO NOT PRESUME VALIDITY OF THE PROMISSORY NOTES**

14.     Exhibits 108 and 109 do not represent some admission on my part that the promissory notes had actually been funded. Fractional interests were apparently sold to these "lien holders" by Mr. Namvar. My emails encouraging them not to attempt foreclosure or sue was simply an effort to forestall further complication concerning the project. I hoped to speak with Mr. Namvar to understand his deal with the "lien holders."

15.     As reflected in the emails, I was attempting to move the project forward despite Mr. Namvar's financial problems and bankruptcy issues. It was a far simpler solution to simply acquire additional funding from other sources to save this project, rather than declaring to the purported lien holders that their lien positions were invalid since the promissory notes had not been funded. Such a course of action would obviously have resulted in immediate lawsuits and further complications to the project that was already under distress. My description of the fractional interest holders as "lien holders" and my attempts to find some satisfaction to their alleged positions does not mean that the promissory notes were funded or that I have admitted as much. The only thing that can be taken from the emails is that I was attempting to save this project from further complication and legal entanglement.

6

REPLY DECLARATION OF DAVID J. GOLKAR

Exhibit 1 - 14

16.    The bottom line is that the Trustee is now operating as my joint venture partner and taking any opportunity to restructure or redefine the relationship and joint venture I had with Ezri's company. There was never any dispute between Ezri and myself regarding whether he could or had the ability to foreclose on my interests. The reason is simple: He didn't have a vehicle or the right to do so. Now the Trustee (who has no knowledge of our joint venture partnership) is attempting to assert he has the right to take my properties away. This is not fair, nor is it right.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 22rd day of March, 2011, at Tehran, Iran

David J. Golkar

REPLY DECLARATION OF DAVID J. GOLKAR

Exhibit 1 - 15

| In re: NAMCO CAPITAL GROUP, INC. | CHAPTER 11 |
|---|---|
| | CASE NUMBER: 2:08-bk-32333-BR |
| Debtor(s). | ADVERSARY PROC. NO.: 2:10-ap-01244-BR |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 831 State Street, Santa Barbara, California 93101. A true and correct copy of the foregoing document described as **REPLY DECLARATION OF DAVID GOLKAR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On **March 23, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge **will be** completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 23, 2011,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge **will be** completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 3/23/11 | Kathy Koester | _Kathy Koester_ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

**F 9013-3.1**
Exhibit 1 - 16

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
|---|---|

## II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL

United States Trustee (LA)
725 S Figueroa St # 2600
Los Angeles, CA 90017-5413

David M. Poitras
Dan P. Sedor
Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

Sawtelle Properties LLC
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Soussan Hashemi
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

John M. Rygh
915 Wilshire Blvd, Suite 2100
Los Angeles, CA 90017

Ashland Properties, LLC
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Mahmoud Fatorechi
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Morteza Homayounjam
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Saul Reiss
Law Offices of Saul Reiss, P.C.
2800 28th St Ste 328
Santa Monica, CA 90405

Richard S. Berger
Peter J. Gurfein
Landau Gottfried & Berger, LLP
1801 Century Park East, Suite 1460
Los Angeles, CA 90067

## III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:

### SERVED BY E-MAIL:

- David M. Poitras — dpoitras@jmbm.com
- Robyn B. Sokol — rsokol@ebg-law.com; ecf@ebg-law.com
- Joseph A. Eisenberg — jeisenberg@jmbm.com
- Gregory M. Salvato — gsalvato@salvatolawoffices.com; gsalvato@pmcos.com
- Saul Reiss — saulreiss@verizon.net
- Richard S. Berger — rberger@LGBFirm.com
- Peter J. Gurfein — pgurfein@LGBFirm.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

| In re:  NAMCO CAPITAL GROUP, INC,   Debtor(s). | CHAPTER 11<br>CASE NUMBER:  2:08-bk-32333-BR<br>ADVERSARY PROC. NO.:  2:10-ap-01244-BR |
|---|---|

### SERVED BY PERSONAL DELIVERY:

Honorable Barry Russell
United States Bankruptcy Court – Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1900 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as *EVIDENTIARY OBJECTIONS OF DEFENDANT BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC., TO REPLY DECLARATION OF DAVID GOLKAR* will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On *April 6, 2011,* I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

⊠ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On *April 6, 2011,* I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY OVERNIGHT MAIL**
The Honorable Barry Russell
U.S. Bankruptcy Court
255 East Temple St., Suite 1660
Los Angeles, CA 90012-3332

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *April 6, 2011,* I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
**SERVED BY EMAIL**
Attnys for Kamran Pasadena Group, Inc. and Kamran Group, LLC
Dugan P. Kelley, Esq.
Christman, Kelley & Clarke
831 State Street
Santa Barbara, CA 93101
Email: Dugan@christmankelley.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 6, 2011 | Billie Terry | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                 **F 9013-3.1.PROOF.SERVICE**

## *ADDITIONAL SERVICE INFORMATION*

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Matthew M Clarke    mclarke@cappellonoel.com

- Marc S Cohen    mcohen@kayescholer.com

- Ashleigh A Danker    adanker@kayescholer.com

- Joseph A Eisenberg    jae@jmbm.com

- David M Poitras    dpoitras@jmbm.com

- Gregory M Salvato    gsalvato@pmcos.com, calendar@salvatolawoffices.com

- Gregory M Salvato    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com

- Robyn B Sokol    ecf@ebg-law.com, rsokol@ebg-law.com

- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                          **F 9013-3.1.PROOF.SERVICE**