DAVID M. POITRAS P.C. (Bar No. 141309)
DAN P. SEDOR P.C. (Bar No. 139091)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-4308
Telephone:    310.203.8080
Facsimile:    310.203.0567
Email:        dpoitras@jmbm.com

Attorneys for Bradley D. Sharp,
Chapter 11 Trustee for Namco Capital Group Inc.

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.:  2:08-bk-32333-BR |
| NAMCO CAPITAL GROUP, INC., a California corporation, | Chapter 11 |
| Debtor. | Adversary No.:  2:10-ap-01244 BR |
| KAMRAN PASADENA GROUP, INC., a California corporation and KAMRAN GROUP, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC., a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation; DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR, an individual; ASHLAND PROPERTIES, LLC, a California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC, a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEE FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100,<br><br>Defendant(s). | **DECLARATION OF DAVID M. POITRAS IN SUPPORT OF BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION, ON COMPLAINT**<br><br>Hearing:<br>Date:       February 22, 2012<br>Time:       2:00 p.m.<br>Place:      Courtroom 1668<br>            255 E. Temple Street<br>            Los Angeles, CA 90012 |

PRINTED ON
RECYCLED PAPER
LA 8482950v1

Poitras Decl. in Support of MSJ

**DECLARATION OF DAVID M. POITRAS**

I, DAVID M. POITRAS, hereby declare:

1.      I am an attorney duly licensed to practice law in the State of California and before the United States Bankruptcy Court for the Central District of California.  I am the principal of a professional corporation which is a partner in Jeffer, Mangels, Butler & Mitchell LLP ("JMBM"), counsel to Bradley D. Sharp, Chapter 11 Trustee for the bankruptcy estate of Namco Capital Group, Inc. ("Trustee").

2.      I make this declaration in support of the Motion of Defendant Bradley D. Sharp, Chapter 11 Trustee of Namco Capital Group, Inc. for Summary Judgment, or in the Alternative, for Partial Summary Adjudicationm on Complaint.

3.      Upon a review of all of the claims filed in the Namco Bankruptcy Case, no proof of claim was filed on behalf of either Plaintiff Kamran Group, LLC or Plaintiff Kamran Pasadena Group, Inc. (collectively "Kamran").

4.      The "bar date" for creditors to file proofs of claim was November 13, 2009.

5.      Upon a review of all of the claims filed in the Namco Bankruptcy Case, two proof of claims were filed by David Golkar in the Namco Bankruptcy Case.

6.      The first proof of claim, assigned claim no. 148 and attached to the Request for Judicial Notice (the "RJN") as **Exhibit D**, is for a claim for over $4.5 million pursuant to a note payable by Namco to Golkar in the principal amount of $4.3 million.

7.      A second proof of claim, assigned claim no. 548, was filed by Golkar on September 9, 2011.  This proof of claim seeks an additional $4 million, asserting as the basis for the claim that "through debtor's fraud, money given to purchase properties and pay consultants."  A copy of this proof of claim is attached to the RJN as **Exhibit E**.

8.      On October 18, 2010, Plaintiff Kamran Pasadena Group, Inc. submitted a verified *Response to Defendant Bradley D. Sharp's First Set of Interrogatories to Kamran Pasadena Group, Inc.* (the "Inc. Interrog. Resp."), a true and correct copy of which is attached hereto as **Exhibit G**.

PRINTED ON
RECYCLED PAPER

LA 8482950v1

- 2 -      Poitras Decl. in Support of MSJ

9.    On October 18, 2010, Plaintiff Kamran Group, LLC submitted a verified *Response to Defendant Bradley D. Sharp's First Set of Interrogatories to Kamran Group, LLC* (the "LLC Interrog. Resp."), a true and correct copy of which is attached hereto as **Exhibit H**.

10.    Upon my review of the California Secretary of State website, the entity "Kamran Pasadena Group, Inc." does not appear to be registered as a business entity in the State of California.  Attached hereto as **Exhibit I** is a true and correct copy of the printout when I conducted a Business search for the entity "Kamran Pasadena Group, Inc." on the California Secretary of State website, http://kepler.sos.ca.gov, on January 6, 2012.

11.    An entity entitled "Kamran Pasadena, Inc." was registered as a California corporation on December 30, 1975 and has subsequently been suspended.  Attached hereto as **Exhibit J** is a true and correct copy of the printout of the "Business Entity Detail" for "Kamran Pasadena, Inc." that I obtained when I conducted a Business search for the entity "Kamran Pasadena, Inc." on the California Secretary of State website, http://kepler.sos.ca.gov, on January 6, 2012.

12.    An entity entitled "Kamran Group, Inc." was registered as a California corporation on October 5, 2005. Attached hereto as **Exhibit K** is a true and correct copy of the printout of the "Business Entity Detail" for "Kamran Group, Inc." that I obtained when I conducted a Business search for the entity "Kamran Group, Inc." on the California Secretary of State website, http://kepler.sos.ca.gov, on December 27, 2011.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of January, 2012, in Los Angeles, California.

*/s/ David M. Poitras*
DAVID M. POITRAS

PRINTED ON
RECYCLED PAPER

LA 8482950v1

- 3 -        Poitras Decl. in Support of MSJ

# EXHIBIT D

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Central District Of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Namco Capital Group Inc<br>Ezri Namvar | Case Number: 2:08-32333-BR |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
David Golkar

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
David Golkar
575 Anton Blvd Ste 820 → 880
Costa Mesa, CA 92626-7027

**FILED**
APR 24 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk
BY:

**Court Claim Number:**_____
*(If known)*

Filed on:_____

Telephone number: 949-502-8118

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:

**1. Amount of Claim as of Date Case Filed:** $ 4,522,033.22

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Cash + Consulting Services (Engineering)
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:**

**Value of Property:** $_____ **Annual Interest Rate**___%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____ **Basis for perfection:** _____

**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☒ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Cash Secured by promissory note

**Amount entitled to priority:**
$ 4,150,000.—

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| **Date:** 4/24/09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>David Golkar | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit D-4

011773

**PROMISSORY NOTE**

Los Angeles, California

**$4,300,000.00**                                           Dated: September 22, 2006

For value received, the undersigned (sometimes referred to herein as "NAMCO") promises to pay, without notice, demand, grace, deduction or offset, to David Golkar ("Holder"), in lawful money of the United States, in immediately available funds, the principal sum of Four Million Three Hundred Thousand and 00/100 **Dollars ($4,300,000.00)**, together with interest thereon upon 30 days advance notice (the "Maturity Date"),at 530 Vick Place, Beverly Hills, CA 90210 or such other place as the Holder hereof may designate. The Maturity Date shall be subject to extension as set forth below.

The outstanding principal amount of this Note shall bear interest at the rate of eight **Percent (8%)** per annum calculated on a 360/360 basis; that is by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the number of days the principal balance is outstanding (based on 30 days a month) . Interest only on the unpaid principal amount outstanding under this Note from time to time shall be payable, in arrears, on the first day of each calendar month beginning October 1, 2006 without notice, grace, demand, deduction or offset, until and including the Maturity Date, on which date, the principal amount hereof, together with all accrued and unpaid interest payable by the undersigned hereunder, shall be due and payable.

Notwithstanding any other provision of this Note, either party may notify the other for the pay off in writing at least 30 days before the undersigned shall become obligated to repay the principal sum of this Note. This provision applies to the Maturity Date as well.

In the event of any misrepresentation, breach of warranty, or other failure by the undersigned or any party to perform its obligations under this Note, all unpaid principal and interest under this Note shall, at Holder's sole discretion, be immediately due and payable, without demand, notice or presentment.

No amendment, modification, or waiver of any provision of this Note, nor consent to any departure by the undersigned therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by the Holder, and then such waiver of consent shall be effective only in the specific instance and for the specific purpose for which given.

The options, powers and rights of the Holder specified herein are in addition to, and not in lieu of, those authorized by applicable law.

Notwithstanding anything set forth in this Note, no interest payment or interest rate charged hereunder shall exceed the maximum amount or rate permitted under applicable law.

The undersigned agrees to pay all costs and expenses incurred or payable by Holder in connection with any litigation brought for the enforcement or collection of this Note, including court costs and attorneys' fees and costs actually incurred.

To the extent permitted by applicable law, the undersigned waives notice of protest, presentment, demand and any other notice in connection with the collection of this Note.

Exhibit D-5

This Note shall be prepayable upon no less than thirty (30) days written notice to Holder.

This Note shall be binding on the undersigned, its successors and assigns and shall inure to the benefit of Holder, its successors and assigns.

Any payment hereunder which is required to be made on a day which is not a business day in the City of Los Angeles shall be payable on the next immediately succeeding business day and such additional time shall be included in the computation of interest.

This Note shall be governed by, and construed in accordance with, the laws of the State of California, and subject to such laws, shall be construed in accordance with the Heter Iskoh policies observed by the undersigned.

This Note replaces and supersedes all prior instruments, documents and agreements which evidence the indebtedness represented by this Note, all of which prior instruments, documents and agreements, shall be null and void and of no force or effect.

**Namco Capital Group, Inc.**

Ezri Namvar-President

Exhibit D-6

| Creditor:       (22985626)   History | Claim No: 148 | Status: |
|---|---|---|
| David Golkar<br>575 Anton Blvd Ste 880<br>Costa Mesa, CA 92626 | Original Filed Date: 04/24/2009<br>Original Entered Date: 04/29/2009 | Filed by: CR<br>Entered by: Garcia, Rolando<br>Modified: |

Unknown claimed: $4522033.22

**Total       claimed: $4522033.22**

History:

Details    148-1 04/24/2009 Claim #148 filed by David Golkar, total amount claimed: $4522033.22
(Garcia, Rolando )

Description:

Remarks:

Exhibit D-7

# EXHIBIT E

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT   Central District of California | PROOF OF CLAIM |
|---|---|

**Name of Debtor:**
NAMCO CAPITAL GROUP, INC./EZRI NAMVAR

**Case Number:**
2:08-32333-BR

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
DAVID GOLKAR

Name and address where notices should be sent:
David Golkar
c/o Christman, Kelley & Clarke, PC
2570 Justin Road, Suite 240, Highland Village, Texas 75077

Telephone number:
(925) 253-4440

**FILED**

**SEP 09 2011**

CLERK U S BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**   $_____4,000,000.00_____

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** __Through debtor's fraud,__ money given to purchase properties
(See instruction #2 on reverse side.)                                and pay consultants

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:**

**Value of Property:**$_____ **Annual Interest Rate**_____%

Amount of arrearage and other charges as of time case filed included in secured claim,

**if any:** $_____   **Basis for perfection:** _____

**Amount of Secured Claim:** $_____   **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**FOR COURT USE ONLY**

**Date:**
09/09/2011

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Matthew Clarke*

Matthew M. Clarke, attorney for David Golkar

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Exhibit E-8

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 831 State Street, Santa Barbara, California 93101. A true and correct copy of the foregoing document described as **PROOF OF CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On **September 9, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge **will be** completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 9, 2011**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge **will be** completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 9/9/11 | Kathy Koester | _Kathy Koester_ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

January 2009

| In re: NAMCO CAPITAL GROUP, INC. | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
|---|---|
| Debtor(s). | |

## II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL

### SERVED BY U.S. MAIL:

**United States Trustee (LA)**
725 S Figueroa St # 2600
Los Angeles, CA 90017-5413

**David M. Poitras**
**Dan P. Sedor**
**Jeffer Mangels Butler & Mitchell LLP**
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

**Sawtelle Properties LLC**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Soussan Hashemi**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**John M. Rygh**
915 Wilshire Blvd, Suite 2100
Los Angeles, CA 90017

**Ashland Properties, LLC**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Mahmoud Fatorechi**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Morteza Homayounjam**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Saul Reiss**
Law Offices of Saul Reiss, P.C.
2800 28th St Ste 328
Santa Monica, CA 90405

## III.    SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:

### SERVED BY E-MAIL:

- **David M. Poitras**
- **Robyn B. Sokol**
- **Joseph A. Eisenberg**
- **Gregory M. Salvato**
- **Saul Reiss**

dpoitras@jmbm.com
rsokol@ebg-law.com; ecf@ebg-law.com
jeisenberg@jmbm.com
gsalvato@salvatolawoffices.com
saulreiss@verizon.net

Exhibit E-10

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*F 9013-3.1*

January 2009

| In re: NAMCO CAPITAL GROUP, INC. | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
|---|---|
| Debtor(s). | |

## SERVED BY PERSONAL DELIVERY:

**Honorable Barry Russell**
**United States Bankruptcy Court – Central District of California**
**Edward R. Roybal Federal Building and Courthouse**
**255 E. Temple Street, Suite 1660**
**Los Angeles, CA 90012**

Exhibit E-11

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1

January 2009

# EXHIBIT G

Matthew M. Clarke, SBN 184959
Dugan P. Kelley, SBN 207347
CHRISTMAN, KELLEY & CLARKE
831 State Street
Santa Barbara, California 93101
Telephone:    (805) 884-9922
Facsimile:    (866) 611-9852

Attorneys for Plaintiffs
Kamran Pasadena Group, Inc. and Kamran Group, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| In Re:  NAMCO CAPITAL GROUP INC, a California corporation<br><br>Debtor. | Case No.: 2:08-ap-32333-BR<br><br>Chapter 11<br><br>Adv. No.: 2:10-ap-01244 BR |
| KAMRAN PASADENA GROUP, INC., a California corporation; and KAMRAN GROUP, LLC, a California limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>NAMCO CAPITAL GROUP INC, a California corporation; EZRI NAMVAR, an individual; BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC, a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR; an individual; ASHLAND PROPERTIES, LLC, A California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC; a California | PLAINTIFF KAMRAN PASADENA GROUP, INC.'S RESPONSE TO DEFENDANT BRADLEY D. SHARP'S FIRST SET OF INTERROGATORIES TO KAMRAN PASADENA GROUP, INC. |

Exhibit G-12

RESPONSE TO FIRST SET OF INTERROGATORIES

limited liability company;
MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEES FOR THE FATORECHI-HASHEMI TRUST; and
DOES 1 THROUGH 100

Defendants.

AND RELATED COUNTER CLAIMS

Plaintiff Kamran Pasadena Group, Inc. (hereinafter "Plaintiff"), hereby answers, objects, or otherwise responds to Defendant Bradley D. Sharp's (hereinafter "Defendant"), First Set of Interrogatories to Kamran Pasadena Group, Inc., pursuant to Federal Rule of Civil Procedure 33 and Federal Rule of Bankruptcy Procedure 7033, as follows:

**PRELIMINARY STATEMENT**

These responses are made solely for the purpose of this action. Plaintiff has not completed his investigation of the facts relating to this case and has not completed his preparation for trial. Discovery is ongoing and the following responses are based upon information presently available to Plaintiff and are made without prejudice to Plaintiff of Plaintiff's right to supplement its responses and to utilize subsequently discovered facts.

Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby. The fact that Plaintiff has answered any interrogatories should not be taken as an admission that Plaintiff accepts or admits the existence of any facts set forth or assumed by such interrogatory, or that such response constitutes admissible evidence. The fact that Plaintiff has answered part or all of any interrogatory is not intended and shall not be construed to be a waiver by Plaintiff of all or any part of any objection to any interrogatory made by Defendant.

Plaintiff responds to the interrogatories under the auspices of the foregoing.

**Exhibit G-13**

1

RESPONSE TO FIRST SET OF INTERROGATORIES

## RESPONSES TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all persons with knowledge of the purported oral agreements between you and Namco that are alleged in the Complaint.

**RESPONSE TO INTERROGATORY NO. 1:**

David Golkar, Sole Member of Kamran Group, LLC

Ezri Namvar, principal and/or agent for Namco Capital Group, Inc.

Alex Helmi, introduced David Golkar to Ezri Namvar

Hamid Taba, Vice President of Namco Capital Group, Inc.

Shadi Dejam, Rox Consulting Group, Inc.

**INTERROGATORY NO. 2:**

State all facts that you contend support your allegation in paragraph 12 of the Complaint that "[t]he funds paid by each party were credited toward their capital account."

**RESPONSE TO INTERROGATORY NO. 2:**

Namvar and Golkar mutually agreed that the funds each party had contributed to the joint venture would be credited towards the respective contributing party's capital account, and that such funds would be utilized in furtherance of the acquisition and development of the properties comprising the Pasadena Development. Plaintiffs and Namco each contributed funds to their respective capital accounts in and for the joint venture to facilitate the advancement of the Pasadena project. Plaintiffs ultimately contributed over $8,300,000 of the total acquisition price of $19,226,215 for the real properties included in the Pasadena project, rather than the $1,922,621.50 it was obligated to contribute under the terms of the joint venture agreement between Namco and Plaintiffs.

**INTERROGATORY NO. 3:**

State all facts that you contend support your allegation in paragraph 15 of the Complaint that "Golkar and Namvar entered into an oral Joint Venture Agreement to complete the Pasadena Development (assemblage and development)."

Exhibit G-14

RESPONSE TO FIRST SET OF INTERROGATORIES

**RESPONSE TO INTERROGATORY NO. 3:**

The only reason the Pasadena Development project was conceived and implemented was because Golkar and Namvar by and through their respective entities, Golkar via the Kamran entities and Namvar through Namco, desired to enter into a joint venture relationship for the acquisition and development of real estate properties and to utilize the respective resources of the parties, that being Golkar's real property development expertise and Namvar's finance expertise, to make it a successful venture for all involved. Specifically, the parties recognized an opportunity to develop real properties by way of and under their joint venture relationship in the Pasadena area. Accordingly, the parties, on behalf of and within the purview of the parties' joint venture relationship, purchased the 233 Fair Oaks Property, the 25 West Walnut Property (Pasadena Athletic Club) and four condominiums at 25 West Walnut to further the Pasadena Development project.

These properties were obtained, purchase money passed, and a great deal of development money was spent in accordance with the parties' original intent to complete the Pasadena Development project as an asset of their joint venture relationship. The purchase of these properties and the expenditures toward their development were all according to the terms of the oral joint venture agreement, which were further detailed in the unsigned written document evidencing the terms thereof.

**INTERROGATORY NO. 4:**

State all facts that you contend support your allegation in paragraph 15 of the Complaint that "[f]rom the onset of the joint venture, Golkar was managing the development of the Property through its entitlement through the City of Pasadena. "

**RESPONSE TO INTERROGATORY NO. 4:**

From the beginning of the joint venture, Golkar managed the development of the Pasadena Project, rather than Namvar. The development of the subject Property was made possible through its entitlement from the City of Pasadena and Golkar managed the development accordingly.

Exhibit G-15

3

RESPONSE TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 5:**

State all facts that you contend support your allegation in paragraph 15 of the Complaint that "[i]n December 2007, the parties created Walnut Holding Company, LLC, formed on the same terms as their Joint Venture."

**RESPONSE TO INTERROGATORY NO. 5:**

Golkar and Namvar created Walnut Land Holding Company, LLC on or about December 28, 2007, by filing Articles of Organization with the California Secretary of State. The company was assigned Entity No. 200736410028. The purpose of the entity, as agreed by Golkar and Namvar, was to operate under and upon the same terms as the joint venture agreement between the parties and thereby develop the real property assets comprising the Pasadena Development project.

**INTERROGATORY NO. 6:**

State all facts that you contend support your allegation in paragraph 16 of the Complaint that "Properties were obtained, purchase money passed and a great deal of development money was all spent in accordance with the parties' original intent."

**RESPONSE TO INTERROGATORY NO. 6:**

In furtherance of the parties' agreement to acquire and develop properties for the Pasadena project pursuant to their joint venture relationship, Golkar and Namvar, by and through the Kamran (Golkar) and Namco (Namvar) entities, obtained the following properties, at the following purchase prices, and in the name of the following entities: (1) The 233 Fair Oaks property was purchased on or about August 12, 2005, for the purchase price of $4,300,000 by Tranmar Properties, LLC (Namvar was a managing member of Tranmar Properties, LLC, and the purchase by such entity of the 233 Fair Oaks property was upon his request to Golkar since Walnut Land Holding Company, LLC had not been formed at the time the sale closed); and (2) 25 West Walnut, Unit #503 was purchased for $7,650,000.00 by the Kamran Group, LLC. Additionally, four condo units were purchased at 25 West Walnut, namely, Unit #404 for $530,000, Unit #504 for $1,650,000, Unit #501 for $780,000, and Unit #402 for $648,600. The

**Exhibit G-16**

parties also expended $3,600,000 toward the Marengo Ave. property that would fulfill the low income housing requirement for the Pasadena Development project.

**INTERROGATORY NO. 7:**

State all facts that you contend support your allegation in paragraph 17 of the Complaint that "[b]oth Golkar and Namvar wanted to develop the 233 Fair Oaks and 25 West Walnut properties into one mixed use project (with hotel, residential, and retail space) for South Pasadena. Both Namvar (through Namco) and Golkar (through Kamran) agreed to proceed with the acquisition and development of these properties in furtherance of their joint venture relationship."

**RESPONSE TO INTERROGATORY NO. 7:**

Golkar and Namvar entered into a joint venture agreement to acquire and develop real property and, specifically, to enter into and complete the Pasadena Development Project, which included two abutting sites, that being the 233 Fair Oaks and the 25 West Walnut properties. Since these two sites were abutting, they would provide space for a mixed use project including hotel, residential and retail space for South Pasadena; and since the 233 Fair Oaks and 25 West Walnut properties fit the parties' needs, they agreed to proceed with the acquisition and development of these properties pursuant to and in furtherance of their joint venture agreement/relationship.

**INTERROGATORY NO. 8:**

State all facts that you contend support your allegation in paragraph 18 of the Complaint that Namvar and Golkar agreed to form a new entity, Walnut Holding, that would hold title to the 233 Fair Oaks and 25 West Walnut properties. Since the entity was not formed at the time the 233 Fair Oaks sale closed, Namvar requested that Golkar agree to use his Tranmar Properties, LLC."

**RESPONSE TO INTERROGATORY NO. 8:**

Golkar and Namvar agreed to create, and did create, Walnut Land Holding Company, LLC on or about December 28, 2007, by filing Articles of Organization with the California

Exhibit G-17

5

RESPONSE TO FIRST SET OF INTERROGATORIES

Secretary of State. The company was assigned Entity No. 200736410028. The purpose of the entity, as agreed by Golkar and Namvar, was to operate under and upon the same terms as the joint venture agreement between the parties and thereby develop the real property assets comprising the Pasadena Development project.

The 233 Fair Oaks property was purchased on or about August 12, 2005, for the purchase price of $4,300,000 by Tranmar Properties, LLC, of which purchase price Kamran Group, LLC provided $1,250,000. Namvar was a managing member of Tranmar Properties, LLC, and the purchase by such entity of the 233 Fair Oaks property was upon his request to Golkar since Walnut Land Holding Company, LLC had not been formed at the time the sale closed.

**INTERROGATORY NO. 9:**

State all facts that you contend support your allegation in paragraph 25 of the Complaint that "Namco initially agreed to convert the $4,300,000 paid by Kamran into a loan and Namco issued Karman an unsecured promissory note to that effect."

**RESPONSE TO INTERROGATORY NO. 9:**

Kamran contributed $4,300,000 toward the Banning project, which was a large development that Golkar and Namvar, by and through the Kamran entities (Golkar) and Namco (Namvar), had planned on developing together pursuant to their joint venture relationship, and the parties initially agreed to convert Kamran's contribution to the Banning project into a loan. Namco issued an unsecured promissory note to Kamran covering the loan. Namco made modest interest payments on the promissory note, but Kamran wanted a secured position or an agreement to convert the $4,300,000 paid by Kamran into a credit in Plaintiffs' capital account. In or around March 2008, Kamran and Namco agreed to credit Plaintiffs' capital account with the $4,300,000 initially paid for the Banning project, and Kamran no longer had an interest in the Banning project.

**INTERROGATORY NO. 10:**

State all facts that you contend support your allegation in paragraph 26 of the Complaint that "in or around March 2008, Kamran and Namco agreed to credit Plaintiffs' capital account

Exhibit G-18

RESPONSE TO FIRST SET OF INTERROGATORIES

with the $4,300,000 initially paid for the Banning project, and Karman no longer had any interest in the Banning project."

**RESPONSE TO INTERROGATORY NO. 10:**

Namco initially agreed to convert the $4,300,000 paid by Kamran into a loan and Namco issued Kamran an unsecured promissory note to that effect. Although Namco made modest interest payments on the promissory note, Kamran wanted a secured position or an agreement to convert the $4,300,000 paid by Kamran on the Banning project into a credit in Plaintiffs' capital account for the Pasadena project. After Plaintiffs' capital account had been credited with the $4,300,000, Kamran was not only in full compliance with the terms of the joint venture for the Pasadena project, but also the percentage of ownership was adjusted per the terms of the agreement.

**INTERROGATORY NO. 11:**

State all facts that you contend support your allegation in paragraph 27 of the Complaint that "Plaintiffs contributed over $8,300,000 rather than the $1,922,621.50 it was obligated under the terms of the joint venture between Namco and Plaintiffs."

**RESPONSE TO INTERROGATORY NO. 11:**

Under the terms of the joint venture between Namco and Plaintiffs, Golkar was to contribute his development expertise and 10% of the equity. However, Plaintiffs contributed $8,300,000 of the $19,226,215 acquisition price for the real properties in the Pasadena project. Specifically, the $8,300,000 consists of out-of-pocket expenditures incurred by Plaintifs for development costs associated with the Pasadena Development project properties and Plaintiffs' contribution of the following to the purchase of such properties: (1) $1,250,000 for the purchase of 233 Fair Oaks; (2) $750,000 for the purchase of 25 West Walnut Unit #503; (3) $630,000 for the purchase of 25 West Walnut Unit #501; (4) $57,194 for the purchase of 25 West Walnut Unit #402; and (5) $4,300,000 initially contributed toward the Banning project and which was converted to a credit to Plaintiffs' capital account related to the joint venture's Pasadena Development project. Plaintiffs' contribution exceeded the 10%, i.e., $1,922,621.50, it was

Exhibit G-19

7

RESPONSE TO FIRST SET OF INTERROGATORIES

obligated to contribute under the terms of the joint venture agreement.

**INTERROGATORY NO. 12:**

State all facts that you contend support your allegation in paragraph 28 of the Complaint that "[r]ather than obtain financing from other investors or financial institutions secured by Plaintiffs' ownership interests in the 25 West Walnut and Marengo properties, Plaintiffs agreed to allow Namco to give it $12,650,000 in exchange for Promissory Notes secured by these three pieces of real property."

**RESPONSE TO INTERROGATORY NO. 12:**

Namco and Plaintiffs agreed to an exchange of $12,650,000 for Promissory Notes secured by Plaintiffs' interest in the 25 West Walnut and Marengo properties. Plaintiffs reasonably relied on Namco's representations that Namco had sufficient capital to tender $12,650,000 as consideration for the Promissory Notes and that Namco would fully tender the consideration and honor its obligations under the Agreements. Absent Namco's representations, Plaintiffs would have secured the needed capital to continue the development of the Pasadana Development project from another source.

**INTERROGATORY NO. 13:**

State all facts that you contend support your allegation in paragraph 30 of the Complaint that "Plaintiffs received no consideration and the Promissory Notes were never in effect nor did Namco have the legal right to sell fractional interests in the Promissory Notes."

**RESPONSE TO INTERROGATORY NO. 13:**

Although Plaintiffs executed Promissory Notes in favor of Namco, Plaintiffs never received any consideration, i.e., the money called for in the Promissory Notes, which Namco was required to advance in order for the Promissory Notes to become valid and enforceable. Because consideration was never given by Namco in exchange for the Promissory Notes, they were never in effect and, accordingly, were null and void *ab initio*. Further, Namco did not have a legal right to sell fractional interests of these Promissory Notes, which had been rendered null and void for lack of consideration.

Exhibit G-20

8

RESPONSE TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 14:**

State all facts that you contend support your allegation in paragraph 38 of the Complaint that "Kamran has performed all conditions, covenants and promises it was required to perform in accordance with the terms and conditions of the agreements."

**RESPONSE TO INTERROGATORY NO. 14:**

Kamran has provided his development expertise and has contributed more funds than he was obligated to provide under his agreements with Namco. Additionally, Kamran complied with the terms of the Promissory Notes and provided the 25 West Walnut and Marengo properties as security. Although Kamran never made an interest or principal payment on any of the Promissory Notes, he was not required to do so, because Namco failed to provide consideration for these Promissory Notes, rendering them null and void.

**INTERROGATORY NO. 15:**

State all facts that you contend support your allegation in paragraph 39 of the Complaint that "Namco and/or the Namco Trustee breached the agreements by its conduct."

**RESPONSE TO INTERROGATORY NO. 15:**

Namco and/or the Namco Trustee breached the agreements by its conduct, including but not limited to the following:

Taking unilateral action without proper notice when it borrowed $5 million on the 233 Fair Oaks property without the consent, notice, or knowledge of or by Kamran, refusing to tender consideration in the amount of $12,650,000 in exchange for Promissory Notes given by Kamran, calling a default when no default existed under the terms of the Agreements, as the Promissory Notes were null and void for lack of consideration, imposing wrongful fees and charges based on a default that did not exist (because Promissory Notes were null and void), preventing Plaintiffs' performance under the agreements by failing to provide consideration under the agreements, then calling a default when Plaintiffs did not make payments on the null and void Promissory Notes, filing Notices of Default when Namco's failure to provide consideration created a fictional alleged default, not providing Kamran with proper notice prior to calling a default, and

Exhibit G-21

9

RESPONSE TO FIRST SET OF INTERROGATORIES

misrepresenting its intention to avoid performance of its obligations under the agreements by providing that it would comply with the terms of the agreements, when it intended not to comply.

**INTERROGATORY NO. 16:**

State all facts that you contend support your allegation in paragraph 43 of the Complaint that "Namco breached the covenant" of good faith and fair dealing.

**RESPONSE TO INTERROGATORY NO. 16:**

Namco breached the covenant of good faith and fair dealing by its acts stated in Interrogatory Response No. 15, and, in addition:

Concealing its own impaired financial status from Plaintiffs, while moving forward with the agreements and Promissory Notes; failing to negotiate in good faith when accepting Plaintiffs' Promissory Notes and subsequently refusing to tender consideration; imposing fees and charges based upon a nonexistent default, arising from null and void Promissory Notes; asserting interpretations of the various agreements between the parties contrary to the original understanding of those agreements, including percentage of contributions by each party, terms of repayment, and the responsibilities of each party; abusing its power as holder of the Promissory Notes by falsely asserting Plaintiffs' non-compliance with the terms of the Notes and imposing fees and charges on the account; and filing a Notice of Default when its failure to pay consideration to Plaintiffs created the alleged default.

**INTERROGATORY NO. 17:**

State all facts that you contend support your allegation in paragraph 57 of the Complaint that "Defendants through their representative Namvar" made the representations alleged in paragraph 57 of the Complaint."

**RESPONSE TO INTERROGATORY NO. 17:**

Namvar represented to Golkar that Namco had sufficient capital to tender $12,650,000 as consideration for the Promissory Notes. Namvar also represented that Namco would fully tender consideration and honor its obligations under the Agreements, including timely tendering

Exhibit G-22

10

consideration for the Promissory Notes. Namvar made these false representations to induce Golkar to move forward with execution of the Promissory Notes.

**INTERROGATORY NO. 18:**

State all facts that you contend support your allegation in paragraph 59 of the Complaint that "[w]hen Namvar made these representations he knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs and induce them to act in reliance on these representations."

**RESPONSE TO INTERROGATORY NO. 18:**

Namvar made the above referenced representations to Golkar, concerning payment of consideration for the Promissory Notes knowing that Namco did not have sufficient capital to pay the $12,650,000 in consideration. Additionally, these representations were made by Namvar, knowing that Namco would not fully tender consideration and honor its obligations under the Agreements. Namvar's intention in making these representations, knowing them to be false when made, was to deceive and defraud Plaintiffs and induce them to act in reliance on these representations.

**INTERROGATORY NO. 19:**

State all facts that you contend support your allegation in paragraph 61 of the Complaint that "Plaintiffs reasonably relied on Namco's representations given that they held themselves out as experienced, finance experts with sufficient capital to tender the consideration and did not disclose its financial difficulties or sordid dealings."

**RESPONSE TO INTERROGATORY NO. 19:**

Namco, by and through Namvar, and Namvar held themselves out as experienced finance experts with Namco having sufficient capital to tender consideration pursuant to and under the Promissory Notes, and they concealed their financial difficulties or sordid dealings from Plaintiffs. Plaintiffs relied on Namco's representations when agreeing to execute the Promissory Notes in Namco's favor, as they expected that Namco would tender the consideration as agreed upon. Plaintiffs' justifiably relied upon Namco's and Namvar's representations that they were

Exhibit G-23

11

RESPONSE TO FIRST SET OF INTERROGATORIES

experienced finance experts and that Namco had sufficient capital to tender the $12,650,000 consideration pursuant to and under the Promissory Notes.

**INTERROGATORY NO. 20:**

State all facts that you contend support your allegation in paragraph 62 of the Complaint that "Namco's misrepresentations proximately caused Plaintiffs to have insufficient funds to complete the project, caused loss of tenants and rents, caused out of pocket expenditures and potentially caused the loss of the Property and all capital invested in the Property."

**RESPONSE TO INTERROGATORY NO. 20:**

Having contributed $8,300,000 of the $19,226,215 expended for the acquisition and development of the Pasadena Development project properties, rather than the agreed upon 10%, i.e., $1,922,621.50, pursuant to the parties' joint venture agreement, Plaintiffs needed additional capital to continue the development of the Pasadena Development project properties. Plaintiffs agreed to allow Namco to give it $12,650,000 in exchange for Promissory Notes secured by these three pieces of real property. Plaintiffs made this agreement rather than obtain financing from other investors or financial institutions because Namco represented that it had sufficient capital to tender $12,650,000 as consideration for the Promissory Notes and that it would fully tender this consideration. Had Plaintiffs obtained financing from other investors or financial institutions, they likely would have been paid consideration and thus had sufficient funds to complete the project, retain their tenants and rents, prevent out of pocket expenditures, and prevented any potential loss of the Property and all capital invested in the property. Instead, Namco's failure to tender the $12,650,000 resulted in Plaintiffs' inability to complete the project due to insufficient funding, which, in turn, resulted in claims by consultants, contractors, architects, and engineers working on the Pasadena Development project against Plaintiffs, the loss of tenants and corresponding rents, resulted in Plaintiffs incurring additional out of pocket expenditures, and has jeopardized the loss of the Pasadena Development properties and all capital invested therein to date.

Exhibit G-24

12

RESPONSE TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 21:**

State all facts that you contend support your allegation in paragraph 62 of the Complaint that "[h]ad Namco not made these misrepresentations, Plaintiffs would have proceeded with another lender capable of fully tendering funds in exchange for the Promissory Notes and/or loaning monies in a timely manner."

**RESPONSE TO INTERROGATORY NO. 21:**

Plaintiffs agreed to allow Namco to give it $12,650,000 in exchange for Promissory Notes secured by the three pieces of real property comprising the Pasadena Development project. Plaintiffs made this agreement rather than obtain financing from other investors or financial institutions because Namco represented that it had sufficient capital to tender $12,650,000 as consideration for the Promissory Notes and that it would fully tender this consideration.

Had Namco not represented to Plaintiffs that it could fund the $12,650,000 needed, Plaintiffs would have sought funding from another lender. And had Plaintiffs obtained financing from other investors or financial institutions, who were capable of funding the needed $12,650,000 in funds, Plaintiffs would have received sufficient funds to complete the project, retain their tenants and rents, prevent out of pocket expenditures, and it would have prevented any potential loss of the Property and all capital invested in the property.

**INTERROGATORY NO. 22:**

State all facts that you contend support your allegation in paragraph 63 of the Complaint that "[t]he above described misconduct caused Plaintiffs to suffer substantial losses, including increased costs of renovation, lost of tenants and rental income, increased financing costs and potential loss of the Properties."

**RESPONSE TO INTERROGATORY NO. 22:**

Had Plaintiffs obtained financing of the necessary funds from other investors or financial institutions, they would have been provided sufficient funds to complete the project, retain their tenants and rents, prevent out of pocket expenditures, and prevent any potential loss of the Property and all capital invested in the property.

Exhibit G-25

13

RESPONSE TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 23:**

Describe with specificity all damages sustained by you as alleged in the Complaint.

**RESPONSE TO INTERROGATORY NO. 23:**

Plaintiffs have suffered substantial losses, including increased costs of renovation; loss of tenants and rental income; increased financing costs; capital contributions in excess of the agreed upon 10% to the joint venture relationship with Namco; loss of equitable value in the properties, and, in particular, the 233 Fair Oaks property; the costs and expenses, including attorneys' fees, incurred in cancelling the Notices of Default; and potential loss of the properties, all to be proven at trial.

Additionally, Namco acted in a willful, wanton and malicious manner, in callous, conscious and intentional disregard for the interests of Plaintiffs, and with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiffs. As a result, Plaintiffs are entitled to recover exemplary and punitive damages.

**INTERROGATORY NO. 24:**

State all facts that you contend support your allegations in the Complaint that you are entitled to exemplary and punitive damages.

**RESPONSE TO INTERROGATORY NO. 24:**

Namco made the representations to Plaintiffs concerning payment of consideration and compliance with its obligations under the Agreements, knowing that Plaintiffs would rely on these representations to their detriment. Accordingly, Namco acted in a willful, wanton and malicious manner, in callous, conscious and intentional disregard for the interests of Plaintiffs, and with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiffs.

Exhibit G-26

14

RESPONSE TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 25:**

For each of your responses to the First Set of Requests for Admission served concurrently with these interrogatories that is anything other than an unqualified admission, state all facts upon which you base your response and identify all persons with knowledge of those facts.

**RESPONSE TO INTERROGATORY NO. 25**

Plaintiff objects to this request on the grounds that it violates the limitation imposed by Federal Rule of Civil Procedure 33(a)(1), which provides that a party may serve no more than 25 written interrogatories, including all discrete subparts, on another party absent leave of court to serve additional interrogatories. Special Interrogatory No. 25, by requesting that Plaintiff state all facts upon which it bases its response to the First Set of Requests for Admission served concurrently with these interrogatories and identify all persons with knowledge of those facts, has exceeded the limitation on the basis that the request to provide the identified information for each response to the First Set of Requests for Admissions that is not an unqualified admission constitutes a discrete subpart, which in turn results in Defendant exceeding the limit of 25 interrogatories. Subject to the foregoing objection and without waiving same, Plaintiff hereby responds to the first subpart to Interrogatory 25, all other subparts exceeding the 25 interrogatory limitation, as follows:

**REQUEST FOR ADMISSION NO. 1**

The parties prepared a draft of a written joint venture agreement reflecting the terms of the joint venture relationship/agreement under which Namco and the Kamran entities operated. Golkar and Namvar had knowledge of the draft.

DATED: October 18, 2010                    CHRISTMAN, KELLEY & CLARKE

By:  /s/ Matthew M. Clarke
Matthew M. Clarke
Dugan P. Kelley
Zubin Farinpour
Attorneys for Plaintiffs and Counter-Defendants
Kamran Pasadena Group, Inc. and Kamran
Group, LLC

Exhibit G-27

15

RESPONSE TO FIRST SET OF INTERROGATORIES

## VERIFICATION

I, David Golkar, am a member of Plaintiff Kamran Group, LLC and the majority owner of Plaintiff Kamran Pasadena Group, Inc. in the above-entitled action. I have read the foregoing RESPONSES TO TRUSTEE BRADLEY D. SHARP'S FIRST SET OF INTERROGATORIES TO KAMRAN PASADENA GROUP, INC., and know the contents thereof, and I certify that the same is true of my own knowledge, except as to those matters which are therein stated upon my information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Iran this 18 day of October, 2010.

_____
David Golkar

RESPONSE TO FIRST SET OF INTERROGATORIES

Exhibit G-28

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 5215 N. O'Connor Blvd., Suite 200, Irving, Texas 75039. A true and correct copy of the foregoing document described **PLAINTIFF KAMRAN PASADENA GROUP, INC'S RESPONSE TO BRADLEY D. SHARP'S FIRST SET OF INTERROGATORIES TO KAMRAN GROUP, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):

On October 19, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows: **VIA U.S. MAIL**

David M. Poitras, P.C.
Dan P. Sedor, P.C.
Jeffer Mangels Bulter & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 18, 2010**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
**SERVED BY EMAIL**
- David M. Poitras      dpoitras@jmbm.com
- Marc S. Cohen      mcohen@kayescholer.com
- Ashleigh A. Danker      adanker@kayescholer.com
- Gregory M. Salvato      gsalvato@pmcos.com
- Robyn B. Sokol      rsokol@ebg-law.com
- United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov
- Saul Reiss      saulreiss@verizon.net

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 10/18/10 | Barry L. Moerschell | /s/ Barry L. Moerschell |
|---|---|---|
| Date | Type Name | Signature |

ADDITIONAL SEVICE INFORMATION (if needed):

Exhibit G-29

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                        **F 9013-3.1**

| In re:  NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER:  2:08-bk-32333-BR<br>ADVERSARY PROC. NO.:  2:10-ap-01244-BR |
|---|---|

## SERVICE LIST VIA U.S. MAIL

Marc S. Cohen
Ashleigh A. Danker
Kaye Scholer LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

Ashland Properties, LLC
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Sawtelle Properties LLC
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Mahmoud Fatorechi
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Soussan Hashemi
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Morteza Homayounjam
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Timothy Neufeld
Neufeld Law Group
360 East 2nd Street, Suite 703
Los Angeles, CA 90012

Saul Reiss
Law Offices of Saul Reiss
2800 28th Street, Suite 328
Santa Monica, CA 90405

John M. Rygh
915 Wilshire Blvd, Suite 2100
Los Angeles, CA 90017

Exhibit G-30

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

# EXHIBIT H

Matthew M. Clarke, SBN 184959
Dugan P. Kelley, SBN 207347
CHRISTMAN, KELLEY & CLARKE
831 State Street
Santa Barbara. California 93101
Telephone:    (805) 884-9922
Facsimile:    (866) 611-9852

Attorneys for Plaintiffs
Kamran Pasadena Group, Inc. and Kamran Group, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| In Re:  NAMCO CAPITAL GROUP INC, a California corporation<br><br>Debtor. | Case No.: 2:08-ap-32333-BR<br><br>Chapter 11<br><br>Adv. No.:  2:10-ap-01244 BR |
| KAMRAN PASADENA GROUP, INC., a California corporation; and KAMRAN GROUP, LLC, a California limited liability company<br><br>Plaintiffs,<br><br>v,<br><br>NAMCO CAPITAL GROUP INC, a California corporation; EZRI NAMVAR, an individual; BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC, a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR; an individual; ASHLAND PROPERTIES, LLC, A California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC; a California | **PLAINTIFF KAMRAN GROUP, LLC'S RESPONSE TO DEFENDANT BRADLEY D. SHARP'S FIRST SET OF INTERROGATORIES TO KAMRAN GROUP, LLC** |

**Exhibit H-31**

RESPONSE TO FIRST SET OF INTERROGATORIES

limited liability company;
MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEES FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100

Defendants.

—

AND RELATED COUNTER CLAIMS

Plaintiff Kamran Group, LLC (hereinafter "Plaintiff"), hereby answers, objects, or otherwise responds to Defendant Bradley D. Sharp's (hereinafter "Defendant"), First Set of Interrogatories to Kamran Group, LLC, pursuant to Federal Rule of Civil Procedure 33 and Federal Rule of Bankruptcy Procedure 7033, as follows:

**PRELIMINARY STATEMENT**

These responses are made solely for the purpose of this action. Plaintiff has not completed his investigation of the facts relating to this case and has not completed his preparation for trial. Discovery is ongoing and the following responses are based upon information presently available to Plaintiff and are made without prejudice to Plaintiff of Plaintiff's right to supplement its responses and to utilize subsequently discovered facts.

Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby. The fact that Plaintiff has answered any interrogatories should not be taken as an admission that Plaintiff accepts or admits the existence of any facts set forth or assumed by such interrogatory, or that such response constitutes admissible evidence. The fact that Plaintiff has answered part or all of any interrogatory is not intended and shall not be construed to be a waiver by Plaintiff of all or any part of any objection to any interrogatory made by Defendant.

Plaintiff responds to the interrogatories under the auspices of the foregoing.

Exhibit H-32

RESPONSE TO FIRST SET OF INTERROGATORIES

## RESPONSES TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all persons with knowledge of the purported oral agreements between you and Namco that are alleged in the Complaint.

**RESPONSE TO INTERROGATORY NO. 1:**

David Golkar, Sole Member of Kamran Group, LLC

Ezri Namvar, principal and/or agent for Namco Capital Group, Inc.

Alex Helmi, introduced David Golkar to Ezri Namvar

Hamid Taba, Vice President of Namco Capital Group, Inc.

Shadi Dejam, Rox Consulting Group, Inc.

**INTERROGATORY NO. 2:**

State all facts that you contend support your allegation in paragraph 12 of the Complaint that "[t]he funds paid by each party were credited toward their capital account."

**RESPONSE TO INTERROGATORY NO. 2:**

Namvar and Golkar mutually agreed that the funds each party had contributed to the joint venture would be credited towards the respective contributing party's capital account, and that such funds would be utilized in furtherance of the acquisition and development of the properties comprising the Pasadena Development. Plaintiffs and Namco each contributed funds to their respective capital accounts in and for the joint venture to facilitate the advancement of the Pasadena project. Plaintiffs ultimately contributed over $8,300,000 of the total acquisition price of $19,226,215 for the real properties included in the Pasadena project, rather than the $1,922,621.50 it was obligated to contribute under the terms of the joint venture agreement between Namco and Plaintiffs.

**INTERROGATORY NO. 3:**

State all facts that you contend support your allegation in paragraph 15 of the Complaint that "Golkar and Namvar entered into an oral Joint Venture Agreement to complete the Pasadena Development (assemblage and development)."

Exhibit H-33

RESPONSE TO FIRST SET OF INTERROGATORIES

**RESPONSE TO INTERROGATORY NO. 3:**

The only reason the Pasadena Development project was conceived and implemented was because Golkar and Namvar by and through their respective entities, Golkar via the Kamran entities and Namvar through Namco, desired to enter into a joint venture relationship for the acquisition and development of real estate properties and to utilize the respective resources of the parties, that being Golkar's real property development expertise and Namvar's finance expertise, to make it a successful venture for all involved. Specifically, the parties recognized an opportunity to develop real properties by way of and under their joint venture relationship in the Pasadena area. Accordingly, the parties, on behalf of and within the purview of the parties' joint venture relationship, purchased the 233 Fair Oaks Property, the 25 West Walnut Property (Pasadena Athletic Club) and four condominiums at 25 West Walnut to further the Pasadena Development project.

These properties were obtained, purchase money passed, and a great deal of development money was spent in accordance with the parties' original intent to complete the Pasadena Development project as an asset of their joint venture relationship. The purchase of these properties and the expenditures toward their development were all according to the terms of the oral joint venture agreement, which were further detailed in the unsigned written document evidencing the terms thereof.

**INTERROGATORY NO. 4:**

State all facts that you contend support your allegation in paragraph 15 of the Complaint that "[f]rom the onset of the joint venture, Golkar was managing the development of the Property through its entitlement through the City of Pasadena."

**RESPONSE TO INTERROGATORY NO. 4:**

From the beginning of the joint venture, Golkar managed the development of the Pasadena Project, rather than Namvar. The development of the subject Property was made possible through its entitlement from the City of Pasadena and Golkar managed the development accordingly.

Exhibit H-34

3

**INTERROGATORY NO. 5:**

State all facts that you contend support your allegation in paragraph 15 of the Complaint that "[i]n December 2007, the parties created Walnut Holding Company, LLC, formed on the same terms as their Joint Venture."

**RESPONSE TO INTERROGATORY NO. 5:**

Golkar and Namvar created Walnut Land Holding Company, LLC on or about December 28, 2007, by filing Articles of Organization with the California Secretary of State. The company was assigned Entity No. 200736410028. The purpose of the entity, as agreed by Golkar and Namvar, was to operate under and upon the same terms as the joint venture agreement between the parties and thereby develop the real property assets comprising the Pasadena Development project.

**INTERROGATORY NO. 6:**

State all facts that you contend support your allegation in paragraph 16 of the Complaint that "Properties were obtained, purchase money passed and a great deal of development money was all spent in accordance with the parties' original intent."

**RESPONSE TO INTERROGATORY NO. 6:**

In furtherance of the parties' agreement to acquire and develop properties for the Pasadena project pursuant to their joint venture relationship, Golkar and Namvar, by and through the Kamran (Golkar) and Namco (Namvar) entities, obtained the following properties, at the following purchase prices, and in the name of the following entities: (1) The 233 Fair Oaks property was purchased on or about August 12, 2005, for the purchase price of $4,300,000 by Tranmar Properties, LLC (Namvar was a managing member of Tranmar Properties, LLC, and the purchase by such entity of the 233 Fair Oaks property was upon his request to Golkar since Walnut Land Holding Company, LLC had not been formed at the time the sale closed); and (2) 25 West Walnut, Unit #503 was purchased for $7,650,000.00 by the Kamran Group, LLC. Additionally, four condo units were purchased at 25 West Walnut, namely, Unit #404 for $530,000, Unit #504 for $1,650,000, Unit #501 for $780,000, and Unit #402 for $648,600. The

Exhibit H-35

4

parties also expended $3,600,000 toward the Marengo Ave. property that would fulfill the low income housing requirement for the Pasadena Development project.

**INTERROGATORY NO. 7:**

State all facts that you contend support your allegation in paragraph 17 of the Complaint that "[b]oth Golkar and Namvar wanted to develop the 233 Fair Oaks and 25 West Walnut properties into one mixed use project (with hotel, residential, and retail space) for South Pasadena. Both Namvar (through Namco) and Golkar (through Kamran) agreed to proceed with the acquisition and development of these properties in furtherance of their joint venture relationship."

**RESPONSE TO INTERROGATORY NO. 7:**

Golkar and Namvar entered into a joint venture agreement to acquire and develop real property and, specifically, to enter into and complete the Pasadena Development Project, which included two abutting sites, that being the 233 Fair Oaks and the 25 West Walnut properties. Since these two sites were abutting, they would provide space for a mixed use project including hotel, residential and retail space for South Pasadena; and since the 233 Fair Oaks and 25 West Walnut properties fit the parties' needs, they agreed to proceed with the acquisition and development of these properties pursuant to and in furtherance of their joint venture agreement/relationship.

**INTERROGATORY NO. 8:**

State all facts that you contend support your allegation in paragraph 18 of the Complaint that Namvar and Golkar agreed to form a new entity, Walnut Holding, that would hold title to the 233 Fair Oaks and 25 West Walnut properties. Since the entity was not formed at the time the 233 Fair Oaks sale closed, Namvar requested that Golkar agree to use his Tranmar Properties, LLC."

**RESPONSE TO INTERROGATORY NO. 8:**

Golkar and Namvar agreed to create, and did create, Walnut Land Holding Company, LLC on or about December 28, 2007, by filing Articles of Organization with the California

Exhibit H-36

5

Secretary of State. The company was assigned Entity No. 200736410028. The purpose of the entity, as agreed by Golkar and Namvar, was to operate under and upon the same terms as the joint venture agreement between the parties and thereby develop the real property assets comprising the Pasadena Development project.

The 233 Fair Oaks property was purchased on or about August 12, 2005, for the purchase price of $4,300,000 by Tranmar Properties, LLC, of which purchase price Kamran Group, LLC provided $1,250,000. Namvar was a managing member of Tranmar Properties, LLC, and the purchase by such entity of the 233 Fair Oaks property was upon his request to Golkar since Walnut Land Holding Company, LLC had not been formed at the time the sale closed.

**INTERROGATORY NO. 9:**

State all facts that you contend support your allegation in paragraph 25 of the Complaint that "Namco initially agreed to convert the $4,300,000 paid by Kamran into a loan and Namco issued Karman an unsecured promissory note to that effect."

**RESPONSE TO INTERROGATORY NO. 9:**

Kamran contributed $4,300,000 toward the Banning project, which was a large development that Golkar and Namvar, by and through the Kamran entities (Golkar) and Namco (Namvar), had planned on developing together pursuant to their joint venture relationship, and the parties initially agreed to convert Kamran's contribution to the Banning project into a loan. Namco issued an unsecured promissory note to Kamran covering the loan. Namco made modest interest payments on the promissory note, but Kamran wanted a secured position or an agreement to convert the $4,300,000 paid by Kamran into a credit in Plaintiffs' capital account. In or around March 2008, Kamran and Namco agreed to credit Plaintiffs' capital account with the $4,300,000 initially paid for the Banning project, and Kamran no longer had an interest in the Banning project.

**INTERROGATORY NO. 10:**

State all facts that you contend support your allegation in paragraph 26 of the Complaint that "in or around March 2008, Kamran and Namco agreed to credit Plaintiffs' capital account

Exhibit H-37

6

RESPONSE TO FIRST SET OF INTERROGATORIES

with the $4,300,000 initially paid for the Banning project, and Karman no longer had any interest in the Banning project."

**RESPONSE TO INTERROGATORY NO. 10:**

Namco initially agreed to convert the $4,300,000 paid by Kamran into a loan and Namco issued Kamran an unsecured promissory note to that effect. Although Namco made modest interest payments on the promissory note, Kamran wanted a secured position or an agreement to convert the $4,300,000 paid by Kamran on the Banning project into a credit in Plaintiffs' capital account for the Pasadena project. After Plaintiffs' capital account had been credited with the $4,300,000, Kamran was not only in full compliance with the terms of the joint venture for the Pasadena project, but also the percentage of ownership was adjusted per the terms of the agreement.

**INTERROGATORY NO. 11:**

State all facts that you contend support your allegation in paragraph 27 of the Complaint that "Plaintiffs contributed over $8,300,000 rather than the $1,922,621.50 it was obligated under the terms of the joint venture between Namco and Plaintiffs."

**RESPONSE TO INTERROGATORY NO. 11:**

Under the terms of the joint venture between Namco and Plaintiffs, Golkar was to contribute his development expertise and 10% of the equity. However, Plaintiffs contributed $8,300,000 of the $19,226,215 acquisition price for the real properties in the Pasadena project. Specifically, the $8,300,000 consists of out-of-pocket expenditures incurred by Plaintifs for development costs associated with the Pasadena Development project properties and Plaintiffs' contribution of the following to the purchase of such properties: (1) $1,250,000 for the purchase of 233 Fair Oaks; (2) $750,000 for the purchase of 25 West Walnut Unit #503; (3) $630,000 for the purchase of 25 West Walnut Unit #501; (4) $57,194 for the purchase of 25 West Walnut Unit #402; and (5) $4,300,000 initially contributed toward the Banning project and which was converted to a credit to Plaintiffs' capital account related to the joint venture's Pasadena Development project. Plaintiffs' contribution exceeded the 10%, i.e., $1,922,621.50, it was

Exhibit H-38

7

RESPONSE TO FIRST SET OF INTERROGATORIES

obligated to contribute under the terms of the joint venture agreement.

**INTERROGATORY NO. 12:**

State all facts that you contend support your allegation in paragraph 28 of the Complaint that "[r]ather than obtain financing from other investors or financial institutions secured by Plaintiffs' ownership interests in the 25 West Walnut and Marengo properties, Plaintiffs agreed to allow Namco to give it $12,650,000 in exchange for Promissory Notes secured by these three pieces of real property."

**RESPONSE TO INTERROGATORY NO. 12:**

Namco and Plaintiffs agreed to an exchange of $12,650,000 for Promissory Notes secured by Plaintiffs' interest in the 25 West Walnut and Marengo properties. Plaintiffs reasonably relied on Namco's representations that Namco had sufficient capital to tender $12,650,000 as consideration for the Promissory Notes and that Namco would fully tender the consideration and honor its obligations under the Agreements. Absent Namco's representations, Plaintiffs would have secured the needed capital to continue the development of the Pasadana Development project from another source.

**INTERROGATORY NO. 13:**

State all facts that you contend support your allegation in paragraph 30 of the Complaint that "Plaintiffs received no consideration and the Promissory Notes were never in effect nor did Namco have the legal right to sell fractional interests in the Promissory Notes."

**RESPONSE TO INTERROGATORY NO. 13:**

Although Plaintiffs executed Promissory Notes in favor of Namco, Plaintiffs never received any consideration, i.e., the money called for in the Promissory Notes, which Namco was required to advance in order for the Promissory Notes to become valid and enforceable. Because consideration was never given by Namco in exchange for the Promissory Notes, they were never in effect and, accordingly, were null and void *ab initio*. Further, Namco did not have a legal right to sell fractional interests of these Promissory Notes, which had been rendered null and void for lack of consideration.

Exhibit H-39

8

RESPONSE TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 14:**

State all facts that you contend support your allegation in paragraph 38 of the Complaint that "Kamran has performed all conditions, covenants and promises it was required to perform in accordance with the terms and conditions of the agreements."

**RESPONSE TO INTERROGATORY NO. 14:**

Kamran has provided his development expertise and has contributed more funds than he was obligated to provide under his agreements with Namco. Additionally, Kamran complied with the terms of the Promissory Notes and provided the 25 West Walnut and Marengo properties as security. Although Kamran never made an interest or principal payment on any of the Promissory Notes, he was not required to do so, because Namco failed to provide consideration for these Promissory Notes, rendering them null and void.

**INTERROGATORY NO. 15:**

State all facts that you contend support your allegation in paragraph 39 of the Complaint that "Namco and/or the Namco Trustee breached the agreements by its conduct."

**RESPONSE TO INTERROGATORY NO. 15:**

Namco and/or the Namco Trustee breached the agreements by its conduct, including but not limited to the following:

Taking unilateral action without proper notice when it borrowed $5 million on the 233 Fair Oaks property without the consent, notice, or knowledge of or by Kamran, refusing to tender consideration in the amount of $12,650,000 in exchange for Promissory Notes given by Kamran, calling a default when no default existed under the terms of the Agreements, as the Promissory Notes were null and void for lack of consideration, imposing wrongful fees and charges based on a default that did not exist (because Promissory Notes were null and void), preventing Plaintiffs' performance under the agreements by failing to provide consideration under the agreements, then calling a default when Plaintiffs did not make payments on the null and void Promissory Notes, filing Notices of Default when Namco's failure to provide consideration created a fictional alleged default, not providing Kamran with proper notice prior to calling a default, and

Exhibit H-40

9

RESPONSE TO FIRST SET OF INTERROGATORIES

misrepresenting its intention to avoid performance of its obligations under the agreements by providing that it would comply with the terms of the agreements, when it intended not to comply.

**INTERROGATORY NO. 16:**

State all facts that you contend support your allegation in paragraph 43 of the Complaint that "Namco breached the covenant" of good faith and fair dealing.

**RESPONSE TO INTERROGATORY NO. 16:**

Namco breached the covenant of good faith and fair dealing by its acts stated in Interrogatory Response No. 15, and, in addition:

Concealing its own impaired financial status from Plaintiffs, while moving forward with the agreements and Promissory Notes; failing to negotiate in good faith when accepting Plaintiffs' Promissory Notes and subsequently refusing to tender consideration; imposing fees and charges based upon a nonexistent default, arising from null and void Promissory Notes; asserting interpretations of the various agreements between the parties contrary to the original understanding of those agreements, including percentage of contributions by each party, terms of repayment, and the responsibilities of each party; abusing its power as holder of the Promissory Notes by falsely asserting Plaintiffs' non-compliance with the terms of the Notes and imposing fees and charges on the account; and filing a Notice of Default when its failure to pay consideration to Plaintiffs created the alleged default.

**INTERROGATORY NO. 17:**

State all facts that you contend support your allegation in paragraph 57 of the Complaint that "Defendants through their representative Namvar" made the representations alleged in paragraph 57 of the Complaint."

**RESPONSE TO INTERROGATORY NO. 17:**

Namvar represented to Golkar that Namco had sufficient capital to tender $12,650,000 as consideration for the Promissory Notes. Namvar also represented that Namco would fully tender consideration and honor its obligations under the Agreements, including timely tendering

**Exhibit H-41**

10

RESPONSE TO FIRST SET OF INTERROGATORIES

consideration for the Promissory Notes. Namvar made these false representations to induce Golkar to move forward with execution of the Promissory Notes.

**INTERROGATORY NO. 18:**

State all facts that you contend support your allegation in paragraph 59 of the Complaint that "[w]hen Namvar made these representations he knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs and induce them to act in reliance on these representations."

**RESPONSE TO INTERROGATORY NO. 18:**

Namvar made the above referenced representations to Golkar, concerning payment of consideration for the Promissory Notes knowing that Namco did not have sufficient capital to pay the $12,650,000 in consideration. Additionally, these representations were made by Namvar, knowing that Namco would not fully tender consideration and honor its obligations under the Agreements. Namvar's intention in making these representations, knowing them to be false when made, was to deceive and defraud Plaintiffs and induce them to act in reliance on these representations.

**INTERROGATORY NO. 19:**

State all facts that you contend support your allegation in paragraph 61 of the Complaint that "Plaintiffs reasonably relied on Namco's representations given that they held themselves out as experienced, finance experts with sufficient capital to tender the consideration and did not disclose its financial difficulties or sordid dealings."

**RESPONSE TO INTERROGATORY NO. 19:**

Namco, by and through Namvar, and Namvar held themselves out as experienced finance experts with Namco having sufficient capital to tender consideration pursuant to and under the Promissory Notes, and they concealed their financial difficulties or sordid dealings from Plaintiffs. Plaintiffs relied on Namco's representations when agreeing to execute the Promissory Notes in Namco's favor, as they expected that Namco would tender the consideration as agreed upon. Plaintiffs' justifiably relied upon Namco's and Namvar's representations that they were

**Exhibit H-42**

11

RESPONSE TO FIRST SET OF INTERROGATORIES

experienced finance experts and that Namco had sufficient capital to tender the $12,650,000 consideration pursuant to and under the Promissory Notes.

**INTERROGATORY NO. 20:**

State all facts that you contend support your allegation in paragraph 62 of the Complaint that "Namco's misrepresentations proximately caused Plaintiffs to have insufficient funds to complete the project, caused loss of tenants and rents, caused out of pocket expenditures and potentially caused the loss of the Property and all capital invested in the Property."

**RESPONSE TO INTERROGATORY NO. 20:**

Having contributed $8,300,000 of the $19,226,215 expended for the acquisition and development of the Pasadena Development project properties, rather than the agreed upon 10%, i.e., $1,922,621.50, pursuant to the parties' joint venture agreement, Plaintiffs needed additional capital to continue the development of the Pasadena Development project properties. Plaintiffs agreed to allow Namco to give it $12,650,000 in exchange for Promissory Notes secured by these three pieces of real property. Plaintiffs made this agreement rather than obtain financing from other investors or financial institutions because Namco represented that it had sufficient capital to tender $12,650,000 as consideration for the Promissory Notes and that it would fully tender this consideration. Had Plaintiffs obtained financing from other investors or financial institutions, they likely would have been paid consideration and thus had sufficient funds to complete the project, retain their tenants and rents, prevent out of pocket expenditures, and prevented any potential loss of the Property and all capital invested in the property. Instead, Namco's failure to tender the $12,650,000 resulted in Plaintiffs' inability to complete the project due to insufficient funding, which, in turn, resulted in claims by consultants, contractors, architects, and engineers working on the Pasadena Development project against Plaintiffs, the loss of tenants and corresponding rents, resulted in Plaintiffs incurring additional out of pocket expenditures, and has jeopardized the loss of the Pasadena Development properties and all capital invested therein to date.

Exhibit H-43

12

RESPONSE TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 21:**

State all facts that you contend support your allegation in paragraph 62 of the Complaint that "[h]ad Namco not made these misrepresentations, Plaintiffs would have proceeded with another lender capable of fully tendering funds in exchange for the Promissory Notes and/or loaning monies in a timely manner."

**RESPONSE TO INTERROGATORY NO. 21:**

Plaintiffs agreed to allow Namco to give it $12,650,000 in exchange for Promissory Notes secured by the three pieces of real property comprising the Pasadena Development project. Plaintiffs made this agreement rather than obtain financing from other investors or financial institutions because Namco represented that it had sufficient capital to tender $12,650,000 as consideration for the Promissory Notes and that it would fully tender this consideration.

Had Namco not represented to Plaintiffs that it could fund the $12,650,000 needed, Plaintiffs would have sought funding from another lender. And had Plaintiffs obtained financing from other investors or financial institutions, who were capable of funding the needed $12,650,000 in funds, Plaintiffs would have received sufficient funds to complete the project, retain their tenants and rents, prevent out of pocket expenditures, and it would have prevented any potential loss of the Property and all capital invested in the property.

**INTERROGATORY NO. 22:**

State all facts that you contend support your allegation in paragraph 63 of the Complaint that "[t]he above described misconduct caused Plaintiffs to suffer substantial losses, including increased costs of renovation, lost of tenants and rental income, increased financing costs and potential loss of the Properties."

**RESPONSE TO INTERROGATORY NO. 22:**

Had Plaintiffs obtained financing of the necessary funds from other investors or financial institutions, they would have been provided sufficient funds to complete the project, retain their tenants and rents, prevent out of pocket expenditures, and prevent any potential loss of the Property and all capital invested in the property.

Exhibit H-44

13

**INTERROGATORY NO. 23:**

Describe with specificity all damages sustained by you as alleged in the Complaint.

**RESPONSE TO INTERROGATORY NO. 23:**

Plaintiffs have suffered substantial losses, including increased costs of renovation; loss of tenants and rental income; increased financing costs; capital contributions in excess of the agreed upon 10% to the joint venture relationship with Namco; loss of equitable value in the properties, and, in particular, the 233 Fair Oaks property; the costs and expenses, including attorneys' fees, incurred in cancelling the Notices of Default; and potential loss of the properties, all to be proven at trial.

Additionally, Namco acted in a willful, wanton and malicious manner, in callous, conscious and intentional disregard for the interests of Plaintiffs, and with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiffs. As a result, Plaintiffs are entitled to recover exemplary and punitive damages.

**INTERROGATORY NO. 24:**

State all facts that you contend support your allegations in the Complaint that you are entitled to exemplary and punitive damages.

**RESPONSE TO INTERROGATORY NO. 24:**

Namco made the representations to Plaintiffs concerning payment of consideration and compliance with its obligations under the Agreements, knowing that Plaintiffs would rely on these representations to their detriment. Accordingly, Namco acted in a willful, wanton and malicious manner, in callous, conscious and intentional disregard for the interests of Plaintiffs, and with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiffs.

**Exhibit H-45**

14

RESPONSE TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 25:**

For each of your responses to the First Set of Requests for Admission served concurrently with these interrogatories that is anything other than an unqualified admission, state all facts upon which you base your response and identify all persons with knowledge of those facts.

**RESPONSE TO INTERROGATORY NO. 25**

Plaintiff objects to this request on the grounds that it violates the limitation imposed by Federal Rule of Civil Procedure 33(a)(1), which provides that a party may serve no more than 25 written interrogatories, including all discrete subparts, on another party absent leave of court to serve additional interrogatories. Special Interrogatory No. 25, by requesting that Plaintiff state all facts upon which it bases its response to the First Set of Requests for Admission served concurrently with these interrogatories and identify all persons with knowledge of those facts, has exceeded the limitation on the basis that the request to provide the identified information for each response to the First Set of Requests for Admissions that is not an unqualified admission constitutes a discrete subpart, which in turn results in Defendant exceeding the limit of 25 interrogatories. Subject to the foregoing objection and without waiving same, Plaintiff hereby responds to the first subpart to Interrogatory 25, all other subparts exceeding the 25 interrogatory limitation, as follows:

**REQUEST FOR ADMISSION NO. 1**

The parties prepared a draft of a written joint venture agreement reflecting the terms of the joint venture relationship/agreement under which Namco and the Kamran entities operated. Golkar and Namvar had knowledge of the draft.

DATED: October 18, 2010                    CHRISTMAN, KELLEY & CLARKE

By: /s/ Matthew M. Clarke
　　 Matthew M. Clarke
　　 Dugan P. Kelley
　　 Zubin Farinpour
　　 Attorneys for Plaintiffs and Counter-Defendants
　　 Kamran Pasadena Group, Inc. and Kamran
　　 Group, LLC

15

Exhibit H-46

RESPONSE TO FIRST SET OF INTERROGATORIES

## VERIFICATION

I, David Golkar, am a member of Plaintiff Kamran Group, LLC and the majority owner of Plaintiff Kamran Pasadena Group, Inc. in the above-entitled action. I have read the foregoing RESPONSES TO TRUSTEE BRADLEY D. SHARP'S FIRST SET OF INTERROGATORIES TO KAMRAN GROUP, LLC, and know the contents thereof, and I certify that the same is true of my own knowledge, except as to those matters which are therein stated upon my information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Iran this 18 day of October, 2010.

David Golkar

RESPONSE TO FIRST SET OF INTERROGATORIES

Exhibit H-47

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 5215 N. O'Connor Blvd., Suite 200, Irving, Texas 75039. A true and correct copy of the foregoing document described **PLAINTIFF KAMRAN GROUP, LLC'S RESPONSE TO BRADLEY D. SHARP'S FIRST SET OF INTERROGATORIES TO KAMRAN GROUP, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On October 19, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows: **VIA U.S. MAIL**

David M. Poitras, P.C.
Dan P. Sedor, P.C.
Jeffer Mangels Bulter & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 18, 2010,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
**SERVED BY EMAIL**
- David M. Poitras          dpoitras@jmbm.com
- Marc S. Cohen            mcohen@kayescholer.com
- Ashleigh A. Danker      adanker@kayescholer.com
- Gregory M. Salvato      gsalvato@pmcos.com
- Robyn B. Sokol           rsokol@ebg-law.com
- United States Trustee (LA)  ustpregion16.la.ecf@usdoj.gov
- Saul Reiss                saulreiss@verizon.net

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| _10/18/10_ | _Barry L. Moerschell_ | _/s/ Barry L. Moerschell_ |
|---|---|---|
| Date | Type Name | Signature |

ADDITIONAL SEVICE INFORMATION (if needed):

Exhibit H-48

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                        **F 9013-3.1**

| In re: NAMCO CAPITAL GROUP, INC. | CHAPTER 11 |
|---|---|
| | CASE NUMBER: 2:08-bk-32333-BR |
| Debtor(s). | ADVERSARY PROC. NO.: 2:10-ap-01244-BR |

## SERVICE LIST VIA U.S. MAIL

Marc S. Cohen
Ashleigh A. Danker
Kaye Scholer LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

Ashland Properties, LLC
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Sawtelle Properties LLC
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Mahmoud Fatorechi
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Soussan Hashemi
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Morteza Homayounjam
Weissmann Wolff, et al
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

Timothy Neufeld
Neufeld Law Group
360 East 2nd Street, Suite 703
Los Angeles, CA 90012

Saul Reiss
Law Offices of Saul Reiss
2800 28th Street, Suite 328
Santa Monica, CA 90405

John M. Rygh
915 Wilshire Blvd, Suite 2100
Los Angeles, CA 90017

Exhibit H-49

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                F 9013-3.1

# EXHIBIT I

## California Secretary of State Debra Bowen

**Secretary of State** | **Administration** | **Elections** | **Business Programs** | **Political Reform** | **Archives** | **Registries**

### Business Entities (BE)

Online Services
- **Business Search**
- **Disclosure Search**
- **E-File Statements**
- **Processing Times**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**
- **International Business Relations Program**

Customer Alerts
- **Business Identity Theft**
- **Misleading Business Solicitations**

## Business Search - Results

Data is updated weekly and is current as of Friday, December 30, 2011. It is not a complete or certified record of the entity.

- *Select an entity name below to view additional information.* Results are listed alphabetically in ascending order by entity name.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

Results of search for " KAMRAN PASADENA GROUP, INC " returned no entity records.

| Record not found. |
|---|

**Modify Search** **New Search**

**Privacy Statement | Free Document Readers**

Copyright © 2012 California Secretary of State

Exhibit I-50

# EXHIBIT J

Secretary of State    Administration    Elections    Business Programs    Political Reform    Archives    Registries

**Business Entities (BE)**

Online Services
- **Business Search**
- **Disclosure Search**
- **E-File Statements**
- **Processing Times**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**
- **International Business**
  **Relations Program**

Customer Alerts
- **Business Identity Theft**
- **Misleading Business**
  **Solicitations**

## Business Entity Detail

Data is updated weekly and is current as of Friday, December 30, 2011. It is not a complete or certified record of the entity.

| | |
|---|---|
| **Entity Name:** | KAMRAN PASADENA, INC. |
| **Entity Number:** | C0748619 |
| **Date Filed:** | 12/30/1975 |
| **Status:** | SUSPENDED |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Address:** | 8891 RESEARCH DR |
| **Entity City, State, Zip:** | IRVINE CA 92618 |
| **Agent for Service of Process:** | DAVID J GOLKAR |
| **Agent Address:** | 8891 RESEARCH DR |
| **Agent City, State, Zip:** | IRVINE CA 92618 |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search    New Search    Printer Friendly    Back to Search Results**

**Privacy Statement | Free Document Readers**
Copyright © 2012   California Secretary of State

Exhibit J-51

# EXHIBIT K

Secretary of State     Administration     Elections     Business Programs     Political Reform     Archives     Registries

**Business Entities (BE)**

Online Services
 - **Business Search**
 - **Disclosure Search**
 - **E-File Statements**
 - **Processing Times**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
 (certificates, copies &
 status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
 - **Business Resources**
 - **Tax Information**
 - **Starting A Business**
 - **International Business
   Relations Program**

Customer Alerts
 - **Business Identity Theft**
 - **Misleading Business
   Solicitations**

# Business Entity Detail

Data is updated weekly and is current as of Friday, December 23, 2011. It is not a complete or certified record of the entity.

| | |
|---|---|
| Entity Name: | KAMRAN PASADENA, INC. |
| Entity Number: | C0748619 |
| Date Filed: | 12/30/1975 |
| Status: | SUSPENDED |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 8891 RESEARCH DR |
| Entity City, State, Zip: | IRVINE CA 92618 |
| Agent for Service of Process: | DAVID J GOLKAR |
| Agent Address: | 8891 RESEARCH DR |
| Agent City, State, Zip: | IRVINE CA 92618 |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search**   **New Search**   **Printer Friendly**   **Back to Search Results**

**Privacy Statement** | **Free Document Readers**

Copyright © 2011   California Secretary of State

Exhibit K-52

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1900 Avenue of the Stars, Seventh Floor, Los Angeles, California  90067-4308

A true and correct copy of the foregoing document described as ***Declaration of David M. Poitras in Support of Bradley D. Sharp, Chapter 11 Trustee of Namco Capital Group, Inc.'s Motion for Summary Judgment, Or in the Alternative, Partial Summary Adjudication, on Complaint*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***January 11, 2012,*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
- Matthew M Clarke    mclarke@cappellonoel.com
- Marc S Cohen    mcohen@kayescholer.com
- Ashleigh A Danker    adanker@kayescholer.com
- Joseph A Eisenberg    jae@jmbm.com
- Teresa Y Hillery    teresa.hillery@fnf.com
- Susan I Montgomery    susan@simontgomerylaw.com
- David M Poitras    dpoitras@jmbm.com
- Gregory M Salvato    gsalvato@pmcos.com, calendar@salvatolawoffices.com
- Gregory M Salvato    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com
- Robyn B Sokol    ecf@ebg-law.com, rsokol@ebg-law.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***January 11, 2012,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.
*Sent By Overnight Mail*:
Hon. Barry Russell, United States Bankruptcy Court, 255 E. Temple Street, Suite 1660, Los Angeles, CA 90012

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***January 11, 2012***, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.
Dugan P. Kelley    dugan@christmankelley.com
Matthew M. Clarke    matt@christmankelley.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 11, 2012 | Claudean Brandon | /s/ Claudean Brandon |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **F 9013-3.1.PROOF.SERVICE**