DAVID M. POITRAS P.C. (Bar No. 141309)
DAN P. SEDOR P.C. (Bar No. 139091)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-4308
Telephone:    310.203.8080
Facsimile:    310.203.0567
Email:        dpoitras@jmbm.com

Attorneys for Bradley D. Sharp,
Chapter 11 Trustee for Namco Capital Group Inc.

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.:  2:08-bk-32333-BR |
| NAMCO CAPITAL GROUP, INC.,<br>a California corporation, | Chapter 11 |
| Debtor. | Adversary No.:  2:10-ap-01244 BR |
| KAMRAN PASADENA GROUP, INC., a California corporation and KAMRAN GROUP, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC., a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation; DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR, an individual; ASHLAND PROPERTIES, LLC, a California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC, a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEE FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100,<br><br>Defendant(s). | **DECLARATION OF BRADLEY D. SHARP IN SUPPORT OF BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION, ON COMPLAINT**<br><br><br><br>Hearing:<br>Date:        February 22, 2012<br>Time:        2:00 p.m.<br>Place:       Courtroom 1668<br>               255 E. Temple Street<br>               Los Angeles, CA 90012 |

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER
LA 8491009v1

Sharp Decl. in Support of Trustee's MSJ

## DECLARATION OF BRADLEY D. SHARP

I, Bradley D. Sharp, declare as follows:

1.    I am the chapter 11 trustee for the bankruptcy estate of Namco Capital Group, Inc. All facts stated herein are known by me to be true through my own personal knowledge, or from my activities and investigation undertaken as Namco's[1] chapter 11 trustee or from my review of various books and records, and pleadings filed in the bankruptcy case, of Namco. If called to testify in this matter, I would and could competently testify thereto in a court of law.

2.    This declaration is submitted in support of the *Motion of Defendant Bradley D. Sharp, Chapter 11 Trustee of Namco Capital Group, Inc. for Summary Judgment, or, in the Alternative, Partial Summary Adjudication, on Complaint.*

3.    On May 8, 2009, the Court entered an order approving my appointment as the Trustee in the Namco bankruptcy case.

4.    During the time since I have been the Chapter 11 Trustee of Namco, I have become generally familiar with Namco's books and records and I am specifically familiar with Namco's books and records as they relate to Namco's transactions with Kamran Pasadena Group, Inc. and Kamran Group, LLC  (the "Plaintiffs").

5.    I have reviewed the documents attached as exhibits to this declaration.

6.    As the Court has previously found in its Findings of Fact and Conclusions of Law entered on August 11, 2011 [Docket No. 93] ("FOF"), "Kamran Group, Pasadena Inc. formerly known as Pasadena Athletic Club Inc.," by and through its President, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated September 11, 2008, in favor of Namco Capital Group, Inc. in the amount of $1,700,000 ("Promissory Note #1"). A true and correct copy of Promissory Note #1 is attached hereto as **Exhibit L**. The original Promissory Note #1 is in my possession, and the copy attached hereto is the same as the copy of the Promissory Note #1 that is attached to and authenticated in Plaintiffs' Complaint.

---

[1] All undefined terms herein shall have the same definitions as ascribed to them in the preceding Motion and Memorandum of Points and Authorities.

PRINTED ON

RECYCLED PAPER

LA 8491009v1

7.   As the Court previously found in the FOF, "Kamran Group, LLC," by and through its Manager, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated September 10, 2007, in favor of Namco Capital Group, Inc. in the amount of $600,000 ("Promissory Note #2").  A true and correct cop of Promissory Note #2 is attached hereto as **Exhibit M**.  The original Promissory Note #2 is in my possession, and the copy attached hereto is the same as the copy of the Promissory Note that is attached to and authenticated in Plaintiffs' Complaint.

8.   As the Court previously found in the FOF, "Kamran Group, LLC," by and through its Manager, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated September 10, 2007, in favor of Namco Capital Group, Inc. in the amount of $1,300,000 ("Promissory Note #3").  A true and correct copy of Promissory Note #3 is attached hereto as **Exhibit N**.  The original Promissory Note #3 is in my possession, and the copy attached hereto is the same as the copy of the Promissory Note #3 that is attached to and authenticated in Plaintiffs' Complaint.

9.   As the Court previously found in the FOF, "Kamran Group, LLC," by and through its Manager, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated September 10, 2007, in favor of Namco Capital Group, Inc. in the amount of $450,000 ("Promissory Note #4").  A true and correct copy of Promissory Note #4 is attached hereto as **Exhibit O.**  The original Promissory Note #4 is in my possession, and the copy attached hereto is the same as the copy of the Promissory Note #4 that is attached to and authenticated in Plaintiffs' Complaint.

10. As the Court previously found in the FOF, "Kamran Group, LLC," by and through its Manager, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated June 29, 2007, in favor of Namco Capital Group, Inc. in the amount of $3,600,000 ("Promissory Note #5").   A true and correct copy of Promissory Note #5 is attached hereto as **Exhibit P**.  The original Promissory Note #5 is in my possession, and the copy attached hereto is the same as the copy of the Promissory Note #5 that is attached to and authenticated in Plaintiffs' Complaint.

PRINTED ON
RECYCLED PAPER

11. As the Court previously found in the FOF, "Kamran Group Pasadena, Inc. Formerly known as Pasadena Athletic Club Inc.," by and through its President, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated June 29, 2007, in favor of Namco Capital Group, Inc. in the amount of $5,000,000 ("Promissory Note #6"). A true and correct copy of Promissory Note #6 is attached hereto as **Exhibit Q** . The original Promissory Note is in my possession, and the copy attached hereto is the same as the copy of the Promissory Note that is attached to and authenticated in Plaintiffs' Complaint.

12. Namco is the holder of each of the Promissory Notes.

13. As alleged by Plaintiffs in their Complaint, Promissory Note #1 is secured by a Deed of Trust encumbering Unit #503 of 25 West Walnut ("Deed of Trust #1"). A true and correct copy of this Deed of Trust is attached hereto as **Exhibit R**. The original Deed of Trust #1 was recorded in the County Recorder for the County of Los Angeles, California as Document No. 2008-1747574 and the copy of the Deed of Trust #1 that is attached hereto is the same as the copy of the Deed of Trust #1 that is attached to and authenticated in Plaintiffs' Complaint.

14. As alleged by Plaintiffs in their Complaint, Promissory Note #2 is secured by a Deed of Trust encumbering Unit #501 of 25 West Walnut ("Deed of Trust #2"). A true and correct copy of Deed of Trust #2 is attached hereto as **Exhibit S** . The original Deed of Trust was recorded in the County Recorder for the County of Los Angeles, California as Document No. 2007-2133956 and the copy of the Deed of Trust #2 that is attached hereto is the same as the copy of the Deed of Trust #2 that is attached to and authenticated in Plaintiffs' Complaint.

15. As alleged by Plaintiffs in their Complaint, Promissory Note #3 is secured by a Deed of Trust encumbering Unit #504 of 25 West Walnut ("Deed of Trust #3"). A true and correct copy of Deed of Trust #3 is attached hereto as **Exhibit T**. The original Deed of Trust #3 was recorded in the County Recorder for the County of Los Angeles, California as Document No. 2007-2133956 and the copy of the Deed of Trust #3 that is attached hereto is the same as the copy of the Deed of Trust #3 that is attached to and authenticated in Plaintiffs' Complaint.

16. As alleged by Plaintiffs in their Complaint, Promissory Note #4 is secured by a Deed of Trust encumbering Unit #405 of 25 West Walnut ("Deed of Trust #4"). A true and correct

PRINTED ON
RECYCLED PAPER

LA 8491009v1

- 4 -    Sharp Decl. in Support of Trustee's MSJ

copy of Deed of Trust #4 is attached hereto as **Exhibit U**. The original Deed of Trust #4 was recorded in the County Recorder for the County of Los Angeles, California as Document No. 2007-2133932 and the copy of the Deed of Trust #4 that is attached hereto is the same as the copy of the Deed of Trust #4 that is attached to and authenticated in Plaintiffs' Complaint.

17. As alleged by Plaintiffs in their Complaint, Promissory Note #5 is secured by a Deed of Trust encumbering the Marengo Property ("Deed of Trust #5"). A true and correct copy of Deed of Trust #5 is attached hereto as **Exhibit V.** The original Deed of Trust #5 was recorded in the County Recorder for the County of Los Angeles, California as Document No. 2007-1988920 and the copy of the Deed of Trust #5 that is attached hereto is the same as the copy of the Deed of Trust#5 that is attached to and authenticated in Plaintiffs' Complaint.

18. As alleged by Plaintiffs in their Complaint, Promissory Note #6 is secured by a Deed of Trust encumbering Unit #503 of 25 West Walnut ("Deed of Trust #6"). A true and correct copy of Deed of Trust #6 is attached hereto as **Exhibit W**. The original Deed of Trust #6 was recorded in the County Recorder for the County of Los Angeles, California as Document No. 2007-1990505 and the copy of the Deed of Trust #6 that is attached hereto is the same as the copy of the Deed of Trust #6 that is attached to and authenticated in Plaintiffs' Complaint.

19. On or about November 13, 2009, as a result of Plaintiffs' defaults under each of the Promissory Notes, Notices of Default were recorded with the County Recorder for the County of Los Angeles, California at my direction against each of the 25 West Walnut Condominiums and Marengo Property that secured the debt obligations under the different Promissory Notes secured by relevant Deeds of Trust.

20. The Notice of Default as to the Promissory Note #2 and Deed of Trust #2 (the Notice of Default #2) is attached hereto as **Exhibit X**. The original Notice of Default #2 was recorded in the County Recorder for the County of Los Angeles, California as Document No. 2009-1709793 and the copy of the Notice of Default #2 that is attached hereto is the same as the copy of the Notice of Default #2 that is attached to and authenticated in Plaintiffs' Complaint.

21. The Notice of Default as to the Promissory Note #3 and Deed of Trust #3 (the "Notice of Default #3") is attached hereto as **Exhibit Y.** The original Notice of Default #3 was

PRINTED ON
RECYCLED PAPER

Jeffer Mangels
Butler & Mitchell LLP

JMBM

LA 8491009v1

- 5 -    Sharp Decl. in Support of Trustee's MSJ

recorded in the County Recorder for the County of Los Angeles, California as Document No. 2009-1709794 and the copy of the Notice of Default #3 that is attached hereto is the same as the copy of the Notice of Default #3 that is attached to and authenticated in Plaintiffs' Complaint.

22.    The Notice of Default as to the Promissory Note #4 and Deed of Trust #4 (the "Notice of Default #4") is attached hereto as **Exhibit Z**.  The original Notice of Default #4 was recorded in the County Recorder for the County of Los Angeles, California on November 19, 2009 by Fidelity National Title Company and the copy of the Notice of Default #4 that is attached hereto is the same as the copy of the Notice of Default #4 that is attached to and authenticated in Plaintiffs' Complaint.

23.    The Notice of Default as to the Promissory Note #5 and Deed of Trust #5 (the "Notice of Default #5") is attached hereto as **Exhibit AA**.  The original Notice of Default #5 was recorded in the County Recorder for the County of Los Angeles, California as Document No. 2009-1709791 and the copy of the Notice of Default #5 that is attached hereto is the same as the copy of the Notice of Default #5 that is attached to and authenticated in Plaintiffs' Complaint.

24.    The Notice of Default as to the Promissory Note #6 and Deed of Trust #6 (the "Notice of Default #6") is attached hereto as **Exhibit BB**.  The original Notice of Default #6 was recorded in the County Recorder for the County of Los Angeles, California as Document No. 2009-1709792 and the copy of the Notice of Default #6 that is attached hereto is the same as the copy of the Notice of Default #6 that is attached to and authenticated in Plaintiffs' Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of January, 2012, in Los Angeles, California.

 */s/ Bradley D. Sharp*
BRADLEY D. SHARP

Jeffer Mangels
Butler & Mitchell LLP

JMBM

PRINTED ON
RECYCLED PAPER

LA 8491009v1

- 6 -    Sharp Decl. in Support of Trustee's MSJ

# EXHIBIT L

## PROMISSORY NOTE
### SECURED BY DEED OF TRUST
(the "Note")

$1,700,000.00

Los Angeles, California
September 11, 2008

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of One Million Seven Hundred Thousand Dollars and 00/100($1,700,000.00), together with interest at the rate of seven (7%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $9,916.67 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on December 31, 2009, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default, the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less,, the highest amount allowed by applicable law), compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

EXHIBIT B

Exhibit L-7

Exhibit B 47



If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note (and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Dimes LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group, Inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

~2~

Exhibit L-8                                    Exhibit B 48

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

Exhibit L-9

Exhibit B 49

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, Pasadena inc.
Formerly known as  Pasadena Athletic Club , Inc.

BY: _____
David Golkar-President

-4-

Exhibit L-10                    Exhibit B 50

# EXHIBIT M

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST
(the "Note")

$600,000.00

Los Angeles, California
September 10, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of Four Hundred Fifty Thousand and 00/100 Dollars ($600,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $5,000.00 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on September 10, 2008, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default , the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less,; the highest amount allowed by applicable law) , compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

**EXHIBIT C**

Exhibit M-11

Exhibit C 59

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note(and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodman Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group, Inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

Exhibit M-12                    Exhibit C 60

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

Exhibit M-13

Exhibit C 61

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, LLC

BY: David Golkar-Manager

-4-

Exhibit M-14                    Exhibit C 62

# EXHIBIT N

## PROMISSORY NOTE
## SECURED BY DEED OF TRUST
### (the "Note")

$1,300,000.00

Los Angeles, California
September 10, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of One Million Three Hundred Thousand and 00/100 Dollars ($1,300,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $10,833.34 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on September 10, 2008, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default, the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less,, the highest amount allowed by applicable law) , compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

EXHIBIT D

Exhibit N-15

Exhibit D 68

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note (and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodman Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group, Inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

Exhibit N-16                                        Exhibit D 69

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

Exhibit N-17

Exhibit D 70

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, LLC

_____
BY: David Golkar-Manager

-4-

Exhibit N-18                    Exhibit D 71

# EXHIBIT O

## PROMISSORY NOTE
## SECURED BY DEED OF TRUST
(the "Note")

$450,000.00

Los Angeles, California
September 10, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $3,750.00 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on September 10, 2008, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default, the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less,, the highest amount allowed by applicable law), compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

EXHIBIT E

Exhibit O-19

Exhibit E 78

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note(and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodman Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group,inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

Exhibit O-20                                    Exhibit E 79

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

--3--

Exhibit O-21

Exhibit E 80

specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Deed of Trust until paid.

If "Maker" consists of more than one person or entity executing this Note, each and every such person and/or entity shall be jointly and severally liable with respect to all obligations of "Maker" under this Note.

MAKER:

Kamran Group, LLC

BY: David Golkar-Manager

-4-

Exhibit O-22                    Exhibit E 81

# EXHIBIT P

**PROMISSORY NOTE**
**SECURED BY DEED OF TRUST**
(the "Note")

$3,600,000.00

Los Angeles, California
June 29, 2007

FOR VALUE RECEIVED, the undersigned ("Maker"), promises to pay to the order of Namco Capital Group, Inc., a California corporation, or the lawful holder of this Note ("Holder"), without grace, deduction, offset, extension, credit, notice or demand, at 12121 Wilshire Blvd., #1400, Los Angeles, CA 90025, or at such other place or to such other party as the Holder of this Note may from time to time designate in writing, the principal sum of Three Million Six Hundred Thousand and 00/100 Dollars ($3,600,000.00), together with interest at the rate of ten (10%) per annum which interest shall accrue monthly upon the principal amount hereof outstanding from time to time. Maker shall make payments of interest only to Holder, in the amount of $30,000.00 per month, in arrears, commencing on the first day of the first calendar month immediately following the date hereof, and continuing thereafter on the first day of each month until the maturity date of this Note.

The interest rate on this Note shall be computed on the basis of a 360-day year, based on the number of days actually elapsed.

This Note shall mature on June 28, 2008, at which time the balance of the outstanding principal sum of this Note, together with any and all accrued but unpaid interest and other charges under this Note, shall be due and payable. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed. All installments of principal and interest of this Note, and other amounts paid or due hereunder, shall be payable and paid in lawful money of the United States of America, in immediately available funds, at the address set forth above, or such other place as the Holder may designate in writing from time to time. Each payment hereunder shall, when made, be credited first to late charges and other expenses then payable to Holder, then to interest, and the remainder to principal.

Upon failure to pay any installments of interest, principal or other charges when due hereunder, or upon failure to perform or comply with any of the covenants, or agreements contained herein or in any instrument securing payment of this Note, or any of the Loan Documents (as such terms is defined below), or upon the occurrence of an event of default (or any event which with notice, lapse of time, or both would constitute an event of default) under any of the Loan Documents, then such failure and/or event shall immediately and automatically constitute a default under this Note, and, at the option of the Holder hereof, the entire debt then remaining unpaid shall at once become due and payable. During the period commencing upon any such event of default and continuing until such default is cured, but without limiting or waiving, in any way, Maker's liability resulting from such default, and without limiting any rights or remedies of Holder under this Note or any of the other Loan Documents, or at law or equity, any and all delinquent amounts shall be added to the principal balance hereunder and shall bear interest at the rate set forth in this Note, compounded monthly. In addition, during the period commencing with such event of default, the interest rate applicable to the principal amount, as well as any and all delinquent amounts, shall be the total interest rate otherwise charged hereunder plus seven percent (7%) (or, if less,, the highest amount allowed by applicable law), compounded monthly, whether or not the aforesaid option has been exercised. Any references in this Note or in any of the other Loan Documents to the "rate set forth in the Note" or similar designation shall be deemed to include such increased interest rate. In addition, such increased rate shall take effect and continue irrespective of any bankruptcy or similar action affecting Borrower and irrespective of the commencement or continuation of any legal proceedings (including judicial and/or non-judicial foreclosure proceedings) by Holder.

-1-

**EXHIBIT F**

Exhibit P-23

Exhibit F 88

If Maker shall fail to make any payment of interest or principal, including the final principal payment or combined principal and interest installment, including, without limitation, any amounts due under the immediately preceding paragraph hereof, or other amount due, within ten (10) days after the date the same is due and payable, a late charge shall be immediately due and payable. Maker recognizes that default by Maker in making the payments herein agreed to be paid when due will result in the Holder incurring additional expenses in servicing the loan, in loss to the Holder of the use of the money due and in frustration to the Holder in meeting its other financial and loan commitments. Maker agrees that, if for any reason Maker fails to pay any amounts due under this Note when due, Holder shall be entitled to compensation for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the amount of such compensation. Maker therefore agrees that a sum equal to ten cents ($.10) for each One Dollar ($1.00) of each payment of principal, interest, or other amounts to be paid hereunder which becomes delinquent is a reasonable estimate of the said compensation to the Holder of this Note, which sum Maker agrees to pay on demand. This clause is not intended to limit Maker's liability resulting from its default in any way, or Holder's rights or remedies with respect to such default, but is intended solely to compensate Holder in the event of Maker's delay in making any payment due hereunder. Any late charges which may accrue hereunder shall be payable not later than the date the next monthly installment is due under this Note. The sum past due and the late charge hereunder shall individually bear interest at the rate set forth in this Note, compounded monthly, from the due date of the sum past due until the date of the individual payment of such sums.

The Maker and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and expressly agree that this Note, or any payment hereunder, may be extended from time to time by Holder without in any way affecting the liability of the Maker and endorsers hereof.

The undersigned promises to pay all attorneys' fees and costs and other fees and costs (including, without limitation, trustees', consultants', accountants', engineers' and appraisers' fees and expenses) incurred by the Holder hereof in connection with the interpretation, collection and/or enforcement of this Note, and/or any of the other Loan Documents, (whether or not legal proceedings are brought by Holder), and/or the protection of the security thereunder, including, without limitation any such fees and expenses incurred by Holder in connection with, related to, or arising out of any judicial or non-judicial foreclosure proceedings.

This Note(and all interest and other charges thereon) is secured by a Long Form Deed of Trust and Assignment of Rents, executed by Maker, as Trustor, to Woodman Partners LLC, a California limited liability company, as trustee, in trust, for the benefit of Holder (the "Deed of Trust"), of even date herewith, all with respect to the properties described defined in the Deed of Trust). Additionally, Maker has executed a separate, unsecured and independent Environmental Indemnity in favor of Holder with respect to the Properties. Maker's obligations to Holder are guaranteed by that certain guarantees, of even date herewith, made by various parties, jointly and severally, in favor of Holder. All of the foregoing documents, are referred to herein as the "Loan Documents." Any default (or any event which with notice, lapse of time, or both, would constitute a default) under any of the Loan Documents shall, at the sole and absolute discretion and option of Holder, constitute a default under any or all of the other Loan Documents.

The loan made under this Note has been made or arranged by Namco Capital Group,Inc., a California corporation and licensed California real estate broker, and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the Loan Documents exceed the highest lawful rate permissible under applicable usury laws.

-2-

Exhibit P-24

Exhibit F 89

Maker acknowledges and agrees that Holder has the right to transfer, assign or hypothecate all or any part of this Note, and/or the Loan Documents, to sell participations therein (provided, however, that such transfer, assignment, hypothecation or participation shall be at no expense to Maker). Maker agrees that it shall cooperate fully with Holder in connection with this paragraph promptly upon request and shall execute, and where appropriate, acknowledge and deliver, such estoppel certificates and other documents as Holder may require in connection therewith.

This Note shall be governed by and construed in accordance with the laws of the State of California.

This Note shall be prepayable upon no less than fifteen (15) days written notice to Holder.

No single or partial exercise of any power granted to Holder under this Note or the Loan Documents or any other agreement shall preclude any other or further exercise thereof or the exercise of any other power. No delay or omission on the part of Holder in exercising any right under this Note or the Loan Documents shall operate as a waiver of such right or any other right.

The terms of this Note apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Maker shall not sell, transfer, convey, exchange, assign, lease, sublease, pledge, hypothecate or encumber, voluntarily, involuntarily, by operation of law or otherwise (collectively, a "Transfer") the Properties or any portion thereof or interest therein without the prior written consent of Holder. Holder may grant or deny such consent in its sole discretion and, if consent should be given, any such Transfer shall be subject to (and, in the case of an encumbrance, subordinate to) the Deed of Trust, and to such conditions as Holder may impose in its sole and absolute discretion. In the event of any such Transfer without the prior written consent of Holder, Holder may, at its option, without demand or notice, declare all sums secured hereby immediately due and payable. Consent to one such Transfer shall not be deemed to be a waiver of the right to require consent to future or successive Transfers. As used herein, "Transfer" shall include the sale, agreement to sell, option to sell, conditional sale, exchange, transfer, assignment, leasing, subleasing or conveyance of Maker's interest in the Properties, or any portion thereof or interest therein, including, without limitation, air, water, oil, gas and mineral rights and development rights, whether voluntary, involuntary, by operation of law or otherwise. "Transfer" shall also include any security transaction, including the placing or permitting the placing on the Properties or any portion thereof or interest therein of any mortgage, deed of trust, pledge, hypothecation, assignment of rents or other security device, or, in the event Maker is a partnership, limited liability company, joint venture, trust or corporation, the sale, assignment, conveyance, transfer, disposition, pledge, hypothecation or encumbering of any of the capital stock of Maker or of any part of the beneficial or ownership interest of such partnership, limited liability company, venture or trust, or a withdrawal, dissolution, termination, substitution or change of any general partner or any joint venturer of Maker, whether voluntarily, involuntarily, by operation of law, or otherwise. The term "Transfer" shall also include any such Transfer with respect to any capital stock and/or any beneficial or ownership interest in any general partner, joint venturer or shareholder of Trustor.

Maker hereby covenants to execute and deliver to Holder an estoppel certificate and/or offset statement with respect to the Note or any of the Loan Documents and/or the status of this transaction and/or the Properties, and/or such other matters as Holder may require, immediately upon request therefor by Holder, and to immediately deliver to Holder such information, financial statements and other documents or items as Holder may require from Maker from time to time.

Holder shall have the full right, but not the obligation, to cure any default under, or to acquire, pay down, pay off or otherwise satisfy, any lien, encumbrance, security interest or claim which affects or may affect the Properties, or any part thereof or interest therein (whether or not prior to the Deed of Trust), and if Holder pays or satisfies any such lien, encumbrance, security interest or claim or makes any payment or cures any default thereunder, or makes any other advance hereunder or under any of the Loan Documents, Holder may add any amounts so paid to the amounts secured by the Deed of Trust, and any and all such amounts shall be paid by Maker to Holder upon demand, shall bear interest at the same rate

-3-

Exhibit P-25

Exhibit F 90