ORIGINAL

Matthew Clarke, State Bar No. 184959
matt@christmankelley.com
Dugan P. Kelley, State Bar No. 207347
dugan@christmankelley.com
CHRISTMAN, KELLEY & CLARKE
2570 Justin Road, Suite 240
Highland Village, Texas 75077
Tel. 972-253-4440
Fax 866-611-9852

Attorneys for Plaintiffs
Kamran Pasadena Group, Inc. and Kamran Group, LLC

FILED
FEB 0 1 2012

BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| In Re:  NAMCO CAPITAL GROUP INC, a California corporation<br><br>Debtor. | Case No.: 2:08-bk-32333-BR<br><br>Chapter 11<br><br>Adv. No.:  2:10-ap-01244 BR |
| KAMRAN PASADENA GROUP, INC., a California corporation; and KAMRAN GROUP, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>NAMCO CAPITAL GROUP INC, a California corporation; EZRI NAMVAR, an individual; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation; DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR; an individual; ASHLAND PROPERTIES, LLC, A California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC; a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEES FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100,<br><br>Defendants. | **MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS KAMRAN PASADENA GROUP, INC. AND KAMRAN GROUP, LLC IN OPPOSITION TO DEFENDANT BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE SUMMARY ADJUDICATION**<br><br>Date:      February 22, 2012<br>Time:      2:00 p.m.<br>Place:     Courtroom 1668, 16th Floor<br>           Roybal Federal Building<br>           255 E. Temple Street<br>           Los Angeles, CA  90012 |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................................................i

TABLE OF AUTHORITIES ..................................................................................................... III

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.     INTRODUCTION ............................................................................................................... 1

II.    STATEMENT OF FACTS .................................................................................................. 2

     A.    David Golkar and Ezri Namvar Form a Joint Venture in 2004 ................................. 2

     B.    Golkar and Namvar Agree to Develop the Project as Part of their Joint Venture ........ 3

     C.    Golkar and Namvar's Course of Dealing Exhibited all of the Hallmarks of a Joint Venture Relationship ................................................................................................. 4

     D.    Golkar and Namvar Purchase the Subject Properties ............................................... 4

     E.    Plaintiffs Execute the Promissory Notes in Favor of Namco in order to Obtain Financing for the Parties' Joint Venture .................................................................... 7

     F.    Namco Sells/Assigns Fractional Interests in the Promissory Notes ........................... 10

     G.    An Involuntary Bankruptcy Petition is Filed Against Namco before the Parties Could Form Walnut Holdings, LLC ...................................................................................... 10

     H.    Procedural History ...................................................................................................... 11

III.   STANDARD FOR SUMMARY JUDGMENT.................................................................. 12

IV.    ARGUMENT...................................................................................................................... 12

     A.    The Court Should Deny Summary Judgment Because Plaintiffs' Claims are Properly Plead Against the Trustee and are not Time Barred ................................................... 12

           1.    The Trustee is a Proper Defendant Because he Acts as an Automatic Substitute for Namco that can Sue and be Sued ...................................... 13

                 a.    The Trustee has not Pleaded that He is an Improper Party to this Lawsuit, and has therefore Waived this Defense ................................ 13

                 b.    The Trustee is a Proper Defendant because He is a Representative of the Estate and Substituted Namco by Operation of Law .................... 13

           2.    Plaintiffs Claims Against Namco are Not Time Barred Because They did Not Arise Until the Trustee Recorded the Notices of Default ............................. 14

                 a.    Plaintiffs Claims are Based on the Trustee's Declaring a Nonexistent Default of the Promissory Notes.......................................................... 14

i

b.    The Court has Discretion to Disregard Plaintiffs' Failure to File a Proof of Claim or Allow Plaintiffs to File a Late Proof of Claim ...... 15

B.    The Court Should Deny Summary Judgment because Plaintiffs' Claims are Premised on Namco's Breach of its Joint Venture Agreement with Plaintiffs .......... 16

1.    The Facts Establish that Plaintiffs and Namco Formed a Joint Venture ........ 16

2.    The Parties Intended that the Consideration Received for the Promissory Notes Constitute Equity Contributions to their Joint Venture ........................ 17

C.    The Court Should Deny Summary Judgment on the Contract-Based Claims Because Defendant Breached the Parties' Agreement by Declaring the Defaults .................... 19

1.    Defendant Breached the Promissory Notes and Joint Venture Agreement between Namco and Plaintiffs by Declaring Fictitious Defaults .................... 20

a.    Namco and Plaintiffs Agreed that No Payments Were Due Until Successful Development of the Property ............................................. 20

b.    Plaintiffs' Failure to Pay is Excused by Namco's Waiver .................. 21

c.    Defendant Breached the Joint Venture Agreement by Calling a Default when Plaintiffs were not in Default ...................................................... 21

2.    Defendant Breached the Implied Covenant of Good Faith and Fair Dealing by Refusing to Honor the Terms of the Parties' Joint Venture .................. 22

3.    Plaintiffs are Entitled to a Declaration that the Defaults of Promissory Notes are Null and Void Pursuant to the Terms of the Joint Venture ........ 22

4.    Plaintiffs are Entitled to Injunctive Relief Enjoining the Trustee from Foreclosing on the Properties, as well as the Remedy of Cancellation ...... 23

5.    The Trustee Disparaged Plaintiffs' Title to the Properties by Recording the Notices of Default .............................................................................. 23

D.    The Court Should Deny Summary Judgment as to the Fraud-Based Claims because Namco Misrepresented Its Ability to Contribute Capital to the Venture .................. 24

E.    Summary Judgment of the Interference Claims should be Denied because Defendant's Actions Destroyed Plaintiffs' Development Relationships .................... 25

F.    Plaintiffs are Entitled to an Accounting of the Funds Namco Received from its Fraudulent Business Transactions ........................................................................ 25

V.    CONCLUSION ....................................................................................................... 25

ii

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242 (1986) .................................................................................................. 12

*Atkinson v. Pacific Fire Extinguisher Co.,*

40 Cal.2d 192 (1953) ................................................................................................ 21

*Bank of California v. Connolly,*

36 Cal. App. 3d, 350 (1973) ..................................................................................... 17

*Bellini Imports, Ltd. v. Mason and Dixon Lines, Inc.,*

944 F.2d 199 (4th Cir. 1991) .................................................................................... 14

*British Airways Board v. Boeing Company,*

585 F.2d 936 (9th Cir. 1978) .................................................................................... 12

*Careau & Co. v. Security Pacific Business Credit, Inc.,*

222 Cal.App.3d 1371 (1990) .................................................................................... 20

*Chambers v. Kay,*

29 Cal. 4th 142 (2002) .............................................................................................. 17

*Cornwell v. Electra Central Credit Union,*

439 F.3d 1018 (9th Cir. 2006) .................................................................................. 12

*Eastman Kodak Co. v. Image Technical Services, Inc.,*

504 U.S. 451 (1992) .................................................................................................. 12

*Engalla v. Permanente Medical Group, Inc.,*

15 Cal. 4th 951 (1997) .............................................................................................. 24

*English v. Dyke,*

23 F.3d 1086 (6th Cir. 1994) .................................................................................... 13

*Epstein v. Stahl,*

176 Cal. App. 2d 53 (1960) ...................................................................................... 17

*Gould v. Corinthian Colleges, Inc.,*

192 Cal. App. 4th 1176 (2011) ................................................................................. 21

iii

*Harm v. Frasher,*
  181 Cal. App. 2d 405 (1960) ............................................................................22

*Harris v. Secretary, U.S. Dept. of Veterans Affairs,*
  126 F.3d 339 (D.C. Cir. 1997) .........................................................................13

*Hofmeister v. Delta Verde Farms,*
  171 Cal. App. 2d 688 (1959) ............................................................................19

*In re PCH Associates,*
  949 F.2d 585 (2d Cir. 1991) ..................................................................14, 15, 16

*James v. Herbert,*
  149 Cal. App. 2d 741 (1957) ............................................................................17

*Jeld-Wen, Inc. v. Superior Court,*
  131 Cal. App. 4th 853 (2005) ...........................................................................17

*Junkin v. Golden West Foreclosure Service, Inc.,*
  180 Cal. App. 4th 1150 (2010) ....................................................................18, 19

*Martin v. Ajax Const. Co.,*
  124 Cal. App. 2d 425 (1954) ............................................................................18

*Matter of Unroe,*
  937 F.2d 346 (7th Cir. 1991) ............................................................................15

*Molko v. Holy Spirit Ass'n,*
  46 Cal. 3d 1092 (1988) .....................................................................................24

*Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Cos., Inc.,*
  210 F.3d 1099 (9th Cir. 2000) ..........................................................................12

*Orosco v. Sun-Diamond Corp.,*
  51 Cal. App. 4th 1659 (1997) ...........................................................................17

*Pepper v. Litton,*
  308 U.S. 295 (1939) ..........................................................................................16

*Peterson v. Highland Music, Inc.,*
  140 F.3d 1313 (9th Cir. 1998) ..........................................................................13

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,*
  507 U.S. 380 (1993) ........................................................................................... 15

*Racine & Laramie, Ltd. v. Department of Parks & Recreation,*
  11 Cal. App. 4th 1026 (1992) ........................................................................... 22

*Roesch v. DeMota,*
  24 Cal. 2d 563 (1944) ....................................................................................... 21

*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,*
  36 Cal. 3d 752 (1984) ....................................................................................... 25

*Settimo Associates v. Environ Systems, Inc.,*
  14 Cal. App. 4th 842 (1993) ............................................................................. 25

*Sun Oil Co. v. CIR,*
  562 F.2d 258 (3d Cir. 1977) ............................................................................. 16

*Sutherland v. Barclays American/Mortgage Corp.,*
  181 Cal. App. 4th 299 (1997) ........................................................................... 22

*Waldridge v. American Hoechst Corp.,*
  24 F.3d 918 (7th Cir. 1994) .............................................................................. 12

**Statutes**

11 U.S.C. § 323 .................................................................................................... 14

11 U.S.C. § 541(a) ............................................................................................... 13

28 U.S.C. § 1409(e) ............................................................................................. 14

Cal. Civ. Proc. Code § 1856(g) ........................................................................... 19

**Rules**

Fed. R. Bankr. P. 2012(a) ................................................................................... 14

Fed. R. Bankr. P. 3002(a) ................................................................................... 14

Fed. R. Bankr. P. 3003(c)(3) ............................................................................... 15

Fed. R. Civ. P. 17 ................................................................................................ 14

Fed R. Civ. P. 56(c)(2) ........................................................................................ 12

v

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## I.    INTRODUCTION

In a simple traffic accident case, if one side says the light was green and the other says it was red, a trial is necessary to resolve the factual dispute. This simple premise is also true for complex business disputes. If material facts are in dispute, the Court is not empowered to grant summary judgment. Here, Defendant Bradley D. Sharp, Chapter 11 Trustee of Namco Capital Group Partners, LLC ("Defendant" or "Trustee") is moving for summary judgment, or, in the alternative, summary adjudication of Plaintiffs Kamran Pasadena Group, Inc. ("Kamran Pasadena") and Kamran Group, LLC's ("Kamran Group") (collectively, "Plaintiffs" or the "Kamran Entities") Complaint.

The Trustee's motion is hinged on an eleventh-hour attempt to allege procedural defects in Plaintiffs' claims for relief that have never been pleaded nor raised during two years of litigation, as well as the Court's prior ruling that Plaintiffs received consideration from Namco Capital Group Partners, LLC ("Namco") in exchange for executing several promissory notes. The Trustee is not entitled to summary judgment based on these arguments. First, the Trustee has waived any alleged procedural defects by failing to plead this defense, and by continuing to defend this action for two years. Moreover, the Trustee is a proper defendant because he automatically substituted Namco as defendant, upon his appointment as the Chapter 11 trustee. Additionally, the Court possesses the equitable power to disregard Plaintiffs' alleged failure to file timely proofs of claim because no party has been prejudiced by the absence of a proof of claim against Namco.

Contrary to the Trustee's contentions, the Court only determined that Plaintiffs received consideration in exchange for executing the promissory notes. The Court did *not* make a ruling as to whether the consideration constituted a loan or a capital contribution toward Namco's joint venture with Plaintiffs. *To be certain, of any issue that is fact driven, the existence of a joint venture is one.* As set forth herein, Plaintiffs contend, and can prove, that: (1) Plaintiffs and Namco entered into a joint venture; (2) the terms of the joint venture provided that any contributions made by either co-venturer would not be reimbursed until successful completion of the venture; (3) the consideration furnished by Namco is accurately characterized as a capital contribution; and (4) the Trustee and Namco breached the parties' agreements by declaring a default based on nonpayment, when no

---

1

payment was due. For these reasons, the Court should overrule the Trustee's motion in its entirety.

## II.    STATEMENT OF FACTS

### A.    David Golkar and Ezri Namvar Form a Joint Venture in 2004

In or around late 2004, David Golkar ("Golkar"), the sole member of Kamran Group, and the sole shareholder of Kamran Pasadena, met Ezri Namvar ("Namvar"), then president and principal of Namco. *See* Plaintiffs' Statement of Genuine Disputes of Material Fact ("SDF") 33. Namvar was impressed with Golkar's development expertise, and suggested that the two form a joint venture to develop real property (the "Joint Venture"). *Id.* Golkar and Namvar agreed that the parties would use their own respective entities as conduits for the Joint Venture, until they created an entity to memorialize the Joint Venture. *Id.*

Golkar and Namvar also agreed that their Joint Venture would be owned 50%-50%. SDF 34. Pursuant to the terms of their Joint Venture, Golkar was obligated to contribute his development, engineering, and architectural expertise, and ten percent (10%) of the capital as his equity participation in the Joint Venture. *Id.* Namvar was obligated to contribute his financial expertise, and ninety percent of the capital as his equity participation in the Joint Venture. *Id.* Golkar and Namvar agreed that any funds paid and/or advanced by either party were to be credited toward that party's respective capital account, as equity in and to the Joint Venture. *Id.*

The Joint Venture also called for profits to be split pursuant to the parties' fifty percent ownership interest, after Namvar and Golkar were reimbursed for their respective financial contributions advanced to the Joint Venture. SDF 35. At all times during the course of their relationship, Namvar was required to operate his part of the Joint Venture through Namco, and Golkar was required to operate his part of the Joint Venture through the Kamran Entities. The advances from Namco were contributions of equity to the Joint Venture relationship. *Id.*

The intentions of the parties with respect to the Joint Venture relationship, and an outline of the general terms thereof, as it pertained to the development of real property were made manifest by a "Memorandum of Understanding." SDF 36. As reflected in the Memorandum of Understanding, Golkar and Namvar agreed that:

1.  Namvar and Golkar would each own a one-half interest in the Joint Venture;

2

2. Golkar would contribute his development, engineering, and architectural expertise, and ten percent of the capital to the Project (defined *infra*);

3. Namvar would contribute ninety percent of the capital to the Project; and

4. Golkar and Namvar would each have an equal share of profits and a return of their respective capital contributions, after reimbursement of payments and/or advancements made on behalf of the Joint Venture (the "Joint Venture Agreement"). *Id.*

**B.    Golkar and Namvar Agree to Develop the Project as Part of their Joint Venture**

In or around early August 2005, a real estate broker approached Golkar with the opportunity to purchase real property located at 233 N. Fair Oaks Ave., Pasadena, California ("233 N. Fair Oaks"). SDF 37. While Golkar was performing due diligence on 233 N. Fair Oaks, he was approached by John Richards, the owner of the Pasadena Athletic Club, with the opportunity to purchase the Pasadena Athletic Club, located at 25 W. Walnut, Unit #503, Pasadena, California (the "PAC Unit"), which abutted the 233 N. Fair Oaks property. *Id.* Golkar informed Namvar about this potential development and both parties decided to develop the property as part of their Joint Venture Agreement. *Id.* Golkar and Namvar agreed to purchase both properties, by and through their respective entities, and develop them with additional needed acquisitions into a mixed use commercial/residential property with hotel, residential, and retail space (the "Project"). SDF 38.

Namvar and Golkar also agreed to form a new entity, Walnut Land Holding, LLC, that would ultimately hold title to the 233 N. Fair Oaks, the PAC Unit, and additional condominium units located at 25 West Walnut Avenue. SDF 39. Since the entity was not formed at the time the 233 N. Fair Oaks sale closed, Namvar requested that Golkar agree to use the entity, Tranmar Properties, LLC, whose managing member was Namvar, to take title thereto. *Id.* It was understood that Namvar needed to use the Tranmar Properties, LLC for 1031 exchange purposes. SDF 40.

The Joint Venture was a very complex venture to own, develop, and operate the multi-use Project that was valued by Golkar at two hundred million dollars ($200,000,000.00). SDF 42. As a result of the complexity of the Project, the parties were never able to complete the entity Walnut Land Holding, LLC prior to Namvar/Namco's legal problems (including this Chapter 11

3

proceeding). *Id.* Regardless of the fact that Walnut Land Holding, LLC was not finalized or formed in time to be utilized in the Joint Venture, Namvar and Golkar continued to operate the Joint Venture for the Project, including the acquisition, entitlements, and developing of the Project. *Id.*

**C.    Golkar and Namvar's Course of Dealing Exhibited all of the Hallmarks of a Joint Venture Relationship**

During the course of their business relationship, Golkar and Namvar presented themselves as joint venturers. Golkar and Namvar represented to potential lenders and numerous other third parties that "they" were working on the Project as joint venturers. SDF 42. Namvar was considered to be one of the principals of the Project, and not merely a "lender." *Id.* Namvar also repeated represented, through emails and testimony, that he was a joint venturer with Golkar in developing the Project, and expected to gain a substantial profit therefrom. *Id.* During his October 22, 2009 deposition, Namvar testified as follows:

Q: Could you please describe the relationship between Namco Capital Group and Kamran Group?

A: The agreement was -- and I don't know whether it was reduced to writing. Mr. Gill may have the records --that after paying Namco all the advances, the profits, if any, would be split 50/50. Advances plus interest according to the notes. Then the profits thereafter would be split 50/50.

***

A: Namco, the verbal agreement we had with Golkar was that we would finance a hundred percent of the Project. I believe we put an upper limit of 26 or 27 million. I don't remember. Maybe 30. I don't remember. But we were supposed to do hundred percent financing, get interest rate. I believe it was the rate of 10 percent. After we get all of our moneys paid plus the 10 percent, the profits would be 50/50 at our choice.

Q: You're referring to an ultimate sale at the conclusion of the project?

A: Or building it and making the profit. Our money would come first, plus the 10 percent interest compounded at a certain basis and then -- which was very usual in my formats but -- and then the profits would be 50/50.

Q: In other words, you would split the back end?

A: Yes. *Id.*

**D.    Golkar and Namvar Purchase the Subject Properties**

Namvar and Golkar made substantial property acquisitions on behalf of their Joint Venture through their respective entities. Included was the 233 N. Fair Oaks property, the PAC Unit, the

4

additional condominiums located on the 25 West Walnut property to complete the block, and an affordable housing site to accommodate the City of Pasadena's requirement for low income housing. The purchases in furtherance of the Joint Venture are detailed as follows:

1. The 233 N. Fair Oaks property was purchased on or about August 12, 2005 and closed on December 12, 2005 for $4,300,000.00, of which Kamran Group, LLC tendered $1,250,000 and Namco tendered $3,050,000. SDF 44.

2. The PAC Unit was purchased for $7,650,000. SDF 45. John Richards, the owner and president of Pasadena Athletic Club offered Kamran Group the opportunity to purchase his parcel and include it with the Project, but wanted to keep escrow open for over a year to notify the Club's 3,500 members and ease the transition. Namvar and Golkar agreed to this extended escrow period and Kamran Group deposited $250,000 in February 2006 and released another $500,000 for the purchase in June 2006, and then Namco made payment of $6,9000,000 towards the total purchase price. The transaction closed on June 23, 2007. *Id.*

3. In addition to the PAC Unit, there were four residential units owned by other individuals at 25 West Walnut, namely Units #402, #405, #501, and #504. The purchase for these individual units was as follows:

   - Condominium unit No. 405 at 25 West Walnut ("Unit 405"), was purchased for approximately $530,000. Namco deposited $30,000 in escrow on March 29, 2007, and at closing, Namco tendered an additional $503,154 on April 30, 2007. SDF 46.

   - Condominium unit No. 504 at 25 West Walnut ("Unit 504"), was purchased for approximately $1,657,847. Namco deposited $300,000 in escrow and at closing, Namco tendered an additional $1,357,847 SDF 47.

   - Condominium unit No. 501 at 25 West Walnut ("Unit 501"), was purchased for approximately $780,000. Namco deposited $150,000 in escrow and at closing, Kamran Group tendered an additional $630,000. SDF 48.

   - Condominium unit No. 402 at 25 West Walnut ("Unit 402") was purchased for approximately $648,600. Namco deposited $125,000 in escrow. The parties agreed that this unit would be exchanged and replaced with a new unit after the completion of the

5

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Project. Chris Holden, the person from whom Unit No. 402 was being purchased, was carrying a mortgage of about $127,000 at that time and Kamran Group paid the mortgage thereafter. Later, on November 21, 2008, Kamran Group paid an additional $57,194 to Chris Holden for an extension of escrow. Chris Holden currently owns about 2% of this property. SDF 49.

4. In order to receive approval for the Project, fifteen percent (15%) of the residential housing component needed to be allocated for low income housing. SDF 50. Such a property was found at 810-820 Marengo Avenue ("Marengo"), Pasadena, California for $3,600,000. *Id.* Marengo had 18 units that satisfied the low-income housing requirement and was located within one mile of 25 West Walnut. *Id.* Namco tendered payment of all funds for the purchase of the Marengo property, and the transaction closed on June 27, 2007. *Id.*

In sum, Golkar and Namvar made the following equity contributions, through the above mentioned property acquisitions, and in furtherance of their obligations to their Joint Venture, as follows:

| PROPERTY | EVENT | DATE | NAMVAR | GOLKAR |
|---|---|---|---|---|
| 233 N. Fair Oaks | Escrow Open | 08/12/2005 | | |
| 233 N. Fair Oaks | Closing | 12/12/2005 | $3,050,000 | $1,250,000 |
| PAC Unit | Escrow Open | 02/2006 | | $250,000 |
| PAC Unit | Additional PM | 06/2006 | | $500,000 |
| Unit 402 | Escrow Open | 10/19/2006 | $125,000 | |
| Unit 501 | Escrow Open | 02/27/2007 | $150,000 | |
| Unit 405 | Escrow Open | 03/29/2007 | $30,000 | |
| Unit 405 | Closing | 04/30/2007 | $503,154 | |
| Unit 504 | Escrow Open | 05/10/2007 | $300,000 | |
| PAC Unit | Closing | 06/23/2007 | $6,900,000 | |
| Marengo | Closing | 06/27/2007 | $3,600,000 | |
| Unit 501 | Closing | 07/03/2007 | | $630,000 |

6

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Unit 504 | Closing | 07/06/2007 | $1,357,837 | |
| Unit 402 | Add'l Payment | 11/21/2008 | | $57,194 |
| **TOTAL EQUITY CONTRIBUTIONS** | | | **$16,016,001** | **$2,687,194** |

All funds expended by Namco and the Kamran Entities were in furtherance of Namvar and Golkar's respective obligations pursuant to the Joint Venture Agreement to contribute capital, as equity therein, to fund the development of the Project. SDF 51. In fact, Golkar gave more than his ten percent of his capital contribution obligation. *Id.* In addition to the above contributions for property acquisition, Golkar, through the Kamran Entities, also contributed additional "work-in-progress" work on behalf of the Project. *Id.* All of the foregoing purchase and development activities were performed outside the context of any purported Promissory Notes or debt obligations.

**E.     Plaintiffs Execute the Promissory Notes in Favor of Namco in order to Obtain Financing for the Parties' Joint Venture**

After Golkar and the Kamran Entities fully complied with the terms and conditions of the Joint Venture Agreement, and their obligations therein, Golkar discovered that he needed cash to continue to develop the Project on behalf of the Joint Venture. SDF 52. Rather than obtain financing from investors or financial institutions, secured by the Kamran Group's ownership interest in the 25 W. Walnut Units and Marengo, the Kamran Entities agreed to allow Namco to *advance* additional capital contributions in furtherance of the Joint Venture in the amount of $12,650,000 *in exchange* for Promissory Notes. *Id.* Listed below are the subject promissory notes (collectively referred to as the "Promissory Notes")[1]:

1.  "Kamran Group, Pasadena Inc. Formerly known as Pasadena Athletic Club Inc.," by and through its President, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated September 11, 2008, in favor of Namco Capital Group, Inc. in the amount of $1,700,000. The note called for monthly interest only payments of $9,916.57 and fully matured on December 31, 2009 ("Note #1"). Note #1 is secured by a deed of trust encumbering "Pasadena Athletic Club, Inc.['s]" interest in the PAC Unit.

---

[1] The Promissory Notes and Deeds of Trust are attached to the Declaration of Bradley Sharp as Exhibits L-W.

7

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

2. "Kamran Group, LLC," by and through its Manager, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated September 10, 2007, in favor of Namco Capital Group, Inc. in the amount of $600,000[2]. The note called for monthly interest only payments of $5,000.00 and fully matured on September 10, 2008 ("Note #2"). Note #2 is secured by a deed of trust encumbering "Kamran Group, LLC['s]" interest in Unit 501.

3. "Kamran Group, LLC," by and through its Manager, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated September 10, 2007, in favor of Namco Capital Group, Inc. in the amount of $1,300,000. The note called for monthly interest only payments of $10,833.34 and fully matured on September 10, 2008 ("Note #3"). Note #3 is secured by a deed of trust encumbering "Kamran Group, LLC['s]" interest in Unit 504.

4. "Kamran Group, LLC," by and through its Manager, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated September 10, 2007, in favor of Namco Capital Group, Inc. in the amount of $450,000. The note called for monthly interest only payments of $3,750.00 and fully matured on September 10, 2008 ("Note #4"). Note #4 is secured by a deed of trust encumbering "Kamran Group, LLC['s]" interest in Unit 405.

5. "Kamran Group, LLC," by and through its Manager, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated June 29, 2007, in favor of Namco Capital Group, Inc. in the amount of $3,600,000. The note called for monthly interest only payments of $30,000.00 and fully matured on June 28, 2008 ("Note #5"). Note #5 is secured by a deed of trust encumbering "Kamran Group, LLC['s]" interest in the Marengo Property.

6. "Kamran Group Pasadena, Inc. Formerly known as Pasadena Athletic Club Inc.," by and through its President, David Golkar, executed a Promissory Note Secured by Deed of Trust as "Maker" dated June 29, 2007, in favor of Namco Capital Group, Inc. in the amount of $5,000,000. The note called for monthly interest only payments of $41,666.67 and fully matured on June 28, 2008 ("Note #6"). Note #6 is secured by a deed of trust encumbering "Pasadena Athletic Club, Inc.['s]" interest in the PAC Unit.

---

[2] Note #2 actually states that the amount of the principal is "Four Hundred Fifty Thousand and 00/100 Dollar ($600,000)".

8

As outlined herein, each of the Promissory Notes calls for monthly payments of interest only, until maturity. However, Golkar and the Kamran Entities never made any interest payments on the Promissory Notes, because Golkar and Namvar agreed that the Promissory Notes were considered equity contributions to the Joint Venture, *and not loans*. SDF 53. In fact, **Namvar actually testified that neither Golkar, nor any of the Kamran Entities, was ever required to pay any interest payments.** SDF 54. This agreement is further evidenced by the fact that:

- Namco continued to contribute equity into the Project after the initial two Promissory Notes (totaling $8,600,000) went unpaid;

- Namco drafted and "held" Promissory Notes totaling $2,350,000 approximately two months after the initial Promissory Notes matured; and

- Executing another Promissory Note for $1,700,000, *after all prior Promissory Notes matured.*

The Promissory Notes were to be reflections and evidence of Namvar's (through Namco) equity contributions via advances to the joint venture. Namvar recognized this and represented to Golkar that no payments and/or interest would be due until the development of the property was complete and/or sold at a profit, at which time Namvar would receive his return on his equity contribution, plus an additional 10% interest, and then Namvar and Golkar would split the profits equally. Namco never sent demands to Kamran for payment of principal and/or interest, or a notice of default, under the Promissory Notes. SDF 55. In fact, Golkar was never supposed to make payments pursuant to the Promissory Notes. *Id.* Requests for payment and Notices of Default were issued only after the Trustee was appointed and made a wrongful assumption that the consideration contemplated by the Notes, i.e., the funds to be tendered pursuant thereto, had been tendered and were a traditional debt obligation. *Id.*

Furthermore, the dates the Promissory Notes were executed, and the amounts allegedly "loaned" by Namco, do not correspond with the amounts of money contributed to the properties or the transaction dates that the properties securing the Promissory Notes closed, as the following sets forth:

///

9

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Note | Amount | Date Issued | Property | Property Closing Date |
|------|--------|-------------|----------|----------------------|
| Note #1 | $1,700,000 | September 11, 2008 | PAC Unit | June 23, 2007 |
| Note #2 | $600,000 | September 10, 2007 | Unit 501 | July 3, 2007 |
| Note #3 | $1,300,000 | September 10, 2007 | Unit 504 | July 6, 2007 |
| Note #4 | $450,000 | September 10, 2007 | Unit 405 | April 30, 2007 |
| Note #5 | $3,600,000 | June 29, 2007 | Marengo Property | June 27, 2007 |
| Note #6 | $5,000,000 | June 29, 2007 | PAC Unit | June 23, 2007 |

**F.      Namco Sells/Assigns Fractional Interests in the Promissory Notes**

Contemporaneously with the development of the Project and the execution of the Promissory Notes, Namvar began selling fractional interests to third-party lienholders on the Promissory Notes, basically leaving only a two percent (2%) interest for Namco in the security. SDF 56. This has resulted in Namvar's federal conviction and imprisonment, and multiple cross claims and counterclaims in this proceeding. *Id.* Namvar never had the capital to perform his obligations to the Joint Venture, so he induced Golkar, under the guise of his "financial expertise," to sign the Promissory Notes to bring additional collateral, so that he could make a profit off of these third-party lienholders. *Id.*

**G.      An Involuntary Bankruptcy Petition is Filed Against Namco before the Parties Could Form Walnut Holdings, LLC**

On December 22, 2008, an involuntary Chapter 11 petition was filed against Namco, approximately three months after the five of the six Promissory Notes already matured. Unfortunately, the Chapter 11 petition was filed before Namco and the Kamran Entities had the opportunity to form Walnut Holdings, LLC. Despite the fact that Namco and Plaintiffs did not form Walnut Holdings, LLC to hold their Joint Venture property, the intentions of the parties to form and operate the Joint Venture were clear, as outlined herein. At the time the Chapter 11 petition was filed, Namco and Plaintiffs had already formed the Joint Venture, and were actively developing the Project in furtherance of their Joint Venture.

On May 8, 2009, the Court ordered the appointment of Bradley D. Sharp to act as Trustee of Namco's bankruptcy estate.[3] Without any knowledge, or regard for, the Joint Venture arrangement between Namco and Plaintiffs, the Trustee recorded Notices of Default on each of the Promissory

---

[3] The Order Approving Appointment of Trustee is attached to the Trustee's Request for Judicial Notice as Exhibit C.

10

Notes on November 13, 2009.[4] These Notices of Default were **recorded nearly two years after the Notes #2-6 allegedly matured, and one year after Note #1 matured**. Moreover, the Trustee declared that Plaintiffs were in default for nonpayment, despite the fact that **Namco and Kamran explicitly agreed that no payment was required under the Promissory Notes**.

### H.    Procedural History

On February 24, 2010, Plaintiffs filed this instant adversary proceeding to prevent the Trustee from foreclosing on the properties secured by the Promissory Notes.[5] Based on their agreement with Namco, Plaintiffs rightfully believed that they were in not in default of the Promissory Notes. However, Plaintiffs were forced to file this instant action, *after* the Trustee recorded the Notices of Default, in direct contravention of the terms of Namco and Plaintiffs' Joint Venture. Upon the parties' stipulation, the Trustee filed an Answer to Plaintiffs' Complaint on April 29, 2010. SDF 57. The Answer sets forth ten affirmative defenses, but does not contain a single allegation that pertains to any alleged failure to name the correct parties or join an indispensible party. *Id.*

On April 27, 2011, the Court presided over a trial to determine the limited issue of whether consideration had been actually tendered under the Notes. The Court entered its Findings of Fact and Conclusions of Law on August 11, 2011 ("FOF")[6], finding *only that Plaintiffs had received consideration*. The Court specifically did not make any other findings of fact, including, but not limited to, the following: (1) whether Plaintiffs and Namco entered into the Joint Venture Agreement for the purpose of developing real property; (2) whether any funds advanced by Namco to either of Plaintiffs, if any, was in furtherance of the Joint Venture; (3) whether any funds advanced by Namco to either of Plaintiffs, if any, was equity contributed by Namco to the Joint Venture; and (4) Whether Plaintiffs actually defaulted on the Promissory Notes.

Similarly, the Court reserved itself from making any other conclusions of law other than that "consideration was tendered", including, but not limited to, the following issues of law: (1) whether funds advanced by Namco, if any, was characterized as debt to be repaid pursuant to the Promissory

---

[4] The Notices of Default are attached to the Declaration of Bradley Sharp as Exhibits X-BB.
[5] Plaintiffs' Complaint is attached to the Trustee's Request for Judicial Notice as Exhibit A.
[6] The FOF is attached to the Trustee's Request for Judicial Notice as Exhibit B.

11

Notes or equity contributed in and to the Joint Venture; (2) whether the Promissory Notes are void or otherwise unenforceable; and (3) whether the conduct of Namco was in furtherance of the Joint Venture, and classified as equity rather than debt.

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is a drastic remedy and is therefore to be granted with caution. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party bears the "heavy" initial burden of production, and the ultimate burden of persuasion that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). If it fails to carry its initial burden of production, the opposing party has *no obligation* to produce any evidence, and summary judgment should be denied. *Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-1103 (9th Cir. 2000). Any doubts about whether the moving party has met its burden of production are to be resolved in favor of the party opposing summary judgment. *British Airways Board v. Boeing Company*, 585 F.2d 936, 951 (9th Cir. 1978).

If the moving party meets its initial burden of production, the burden shifts to the opposing party to establish a genuine issue of material fact. The opposing party "need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). Moreover, circumstantial evidence alone may defeat a motion for summary judgment. *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1029-1030 (9th Cir. 2006). Finally, inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992).

## IV. ARGUMENT

### A. The Court Should Deny Summary Judgment Because Plaintiffs' Claims are Properly Plead Against the Trustee and are not Time Barred

The Trustee, and not Namco, is the proper defendant in this action. Moreover, the Court should still deny summary judgment, even if it determines that a proof of claim should have been filed against Namco, because it is within the Court's equitable power to disregard the proof of claim requirement. The Trustee waited *two years* to raise these alleged procedural defects. Ultimately,

12

this amounts to nothing more than a pointless "gotcha." The purpose of the proof of claim procedure is to provide notice to all parties. After two years of litigation and the Trustee's participation in a limited trial on the issue of consideration, all parties to this proceeding have been on notice of Plaintiffs' claims. As such, the Court should deny summary judgment.

          **1.**      **The Trustee is a Proper Defendant Because he Acts as an Automatic Substitute for Namco that can Sue and be Sued**

          **a.**      **The Trustee has not Pleaded that He is an Improper Party to this Lawsuit, and has therefore Waived this Defense**

Normally, summary judgment *cannot* be granted on the basis of claims or defenses that have not been pleaded. *Harris v. Secretary, U.S. Dept. of Veterans Affairs*, 126 F.3d 339, 341 (D.C. Cir. 1997). A "party's failure to plead an affirmative defense . . . generally results in waiver of that defense and its *exclusion from the case.*" *Id.* In fact, a party may waive an affirmative defense by its conduct during litigation, even if that affirmative defense was pleaded. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998). Moreover, a "trial court has discretion to find a waiver [. . .] if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes. *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994).

Here, the Trustee claims that he is entitled to summary judgment because Plaintiffs failed to assert their claims for relief against Namco, or name Namco as a defendant in this adversary proceeding. Instead of filing a motion to dismiss, the Trustee answered the Complaint on April 29, 2010. SDF 57. The Answer does not contain a single allegation that pertains to Plaintiffs' alleged failure to name Namco as a defendant. The Answer alleges ten affirmative defenses, none of which allege that the Complaint should be dismissed for failure to name an indispensible party. Moreover, the Trustee has continued to defend this action for nearly two years, without raising the issue of whether he is the proper defendant. Now, on the eve of trial, the Trustee seeks summary judgment based on a defense that he waived, through his failure to raise it in his Answer, as well as his conduct during the last two years. Thus, the Court should deny summary judgment on these grounds.

          **b.**      **The Trustee is a Proper Defendant because He is a Representative of the Estate and Substituted Namco by Operation of Law**

Upon a debtor's bankruptcy filing, the claims at issue become assets of the bankruptcy estate

13

that constitute a separate entity from the debtor. *See* 11 U.S.C. § 541(a). The trustee becomes the representative of the estate, and as such has capacity to be sued. 11 U.S.C. § 323; Fed. R. Civ. P. 17. Moreover, "[i]f a trustee is appointed in a chapter 11 case [. . .] the *trustee is substituted automatically* for the debtor in possession *as a party* in any pending action, proceeding, or matter." Fed. R. Bankr. P. 2012(a) (emphasis added). As such, where a debtor is in bankruptcy, the trustee *must* be named as a party defendant. *Bellini Imports, Ltd. v. Mason and Dixon Lines, Inc.*, 944 F.2d 199, 202 (4th Cir. 1991); *see also* 28 U.S.C. § 1409(e).

Here, the Court ordered the appointment of Defendant to act as Trustee of the Namco bankruptcy estate on May 8, 2009. At this point, the Trustee was *automatically* substituted as the debtor (Namco). Even if Plaintiffs did name Namco as a defendant in their Complaint, the Trustee would have been substituted in as a defendant by operation of law. (*See* Fed. R. Bankr. P. 2012(a).) Additionally, as discussed *infra*, this instant action arose based on the Trustee's recording of the Notices of Default when Plaintiffs never defaulted on the Promissory Notes. As such, the Trustee is the proper defendant in this action, whether it is in his capacity as the Namco bankruptcy estate representative, or based on his actions in wrongfully recording the Notices of Default. For these reasons, the Court should deny summary judgment.

> **2.    Plaintiffs Claims Against Namco are Not Time Barred Because They did Not Arise Until the Trustee Recorded the Notices of Default**

The Court should still deny summary judgment even if it finds that Plaintiffs should have filed a proof of claim against Namco, because Plaintiffs claims did not arise until the Trustee incorrectly declared the Plaintiffs in default. Generally, any creditor wishing to have its claim or interest "allowed" in a bankruptcy case is required to file a proof of claim or interest. Fed. R. Bankr. P. 3002(a). The policy behind the notice of claim procedure "is to ensure that all those involved in the proceeding will be made aware of the claims against the debtor's estate, and will have an opportunity to contest those claims." *In re PCH Associates*, 949 F.2d 585, 605 (2d Cir. 1991).

> **a.    Plaintiffs Claims are Based on the Trustee's Declaring a Nonexistent Default of the Promissory Notes**

At the time the involuntary Chapter 11 petition was filed against Namco, Plaintiffs still

14

reasonably believed that Namco would honor the terms of their Joint Venture Agreement. As outlined herein, Plaintiffs and Namco agreed that no payments were due under the Promissory Notes because Namco would be reimbursed for its advance after successful development of the Project. SDF 52. However, the Trustee declared that Plaintiffs were in default of the Promissory Notes for nonpayment, in violation of the terms of the Join Venture, on November 13, 2009, *the very same day as the alleged claims bar.* Moreover, this action was filed to enjoin the Trustee from foreclosing on the Properties based on nonexistent defaults, as well as for violations of Namco and Plaintiffs' agreements. Clearly, Plaintiffs could not have filed a proof of claim *before* November 13, 2009, and *before* the Trustee even declared them in default.

### b.    The Court has Discretion to Disregard Plaintiffs' Failure to File a Proof of Claim or Allow Plaintiffs to File a Late Proof of Claim

Contrary to the Trustee's contentions, the failure to timely file a proof of claim does not automatically doom Plaintiffs' case. In a Chapter 11 case, the court may extend the time within which proofs of claim may be filed, for cause shown. Fed. R. Bankr. P. 3003(c)(3). Where the time has already expired, an extension may be granted if the failure to act was the result of excusable neglect. The determination of whether neglect is excusable is an equitable one that takes account of all relevant circumstances surrounding a party's omission. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 389 (1993). Moreover, a bankruptcy court has equitable power, aside from statutory authority, to authorize tardily filed claims. *Matter of Unroe*, 937 F.2d 346, 349 (7th Cir. 1991).

In *PCH Associates*, the Court of Appeal noted that the creditor failed to timely file a proof of claim. *PCH Associates*, 949 F.2d at 605. Despite this failure, the Court held that the creditor's "failure to file a proof of claim will not bar it from asserting a claim against the [debtor]," because the failure to file a proof of claim did not prejudice the interest of any third party. *Id.* Here, as discussed *supra*, Plaintiffs claims did not arise until after the claims bar date. Moreover, allowing Plaintiffs to proceed with this lawsuit without filing a proof of claim would not defeat the purposes of the proof of claim procedure. All of the parties, including the Trustee, have been on notice of Plaintiffs' claims since the Complaint was filed on February 24, 2010. This proceeding has been

15

pending for two years, without objection from any party. For these reasons, Plaintiffs respectfully request that the Court exercise its equitable discretion by allowing this case to proceed without a proof of claim, or allow Plaintiffs to file a subsequent proof of claim.

**B.    The Court Should Deny Summary Judgment because Plaintiffs' Claims are Premised on Namco's Breach of its Joint Venture Agreement with Plaintiffs**

In bringing this motion, the Trustee attempts to characterize Namco and Plaintiffs' relationship as one of lender and borrower. This is a blatant mischaracterization of the parties' business dealings. This is not a simple situation in which a borrower defaulted on a loan from its lender. The Court has already determined that Plaintiffs received consideration for the Promissory Notes. However, there is still a factual dispute as to whether the consideration constituted equity contributed by Namco to the Joint Venture that was to be reimbursed *after* successful development of the Project.

The Trustee's motion highlights a fundamental misunderstanding of joint venture relationships. Contrary to what the Trustee would have the Court believe, the title of a document does not unilaterally dictate that nature of the parties' relationship. "It is well established that a bankruptcy court, as a court of equity, may look through form to substance when determining the true nature of a transaction as it relates to the rights of parties against the bankrupt's estate." *PCH Associates*, 949 F.2d at 598 (citing *Pepper v. Litton*, 308 U.S. 295, 304 (1939). Moreover, "[i]t is the economic substance of a transaction that should determine the rights and obligations of interested parties. *Id.* (citing *Sun Oil Co. v. CIR*, 562 F.2d 258, 263 (3d Cir. 1977). When read as a whole, the facts clearly establish that: (1) Plaintiffs and Namco were joint venturers and not merely borrower and lender; and (2) the Promissory Notes constituted advances that were *not payable unless and until the Joint Venture became profitable.* As such, the Court should deny summary judgment.

**1.    The Facts Establish that Plaintiffs and Namco Formed a Joint Venture**

Plaintiffs' and Namco's business relationship exhibited all of the traditional hallmarks of a joint venture. In California, "[a] joint venture exists where there is an agreement between the parties under which they have a community interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right to joint control of

16

the venture." *Chambers v. Kay*, 29 Cal. 4th 142, 151 (2002) (quoting *Bank of California v. Connolly*, 36 Cal. App. 3d, 350, 364 (1973)); *Jeld-Wen, Inc. v. Superior Court*, 131 Cal. App. 4th 853, (2005) (citing, *inter alia, Orosco v. Sun-Diamond Corp.*, 51 Cal. App. 4th 1659, 1666 (1997). The contributions of the parties "need not be equal or of the same character," but each contribution must promote the enterprise. *Epstein v. Stahl*, 176 Cal. App. 2d 53, 58 (1960) (citing *James v. Herbert*, 149 Cal. App. 2d 741, 748 (1957).

Here, Plaintiffs and Namco entered into an oral agreement to form the Joint Venture in 2004. SDF 33. Pursuant to this oral agreement, Plaintiffs and Namco would develop real property, such as the Project, as joint venturers. SDF 33. Both Namco (through Namvar) and Plaintiffs (through the Kamran Entities) had joint control of the Joint Venture, and made financial contributions to the Joint Venture. The Parties agreed that the Kamran Entities would be responsible for the development, engineering, and architectural aspects of the Joint Venture, as well as contributing ten percent of the capital necessary to fund the Joint Venture. SDF 34. Namco was responsible for the financing aspects of the Joint Venture, and was also obligated to provide ninety percent of the financing. SDF 34.

Plaintiffs and Namco each had a one-half interest in the Joint Venture. SDF 35. The parties also agreed that each venturer would be entitled to half of the profits of the Joint Venture, after reimbursements of any advances made for the Joint Venture. SDF 35. It follows that the parties agreed to share losses, because neither Plaintiffs nor Namco would recover their contributions plus profit if the property development was not successful. In addition to their oral agreement, Plaintiffs and Namco also executed a "Memorandum of Understanding" that memorializes each of the aforementioned agreements. Clearly, the business relationship between Plaintiffs and Namco can be characterized as a Joint Venture, under California Law. *See Chambers*, 29 Cal. 4th at 151.

   2.    **The Parties Intended that the Consideration Received for the Promissory Notes Constitute Equity Contributions to their Joint Venture**

The consideration that Namco paid in exchange for the Promissory Notes was nothing more than an additional equity contribution to the Joint Venture, of which there was no return until the Project was successfully developed. The Trustee attempts to narrow the Court's focus on only the

17

title of the documents he contends Plaintiffs defaulted on. However, the names of the documents do not conclusively establish that Plaintiff and Namco were merely borrower and lender, or that Plaintiffs unjustifiably failed to repay a loan to Namco. When read as a whole, the facts establish that the consideration provided in exchange for the Promissory Notes constituted an equity contribution to the Joint Venture, and that neither Namco nor Plaintiffs ever intended the Promissory Notes to be due *prior to successful development of the Project.*

Whether or not a relationship is a true bona fide joint venture, or a disguised loan, is a question of fact in each case, and there is no fixed or precise formula in determining whether the arrangement is a true business venture, or merely a loan. As one court stated, in order to determine whether a transaction should be characterized as a loan or as part of a joint venture:

> [O]ne must look to those elements of a transaction which exist in a loan but not in a joint adventure and vice-versa. In the case of a loan, the lender does not share in the profits of the enterprise; neither does he run any risk of loss of his capital other than that of insolvency of the borrower, attendant upon all loans. [. . .] In contrast, with the joint adventure no financial return is promised the party supplying the capital. In exchange for a share in the earnings and residue, he takes the risk of failure of the enterprise and of total loss. [. . .] It is true that the presence or absence of one or more of these identifying characteristics is not conclusive as to the nature of a transaction ...." *Martin v. Ajax Const. Co.*, 124 Cal. App. 2d 425, 433 (1954).

Furthermore, "[w]here the relationship between the parties is a bona fide joint venture or partnership, the advance by the partners or joint venturers is an investment and *not a loan* . . . ." *Junkin v. Golden West Foreclosure Service, Inc.*, 180 Cal. App. 4th 1150, 1155 (2010). In *Junkin*, the plaintiff obtained a loan secured by a deed of trust from the defendant in order to obtain necessary funding for a real estate investment deal. *Id.* at 1153. The Court of Appeal found that the parties formed a joint venture because, *inter alia*, the "note was *not executed in isolation*. It was simply *one aspect of a larger transaction* under which [plaintiff] and [defendant] invested jointly . . ." *Id.* at 1156 (emphasis added).

Here, when read in "isolation," the Promissory Notes appear to evidence a loan made by Namco to Plaintiffs. However, Namco and Plaintiffs' business relationship did not start and end with the execution of the Promissory Notes. As discussed *supra*, the parties formed the Joint Venture nearly three years prior to the execution of the first Promissory Note. SDF 33. After

18

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

development of the Project commenced, the Promissory Notes amounted to only one aspect of the Joint Venture.  Unlike a traditional loan, Namco and Plaintiffs agreed that Namco would be reimbursed for the advances made under the Promissory Notes, *in addition to splitting the profits* from the Project.  SDF 35, 53.  Moreover, if the Project was unsuccessful, Namco would not recover any profit and would not be reimbursed for any of his advances or equity contributions.  These two facts by themselves support a finding that the Promissory Notes, and the consideration advanced by Namco were an investment in the Joint Venture, and *not an ordinary loan.  See Junkin*, 124 Cal. App. 2d at 433.

Additionally, Namco and Plaintiffs both intended that any consideration furnished in exchange for the Promissory Notes be reimbursed *only* upon successful development of the Project, despite the language contained in the Promissory Notes.  Under California Law, extrinsic evidence of the object, nature, and subject matter of the agreement is admissible if an understanding of such circumstances is necessary to ascertain the intent of the parties.  Cal. Civ. Proc. Code § 1856(g); *Hofmeister v. Delta Verde Farms*, 171 Cal. App. 2d 688, 698 (1959).

Here, Namco and Plaintiffs clearly intended that the advances made by Namco in exchange for the Promissory Notes were not payable until the Project was successfully completed.  Moreover, Namco *never* demanded payment on the Promissory Notes, even after they allegedly matured. Namvar himself testified, under oath, that the parties' relationship was not merely a lender-borrower relationship, and that "**after paying Namco all the advances, the profits, if any would be split 50/50.  Advances plus interest according to the notes.  Then the profits thereafter would be split 50/50,**" **after** the conclusion of the Project.  SDF 35, 53, 54.

Here, the debtor's principal, Namvar, admits that any monies provided in exchange for the Promissory Notes were advances to the Joint Venture, *and not loans*, and these advances were not "due" until the final sale of the Project.  Any other characterization goes against the true intention of Plaintiffs and Namco, and violates the terms of their Joint Venture Agreement.

**C.    The Court Should Deny Summary Judgment on the Contract-Based Claims Because Defendant Breached the Parties' Agreement by Declaring the Defaults**

As set forth above, the Promissory Notes, and monies advanced in exchange for them, were

19

merely equity contributions made by Namco to the Joint Venture. The Trustee requests summary judgment based simply on the fact that the Court has already determined that Plaintiffs received consideration from Namco in exchange for the Promissory Notes. Therefore, the Trustee argues that Namco did not breach the Promissory Notes, and Plaintiffs cannot recover for any of their contract-based claims because they failed to pay upon maturity of the Promissory Notes.

However, Namco and Plaintiffs explicitly agreed that the monies advanced were due upon completion of the Project, and not the maturity dates of the Promissory Notes. It follows that Plaintiffs did not breach the Promissory Notes, because they were not yet required to reimburse the advances made by Namco. Even assuming that Plaintiffs nonpayment constituted a breach, Namco repeatedly and intentionally waived these breaches. In fact, it was Namco (through the Trustee) who breached the Joint Venture Agreement, by declaring a default of the Promissory Notes when no such default existed. For these reasons, the Court should deny summary judgment as to all the contract-based claims.

### 1. Defendant Breached the Promissory Notes and Joint Venture Agreement between Namco and Plaintiffs by Declaring Fictitious Defaults

In order to establish a cause of action for breach of contract, a party must prove: (1) the existence of a contract; (2) the plaintiff's performance on the contract or excuse for its nonperformance; (3) the defendant's breach; and (4) damages. *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1388 (1990).

### a. Namco and Plaintiffs Agreed that No Payments Were Due Until Successful Development of the Property

The Trustee argues that Plaintiffs cannot recover for breach of contract because they did not make payment under the Promissory Notes, i.e. they did not perform and there is no excuse for their nonperformance. This is incorrect. As discussed herein, Namco, the supposed "lender," provided consideration for the Promissory Notes as an advance made in furtherance of the parties' Joint Venture. Moreover, Namco agreed that no payments were due under the Promissory Notes until the sale of the Project, pursuant to the terms of the Joint Venture Agreement. Namco never made a single demand for payment during the supposed term of the Promissory Notes because no payments

20

were ever due.  As such, Plaintiffs' performance under the Promissory Notes, if any, was not due.

### b.  Plaintiffs' Failure to Pay is Excused by Namco's Waiver

The Court should still deny summary judgment, even if it determines that the parties' Joint Venture Agreement did not supersede the Promissory Notes, because Namco's unambiguous waiver excuses Plaintiffs' nonperformance.  One party's breach of a contract may be waived by the other party. *Atkinson v. Pacific Fire Extinguisher Co.*, 40 Cal.2d 192, 195 (1953).  In order to be effective, the waiver must be intentional, and made with full knowledge of the facts that gave rise to the nonperformance. *Roesch v. DeMota* 24 Cal. 2d 563, 572 (1944).  However, a waiver of performance "may be implied through conduct manifesting an intention to waive" that is so inconsistent with an intent to enforce the right that arises upon the breach as reasonably to induce a belief that the right has been relinquished.  *Gould v. Corinthian Colleges, Inc.*, 192 Cal. App. 4th 1176, 1179 (2011).

Here, Namco explicitly excused Plaintiffs' performance under the Promissory Notes.  First, the parties agreed that neither joint venturer would receive any reimbursements on their capital contributions or advances, unless and until the Project was successfully developed.  SDF 34.  Furthermore, Namvar himself has testified that no payment was due on the Promissory Notes.  SDF 54.  Finally, Namco's own course of conduct evidences the fact that it did not expect Plaintiffs to make payments upon maturity of the Promissory Notes.  For example, Namco continued to make capital contributions in exchange for additional Promissory Notes, after the first two Promissory Notes (totaling $8.6 million) went unpaid.  Additionally, the parties executed Note #1 on September 11, 2008, after Notes #2-6 had all matured and where unpaid.  Upon maturity of Note #1, Namco still did not demand payment from Plaintiffs, because the Project was still being developed.  This conduct constitutes an unequivocal waiver of Plaintiffs' performance.

### c.  Defendant Breached the Joint Venture Agreement by Calling a Default when Plaintiffs were not in Default

The facts establish that: (1) the consideration provided by Namco was an equity contribution to the Joint Venture; and (2) Plaintiffs were not required to make any type of payment upon "maturity" of the Promissory Notes.  Based on these facts, Namco (through the Trustee) breached

21

both the Promissory Notes and the parties' Joint Venture agreements by calling a default on the Promissory Notes when no default existed.  The Trustee has not advanced any other justification for declaring Plaintiffs in default of the Promissory Notes.  Namco (through the Trustee), and *not* Plaintiffs, was the party who breached the Promissory Notes and Joint Venture agreements.  For these reasons, the Court should deny summary judgment as to the breach of contract claims.

**2.    Defendant Breached the Implied Covenant of Good Faith and Fair Dealing by Refusing to Honor the Terms of the Parties' Joint Venture**

The Court should also deny summary judgment on Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because Namco, through the Trustee, breached the covenant by refusing to honor the terms of the parties' Joint Venture Agreement.  In every contract there is an implied covenant of good faith and fair dealing.  *Sutherland v. Barclays American/Mortgage Corp.*, 181 Cal. App. 4th 299, 314(1997); *Harm v. Frasher* 181 Cal. App. 2d 405, 415 (1960).  Essentially, the covenant prevents "a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031-1032 (1992).

Here, Namco and the Trustee breached the implied covenant by, *inter alia*, calling a default on the Promissory Notes when there was no default.  In doing so, Namco and the Trustee also breached the implied covenant contained in the parties' Joint Venture Agreement.  The Joint Venture explicitly called for reimbursements of capital contributions only after completion of the Project.  Clearly, requiring Plaintiffs to repay these advances *before* development of the Project defeats the purpose of the parties' Joint Venture Agreement to share profits and losses of their development of the Project.  Plaintiffs would be required to pay out of their own pockets to reimburse Namco, when their Joint Venture directed advances to be reimbursed from profits of the Project.  As such, Namco and the Trustee breached the implied covenant by declaring a default and the Court should deny summary judgment.

**3.    Plaintiffs are Entitled to a Declaration that the Defaults of Promissory Notes are Null and Void Pursuant to the Terms of the Joint Venture**

22

In requesting summary judgment of Plaintiffs' third claim for a declaratory judgment, the Trustee only focuses on Plaintiffs' request for a declaration that Namco never furnished consideration for the Promissory Notes. Because the Court already determined that Namco provided consideration, the Trustee argues that he is entitled to summary judgment as to this claim. However, as set forth above, the facts establish that the parties formed the Joint Venture, and that Plaintiffs were not in default of the Promissory Notes. In this regard, Plaintiffs' Complaint also requests a declaration as to the existence of these facts. Plaintiffs have raised a genuine dispute as to these issues, for the reasons stated above. As such, the Court should deny summary judgment.

**4.      Plaintiffs are Entitled to Injunctive Relief Enjoining the Trustee from Foreclosing on the Properties, as well as the Remedy of Cancellation**

The Court should also deny summary judgment because Plaintiffs have raised a genuine issue of material fact as to whether the Trustee is entitled to proceed with a trustee's sale of the properties. The facts set forth in this Opposition establish that the parties formed the Joint Venture, that the consideration furnished by Namco was a capital contribution to the Joint Venture, and that no payment was due under the Promissory Notes until completion of the Project. As such, Plaintiffs were not in breach of the Promissory Notes, and the Court should enjoin the Trustee from proceeding with a trustee's sale of the subject properties. Further, Plaintiffs are also entitled to cancellation because Namco and the Trustee breached its agreements with Plaintiffs, as set forth above. Therefore, the Court should deny summary judgment as to these claims.

**5.      The Trustee Disparaged Plaintiffs' Title to the Properties by Recording the Notices of Default**

The Notices of Default recorded by the Trustee were blatantly false because Plaintiffs were not in default of the Promissory Notes at the time the Notices were recorded. The Trustee incorrectly claims that Plaintiffs concede that they were in default of the Promissory Notes because they did not make any payments. Plaintiffs admit that no payments were made under Promissory Notes, but this *did not constitute a breach*, due to the terms of the Joint Venture Agreement and Namvar's repeated representations that no payments were due until completion of the Project. As such, the Court should deny summary judgment.

23

**D.    The Court Should Deny Summary Judgment as to the Fraud-Based Claims because Namco Misrepresented Its Ability to Contribute Capital to the Venture**

The Trustee once again argues that he is entitled to summary judgment on each of Plaintiff's fraud-based claims based on the erroneous contention that Plaintiffs' fraud claims are grounded solely on the lack of consideration issue.  However, Plaintiffs can also establish a factual dispute as to whether they were defrauded by Namco when it assured them that it had adequate capital to contribute to their Joint Venture.  As such, the Court should deny summary judgment.  California Civil Code section 1710 specifies four species of fraud, including fraudulent inducement and fraudulent concealment.  In order to establish a claim for fraud, there must be: (1) a misrepresentation of fact; (2) knowledge of the falsity; (3) an intent to defraud; (4) justifiable reliance; and (5) damage.  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997); *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1109 (1988).

Plaintiffs entered into the Joint Venture agreement with Namco because its principal, Namvar, allegedly had extensive experience financing real estate development projects and because they believed that Namco had sufficient capital to contribute to the Joint Venture.  These two understandings form the basis for the parties' obligations under the Joint Venture Agreement.  Namco, through Namvar, was obligated to provide financing expertise and ninety percent of the financing to the Joint Venture.  SDF 34.  However, Namvar never had sufficient capital to perform his obligations to the Joint Venture.

Instead, Namco induced Plaintiffs to execute the Promissory Notes so that he could sell fractional interests in the Notes to third parties, in an effort to bring in additional collateral, reducing Namco's interest to two percent.  SDF 56.  These third parties have now filed cross claims and counterclaims in this instant proceeding.  SDF 56.  Any equity that Plaintiffs ever possessed by virtue of their contributions to the Joint Venture will be wiped out because of Namco and Namvar's illegal dealings.  Plaintiffs would have not entered into the Joint Venture with Namco, and would not have executed the Promissory Notes, if they knew that Namco could not actually fulfill its obligations to the Joint Venture, and that Namco would illegally sell fractional interests in the Promissory Notes to third parties.  The Court should deny summary judgment because these facts

24

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

allow Plaintiffs' fraud based claims to proceed to trial.

**E.    Summary Judgment of the Interference Claims should be Denied because Defendant's Actions Destroyed Plaintiffs' Development Relationships**

"The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition." *Settimo Associates v. Environ Systems, Inc.,* 14 Cal. App. 4th 842, 845 (1993). The intentional acts of the defendant, "of course, may be established by inference as wells as direct proof." *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal. 3d 752, 767 (1984). Namco and the Trustee's breach of the terms of the Joint Venture Agreement, as well as its calling a fictitious default on Promissory Notes have put a halt to all development activity on the Project, as well as all of Plaintiffs' development relationships. These acts were all unjustified, for the reasons stated above. The Court should deny summary judgment.

**F.    Plaintiffs are Entitled to an Accounting of the Funds Namco Received from its Fraudulent Business Transactions**

Plaintiffs' request for an accounting is premised on Namvar's illegal sales of fractional interests in the Promissory Notes, as set forth above.   As a co-venturer, Plaintiffs are entitled to an accounting of all of the funds that Namco received as a result of the sale of these interests, as well as any other fraudulent actions undertaken by Namco during the course of the Joint Venture. For these reasons, the Court should also deny summary judgment as to this claim.

**V.    CONCLUSION**

Based on the foregoing reasons, the Court should deny the Trustee's motion for summary judgment, or, in the alternative, summary adjudication of issues in its entirety.

DATED: February 1, 2012                    CHRISTMAN, KELLEY & CLARKE, PC

By: _____
MATTHEW M. CLARKE
DUGAN P. KELLEY
Attorneys for Karman Pasadena Group, Inc. and
Kamran Group, LLC

25

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER:  2:08-bk-32333-BR<br>ADVERSARY PROC. NO.:  2:10-ap-01244-BR |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 831 State Street, Santa Barbara, California 93101. A true and correct copy of the foregoing document described as **MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS KAMRAN PASADENA GROUP, INC. AND KAMRAN GROUP, LLC IN OPPOSITION TO DEFENDANT BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):

On **February 1, 2012**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 1, 2012,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2/1/12 | Matthew N. Mong | _(signature)_ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
09019.003 - 163624.1

**F 9013-3.1**

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER:  2:08-bk-32333-BR<br>ADVERSARY PROC. NO.:  2:10-ap-01244-BR |
|---|---|

## II.    SERVED BY U.S. MAIL

**United States Trustee (LA)**
725 S Figueroa St # 2600
Los Angeles, CA 90017-5413

**David M. Poitras**
**Dan P. Sedor**
**Jeffer Mangels Butler & Mitchell LLP**
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

**Sawtelle Properties LLC**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Soussan Hashemi**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**John M. Rygh**
915 Wilshire Blvd, Suite 2100
Los Angeles, CA 90017

**Ashland Properties, LLC**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Mahmoud Fatorechi**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Morteza Homayounjam**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Saul Reiss**
**Law Offices of Saul Reiss, P.C.**
2800 28th St Ste 328
Santa Monica, CA 90405

**Susan I. Montgomery**
**Law Offices of Susan I. Montgomery**
1925 Century Park East, Suite 2000
Los Angeles, CA 90067

## III.    SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:

### SERVED BY E-MAIL:

- **David M. Poitras**          dpoitras@jmbm.com
- **Robyn B. Sokol**          rsokol@ebg-law.com; ecf@ebg-law.com
- **Joseph A. Eisenberg**          jeisenberg@jmbm.com
- **Gregory M. Salvato**          gsalvato@salvatolawoffices.com
- **Saul Reiss**          saulreiss@verizon.net
- **Susan I. Montgomery**          susan@simontgomerylaw.com
- **Daniel Issak**          info@lightingzilla.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
09019.003 - 163624.1

**F 9013-3.1**

| In re: NAMCO CAPITAL GROUP, INC. | CHAPTER 11 |
|---|---|
| | CASE NUMBER: 2:08-bk-32333-BR |
| Debtor(s). | ADVERSARY PROC. NO.: 2:10-ap-01244-BR |

**SERVED BY PERSONAL DELIVERY:**

Honorable Barry Russell
United States Bankruptcy Court – Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 *F 9013-3.1*
09019.003 - 163624.1