

FILED

FEB 0 1 2012

Matthew Clarke (SBN 184959)
Matt@christmankelley.com
Dugan P. Kelley (SBN 207347)
Dugan@christmankelley.com
CHRISTMAN, KELLEY & CLARKE
831 State Street
Santa Barbara, California 93101
Telephone:    (805) 884-9922
Facsimile:    (866) 611-9852

Attorneys for Plaintiffs
Kamran Pasadena Group, Inc. and Kamran Group, LLC


UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In Re:  NAMCO CAPITAL GROUP INC, a California corporation<br><br>Debtor. | Case No.: 2:08-bk-32333-BR<br>Chapter 11<br>Adv. No.: 2:10-ap-01244-BR<br><br>**DECLARATION OF DAVID GOLKAR** |
| KAMRAN PASADENA GROUP, INC., a California corporation; and KAMRAN GROUP, LLC, a California limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC, a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR; an individual; ASHLAND PROPERTIES, LLC, A California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC; a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEES FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100<br><br>Defendants. | |

1

DECLARATION OF DAVID GOLKAR

## DECLARATION OF DAVID GOLKAR

I, David Golkar, do declare and say:

1.      I am the sole member of Plaintiff, Kamran Group, LLC, a member-managed limited liability company, and the sole shareholder of Plaintiff, Kamran Pasadena Group, Inc.  I make this declaration based upon my own personal knowledge.  I could and would competently testify to these facts in a court of law.

**My Introduction to Joint Venture Partner Ezri Namvar/Namco:**

2.      In or about late 2004, I met Mr. Ezri Namvar ("Namvar"), then president and, to the best of my knowledge, owner of Namco Capital Group, Inc. ("Namco").  I was introduced to Namvar by Ali Akbar "Alex" Helmi, a mutual friend of Namvar and mine.  Mr. Namvar was introduced as a potential source of short-term financing for the development of a large tract of land (approximately 1,600 acres into several thousand residential lots) in Beaumont, California.

3.      I have extensive experience in developing residential and commercial property.  After meeting Namvar, he was impressed with my development expertise and urged me to consider forming a joint venture relationship with him to develop other properties.  Namvar and I solidified our intention to develop other properties and we created a joint venture relationship for that purpose.  At all times mentioned herein I operated through the Kamran Entities and Namvar operated through Namco and related entities.

**Decision to Enter Into Joint Venture on the Pasadena Project:**

4.      Throughout the remainder of 2004 and into 2005, Namvar and I (through our respective entities) looked for development ideas.  In early August 2005, a real estate broker approached me with the opportunity to purchase 233 North Fair Oaks Avenue in Pasadena, California ("233 N. Fair Oaks").  This parcel was formerly used as a bank and abutted the Pasadena Athletic Club parcel located at 25 West Walnut Avenue, Unit # 503, Pasadena, California (the "PAC Unit").  While I performed due diligence on 233 N. Fair Oaks, I was approached by the owner of the Pasadena Athletic Club, John Richards.  Mr. Richards was interested in selling the PAC Unit, the property upon which the Pasadena Athletic Club was located.  Thus, Namvar and I, by and through our respective entities, agreed to pursue the purchase of 233 N. Fair Oaks and the PAC Unit.  We

2

DECLARATION OF DAVID GOLKAR

wanted to develop these properties into a mixed use commercial/residential property with a hotel, residential, and retail space (hereinafter referred to as the "Project").

5. Namvar and I agreed that the joint venture for the Project would be owned 50%-50%. I would contribute my development, engineering, and architectural expertise and 10% of the capital and Namvar would contribute his finance expertise and 90% of the capital. Our contributions were characterized as equity and credited toward our respective capital accounts. The value of my contribution of development, engineering, and architectural expertise was also credited to me as capital. The profits would be split 50-50 after Namvar and I were reimbursed for our respective financial contributions and/or advancements to the joint venture. At all times during the course of our relationship, the advances from Namco were treated as contributions of equity to the joint venture relationship on behalf of Namvar.

6. Our intentions with respect to the joint venture relationship were memorialized in a Memorandum of Understanding. I prepared the Memorandum of Understanding. The Memorandum of Understanding is identified on Plaintiffs' Exhibit List attached to and made part of the Joint Pretrial Order as Exhibit 1. A true and correct copy of the Memorandum of Understanding is attached hereto and is incorporated herein by reference. The Memorandum of Understanding memorialized key terms of the joint venture agreement between Namvar and I, including, but not limited to: (1) that our joint venture would be owned 50%-50%, with me contributing my development, engineering, and architectural expertise and 10% of the capital, and Namvar contributing his finance expertise and 90% of the capital; and (2) that profits were to be split pursuant to the parties' 50-50 percentage ownership interest after a return of the parties' invested capital. (*See* the Memorandum of Understanding.) It was my role to manage the Project and to assemble the real property that was to comprise the Project, which included 233 N. Fair Oaks, the PAC Unit, and any other property deemed necessary to complete the development of the Project. (*See* the Memorandum of Understanding.)

**Joint Venture Entity "Walnut Holding, LLC" Was Never Finalized/Formed Because of Namvar/Namco's Legal Problems and Complexity of Joint Venture:**

7. Namvar (through Namco) and I agreed to form a new entity, Walnut Land Holding,

3
DECLARATION OF DAVID GOLKAR

LLC, that would ultimately hold title to 233 N. Fair Oaks and 25 West Walnut (which included the PAC Unit and additional residential condominiums located at 25 West Walnut Ave.). Since the entity was not formed at the time the 233 N. Fair Oaks sale closed, Namvar requested that I use the entity, Tranmar Properties, LLC, whose managing member was Namvar, to take title thereto. I understand that Namvar has stated that he needed to use Tranmar Properties, LLC for 1031 exchange purposes. Our joint venture was very complex to own, develop, and operate. I estimated the value of the Project to be around two hundred million dollars ($200,000,000.00). We had attorneys forming and ironing out the details for our new joint venture entity, including complex tax, ownership, and operating issues related to the following facets of the Pasadena Project:

- Starwood's hotel "W" (which we had a signed LOI for this project);
- A spa on the project;
- Retail stores;
- Nightclub;
- A Spago Restaurant; and
- Residential Condominiums.

8.      The project was a huge undertaking that could not be slapped together. As a result, we could not complete the creation of the joint venture entity Walnut Land Holding, LLC prior to Namvar/Namco's legal problems (including this Chapter 11 proceeding). Regardless of the fact that Walnut Land Holding, LLC was not finalized or formed in time to be utilized by the parties in the joint vennture, Namvar and I continued to operate with our joint venture for the Project, including the acquisition, entitlements, and developing of this Project.

**Namvar and I Always Held Out to Be a Joint Venture on this Project:**

9.      During our course of dealing, Namvar and I continually represented to third-persons that *we* were developing the property. It was never even considered that Namvar was a mere lender and I a mere borrower developer. Attached hereto are true and correct copies of a sample of numerous emails in which *we* represented that *we* were working the deals on the Project as further detailed below:

    a.   An Email String from June 2008 between Ezri Namvar, Len Treister, and Richard

4

Zelle on which I was copied regarding a meeting (initially only to be with Ezri and then Ezri included me) to discuss the terms and conditions of a possible sale of the Project. A true and correct copy of this email string is attached hereto as Exhibit 2;

b. An Email String between myself, Ezri Namvar, Len Treister, and Richard Zelle from July 2008 regarding the sale of the Project to the Ratkovich group. A true and correct copy of this email string is attached hereto as Exhibit 3;

c. An Email String from July 2008 between myself, Ezri Namvar, and Giann Vitale regarding an offer from Cal-Coast for the acquisition of the Project. A true and correct copy of this email string is attached hereto as Exhibit 4. A true and correct copy of the Cal-Coast offer is attached hereto as Exhibit 5.

d. An Email String between Ezri Namvar, myself, Giann Vitale and Mousa Namvar from August 2008 regarding new figures regarding a possible sale of the Project to Cal-Coast Companies. A true and correct copy of this email string is attached hereto as Exhibit 6;

**Acquisition of Real Properties for Joint Venture:**

10. In furtherance of the Project, Namvar, through his entity Tranmar Properties, LLC, acquired the 233 N. Fair Oaks site and I, through Kamran Group, LLC, acquired the PAC Unit, condominiums also located on the 25 West Walnut property, and an affordable housing site. The N. 233 Fair Oaks property was purchased on or about August 12, 2005, for $4,300,000.00. Kamran Group, LLC tendered $1,250,000 and Namco tendered $3,050,000 for the purchase of 233 N. Fair Oaks. The 233 N. Fair Oaks transaction closed on December 12, 2005.

11. The PAC Unit was purchased for $7,650,000. The Pasadena Athletic Club was a three story athletic club with four condominiums on the fourth floor. John Richards, the owner and president of Pasadena Athletic Club offered me the opportunity to purchase his parcel and include it with the Project. Richards informed me that the Pasadena Athletic Club had over 3,500 members and he wanted to close the property transaction after approximately one year to enable him to give notification to the Club's members and ease the transition. Namvar and I agreed to this extended

5

DECLARATION OF DAVID GOLKAR

escrow period.  Kamran Group, LLC deposited $250,000 in February 2006 and released another $500,000 for the purchase in June 2006.  Namco paid $6,9000,000 towards the total purchase price. The transaction closed on June 23, 2007.

12.    In addition to the PAC Unit, there were four residential units owned by other individuals at 25 West Walnut, namely Units #402, #405, #501, and #504.  The purchase prices for these individual units was as follows:

a.    Condominium unit No. 405 at 25 West Walnut, Pasadena was purchased for approximately **$530,000**.  Escrow opened on March 29, 2007 and Namco deposited $30,000 to escrow.  Escrow closed on April 30, 2007.  At the closing, Namco deposited an additional $503,154 including closing cost.

b.    Condominium unit No. 504 at 25 West Walnut, Pasadena was purchased for approximately **$1,657,847**.  Escrow opened on May 10, 2007 and Namco put a $300,000 deposit in escrow.  Escrow closed on July 6, 2007.  At closing, Namco deposited an additional $1,357,847 to escrow including the closing cost.

c.    Condominium unit No. 501 at 25 West Walnut, Pasadena was purchased for approximately **$780,000**.  Escrow opened on February 27, 2007 and Namco deposited $150,000 in escrow.  Escrow closed on July 3, 2007.  At closing, Kamran Group, LLC deposited an additional $630,000 to escrow.

d.    Condominium unit No. 402 at 25 West Walnut, Pasadena was purchased for approximately **$648,600**.  Escrow opened on October 19, 2006 and Namco deposited $125,000 in escrow.  The parties agreed that this unit would be exchanged and replaced with a new unit after the completion of the Project.  Chris Holden, the person from whom Unit No. 402 was purchased, was carrying a mortgage of about $127,000 at that time and Kamran Group, LLC paid the mortgage thereafter.  Later, on November 21, 2008, Kamran Group, LLC paid an additional $57,194 to Chris Holden for an extension of escrow.  Upon information and belief, Chris Holden currently owns about 2% of this property.

13.    During the course of procuring entitlements and negotiating with vendors for the new Project, Namvar and I looked into purchasing another parcel that would comply with the City's

6

DECLARATION OF DAVID GOLKAR

requirement that a part of the development include low income housing. In order to receive approval for the Project, 15% of the residential housing component needed to be allocated for low income housing. Such a property was found at 810-820 Marengo Avenue ("Marengo"), Pasadena, California for $3,600,000. Marengo had 18 units that satisfied the low income housing requirement and was located within one mile of 25 West Walnut, Namco tendered payment of all funds for the purchase of the Marengo property, and the transaction closed on June 27, 2007.

14. All of the foregoing purchase and development activities were performed outside the context of any Promissory Notes. All funds expended by Namco and the Kamran Entities were in furtherance of my and Namvar's respective obligations pursuant to our relationship and joint venture agreement to develop the Pasadena Project, including our obligations to contribute capital, as equity therein, to fund the development of the Pasadena Project. In fact, I ended up giving more than my ten percent capital contribution obligation. In addition to the above contributions for property acquisition, I, through the Kamran Entities, also contributed additional "work-in-progress" work on behalf of the Pasadena Project that was credited as part of my capital contributions.

15. Attached as Exhibit 7 is a true and correct copy of a Kamran Group, LLC Balance Sheet reflecting the property acquisitions and the "work-in-progress" contributions.

16. After I complied with the joint venture terms, conditions, and obligations, the Kamran Entities needed cash to continue to develop the Project as well as other projects. The total acquisition price for the real properties included in the Project was $19,226,215 with $648,000 not yet closed for one outstanding condominium (Unit #402). I, through the Kamran Entities, had already contributed over $4,000,000 rather than the $1,922,621.50 I was obligated to provide (as 10% of the capital needed to fund the Project) under the terms of the joint venture agreement. Rather than obtain financing from other investors or financial institutions secured by the Kamran Entities' ownership interests in the 25 West Walnut and Marengo properties, the Kamran Entities agreed to allow Namco to provide them with $12,650,000 in exchange for Promissory Notes secured by these three pieces of real property as follows:

a. Kamran Pasadena Group, Inc. executed a promissory note in favor of Namco in the amount of $5,000,000 dated **June 29, 2007**, and $1,700,000 dated **September 11,**

DECLARATION OF DAVID GOLKAR

**2008**, with an associated deed of trust related to 25 West Walnut, Unit #503 (Pasadena Athletic Club portion);

      b.    Kamran Group, LLC executed a promissory note in the amount of $3,600,000 dated **June 29, 2007**, with an associated deed of trust related to the Marengo property.

      c.    Kamran Group, LLC executed a promissory note in favor of Namco in the amount of $600,000 dated **September 10, 2007**, with an associated deed of trust related to 25 West Walnut, Unit #501 (Condo unit);

      d.    Kamran Group, LLC executed a promissory note in favor of Namco in the amount of $1,300,000 dated **September 10, 2007**, with an associated deed of trust related to 25 West Walnut, Unit #504;

      e.    Kamran Group, LLC executed a promissory note in favor of Namco in the amount of $450,000 dated **September 10, 2007**, with an associated deed of trust related to 25 West Walnut, Unit #405 (Condo unit); and

17.    Even though I executed these Promissory Notes on behalf of the Kamran Entities, it was always understood between Namvar and me that these Promissory Notes would not have to be paid until the full property developed and/or we sold the property. I was never required to pay any interest payments on the Promissory Notes, as these Notes were just evidence that Namco had made capital contributions to the Joint Venture and was entitled to a percentage interest for their contribution before splitting any profits 50/50.

18.    Namco never sent demands for principal or interest payments or a notice of default. Notices of Default were issued only after the Trustee was appointed and made a wrongful assumption that the consideration contemplated by the Notes, i.e., the funds to be tendered pursuant thereto, had been tendered.

**Consideration Issue**

19.    I understand that the Court ruled and found that consideration was tendered pursuant to these Promissory Notes, however, I have never received a penny from the Promissory Notes. Whether or not I received any monies under these Promissory Notes has no bearing on the joint venture relationship between Namvar and I. We decided to develop real estate together – he was to

provide the financing and I was to provide the development expertise.  Without either of these, the venture would not work.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this __1__ day of __FEB__, 2012 at Tehran, Iran.

David Golkar

# EXHIBIT 1

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("Memorandum"), is intended as an outline of the general terms which the undersigned find acceptable with respect to the development of a development project located in the City of Pasadena which we commonly refer to as the Pasadena Athletic Club Project ("Project"). We have agreed to develop the Project jointly through our respective resources and expertise. David Golkar ("Golkar") will contribute his development, engineering and architectural expertise (the value of which shall be attributed to capital) in developing the Project. Likewise, he will be the point person and manager for completing the assemblage of the real property consisting of the property commonly referred to as 233 N. Fair Oaks Blvd., 25 W. Walnut Street and other necessary property/companies to complete the development of a planned mixed use commercial land residential property. The parties agree that Ezri Namvar, through his affiliate companies, will be responsible for 90% of the capital necessary for the acquisition and development of the Project and Golkar shall be responsible for 10% of the capital. After a return of the parties' capital, the parties shall divide profits as they are commonly understood, equally (50-50).

The parties understand and agree that the Project will entail the acquisition of a number of parcels and/or holding companies and that the parties will at a subsequent date, form one or more legal entities to implement the Project to the advantage of the partners.

_____
David Golkar


_____
Ezri Namvar

# EXHIBIT 2

Case 2:10-ap-01244-BR   Doc 123   Filed 02/01/12   Entered 02/02/12 14:47:26   Desc
Main Document   Page 13 of 38

RE: Proposed "W" Hotel, Pasadena - 'AT&T Yahoo! Mail'                    Page 1 of 2

# YAHOO!® MAIL
#### Classic

**RE: Proposed "W" Hotel, Pasadena**                    Friday, June 13, 2008 3:25 PM

**From:** "Ezri Namvar" <Ezri@namcocapital.com>
**To:** "Len Treister" <let@alliedcompany.com>
**Cc:** "Richard Zelle" <rz@alliedcompany.com>, "Candi Giles" <candi@namcocapital.com>, dgolkar@sbcglobal.net

## Candi set it up with every one including golkar

**Ezri Namvar**
**Namco Capital Group, Inc.**
**12121 Wilshire Blvd., Suite 1400**
**Los Angeles**, CA 90025
**310.207.1000 EXT 590**
**Fax 310.207.6308**
**Ezri@NamcoCapital.com**

**Please note that due to the massive number of emails I receive on a daily basis, I DO NOT and CAN NOT read emails exceeding one or two sentences. If you require my attention on a specific matter, you need to call me directly.** The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message. NO COMMUNICATION IN THIS EMAIL SHALL BE BINDING, OR CONTRACTUAL IN NATURE.

**From:** Len Treister [mailto:let@alliedcompany.com]
Sent: Monday, June 09, 2008 4:31 PM
To: Ezri Namvar
Cc: 'Richard Zelle'
Subject: Proposed "W" Hotel, Pasadena

**Ezri: We have had an excellent meeting with Wayne Ratkovich and James Phalen of the Ratkovich Company regarding the development of the "W" Hotel in Pasadena .**

**The next step is to meet with you to discuss the terms and conditions of a possible transaction.**

**Dick & I are available to meet at your office this week on Wednesday or Thursday. Please advise a convenient time & date.**

**Len**                                        **June 9, 2008**

*Len Treister, Senior Vice President*
*Allied USA Corp.*
*6151 West Century Boulevard   #300*
*Los Angeles , California  90045*

*(310) 410-2100 Ext 346*
*Email LET@ALLIEDCOMPANY.COM*

# EXHIBIT 3

# YAHOO!® MAIL Classic

| | |
|---|---|
| **RE: Pasadena Hotel Site** | Monday, July 14, 2008 12:23 PM |
| **From:** "Ezri Namvar" <Ezri@namcocapital.com> | |
| **To:** dgolkar@sbcglobal.net | |

Why should we counter?

**Ezri Namvar**
**Namco Capital Group, Inc.**
**12121 Wilshire Blvd., Suite 1400**
**Los Angeles, CA 90025**
**310.207.1000 EXT 590**
**Fax 310.207.6308**
**Ezri@NamcoCapital.com**

Please note that due to the massive number of emails I receive on a daily basis, I DO NOT and
CAN NOT read emails exceeding one or two sentences. If you require my attention on a
specific matter, you need to call me directly. The information contained in this e-mail message
is intended only for the personal and confidential use of the recipient(s) named above. This
message is privileged and confidential. If the reader of this message is not the intended recipient
or an agent responsible for delivering it to the intended recipient, you are hereby notified that
you have received this document in error and that any review, dissemination, distribution, or
copying of this message is strictly prohibited. If you have received this communication in
error, please notify us immediately by e-mail, and delete the original message. NO
COMMUNICATION IN THIS EMAIL SHALL BE BINDING, OR CONTRACTUAL IN
NATURE.

**From:** dgolkar@sbcglobal.net [mailto: dgolkar@sbcglobal.net ]
Sent: Monday, July 14, 2008 12:22 PM
To: Richard Zelle; Ezri Namvar ; 'Len Treister'
Cc: 'Wayne Ratkovich'
Subject: Re: Pasadena Hotel Site

I think we are not even in the same planet
This is not a raw land
Do they know that we have over 750.000 sf of hotel retail, spa, night club, celebrity chef restaurant ,
lobby lounge, skybar lounge , three meal restaurant, valet parking, gym with two major sponsorship
for hotel operator and celebrity chef operator
Thease are much added value to the existing land value which is ( 11,800 @ $220 per sf = $
25,250,000 )
Plus the entitlement cost

Please have them re look @ their offer before we can counter
So that it is not a complete waste of your time and ours
Thank you for working on our behaf

Sent via BlackBerry from T-Mobile

---

**From:** "Richard Zelle" <rz@alliedcompany.com>
Date: Mon, 14 Jul 2008 11:24:15 -0700
To: ' Ezri Namvar '<Ezri@namcocapital.com>; 'Len Treister'<let@alliedcompany.com>
CC: 'Wayne Ratkovich'<WRatkovich@ratkovich.net>; < dgolkar@sbcglobal.net >
Subject: RE: Pasadena Hotel Site
**Ezri...the amount of debt on the property has no relationship to it's current value...if you want to work
something out on this , we can talk..best...dz**

> -----Original Message-----
> From: Ezri Namvar [mailto:Ezri@namcocapital.com]
> Sent: Thursday, July 10, 2008 3:01 PM
> To: Len Treister
> Cc: Richard Zelle; Wayne Ratkovich; dgolkar@sbcglobal.net
> Subject: RE: Pasadena Hotel Site
>
> Is this a joke? I believe the offer is for 7mil$$ ?am I missing something?
> We have over 17 mil$$ loans on it
>
> **Ezri Namvar**
> **Namco Capital Group, Inc.**
> **12121 Wilshire Blvd., Suite 1400**
> **Los Angeles**, CA 90025
> **310.207.1000 EXT 590**
> **Fax 310.207.6308**
> **Ezri@NamcoCapital.com**
>
> Please note that due to the massive number of emails I receive on a daily basis, I DO
> NOT and CAN NOT read emails exceeding one or two sentences. If you require my
> attention on a specific matter, you need to call me directly. The information contained in
> this e-mail message is intended only for the personal and confidential use of the recipient
> (s) named above. This message is privileged and confidential. If the reader of this
> message is not the intended recipient or an agent responsible for delivering it to the
> intended recipient, you are hereby notified that you have received this document in error
> and that any review, dissemination, distribution, or copying of this message is strictly
> prohibited. If you have received this communication in error, please notify us
> immediately by e-mail, and delete the original message. NO COMMUNICATION IN
> THIS EMAIL SHALL BE BINDING, OR CONTRACTUAL IN NATURE.

> **From:** Len Treister [mailto:let@alliedcompany.com]
> Sent: Thursday, July 10, 2008 2:50 PM
> To: Ezri Namvar
> Cc: 'Richard Zelle'; 'Wayne Ratkovich'
> Subject: RE: Pasadena Hotel Site
>
> **Ezri:   I forwarded the Pasadena offer to your Email this morning.**

---

**If you have not received, please advise & I will resend.**

**Len**                                    **July 10, 2008**

*Len Treister, Senior Vice President*
*Allied USA Corp.*
*6151 West Century Boulevard  #300*
*Los Angeles, California  90045*
*(310)  410-2100  Ext 346*
*Email  LET@ALLIEDCOMPANY.COM*

-----Original Message-----
From: Ezri Namvar [mailto:Ezri@namcocapital.com]
Sent: Thursday, July 10, 2008 2:17 PM
To: Len Treister
Cc: Richard Zelle
Subject: RE: Pasadena Hotel Site

I will look 4ward 2 receiving the passadena offer , on the notes u
should wait

**Ezri Namvar**
**Namco Capital Group, Inc.**
**12121 Wilshire Blvd., Suite 1400**
**Los Angeles**, CA 90025
**310.207.1000 EXT 590**
**Fax 310.207.6308**
**Ezri@NamcoCapital.com**

Please note that due to the massive number of emails I receive on a daily basis, I
DO NOT and CAN NOT read emails exceeding one or two sentences.  If you
require my attention on a specific matter, you need to call me directly.  The
information contained in this e-mail message is intended only for the personal and
confidential use of the recipient(s) named above. This message is privileged and
confidential. If the reader of this message is not the intended recipient or an agent
responsible for delivering it to the intended recipient, you are hereby notified that
you have received this document in error and that any review, dissemination,
distribution, or copying of this message is strictly prohibited.  If you have
received this communication in error, please notify us immediately by e-mail, and
delete the original message. NO COMMUNICATION IN THIS EMAIL SHALL
BE BINDING, OR CONTRACTUAL IN NATURE.

From: Len Treister [mailto:let@alliedcompany.com]
Sent: Wednesday, July 09, 2008 10:21 AM
To: Ezri Namvar
Cc: 'Richard Zelle'
Subject: Pasadena Hotel Site

**Ezri:  We are anticipating an offer from the Ratkovich Company**
**today or tomorrow to acquire the Pasadena Hotel Site.**

**We have a buyer for commercial Real Estate REOs from Banks.
Who can I contact at Security Pacific ??**

**Len**                            **July 9, 2008**

*Len  Treister, Senior Vice President
Allied USA Corp.
6151 West Century Boulevard  #300
Los Angeles, California  90045
(310)  410-2100  Ext 346
Email  LET@ALLIEDCOMPANY.COM*

# EXHIBIT 4

# YAHOO!® MAIL
### Classic

| | |
|---|---|
| **RE: Pasadena offer** | Wednesday, July 23, 2008 12:38 PM |
| **From:** "Ezri Namvar" <Ezri@namcocapital.com> | |
| **To:** dgolkar@sbcglobal.net | |

## Call me

Ezri Namvar
Namco Capital Group, Inc.
12121 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025
310.207.1000 EXT 590
Fax 310.207.6308
Ezri@NamcoCapital.com

Please note that due to the massive number of emails I receive on a daily basis, I DO NOT and CAN NOT read emails exceeding one or two sentences. If you require my attention on a specific matter, you need to call me directly. The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.   If you have received this communication in error, please notify us immediately by e-mail, and delete the original message. NO COMMUNICATION IN THIS EMAIL SHALL BE BINDING, OR CONTRACTUAL IN NATURE.

**From:** dgolkar@sbcglobal.net [mailto: dgolkar@sbcglobal.net ]
**Sent:** Wednesday, July 23, 2008 7:34 AM
**To:** Ezri Namvar ; Giann Vitale
**Cc:** Mousa Namvar ; Fara Raban; Edward J. Miller
**Subject:** Re: Pasadena offer

How much is the offer
Sent via BlackBerry from T-Mobile

**From:** " Ezri Namvar " <Ezri@namcocapital.com>
**Date:** Tue, 22 Jul 2008 19:13:11 -0700
**To:** Giann Vitale<gvitale@cal-coast.com>
**CC:** Mousa Namvar <mousa@namcoinsurance.com>; Fara Raban<Fara@namcoinsurance.com>;
Edward J. Miller<emiller@calcoastusa.com>; < dgolkar@sbcglobal.net >
**Subject:** RE: Pasadena offer
## We need 2 raise them

Ezri Namvar
Namco Capital Group, Inc.
12121 Wilshire Blvd., Suite 1400

Los Angeles, CA 90025
310.207.1000 EXT 590
Fax 310.207.6308
Ezri@NamcoCapital.com

Please note that due to the massive number of emails I receive on a daily basis, I DO NOT and CAN NOT read emails exceeding one or two sentences. If you require my attention on a specific matter, you need to call me directly. The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message. NO COMMUNICATION IN THIS EMAIL SHALL BE BINDING, OR CONTRACTUAL IN NATURE.

**From:** Giann Vitale [mailto:gvitale@cal-coast.com]
**Sent:** Tuesday, July 22, 2008 4:31 PM
**To:** Ezri Namvar
**Cc:** Mousa Namvar ; Fara Raban; Edward J. Miller
**Subject:** Pasadena offer

Ezri,

When do you think we can expect a response?

Thanks,

giann

# EXHIBIT 5



**August 14, 2008**

Mr. Mousa Namvar
Mr. Ezri Namvar
Tranmar Properties, LLC.
12121 Wilshire Blvd.,
Suite 1400
Los Angeles, CA 90025

**RE: 25 W Walnut Street, Pasadena, CA 91103**

Dear Ezri,

This letter of intent outlines the basic terms under which California Coast Development, LLC., and or assignee ("**Purchaser**") is prepared to consider the acquisition of the referenced property above ("**Property**") and to commence negotiations on a mutually acceptable comprehensive agreement of purchase and sale ("**Agreement**") for the "**Property**", including the following terms and conditions:

1.      **PROPERTIES**: 25 W Walnut Street, Pasadena, CA 91103, parcel numbers: 5713-009-037 and 039.

2.      **PURCHASE PRICE**: $23,000,000.00.

3.      **PAYMENT OF PURCHASE PRICE AND ESCROW**: All cash at closing. There shall be no financing contingency.

A.      Escrow and Title shall open at Land America Commercial Services within 24 hours after both parties signing of the Agreement.

B.      Purchaser shall deposit the sum of Six Hundred Thousand Dollars *($600,000.00)* of earnest money ("Earnest Money") in escrow within 5 business days of execution of the Agreement. The Earnest Money shall be applied towards the Purchase Price, and shall constitute liquidated damages, which shall be the sole remedy of Seller in the event of Purchaser's default.

C.      Payment of the balance of the Purchase Price shall be made in full at close of Escrow.

D.      Closing of the transaction contemplated by this letter of intent ("Closing") will take place within sixty (60) days after the end of the due diligence period. If Purchaser exercises its option as set forth below to extend the escrow period, then escrow shall close thirty (30) days thereafter.

4.      **CONDITIONS TO CLOSING AND DUE DILIGENCE**

A.      <u>Seller's Obligation</u>

(1)      Within two (2) days following the opening of Escrow, Seller shall provide Purchaser with a current Preliminary Title Report covering the Properties, together with all documents, which constitute the underlying exceptions to title (collectively, the "**Preliminary Title Report**"), latest property tax bills and value renditions.

(2)     Within two (2) days following opening of Escrow, Seller shall provide Purchaser with copies of any covenants, conditions, restrictions, contracts, leases, and easements affecting the Property which are not included in the Preliminary Title Report.

(3)     Within two (2) days following opening of Escrow, Seller shall provide Purchaser with all existing reports to include but not limited to: engineering studies, plans, soils reports or negative declarations, tract maps, improvement plans, architect's work product, permits or approvals, environmental reports, government applications, surveys and site plans, existing title policy, lease agreements and rent roll, operating statements for current and previous year, utility bills, business license and permit, service contracts, existing debt documents, environmental insurance policies, and any other consultant materials relating to the Property, if any.

(4)     Seller shall grant Purchaser and/or his agent(s) the right to enter onto the Property during the Escrow Period to conduct engineering and soils tests and inspections including environmental and geotechnical studies as Purchaser deems suitable for its intended use. Such tests shall be at Purchaser's sole expense and Purchaser shall indemnify and hold harmless Seller in connection with any loss as a result of these tests. Upon the completion of any such inspection or test, Purchaser shall restore the Property to its condition prior to such inspection or test.

(5)     Seller shall convey the Property to Purchaser free and clear of any and all existing deeds of trust, liens, easements, leases, or other encumbrances except those approved by Purchaser in writing.

(6)     Seller shall not seek or consider other offers to purchase the Property after the parties fully execute this letter of intent and so long as the Escrow remains open and Purchaser is not in default of the purchase contract.

(7)     Seller shall grant Purchaser the right to prepare any other required studies at Purchaser's option and expense.

B.     <u>Purchaser's Contingencies</u>

Purchaser will have a due diligence period of 45 days (the "Due Diligence Period") after receipt of the information referred to above to be satisfied on all aspects with its review of the items described above, the physical condition of the Property, the condition of title to the Property and the Property's suitability for the Purchaser's intended investment therein. If Purchaser is not satisfied with the Property in its sole discretion, it may elect, on or before the expiration of the Due Diligence Period described above, to terminate the Agreement for the Property and recover its Earnest Money Deposit and any earnings thereon. Buyer will release $260,000.00 of the initial deposit money to Seller after the 45 day due diligence period. Said amount will be credited toward the purchase price at the close of escrow.

(1)     Purchaser shall have the right to object to any exceptions set forth on the Preliminary Title Report and/or any item delivered to Purchaser pursuant to paragraph 4A above. Purchaser shall make said objection by giving written notice to Seller and to Escrow Holder. Seller shall have sixty (60) days from the date of said notice to remove to Purchaser satisfaction any item to which Buyer objects, at Seller's sole expense. If said objectionable item(s) is (are) not removed to Purchaser satisfaction within the Due Diligence Period, Purchaser shall have the right to cancel the Escrow for the Property and the parties shall have no further liability or obligation to one another; provided, however, that Purchaser may waive, in writing, any such objection and consummate the transaction.

(2)     Review and approval of all soils, geology, engineering and any other environmentally-related conditions and reports.

(3) Review and approval of all existing environmental impact reports or negative declarations, tract maps, zoning development agreement and other reports, studies, and plans relating to the Property.

(4) Review and approval of all contracts, agreements, and any leases affecting the Property.

(5) Review and approval of all plans, drawings, surveys and government approvals relating to the Property.

Purchaser's failure to approve such contingencies in writing during the prescribed time period shall be deemed disapproval. Purchaser reserves the right to waive any of the conditions and proceed to close the Escrow.

Purchaser shall have the option to extend the escrow period for two (2) additional thirty (30) day periods, upon prior written notice to Seller prior to the termination of the original close of escrow, by releasing into escrow $75,000.00 of the initial deposit for the Property for each additional time period requested. Said deposit will be credited against the Purchase Price of the Property at the close of escrow.

## 5. OTHER CONDITIONS

A. The escrow instructions shall contain the usual terms and conditions as between Purchaser and Seller of real property in the local area, provided that such items are not inconsistent with the terms contained in this letter of intent.

B. Purchaser shall obtain, at Seller's cost and expense, an extended coverage ALTA Title Policy showing the Property to be purchased by Purchaser or its assignee, to be free and clear of all liens and encumbrances, and subject only to such items approved by Purchaser in writing.

C. Taxes, assessments, and any other charges for the Property shall be prorated at the close of Escrow. Seller shall satisfy all special assessments.

D. Purchaser is buying the subject Property in its "as-is, where-is" condition. Please see paragraph "B" for Purchaser Due Diligence time frame. In the event that the Property is found to contain hazardous materials during the initial Due Diligence time frame, Purchaser shall have the right to extend said Due Diligence time period by sixty (60) days, by releasing to Seller, $50,000.00 of the Initial Deposit money. Said deposit monies shall be applied towards the purchase price of the Property. If Purchaser elects to not purchase the Property after its extended investigation time period, then said deposit shall be returned to Purchaser without any further costs or penalties and escrow shall be cancelled with all initial deposit monies being returned to Purchaser.

E. Seller shall make normal and customary representations and warranties to Purchaser, to the best of its knowledge and after diligent inquiry, regarding the status and condition of the Property, Seller's authority to enter into this transaction, the accuracy of information delivered to Purchaser and the hazardous waste condition of the Property.

F. Purchaser and Seller shall cooperate to execute all documents reasonably necessary to complete the transaction or Agreement.

G. Purchaser shall agree that if it fails to complete the acquisition as herein contemplated by reason of any default of Purchaser, (and Seller is not in default), Seller shall be released from any further obligations hereunder and shall be entitled to the amount of the Deposit then released to Seller by Purchaser as non-refundable as its sole and exclusive remedy, in law or in equity.

H. Should any claim or dispute arise between the parties, the prevailing party shall be entitled to recover from the other party its reasonable attorney's fees together with all costs of the action.

3

I.    The Purchaser may, at any time prior to close of Escrow, assign its right, title and interest in this Escrow or take title under a different name or as a joint venture with another entity or corporation.

J.    Seller shall indemnify, defend, protect and hold Purchaser harmless from and against any claims, actions, costs or expenses, damages and liabilities relating to Seller's development or use of the Property and its construction activities thereon, so long as same are not the result of Purchaser negligence or willful misconduct. Seller will not specifically indemnify, defend, protect and hold Purchase harmless from and against any hazardous waste condition existing on the Properties as of the close of Escrow.

K.    This agreement shall insure to the benefit of and be binding upon the successors in interest and assignees of the parties hereto.

L.    Seller shall continue to manage and maintain the Property in its current condition and repair until the close of escrow.

6.    Seller and Purchaser acknowledge that, Giann Vitale of Cal Coast Realty Advisors (Cal Coast) is acting as agent for Buyer. At the close of escrow, Seller shall pay Cal Coast a commission based on 2% of the total sales price of the Property.

7.    Formal Agreement. This letter of intent shall be non-binding subject to the execution of a formal Purchase and Sale Agreement to be prepared by Purchaser and approved by both parties. This Offer to Purchase letter of intent shall expire seven (7) days from today's date.

Respectfully yours,

Cal Coast Realty Advisors

Giann Vitale
Vice President

# EXHIBIT 6

RE: FW: Pasadena Site - 'AT&T Yahoo! Mail'                                    Page 1 of 3

 **YAHOO!® MAIL** Classic

---

**RE: FW: Pasadena Site**                                Friday, August 15, 2008 11:58 AM

From: "Ezri Namvar" <Ezri@namcocapital.com>
To: dgolkar@sbcglobal.net

---

Call me asap

Ezri Namvar
Namco Capital Group, Inc.
12121 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025
310.207.1000 EXT 590
Fax 310.207.6308
Ezri@NamcoCapital.com

Please note that due to the massive number of emails I receive on a
daily basis, I DO NOT and CAN NOT read emails exceeding one or two
sentences. If you require my attention on a specific matter, you need
to call me directly. The information contained in this e-mail message
is intended only for the personal and confidential use of the
recipient(s) named above. This message is privileged and confidential.
If the reader of this message is not the intended recipient or an agent
responsible for delivering it to the intended recipient, you are hereby
notified that you have received this document in error and that any
review, dissemination, distribution, or copying of this message is
strictly prohibited.   If you have received this communication in error,
please notify us immediately by e-mail, and delete the original message.
NO COMMUNICATION IN THIS EMAIL SHALL BE BINDING, OR CONTRACTUAL IN
NATURE.

-----Original Message-----
From: DAVID GOLKAR [mailto:dgolkar@sbcglobal.net]
Sent: Thursday, August 14, 2008 7:06 PM
To: Ezri Namvar
Subject: Re: FW: Pasadena Site

hi Ezri joon

I can formulate a respose. But, the leggaies regarding reps and
warranties needs to be looked @ by atty's. I can come by tomorrow Pm. to
discuss the deal. I think it is too low and we can counter back.

We are in it more than that

I have a meeting in Pasadena tomorrow to discuss a deal @ 1 pm

WE also have ab offer from rockerfeller for 21 mil and I countered 30
Mil yesterday.

I will call you later also

Thanks

David


--- On Thu, 8/14/08, Ezri Namvar <Ezri@namcocapital.com> wrote:

> From: Ezri Namvar <Ezri@namcocapital.com>
> Subject: FW: Pasadena Site
> To: "DAVID GOLKAR" <dgolkar@sbcglobal.net>
> Date: Thursday, August 14, 2008, 3:52 PM
> Review and call me
>
>
>
> Ezri Namvar
>
> Namco Capital Group, Inc.
>
> 12121 Wilshire Blvd., Suite 1400
>
> Los Angeles, CA 90025
>
> 310.207.1000 EXT 590
>
> Fax 310.207.6308
>
> Ezri@NamcoCapital.com
>
>
>
> Please note that due to the massive number of emails I
> receive on a
> daily basis, I DO NOT and CAN NOT read emails exceeding one
> or two
> sentences.  If you require my attention on a specific
> matter, you need
> to call me directly.  The information contained in this
> e-mail message
> is intended only for the personal and confidential use of
> the
> recipient(s) named above. This message is privileged and
> confidential.
> If the reader of this message is not the intended recipient
> or an agent
> responsible for delivering it to the intended recipient,
> you are hereby
> notified that you have received this document in error and
> that any
> review, dissemination, distribution, or copying of this
> message is
> strictly prohibited.  If you have received this
> communication in error,
> please notify us immediately by e-mail, and delete the
> original message.

RE: FW: Pasadena Site - 'AT&T Yahoo! Mail'                                    Page 3 of 3

> NO COMMUNICATION IN THIS EMAIL SHALL BE BINDING, OR
> CONTRACTUAL IN
> NATURE.
>
> _____
>
> From: Giann Vitale [mailto:gvitale@cal-coast.com]
> Sent: Thursday, August 14, 2008 3:03 PM
> To: Mousa Namvar
> Cc: Ezri Namvar; Fara Raban
> Subject: Pasadena Site
>
>
>
> Mousa,  here is the new offer with the new times frames.
> 45 day DD and
> close 60 days thereafter.
>
>
>
> Please have Fara call me to discuss.
>
>
>
> Giann Vitale
>
> Cal Coast Companies
>
> 1450 W Redondo Beach Blvd.,
>
> Suite 150
>
> Gardena, CA 90247
>
> Ph: (310) 544-5900 ext. 205
>
> Fx: (310) 544-5907
>
> Cell: (818) 421-7000

# EXHIBIT 7

2:54 PM
08/18/08
Cash Basis

## Kamran Group, LLC.
## Balance Sheet
### As of August 18, 2008

| | Aug 18, 08 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| Checking Account | 294.79 |
| **Total Checking/Savings** | 294.79 |
| | |
| **Accounts Receivable** | |
| Accounts Receivable | 685,980.53 |
| **Total Accounts Receivable** | 685,980.53 |
| | |
| **Other Current Assets** | |
| **Work-In-Process** | |
| Accounting Fees | 6,060.00 |
| Administrative Fees | 10,000.00 |
| Air & Noise Consulting | 16,121.27 |
| Archeological Consulting | 118,000.00 |
| Architectural | 1,307,278.39 |
| Carry-Over Costs (WIP) | 553,666.70 |
| Cleaning Services | 4,014.69 |
| Construction Cost | 221,978.60 |
| Engineering | 288,378.79 |
| Enviromental Consulting | 223,704.94 |
| **Escrow Fees** | |
| Recording Fee | 1,440.00 |
| Taxes Paid To LA County | 12,271.44 |
| Escrow Fees - Other | 11,362.00 |
| **Total Escrow Fees** | 25,073.44 |
| | |
| Fees & Permits | 101,798.90 |
| Freight & Shipping | 889.89 |
| Geotechnical Consulting | 6,770.00 |
| Broker's / Finder's Fee | 150,000.00 |
| Legal Fees | 248,921.84 |
| Miscellaneous Costs | 81,958.78 |
| Parking Consultants | 3,195.89 |
| Pre-Construction Management Fee | 244,164.37 |
| Reprographics Costs | 2,597.43 |
| Structural Engineering | 280,640.37 |
| Surveying & Construction | 7,594.00 |
| Traffic Consulting | 19,023.81 |
| Transportation Consultants | 824.50 |
| **Total Work-In-Process** | 3,922,656.60 |
| | |
| **Total Other Current Assets** | 3,922,656.60 |
| | |
| **Total Current Assets** | 4,608,931.92 |
| | |
| **Fixed Assets** | |

Page 1 of 3

**NAMCO 2808**

2:54 PM
08/18/08
Cash Basis

# Kamran Group, LLC.
## Balance Sheet
### As of August 18, 2008

|  | Aug 18, 08 |
|---|---|
| **Property, Plant & Equipment** |  |
| 233 N. Fair Oaks-Bank Building | 4,300,000.00 |
| 25  West Walnut # 501 | 780,000.00 |
| 25  West Walnut # 504 | 1,650,000.00 |
| 25 West Walnut # 405 | 530,000.00 |
| 25 West Walnut # 503 | 7,650,000.00 |
| 810-820 North Marengo | 3,600,000.00 |
| Carry-Over Costs (Fixed Assets) | 3,077,717.80 |
| **Total Property, Plant & Equipment** | 21,587,717.80 |
|  |  |
| **Total Fixed Assets** | 21,587,717.80 |
|  |  |
| **Other Assets** |  |
| **Deposit on Property** |  |
| 25 West Walnut # 402 | 125,000.00 |
| **Total Deposit on Property** | 125,000.00 |
|  |  |
| **Total Other Assets** | 125,000.00 |
|  |  |
| **TOTAL ASSETS** | 28,321,649.72 |
|  |  |
| **LIABILITIES & EQUITY** |  |
| **Liabilities** |  |
| **Current Liabilities** |  |
| **Accounts Payable** |  |
| *Accounts Payable | 381,871.69 |
| **Total Accounts Payable** | 381,871.69 |
|  |  |
| **Total Current Liabilities** | 381,871.69 |
|  |  |
| **Total Liabilities** | 381,871.69 |
|  |  |
| **Equity** |  |
| **Capital Contributions** |  |
| **Acquisitions** |  |
| **David Golkar** |  |
| 233 N. Fair Oaks- Bank Building | 1,250,000.00 |
| 25 West Walnut # 501 | 630,000.00 |
| 25 West Walnut # 503 | 750,000.00 |
| Carry-Over Costs | 497,860.27 |
| **Total David Golkar** | 3,127,860.27 |
|  |  |
| **Namco Capital** |  |
| 233 N. Fair Oaks-Bank Building | 3,050,000.00 |
| 25 West Walnut # 402 | 125,000.00 |
| 25 West Walnut # 405 | 530,000.00 |
| 25 West Walnut # 501 | 150,000.00 |
| 25 West Walnut # 503 | 6,900,000.00 |

**NAMCO 2809**

2:54 PM
08/18/08
Cash Basis

# Kamran Group, LLC.
## Balance Sheet
### As of August 18, 2008

|  | Aug 18, 08 |
|---|---|
| 25 West Walnut # 504 | 1,650,000.00 |
| 810-820 North Marengo | 3,600,000.00 |
| Carry-Over Costs | 2,579,857.53 |
| **Total Namco Capital** | 18,584,857.53 |
| | |
| **Total Acquisitions** | 21,712,717.80 |
| | |
| **W-I-P Contributions** | |
| David Golkar | 291,109.10 |
| David Golkar - COC | 27,048.90 |
| Namco Capital | 3,374,978.46 |
| Namco Capital - COC | 526,617.80 |
| **Total W-I-P Contributions** | 4,219,754.26 |
| | |
| **Total Capital Contributions** | 25,932,472.06 |
| | |
| Retained Earnings (Retained Earnings) | 9,546.00 |
| Net Income | -2,240.03 |
| **Total Equity** | 25,939,778.03 |
| | |
| **TOTAL LIABILITIES & EQUITY** | 26,321,649.72 |

Page 3 of 3

NAMCO 2810

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 831 State Street, Santa Barbara, California 93101. A true and correct copy of the foregoing document described as **DECLARATION OF DAVID GOLKAR IN SUPPORT OF OPPOSITION TO BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION, ON COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):

On **February 1, 2012**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 1, 2012**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2/1/12 | Matthew N. Mong | *Matthew Mong* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
09019.003 - 163624.1

***F 9013-3.1***

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
|---|---|

## II.    SERVED BY U.S. MAIL

**United States Trustee (LA)**
725 S Figueroa St # 2600
Los Angeles, CA 90017-5413

**David M. Poitras**
**Dan P. Sedor**
**Jeffer Mangels Butler & Mitchell LLP**
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

**Sawtelle Properties LLC**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Soussan Hashemi**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**John M. Rygh**
915 Wilshire Blvd, Suite 2100
Los Angeles, CA 90017

**Ashland Properties, LLC**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Mahmoud Fatorechi**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Morteza Homayounjam**
**Weissmann Wolff, et al**
9665 Wilshire Blvd, 9th Floor
Beverly Hills, CA 90212

**Saul Reiss**
**Law Offices of Saul Reiss, P.C.**
2800 28th St Ste 328
Santa Monica, CA 90405

**Susan I. Montgomery**
**Law Offices of Susan I. Montgomery**
1925 Century Park East, Suite 2000
Los Angeles, CA 90067

## III.    SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:

### SERVED BY E-MAIL:

- **David M. Poitras** — dpoitras@jmbm.com
- **Robyn B. Sokol** — rsokol@ebg-law.com; ecf@ebg-law.com
- **Joseph A. Eisenberg** — jeisenberg@jmbm.com
- **Gregory M. Salvato** — gsalvato@salvatolawoffices.com
- **Saul Reiss** — saulreiss@verizon.net
- **Susan I. Montgomery** — susan@simontgomerylaw.com
- **Daniel Issak** — info@lightingzilla.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
09019.003 - 163624.1

**F 9013-3.1**

| In re: NAMCO CAPITAL GROUP, INC.<br><br>Debtor(s). | CHAPTER 11<br>CASE NUMBER: 2:08-bk-32333-BR<br>ADVERSARY PROC. NO.: 2:10-ap-01244-BR |
|---|---|

### SERVED BY PERSONAL DELIVERY:

Honorable Barry Russell
United States Bankruptcy Court – Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
09019.003 - 163624.1

*F 9013-3.1*