DAVID M. POITRAS P.C. (Bar No. 141309)
DAN P. SEDOR P.C. (Bar No. 139091)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-4308
Telephone:    310.203.8080
Facsimile:    310.203.0567
Email:        dpoitras@jmbm.com

Attorneys for Defendant Bradley D. Sharp,
Chapter 11 Trustee for Namco Capital Group Inc.

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>NAMCO CAPITAL GROUP, INC.,<br>a California corporation,<br><br>Debtor. | Case No.:  2:08-bk-32333-BR<br><br>Chapter 11<br><br>Adversary No.:  2:10-ap-01244 BR |
| KAMRAN PASADENA GROUP, INC., a California corporation and KAMRAN GROUP, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP INC., a California corporation; WOODMAN PARTNERS, LLC, a California limited liability company; FIDELITY NATIONAL TITLE COMPANY, a California corporation; DANIEL JACOB ISSAC, an individual; FAY FRANAK SARAFIAN, an individual; DARIOUSH SOLEIMANI, an individual; MORTEZA HOMAYOUNJAM, an individual; MEHRNAZ HEKMATRAVAN, an individual; JAMSHID BAHARVAR, an individual; ASHLAND PROPERTIES, LLC, a California limited liability company; FARMCO TRUST, SAWTELLE PROPERTIES, LLC, a California limited liability company; MAHMOUD FATORECHI AND SOUSSAN HASHEMI AS TRUSTEE FOR THE FATORECHI-HASHEMI TRUST; and DOES 1 THROUGH 100,<br><br>Defendant(s). | **REPLY TO PLAINTIFF KAMRAN PASADENA GROUP, INC. AND KAMRAN GROUP, LLC'S OPPOSITION TO DEFENDANT BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION**<br><br><br>Hearing:<br>Date:    February 22, 2012<br>Time:    2:00 p.m.<br>Place:   Courtroom 1668<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

PRINTED ON

RECYCLED PAPER
LA 8555816v4

Defendant's Reply to Opposition to MSJ

JMBM | Jeffer Mangels Butler & Mitchell LLP

## TABLE OF CONTENTS

Page

I.  PLAINTIFFS ARE PRECLUDED FROM RAISING NEW FACTUAL AVERMENTS IN OPPOSITION TO THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ..................................................................................................3

II.  THERE IS NO GENUINE ISSUE OF FACT THAT THE CONSIDERATION WAS PART OF A LOAN TRANSACTION ..................................................................................4

III.  PLAINTIFFS HAVE NOT PAID NAMCO FOR THE ADVANCES AND THE PROJECT WAS NOT SUCCESSFUL ........................................................................8

IV.  PLAINTIFFS ARE PRECLUDED FROM BRINGING CLAIMS AGAINST THE TRUSTEE AND NOT THE DEBTOR AS A MEANS TO CIRCUMVENT PLAINTIFFS' FAILURE TO FILE A PROOF OF CLAIM ............................................10

V.  CONCLUSION...............................................................................................12

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

LA 8555816v4

Defendant's Reply to Opposition to MSJ

# TABLE OF AUTHORITIES

**Page**

**CASES**

*English v. Dyke*,
23 F.3d 1086 (6th Cir. 1994) ............................................................................................11

*Fleming v. Lind-Waldock & Co.*,
922 F.2d 20 (1st Cir. 1990)................................................................................................4

*Gonzalez v. City of Federal Way*,
299 Fed. Appx. 708 (9th Cir. 2008)....................................................................................3

*Harris v. Secretary, U.S. Dept. of Veterans Affairs*,
126 F.3d 339 (D.C. Cir. 1997)..........................................................................................11

*Johnston v. IVAC Corp.*,
885 F.2d 1574 (Fed Cir. 1990) ...........................................................................................5

*Junkin v. Golden West Foreclosure Service, Inc.* (2010),
180 Cal. App. 4th. 1150......................................................................................................4

*Martin v. Ajax Construction Co.* (1954),
124 Cal. App. 2d 425 .........................................................................................................8

*In re Molten Metal Technologies, Inc.*,
271 B.R. 711 (Bankr. D. Mass. 2002) ..............................................................................10

*In re Nutri Bevco, Inc.*,
117 B.R. 771 (Bankr. S.D.N.Y. 1990)..............................................................................11

*In re PCH Associates*,
949 F.2d 585 (2d Cir. 1991) .............................................................................................11

*Peterson v. Highland Music Inc.*,
140 F.3d 1313 (9th Cir. 1998) ..........................................................................................11

*Pickern v. Pier 1 Imps (U.S.), Inc.*,
457 F.3d 963 (9th Cir. 2006) ..............................................................................................3

*Swierkiewicz v. Sorema, N.A.*,
534 U.S. 506 (2002)............................................................................................................4

*Villiarmo v. Aloha Island Air, Inc.*,
281 F.3d 1054 (9th Cir. 2002) ............................................................................................5

*Wasco Products, Inc. v. Southwall Technologies, Inc.*,
435 F.3d 989 (9th Cir. 2006) ..............................................................................................4

JMBM Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 8555816v4

Defendant's Reply to Opposition to MSJ

**OTHER AUTHORITIES**

Fed. R. Bankr. P.
    Rule 7008...................................................................................................................4
    Rule 9006(b)(1) .........................................................................................................11

Fed. R. Civ. Proc.
    Rule 8(a)(2)................................................................................................................4
    Rule 8(c) ....................................................................................................................11

Fed. R. Evid.
    Rule 201.....................................................................................................................2

PRINTED ON

RECYCLED PAPER

LA 8555816v4

- iii -        Defendant's Reply to Opposition to MSJ

The Trustee[1] hereby submits his Reply to *Plaintiffs Kamran Pasadena Group, Inc. and Kamran Group, LLC's Opposition to Defendant Bradley D. Sharp, Chapter 11 Trustee of Namco Capital Group, Inc.'s Motion for Summary Judgment, or, in the Alternative, Partial Summary Adjudication* (the "Opposition").

Plaintiffs, having failed to prove their groundless contention that Namco did not tender consideration for the Promissory Notes, have now concocted an equally groundless argument in their effort to avoid summary judgment. Plaintiffs' Opposition is premised primarily on their new assertions that the funds Namco tendered were actually a capital contribution instead of a loan and that Namco tendered those funds expecting that they would be repaid only if Plaintiffs succeeded in developing and making a profit from the development of the properties that were pledged to secure the Namco loans.

Plaintiffs have never asserted this capital contribution theory before, either in their Complaint or in any of their discovery responses. Plaintiffs present no competent evidence in support of their newly minted assertions, which actually contradict admissions contained in their Complaint and discovery responses. That and other competent evidence, including the testimony of Namco's principal Ezri Namvar, clearly demonstrate that Namco's funds were given as loans memorialized by promissory notes, secured by deeds of trust with an obligation of repayment, regardless of whether the Project ever turned a profit. Plaintiffs' assertions that "[i]t follows that the parties agreed to share losses" and that Namvar agreed that Namco would not be entitled to repayment of its loans if the Project failed are unsupported by, and in fact contradicted by, the established facts.

Plaintiffs rely solely on this capital contribution theory in their attempt to avoid summary judgment on the substance of all of Plaintiffs' claims except their eighth, tenth and eleventh claims for relief. Should this Court determine appropriately that Namco's consideration was given as a

---

[1] Capitalized terms not otherwise defined herein have the same meaning as set forth in *Bradley D. Sharp, Chapter 11 Trustee for Namco Capital Group, Inc.'s Motion for Summary Judgment, or in the Alternative, Partial Summary Adjudication* (the "Motion"). Further, the Trustee respectfully requests that, pursuant to Fed. R. Evid. 201, this Court take judicial notice of each and every pleading referenced herein that has been filed in this adversary proceeding and referenced by its caption title and docket number as set forth in the ECF/PACER docket.

PRINTED ON

RECYCLED PAPER
LA 8555816v4

- 2 -      Defendant's Reply to Opposition to MSJ

loan and evidenced by the Promissory Notes, the Trustee is entitled to summary adjudication on those claims (i.e., the first, second, third, fourth, fifth, sixth, seventh, ninth, twelfth, thirteenth, fourteenth and fifteenth claims for relief).  In addition, Plaintiffs also fail to refute the Trustee's procedural argument that nearly all of Plaintiffs' claims are an attempt to improperly circumvent the claims adjudication process, separately entitling the Trustee to summary adjudication on all of Plaintiffs' claims except their fourth and fourteenth claims for  relief.  The combination of the substantive and procedural arguments entitles the Trustee to summary judgment on the entirety of Plaintiffs' Complaint.

## I.    <u>PLAINTIFFS ARE PRECLUDED FROM RAISING NEW FACTUAL AVERMENTS IN OPPOSITION TO THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT</u>

The Complaint alleges that Plaintiffs never received the $12.65 million from Namco. Having lost on that point at the bifurcated trial, Plaintiffs now assert that yes, they did receive the funds, but that those funds were a capital contribution.  Nowhere in the Complaint do Plaintiffs assert that the $12.65 million was a capital contribution.  In fact, the overarching factual averment of the Complaint is that Plaintiffs did not receive any consideration.[2]  Complaint, Ex. A.   Plaintiffs also did not present such factual averments when they proffered responses to discovery that specifically requested the factual bases for the allegations in the Complaint.  See, Exhibits G & H. The failure to allege and support this theory before and the effort to raise it only for the first time in opposition to summary judgment, is fatal.  *See Pickern v. Pier 1 Imps (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (refusing to allow plaintiff to advance new theories 'presented for the first time in [the plaintiff's] opposition to summary judgment); *see also Gonzalez v. City of Federal Way*, 299 Fed. Appx. 708, 710 (9th Cir. 2008) (affirming the district court's refusal to consider a claim not in the complaint and 'raised for the first time on summary judgment').

---

[2] For example, in the Complaint, Plaintiffs allege that Namco induced Plaintiffs to execute the Promissory Notes but had "no intention to tender consideration for the Promissory Notes or cooperate toward successful completion of the Pasadena project" whereas in the Opposition, Plaintiffs now assert that "Plaintiffs would not have entered into the Joint Venture with Namco, and would not have executed the Promissory Notes, if they knew that Namco could not actually fulfilled its obligations to the Joint Venture, and that Namco would illegally sell fractional interests in the Promissory Notes to third parties."  See, Complaint at ¶58; Opposition at 24.  Plaintiffs can't have it both ways.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

"'[T]he necessary factual averments are required with respect to each material element of the underlying legal theory…Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989 (9th Cir. 2006) (citing *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)).

Moreover, Plaintiffs failed to provide proper notice of their new averments, despite having ample opportunity to amend their Complaint after the *Findings of Fact and Conclusions of Law*[3] was entered on August 11, 2011. Fed. R. Bankr. P. 7008 (incorporating Fed. R. Civ. Proc. 8(a)(2)) (requiring that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests); *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002). Instead, the day after the Discovery Cutoff, Plaintiffs filed their Opposition, raising their new factual averments for the first time in this case.[4] Even if these new averments had any factual basis (which they do not), Plaintiffs clearly forfeited their right to assert them at this late date.

## II.   THERE IS NO GENUINE ISSUE OF FACT THAT THE CONSIDERATION WAS PART OF A LOAN TRANSACTION

Plaintiffs' attempt to avoid summary judgment with the fabricated argument that the loaned funds were a capital contribution to a joint venture fails to meet their burden of demonstrating that there is an actual, genuine issue of material fact as to the nature of the borrowed funds. Conjecture and implicating statements that lack any factual grounding are insufficient. Where the relevant facts are undisputed, the proper characterization of a transaction presents a question of law. *Junkin v. Golden West Foreclosure Service, Inc.*, 180 Cal. App. 4th. 1150, 1156 (2010).

---

[3] Docket No. 93; see also Ex. B.

[4] Any request by Plaintiffs for leave to amend the Complaint should be denied. Such a request would cause an undue delay in adjudication - the pretrial conference is on February 22, 2012 and Plaintiffs did not indicate in the Joint Pretrial Order that they should be granted leave to amend. The *Findings of Fact and Conclusions of Law* in favor of the Trustee was entered on August 11, 2011, five months ago, but Plaintiffs made no effort to amend since that time. Further, the Trustee would be unduly prejudiced by any amendment. He conducted discovery based on the allegations contained in the Complaint. A trial was held, in which the findings of fact were in favor of the Trustee and dictated his approach to his ensuing motion for summary judgment. Plaintiffs had the opportunity to oppose the Court setting a hearing on the Trustee's motion for summary judgment, but chose not to. Furthermore, as set forth below, such an amendment to the Complaint would be futile, as Plaintiffs' new averments lack any factual grounding.

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 8555816v4

- 4 -   Defendant's Reply to Opposition to MSJ

As stated by Namvar "**the loans, there was no question on the validity of the loans.  The loans stood on their own**.[5]"  Opposition, Ex. 8, p. 34, lines 3 - 4 (Deposition of Ezri Namvar) (emphasis added).

According to Plaintiffs, the Promissory Notes were merely part of an allegedly larger transaction that involved a joint venture and, therefore, the loans evidenced by the Promissory Notes were not loans at all, but a capital contribution to the joint venture.  But Plaintiffs present no specific, competent evidence[6] that the loaned funds were a capital contribution rather than a loan.  See e.g., Opposition at 17 - 18[7].  Indeed, Plaintiffs cannot do so because their newly concocted argument is actually contradicted by their own previous admissions in this case:

- Response to Interrogatory No. 20: "Plaintiffs agreed to allow Namco to give it $12,650,000 in exchange for Promissory Notes secured by these three pieces of real property.  Plaintiffs made this agreement rather than obtaining financing from other investors or financial institutions because Namco represented that it had sufficient capital to tender $12,650,000 as consideration for the Promissory notes and that it would fully tender this consideration."  See, Exhibit H.

---

[5] Throughout his deposition, Namvar consistently referenced the financing as loaned monies evidenced by the Promissory Notes.  There is not even a suggestion that the monies advanced were a capital contribution.  For example:

Q:  And do you recall Namco Capital Group making one or more *loans* to Kamran -
A: Yes.
Q: -- Group?
A.  Yes.

See, Exhibit 8 at Page 28, Line 5 - 9.

Q: All right.  And as with the prior two sets of documents, these evidence a *loan* made by Namco Capital Group to Kamran Group which was secured by the real estate reflected in the Long Form of Trust and Assignments of Rents?
A. I would say, yes, if you change the word "a" because there's two of them.  So two different other *loans.* Yes.

See, Exhibit 8, Page 31, Lines 2 - 9.

[6]  The Declaration of David Golkar attached to the Opposition and claiming to support this assertion is self-serving and conclusory.  It does not raise genuine issues of fact sufficient to avert summary judgment. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580 (Fed Cir. 1990) ("Conflicting opinions on the meaning of a term which are merely conclusory does not create [sufficient evidentiary conflict]."); *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (self-serving declarations, uncorroborated by other testimony or other persuasive evidence, cannot create a genuine issue of fact sufficient to defeat summary judgment).

[7] If the consideration was not a loan, why would Plaintiffs sign the Promissory Notes and Deeds of Trust?

JMBM | Jeffer Mangels
Butler & Mitchell LLP

- Complaint at ¶ 62: "Had Namco not made these misrepresentations, Plaintiffs would have proceeded with another <u>lender</u> capable of tendering funds in exchange for the Promissory Notes and/or <u>loaning monies</u> in timely manner." See, Exhibit A (emphasis added).

- Response to Interrogatory No. 21: "Had Namco not represented to Plaintiffs that it could fund the $12,650,00 needed, Plaintiffs would have sought funding from another <u>lender</u>."  See, Exhibit H (emphasis added).

- Declaration of David Golkar (the "Golkar Declaration") [Docket No. 123] at Page 7, Lines 22 - 25:

> Rather than obtaining financing from other investors or financial institutions secured by the Kamran Entities' ownership interests in the 25 West Walnut and Marengo properties, the Kamran Entities agreed to allow Namco to provide them with $12,650,000 in exchange for Promissory Notes secured by these three pieces of real property as follows:
> a. Kamran Pasadena Group, Inc., executed a promissory note in favor of Namco in the amount of $5,000,000 dated June 29, 2007, and $1,700,000 dated September 11, 2008 with an associated deed of trust related to 25 West Walnut, Unit #503 (Pasadena Athletic Club portion)
> b. Kamran Group, LLC executed a promissory note in the amount of $3,600,000 dated June 29, 2007, with an associated deed of trust related to the Marengo property.
> c. Kamran Group, LLC executed a promissory note in favor of Namco in the amount of $600,000 dated September 10, 2007, with an associated deed of trust related to 25 West Walnut, #501 (Condo unit);
> d. Kamran Group, LLC executed a promissory note in favor of Namco in the amount of $1,300,000 dated September 10, 2007, with an associated deed of trust related to 25 West Walnut, #504;
> e. Kamran Group, LLC executed a promissory note in favor of Namco in the amount of $450,000  dated September 10, 2007, with an associated deed of trust related to 25 West Walnut, Unit #405 (Condo unit); and.

It is also evident that the parties always intended that the loans would be repaid with interest with the first dollars out, <u>whether or not the Project was successful</u>:

- As understood by *Golkar*: "As I am working on various deals, my understanding is following: You are the financial partner, that provides equity and debth [sic] if necessary…You will get the preff. on the money, your money comes out first and after expences [sic], we will split the profit 50-50."  See, Email Correspondence

Jeffer Mangels
Butler & Mitchell LLP

JMBM

PRINTED ON

RECYCLED PAPER
LA 8555816v4

dated September 8, 2005 attached as Ex. DD to the Supplemental Declaration of Bradley D. Sharp (the "Supp. Sharp Decl.").

- As understood by *Namvar*: "the business terms are basically true, but we talked about various - different variations. Whether at that point we would put it all in a different LLC and refinance through an institution ***to pay Namco off or Namco down partially,*** I'm not completely aware." Ex. 8, p. 33, lines 5-9. "But it ***was basically Namco wanted to get paid*** and pay the investors. The investors - or the creditors that I will call them in this case would have gotten paid through the closing of this escrow." Ex. 8, p. 59, lines 14-17.

Eventually, Namco's and the fractional interest lienholders' demands for repayment instigated Plaintiffs to seek a buyer for the undeveloped property. Mr. Golkar explicitly recognized that the loans evidenced by the Promissory Notes must be repaid, despite the unsuccessful development of the Project. See, e.g., Exhibits CC, EE, & FF.[8] In fact, Mr. Golkar, on behalf of Kamran Group, LLC, and Namvar, on behalf of Tranmar Properties, LLC, executed a Purchase and Sale Agreement with Escrow Instructions dated December 5, 2008 (the "PSA"). See, PSA, Exhibit CC attached to the Supp. Sharp Decl. The PSA clearly identifies that the "Existing Loans," i.e., the loans evidenced by the Promissory Notes, are distinct from any capital contribution and that there was a current obligation for their repayment:

> Section 3.    Purchase Price.    The purchase price for the Property (the "Purchase Price") shall be comprised of an amount equal to the outstanding balances of the Existing Loans which are secured by the Deeds of Trust against the Property (which Buyer shall repay as of the Close of Escrow)…Buyer shall deposit with Escrow Agent an amount equal to the full amount needed to pay off the Existing Loans, plus the estimated closing costs…

> Section 7.    Conditions to Seller's Performance.    Seller's obligations to complete the sale of the Property under this Agreement shall be subject to Buyer's timely making all its deliverables (including all funds and documents) to Escrow as provided for under this Agreement, Seller receiving full releases in favor of Namco Capital Group, Inc. and Ezri Namvar from all of the holders of the Existing Loans described in Schedule 1 attached hereto and by this reference incorporated herein, in form and content acceptable to

---

[8] Email correspondence on behalf of Golkar stating "Please deposit the Original Promissory note and deed of trust into the Escrow,  so that upon closing we can pay without any delays.  Thank you."

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

LA 8555816v4

Seller, and Buyer's performance of its other material obligations under this Agreement.

*Id*. Unlike Plaintiffs' illusory "joint venture agreement," this PSA was fully executed by Plaintiffs and Tranmar, and expressly provides for the repayment of the loans evidenced by the Promissory Notes.   Moreover, Mr. Golkar clearly was aware of the fractional interest lienholders: they attempted to enforce their rights under the Promissory Notes, demanded payment, and threatened foreclosure.  See Exhibit GG attached to the Supp. Sharp Decl.   Mr. Golkar agreed to pay them!

In sum, no competent evidence supports Plaintiffs' illusory capital contribution theory and the undisputed facts contradict it.[9]  There is therefore no issue of material fact requiring a trial on whether the funds evidenced by the Promissory Notes were a capital contribution instead of a loan, as Plaintiffs contend.

## III.      PLAINTIFFS HAVE NOT PAID NAMCO FOR THE ADVANCES AND THE PROJECT WAS NOT SUCCESSFUL

It is hard to understand what Plaintiffs ultimately seek by way of this action.   They acknowledge that unless Namco was paid its "advances" (however that word is defined),[10] there would be no split of profits.  Namco was not repaid the total of approximately $18 million advanced to Plaintiffs (constituting the principal of $12,650,000 plus accrued and unpaid interest).  So what happens to Plaintiffs now that it turns out that the Project was not successful?   As evidenced by the PSA, Namco was to be repaid the loaned monies "off the top."  The underlying collateral, however, is worth no more than $6 million.[11]

Plaintiffs' description of the specific terms of the alleged joint venture rests entirely on a one-paragraph, underlined unexecuted "*Memorandum of Understanding*" ("MOU") between Messrs. Golkar

---

[9] The Trustee does not concede any of Plaintiffs' Statements of Undisputed Facts [See Docket No. 121] except for the factual statements contained in No. 57.

[10] Neither the term "advance" nor the term "invest" have enough significance to indicate whether the contracting parties intended to form a partnership or to engage in a joint venture.  "Both words are ambiguous. Each applies equally to a loan or a joint venture." *Martin v. Ajax Construction Co.*, 124 Cal. App. 2d 425, 433 (1954).

[11] This begs the question: to what end are the Plaintiffs pursuing this claim?

PRINTED ON
RECYCLED PAPER
LA 8555816v4

JMBM Jeffer Mangels Butler & Mitchell LLP

- 8 -      Defendant's Reply to Opposition to MSJ

and Namvar (not Plaintiffs and Namco).[12]  But Plaintiffs cannot credibly assert that Namco violated "explicit" terms of an alleged "Joint Venture Agreement" that was never signed.[13]  The Court should scrutinize each of Plaintiff's newly created allegations that attempt to rely on such a non-existent written agreement.

Even if the MOU had been executed, it would still not support Plaintiffs' position.  It states only that "after a return on the parties' capital, the parties shall divide profits as they are commonly understood, equally (50-50)."[14]  Opposition, Ex. 1.  The MOU does not support, and Plaintiffs provide no other evidence to support, their contention that "Namco and Plaintiffs explicitly agreed that the monies advanced were due upon the completion of the Project, and not the maturity dates of the Promissory Notes."  Opposition at 20.[15]  If there was such an 'explicit' agreement, where is it?

<div style="margin-left:2em; font-size:0.9em; border-top:1px solid; padding-top:0.5em;">

[12] Plaintiffs' assertions that Walnut Holdings LLC was to be the vehicle for the joint venture but that they did not have time to finalize the creation of the Walnut Holdings LLC before Namvar's troubles began are also refuted by the actual facts.  Walnut Land Holdings LLC was formed in December 2007, two years after the alleged joint venture was formed and a year prior to the Petition Date.  See Complaint, Ex. A at ¶15.  Instead, it appears that in fact, no explicit terms of any joint venture agreement were ever reached.  According to Namvar:

> [We] talked about variations - different variations.  Where after that point we would put it all in a different LLC and refinance through an institution to pay Namco off or Namco down partially, I'm not completely aware.  The reason I have to testify correctly because I don't know what's going to come from Kamran Group later on.  So those things did not really get tied down hundred percent.  But the basic agreement was the profits would be split 50/50.  Whether they would be split 50/50 with Namco or a party related to Namco like these other LLCs, that wasn't cleared out.  And whether he could deliver -- because it was my choice to become -- it was my choice that an entity of ours would become a partner or not.  Because his duty was to deliver all the parcels.

Ex. 8, p. 33, lines 5 - 25.

[13] For example, the Opposition states: "At all times during the course of their relationship, Namvar was *required* to operate his part of the Joint Venture through Namco, and Golkar was required to operate his part of the Joint Venture through the Kamran Entities."  Opposition at 2 (SDF 35).  However, the MOU makes no reference to specific entities.  Instead, it states merely that "The parties agree that Ezri Namvar, through his affiliate companies,….. "  See Ex. 1 (MOU).  Moreover, neither of the Kamran Entities even legally existed in 2005 when the alleged joint venture was formed.  Exhibit I & K.  In fact, Plaintiffs admit that "Kamran Pasadena Group, Inc." is not and never was, a California corporation authorized to do business in California.  See, Joint Pretrial Order at Admitted Facts.

[14] Plaintiffs misconstrue even the MOU, stating on page 22 of their Opposition, "Plaintiffs would be required to pay out of their own pockets to reimburse Namco, when their Joint Venture directed advances to be reimbursed from profits of the Project."  Opposition at 24.  There is nothing contained in the MOU, however, that explicitly states advances would only be repaid from profits.

[15] And what if the property was never developed (which is in fact the case)?

</div>

JMBM Jeffer Mangels Butler & Mitchell LLP

And if it existed, why would Mr. Golkar execute the written PSA, committing to the repayment of the loaned funds as part of a contemplated sale, prior to the successful completion of the Project?

At the end of the day, the question that really needs to be answered in this case is this: If as Plaintiffs concede the parties' agreement was that Namco was to be repaid first, before the splitting of profits, what does Plaintiff seek to obtain here? Namco is owed at least $12 million (and more like $18 million when interest is added) and the property is worth no more than $6 million. There is simply nothing here for Plaintiffs and the continuation of this case is a fruitless waste of time and money.

## IV. PLAINTIFFS ARE PRECLUDED FROM BRINGING CLAIMS AGAINST THE TRUSTEE AND NOT THE DEBTOR AS A MEANS TO CIRCUMVENT PLAINTIFFS' FAILURE TO FILE A PROOF OF CLAIM

The appointment of the Trustee removes a debtor from possession of the estate's assets but does not mean that the trustee is the debtor. *In re Molten Metal Technologies, Inc.,* 271 B.R. 711, 729 (Bankr. D. Mass. 2002). Plaintiffs' claims arise from both Namco's pre-petition and the Trustee's postpetition activities. The claims for relief set forth in the Complaint, however, are all against the Trustee as a means by which Plaintiffs attempt to circumvent the failure to file a proof of claim against Namco (timely or otherwise).[16] The Trustee does not dispute that "where a debtor is in bankruptcy, the trustee must be named as a party defendant" but this conclusion of law differs from the Plaintiffs' theory that a plaintiff need not sue the debtor (or file a proof of claim against the estate), against whom such claims are made. In this case, the first, second, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fifteenth claims for relief are each claims that relate to the debtor and not the Trustee.[17] The Trustee does not suggest that he should not have been named as a defendant - there are allegations against the Trustee; rather, Plaintiffs should have also filed/pled certain claims against Namco but failed to do so. It is appropriate and

---

[16] Furthermore, Plaintiffs only now admit that "Kamran Pasadena Group, Inc." is not and never was, a California corporation authorized to do business in California, and thus, all claims by this party must be dismissed. The non-existent entity lacks standing under California law to sue or be sued.

[17] Such claims were required to be filed prior to the claims bar date and clearly were not.

timely for the Trustee to raise this defect in Plaintiffs' case as a basis for his entitlement to summary judgment and dismissal of such time-barred claims.[18]

Despite Plaintiffs' assertions that the Trustee forfeited certain rights, it is actually Plaintiffs who have waived their claims against Namco.  Plaintiffs assert that all of their claims did not arise until the Notice of Default was recorded, which is simply not true - most of the factual averments in the Complaint are premised on events which occurred well prior to the Petition Date[19] and arose prior to the recording of the Notices of Default, which Notices were filed nearly a year after the Namco bankruptcy was commenced.

There is no excusable neglect that warrants this Court using its equitable power to authorize a tardily filed proof of claim pursuant to Rule 9006(b)(1).[20]  The purpose of filing a proof of claim is to establish which liabilities will be asserted against the bankruptcy estate.  See e.g., *In re Nutri Bevco, Inc*., 117 B.R. 771 (Bankr. S.D.N.Y. 1990).  Here, as set forth above, it is unclear what amount of a claim Plaintiffs even allege twenty-seven (27) months after the Bar Date.  This is

---

[18] Fed. R. Civ. Proc. Rule 8(c) identifies those defenses that must be affirmatively stated.  The failure to name the proper defendant is not one of these articulated defenses.  The cases cited by Plaintiffs in support of their contention that the Trustee waived his right to raise the claim procedure argument by failing to plead it, all focus on affirmative defenses articulated in Rule 8(c).  See, *Harris v. Secretary, U.S. Dept. of Veterans Affairs*, 126 F.3d 339, 341 (D.C. Cir. 1997) (statute of limitations); *Peterson v. Highland Music Inc.,* 140 F.3d 1313 (9th Cir. 1998) (lack of personal jurisdiction); *English v. Dyke*, 23 F.3d 1086 (6th Cir. 1994) (qualified immunity).

[19] E.g., Namco committed various alleged breaches of the Promissory Notes and the implied covenant of good faith and fair dealing, including, allegedly, refusing to tender consideration in the amount of $12,650,000 without cause or contractual basis) (first, second, third claims for relief); allegedly defrauding Plaintiffs into entering into the Promissory Notes (fifth, sixth, and seventh claims for relief); allegedly converting funds purportedly borrowed by Namco against the property (eighth claim for relief); allegedly engaging in fraudulent transfers by way of Namco's purported borrowing of funds against certain property and purported secret sales of fractional interests in the Promissory Notes (eleventh claim for relief).  Each of these allegations, among others, occurred prior to the Petition Date and if such allegations were true, which they are not, would give rise to a pre-petition claim against the Namco bankruptcy estate.

[20] In support of Plaintiffs' contention that the Court should disregard their failure to file their claims against Namco, Plaintiffs mistakenly rely on *In re PCH Associates*, 949 F.2d 585, 605 (2d Cir. 1991).  In that case, the Debtor (rather than claim holder) commenced an adversary proceeding against the creditor seeking to determine the nature and extent of the creditor's interest in the bankruptcy estate *prior to the bar date*.  While the Bankruptcy Code does not provide for such a procedure, the court recognized that other courts have treated the initiation of such a proceeding as a substitute for the filing of a disputed claim, and "given the extraordinary nature of [the] case," requiring strict compliance with the claim procedures was not warranted.  This differs markedly from this action, which Plaintiffs commenced three months after the bar date.

PRINTED ON
RECYCLED PAPER
LA 8555816v4

- 11 -    Defendant's Reply to Opposition to MSJ

precisely why Plaintiffs were required to file a proof of claim and they provide no valid explanation as to their lack of compliance for asserting claims that arose prior to the Petition Date.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs opposition lacks merit.  The Trustee did not forfeit his right to raise certain procedural defects of the Plaintiffs' complaint whereas the Plaintiffs have waived their right to bring new, baseless factual averments at this late a date.  Notwithstanding the procedural deficiencies, Plaintiffs' new theory lacks any factual grounding.  Plaintiffs have failed to provide any undisputed material facts necessary to adjudicate the motion for summary judgment. The Trustee is entitled to summary judgment on the Complaint as a matter of law.

Respectfully Submitted,

DATED:  February 8, 2012            JEFFER MANGELS BUTLER & MITCHELL LLP


By:    */s/ David M. Poitras*
        DAVID M. POITRAS
    Attorneys for Defendant Bradley D. Sharp, Chapter 11
    Trustee of Namco Capital Group, Inc.

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

LA 8555816v4

- 12 -        Defendant's Reply to Opposition to MSJ

### **SUPPLEMENTAL DECLARATION OF BRADLEY D. SHARP**

I, Bradley D. Sharp, declare as follows:

1.      I am the chapter 11 trustee for the bankruptcy estate of Namco Capitral Group, Inc. ("Namco").  All facts stated herein are known by me to be true through my own personal knowledge, or from my activities and investigation undertaken as Namco's chapter 11 trustee or from my review of various books and records, and pleadings filed in the bankruptcy case, of Namco.  If called to testify in this matter, I would and could competently testify thereto in a court of law.

2.      This supplemental declaration is submitted in support of the *Motion of Defendant Bradley D. Sharp, Chapter 11 Trustee of Namco Capital Group, Inc. for Summary Judgment, or in the Alternative, Partial Summary Adjudication, on Complaint,* and the reply to the Plaintiffs' Opposition thereto.

3.      On May 8, 2009, the Court entered an order approving my appointment as the Trustee in the Namco bankruptcy case.

4.      During the time since I have been the Chapter 11 Trustee of Namco, I have become generally familiar with Namco's books and records and I am specifically familiar with Namco's books and records as they relate to Namco's transactions with Karman Pasadena Group , Inc. and Kamran Group, LLC (the "Plaintiffs").

5.      After an investigation that included interviews with Namco employees,  I have determined or otherwise believe that Namco's records which relate to Namco's transactions with Plaintiffs were prepared or maintained at or near the time of the transactions in question by Namco employees, were kept in the regular course of Namco's business, and it was the regular practice of Namco to prepare or maintain them.  Unless a different source of information is specified below, all of the information contained in this declaration was obtained from Namco's books and records or my personal knowledge.  I have reviewed the documents attached as exhibits to this declaration.

6.      Attached hereto as **Exhibit CC** is a true and correct copy of a fully executed Purchase and Sale Agreement with Escrow Instructions dated December 5, 2008, signed by Ezri Namvar, on behalf of Tranmar Properties, LLC, and David Golkar, on behalf of Kaman Group,

PRINTED ON
RECYCLED PAPER
LA 8561591v1

- 13 -      Supp. Decl. of Bradley D. Sharp

JMBM Jeffer Mangels Butler & Mitchell LLP

LLC, which was obtained from Commerce Escrow Company as part of its production of documents. Included with the exhibit is a certification by the custodian of records for Commerce Escrow Company, attesting that the document is a true copy of the records in the possession of Commerce Escrow Company. This document was also attached as Exhibit "O" to the Transcript of the Deposition of Ezri Namvar dated October 22, 2009. Namvar verified his signature to this agreement. See Exhibit 8, page 61, lines 13 - 25.

7. Attached hereto as **Exhibit DD** is a true and correct copy of email correspondence from David Golkar to Ezri Namvar dated September 8, 2005, which was obtained from Namco's books and records.

8. Attached hereto as **Exhibit EE** is a true and correct copy of a facsimile dated October 30, 2008 from David Golkar and Komal Desai to Abraham Yermain, which was obtained from Commerce Escrow Company as part of its productions of documents. Included with the exhibit is a certification by the custodian of records for Commerce Escrow Company, attesting that the document is a true copy of the records in the possession of Commerce Escrow Company.

9. Attached hereto as **Exhibit FF** is a true and correct copy of an email from David Golkar to Hamid Taba dated December 30, 2008 related to the payoff or pay down of the loans evidenced by he Promissory Notes. This email thread was previously submitted as Trial Exhibit 111 and was obtained from Namco's books and records.

10. Attached hereto as **Exhibit GG** is a true and correct copy of email correspondence from and to Mr. Gollkar from November 2008. This email thread was previously submitted as Trial Exhibit 108 at trial and was contained in the production of documents in this adversary proceeding produced by defendant Ashland Properties, LLC, in response to requests for production of documents.

I declare under penalty of perjury under the United States of America that the foregoing is true and correct and that this declaration is being executed this 8th day of February, 2011 at Los Angeles, California.

_/s/ Bradley D. Sharp_
BRADLEY D. SHARP

PRINTED ON
RECYCLED PAPER

LA 8561591v1

- 14 -    Supp. Decl. of Bradley D. Sharp

# EXHIBIT CC



## COMMERCE ESCROW COMPANY

1545 WILSHIRE BLVD., 6th FLOOR, LOS ANGELES, CA 90017
TEL.: (213) 484-0855 / (310) 284-5700 / (888) 732-6723 / FAX: (213) 484-0417

COMMERCE ESCROW COMPANY IS LICENSED BY THE DEPARTMENT OF CORPORATIONS
STATE OF CALIFORNIA, LICENSE # 963 0384

Via Messenger

July 27, 2009

Ezra Brutzkus Gubner LLP
Attn: Robyn B. Sokol, Esq.
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

### Declaration Pursuant to Evidence Code Sections 1560-1561

Re:    Escrow No.:    08-20307-LC
       Case No.:      2:08-bk-32333-BR
       Debtor:        Namco Capital Group, Inc.

To Whom It May Concern:

I, Mark R. Minsky, declare:

1.      I am a duly authorized custodian of the records of Commerce Escrow Company, a California Corporation, and I have authority to certify its records.

2.      This office was served with a Subpoena in a Case Under the Bankruptcy Code, issued on July 23, 2009, out of the United States Bankruptcy Court Central District of California, in the above referenced action calling for all records constituting the escrow files and records contained therein of Escrow No. 08-20307-LC.

3.      The accompanying copies are true copies of all of the records described in said subpoena which are in my possession as custodian of records of Commerce Escrow Company. Said records were prepared by personnel of Commerce Escrow Company, acting under the control of said personnel, in the ordinary course of business at or near the time of the acts, conditions or events recorded therein.

Executed on  7-27-09

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Commerce Escrow Company

Mark R. Minsky, Vice President
Acting as Custodian of the records

Our witness fees are in the amounts shown below, pursuant to Evidence Code Section 1563(b).
**Please remit our witness fees promptly.**

| | | |
|---|---|---|
| File Retrieval Fee (1 file @ $25.00/file) | | $25.00 |
| Copying Service – (Rounded to nearest quarter hour @ $6.00/quarter hour) | | |
|     Page Numbering/Copying | 2.00 hours | $48.00 |
|     Photocopy Fees: | 562 pages Legal Size @ $0.10/Page | $56.20 |
| **Total Fees** | | **$129.20** |

**Please forward your remittance immediately in compliance with Evidence Code 1563 payable to Commerce Escrow Company, Attn: Danielle Graf. Please include a copy of this letter with your remittance. Should you have any questions, please contact Danielle Graf at (213) 484-0855.**

cc:    Stephen Davis, Esq.        sdavis@ddesq.com

Exhibit CC-15

NAMCO-4510

## PURCHASE AND SALE AGREEMENT WITH ESCROW INSTRUCTIONS

THIS PURCHASE AND SALE AGREEMENT AND ESCROW INSTRUCTIONS ("Agreement") is entered as of December 5, 2008, between TRANMAR PROPERTIES, LLC, a Delaware limited liability company ("Seller"), and KAMRAN GROUP, LLC, a California limited liability company ("Buyer"), with reference to the following:

A. Seller is the owner of certain real property located at and about 233 N. Fair Oaks, Pasadena, Los Angeles County, California 91103, and more particularly described on **Exhibit "A"** attached hereto and incorporated herein by this reference ("Real Property").

B. Buyer desires to purchase the Property (as defined subsequently in this Agreement) and Seller desires to sell the Property, on and subject to the terms and conditions in this Agreement.

For good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties agree as follows:

Section 1. Definitions. As used in this Agreement the following terms shall have the following definitions:

"Agreement" is defined in the preamble.

"Approved Exceptions" is defined in Section 9(b).

"Assignment" is defined in Section 10(b)(ii).

"Buyer" is defined in the preamble.

"Close of Escrow" is defined in Section 10(d).

"Closing Date" is defined in Section 10(d).

"Deed" is defined in Section 10(b)(i).

"Deposit" is defined in Section 3.

"Disapproved Exception" is defined in Section 9(b).

"Environmental Laws" means all federal, state, local, or municipal laws, rules, orders, regulations, statutes, ordinances, codes, decrees, or requirements of any government authority regulating, relating to, or imposing liability or standards of conduct concerning any Hazardous Substance (as defined subsequently in this Agreement), or pertaining to occupational health or industrial hygiene (and only to the extent that the occupational health or industrial hygiene laws, ordinances, or regulations relate to Hazardous Substances on, under, or about the Property), occupational or environmental conditions on, under, or about the Property, as now in effect, including without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") [42 USCA §§ 9601 et seq.]; the Resource Conservation and Recovery Act of 1976 ("RCRA") [42 USCA §§ 6901 et seq.]; the Clean Water Act, also known as the Federal Water Pollution Control Act ("FWPCA") [33 USCA §§ 1251 et seq.]; the Toxic Substances Control Act ("TSCA") [15 USCA §§ 2601 et seq.]; the Hazardous Materials Transportation Act ("HMTA") [49 USCA §§ 1801 et seq.]; the Insecticide, Fungicide, Rodenticide Act [7 USCA §§ 136 et seq.]; the Superfund Amendments and Reauthorization Act [42

1



Exhibit CC-16

NAMCO-4807

USCA §§ 6901 et seq.]; the Clean Air Act [42 USCA §§ 7401 et seq.]; the Safe Drinking Water Act [42 USCA §§ 300f et seq.]; the Solid Waste Disposal Act [42 USCA §§ 6901 et seq.]; the Surface Mining Control and Reclamation Act [30 USCA §§ 1201 et seq.]; the Emergency Planning and Community Right to Know Act [42 USCA §§ 11001 et seq.]; the Occupational Safety and Health Act [29 USCA §§ 655 and 657]; the California Underground Storage of Hazardous Substances Act [H & S C §§ 25280 et seq.]; the California Hazardous Substances Account Act [H & S C §§ 25300 et seq.]; the California Hazardous Waste Control Act [H & S C §§ 25100 et seq.]; the California Safe Drinking Water and Toxic Enforcement Act [H & S C §§ 24249.5 et seq.]; the Porter-Cologne Water Quality Act [Wat C §§ 13000 et seq.] together with any amendments of or regulations promulgated under the statutes cited above and any other federal, state, or local law, statute, ordinance, or regulation now in effect that pertains to occupational health or industrial hygiene, and only to the extent that the occupational health or industrial hygiene laws, ordinances, or regulations relate to Hazardous Substances on, under, or about the Property, or the regulation or protection of the environment, including ambient air, soil, soil vapor, groundwater, surface water, or land use.

"Escrow" is defined in Section 4.

"Escrow Agent" is defined in Section 4.

"Exception" is defined in Section 5.

"Existing Loans" shall mean the loans which are secured by the Property and which are described in Schedule 1 attached hereto.

"FIRPTA Affidavit" is defined in Section 10(b)(iii).

"Deposit" shall mean the amount of $100.00.

"Hazardous Substances" includes without limitation: (a) Those substances included within the definitions of "hazardous substance," "hazardous waste," "hazardous material," "toxic substance," "solid waste," or "pollutant or contaminant" in CERCLA, RCRA, TSCA, HMTA, or under any other Environmental Law; (b) Those substances listed in the United States Department of Transportation (DOT) Table [49 CFR 172.101], or the Environmental Protection Agency (EPA), or any successor agency, as hazardous substances [40 CFR Part 302]; (c) Other substances, materials, and wastes that are or become regulated or classified as hazardous or toxic under federal, state, or local laws or regulations; and (d) Any material, waste, or substance that is: (i) a petroleum or refined petroleum product, (ii) asbestos, (iii) polychlorinated biphenyl, (iv) designated as a hazardous substance pursuant to 33 USCA § 1321 or listed pursuant to 33 USCA § 1317, (v) a flammable explosive, or (vi) a radioactive material.

"Namco Note" shall mean the promissory note in the amount of $4,300,000.00, made by Namco Capital Group, Inc., in favor of David Golkar, dated September 22, 2006, a copy of which is attached hereto as Schedule 2.

"Preliminary Report" is defined in Section 5(a).

"Prevailing Party" is defined in Section 19.

"Property" means, collectively, the Real Property, all easements, licenses, entitlements, improvements presently existing on, at, or with respect to the Real Property, if any, and all of Seller's rights and interests in and to the Real Property and all of the following: all maps, plans and specifications relating to the planned construction of improvements on the Real Property, if any, all governmental applications, permits

2



Exhibit CC-17

NAMCO-4808

or licenses, utility contracts, service contracts, maintenance contracts, operating contracts, deposits, reimbursements, or other intangible property (if any) owned by Seller in connection with the development, operation, or ownership of the Property or other rights relating to the ownership, use, or operation of the Real Property.

"Purchase Price" is defined in Section 3.

"Seller" is defined in the preamble.

"Title Company" is defined in Section 5.

"Title Policy" is defined in Section 10(a).

"Withholding Affidavit" is defined in Section 10(b)(iv).

Section 2. Purchase and Sale. Seller agrees to sell, and Buyer agrees to purchase, the Property subject to the terms and conditions in this Agreement.

Section 3. Purchase Price. The purchase price for the Property (the "Purchase Price") shall be comprised of an amount equal to the outstanding balances of the Existing Loans which are secured by the Deeds of Trust against the Property (which Buyer shall repay as of the Close of Escrow), the assignment of the Namco Note to Seller, and Buyer's payment of the closing costs as set forth in this Agreement. The Purchase Price shall be payable as follows: Not later than the business day prior to the Closing Date, or such earlier date as may be required by the Escrow Agent such that Escrow Agent will be in a position to disburse the cash proceeds on the Closing Date, Buyer shall deposit with Escrow Agent an amount equal to the full amount needed to pay off the Existing Loans, plus the estimated Buyer's closing costs, and upon the Close of Escrow Buyer shall cause its principal, David Golkar, to assign the Namco Note to Seller, with an allonge and assignment in form and content acceptable to Seller. Upon the opening of Escrow, Buyer shall deliver the Deposit to Escrow Agent. Buyer shall be given credit at closing for the Deposit.

Section 4. Escrow. By this Agreement, Buyer and Seller establish an escrow ("Escrow") with Commerce Escrow ("Escrow Agent"), subject to the provisions of Escrow Agent's standard conditions for acceptance of escrow and the terms and conditions in this Agreement, with a signed counterpart of this document to be delivered as escrow instructions to Escrow Agent. In the event of any conflict between the terms of this Agreement and the standard conditions for the Escrow, the terms of this Agreement shall control.

Section 5. No Feasibility Period. Buyer acknowledges that Seller (i) has already provided a current preliminary title report issued by Western Resources Title ("Title Company"), with respect to the Property ("Preliminary Report"), which includes hyperlinks to copies of all exceptions, recorded documents, easements, rights of way and encumbrances referred to therein (the "Exceptions") evidencing the status of title of the Property, and (ii) to the extent that the same were in the possession of Seller, or any consultants under the direction and control of Seller, and are not subject to confidentiality restrictions, Seller has provided or made available to Buyer copies of: (a) all contracts and other obligations affecting the Property; (b) all environmental, geotechnical, engineering, and other reports, test results and studies which have been performed with respect to the Property; and (c) all governmental permits and approvals, including tract maps, which have been issued or applied for regarding the development, construction, operation or use of the Property; excluding, however, with regard to each of the foregoing, all proprietary, privileged or confidential information of Seller relating to the Property, including but not limited to,

3



---

Exhibit CC-18

NAMCO-4809

Seller's internal financial analyses, Seller's credit analyses and collection plans, materials relating to Seller's interest in the Property and the cost to acquire the Property, and any documents or communications subject to the attorney/client privilege. Buyer's execution of this Agreement shall constitute conclusive evidence that Buyer has completed, and is unconditionally satisfied with the results of, all reviews, inspections and studies with regard to the Property as Buyer has elected to undertake.

BUYER HEREBY CONFIRMS THAT, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREIN, IT HAS WAIVED ALL CONTINGENCIES IN THIS TRANSACTION AND IS FULLY AND UNCONDITIONALLY SATISFIED WITH THE RESULTS OF ITS INSPECTIONS, STUDIES AND REVIEWS, AND ALL MATTERS RELATED TO THE PROPERTY.

Section 6. Conditions to Buyer's Performance. Buyer's obligations to complete the purchase of the Property under this Agreement shall be subject to the satisfaction of the following conditions:

(a) The actual funding of the Purchase Price by Buyer's acquisition and development lender ("A&D Lender"). The parties acknowledge that Buyer has expended substantial efforts and funds to obtain this aforementioned financing from the A&D Lender;



(b) Seller's delivery of the Deed when required under this Agreement;

(c) The Title Company agreeing to issue the Title Policy on the Close of Escrow to Buyer, in accordance with this Agreement;

(d) Seller's representations and warranties in this Agreement and the related documents executed or to be executed by Seller are true and accurate in all material respects as of the Closing Date; and

(e) Buyer's written approval of the amount and terms of the Existing Loans, which written approval shall include Buyer's approval of agreements with each lender under the Existing Loans as to the payoff amount and Buyer's ability to complete the same at the Close of Escrow.

If any of the foregoing conditions are not satisfied by the scheduled Closing Date, Buyer shall have the right, to be exercised within three (3) business days after the scheduled Closing Date, to either (x) unconditionally waive the unsatisfied condition and proceed with the Close of Escrow, or (y) notify Seller that Buyer is not willing to waive the unsatisfied condition, upon which Seller shall have ten (10) business days from receipt of the notice to cause the unsatisfied condition to be satisfied, in which case the Close of Escrow will proceed upon satisfaction of the condition, and if Seller is unwilling or unable to cause the condition to be satisfied, this Agreement will terminate, the Deposit(s), to the extent actually made, shall be returned to Buyer, Buyer shall return to Seller all of the items and materials relating to the Property in Buyer's and/or its consultants' and/or attorneys' possession, whether procured by Buyer or provided by Seller, and Buyer's rights and obligations under this Agreement (other than Buyer's indemnity obligations relating to its inspections and investigations) shall terminate. If Buyer does not make the election in clause (x) within the specified time period, Buyer will be deemed to have made the election in clause (y).

Section 7. Conditions to Seller's Performance. Seller's obligations to complete the sale of the Property under this Agreement shall be subject to Buyer's timely making all its deliverables (including all funds and documents) to Escrow as provided for under this Agreement, Seller receiving full releases in favor of Namco Capital Group, Inc., and Ezri Namvar from all of the holders of the Existing Loans described in Schedule 1 attached hereto and by this reference incorporated herein, in form and content acceptable to Seller, and Buyer's performance of its other material obligations under this Agreement.

4



Exhibit CC-19

NAMCO-4810

Section 8. Access.

(a) Access to the Property shall be given to Buyer, its agents, employees, and contractors during the period in which this Agreement is in effect, at their own cost and risk, for any purposes, including, but not limited to, inspecting the Property, taking samples of the soil, and conducting an environmental audit (including an investigation of past and current uses of the Property). Buyer shall indemnify and defend Seller and the Property against and hold Seller and such other parties harmless from and against all losses, costs, damages, liabilities, and expenses arising out of Buyer's entry onto the Property and/or any activity thereon by Buyer or its agents, employees, or contractors, and resulting from physical damage to the Property, or personal injury, all except to the extent any such losses, costs, damages, liabilities, and expenses arise out of the gross negligence or willful acts of Seller. Buyer shall not cause or permit any liens to be placed on the Property by Buyer or Buyer's agents prior to the Close of Escrow. Prior to any destructive testing upon the Property by Buyer or its consultants or representatives, Buyer shall provide Seller with evidence of not less than $1,000,000 of liability coverage per occurrence, covering the services to be performed and naming Seller as an additional insured.

(b) Buyer shall not conduct any invasive or destructive studies or testing on the Property without the prior written consent of Seller, which consent shall not be unreasonably withheld. Buyer shall, upon completion of any studies or tests on the Property restore the Property to substantially its condition prior to such studies or tests.

Section 9. Title.

(a) Buyer has approved each exception shown on the Preliminary Report and each encroachment, overlap, or boundary line dispute, or any other matter revealed by the Preliminary Report that affects title to the Property or that violates any law, rule, or regulation, it being understood that Buyer is taking title subject to the deeds of trust which encumber the Property and which secure the Existing Loans (unless same are paid off by Buyer) and all other liens and encumbrances. The Exceptions approved by Buyer in writing shall be referred to as the "Approved Exceptions."

(b) If any Exception which is first disclosed by the Title Company following the date of this Agreement is disapproved or deemed disapproved by Buyer (each a "Disapproved Exception") as set forth above, Seller shall have the right, but not the obligation, within ten (10) days following receipt of the notice of Disapproved Exceptions to try to cause each Disapproved Exception to be discharged, satisfied, released, or terminated, as the case may be, of record, and in a form that is reasonably satisfactory to Buyer, as of the Close of Escrow. If Seller is unable or unwilling to obtain a discharge, satisfaction, release, or termination of any Disapproved Exception within the period specified above, then this Agreement shall automatically terminate as of the expiration of the period for curing the Disapproved Exceptions or after Seller advises Buyer in writing that Seller is unable or unwilling to cause such discharge, satisfaction, release, or termination, whichever occurs first, unless within five (5) days after such termination Buyer waives in writing all such Disapproved Exceptions, in which event this Agreement shall be automatically reinstated and there shall be no adjustment to the Purchase Price and each such Disapproved Exception shall be deemed an Approved Exception under this Agreement.

Section 10. Close of Escrow.

(a) Upon the Close of Escrow, the Title Company shall issue to Buyer a CLTA Owner's Policy of Title Insurance ("Title Policy"), with coverage in the amount of the Purchase Price, subject only to a lien for real property taxes, bonds, and assessments not then due, the Title Company's standard exceptions and exclusions, and the other Approved Exceptions.

5

Exhibit CC-20

NAMCO-4811



(b) Seller's Deposits into Escrow. Seller shall deposit with Escrow Agent not later than one (1) business day prior to the Close of Escrow the following documents:

(i) a grant deed in the form of the attached Exhibit "B", which is incorporated into this Agreement by this reference, executed and acknowledged by Seller ("Deed");

(ii) an assignment ("Assignment"), in the form of the attached Exhibit "C", which is incorporated into this Agreement by this reference, executed by Seller, assigning to Buyer all of Seller's right, title, and interest, if any, in all assignable plans, specifications, construction drawings, project files, architect's agreements, consulting agreements, service agreements, maintenance agreements, permits, licenses, entitlements, development rights and applications, use of the trade name of the Property, and all other intangible assets relating to the Property;

(iii) Seller's executed affidavit of non-foreign status as contemplated by Section 1445 of the Internal Revenue Code of 1986, as amended ("FIRPTA Affidavit"); and

(iv) Seller's executed affidavit as contemplated by the Revenue and Taxation Code §18662 ("Withholding Affidavit").

(c) Buyer's Deposits into Escrow. Buyer shall deposit with Escrow Agent, the balance of the Purchase Price in accordance with Section 3(b), along with any amounts to be paid pursuant to Sections 10(f)(ii), the original of the Namco Note and the related allonge and assignment in favor of Seller, and the releases described in Section 7 above.

(d) Closing Date. The conveyance of the Property to Buyer and the closing of this transaction ("Close of Escrow") shall take place on or before December 15, 2008 (the "Closing Date").

(e) On the Closing Date, Escrow Agent shall close Escrow as follows:

(i) record the Deed (marked for return to Buyer) with the Los Angeles County Recorder (which shall be deemed delivery to Buyer);

(ii) cause the Title Company to issue the Title Policy to Buyer;

(iii) prorate taxes, assessments, and other charges as provided in Section 10(f);

(iv) disburse to Seller the unpaid balance of the Purchase Price less prorated amounts and charges to be paid by or on behalf of Seller;

(v) charge Buyer for those costs and expenses to be paid by Buyer pursuant to this Agreement and disburse any net funds remaining after the preceding disbursements to Buyer;

(vi) prepare and deliver to both Buyer and Seller one signed copy of Escrow Agent's closing statement showing all receipts and disbursements of the Escrow; and

(vii) deliver to Buyer the originals of the Assignment, the FIRPTA Affidavit, and the Withholding Affidavit.

If Escrow Agent is unable to simultaneously perform all of the instructions set forth above, Escrow Agent shall notify Buyer and Seller and retain all funds and documents pending receipt of further instructions

6



Exhibit CC-21

NAMCO-4812

jointly issued by Buyer and Seller.

(f) Prorations. Escrow Agent shall charge, collect and/or prorate the following costs at the Close of Escrow (to the extent not previously paid):

(i) Seller shall pay:

(A) all governmental conveyance and/or transfer fees and taxes due upon transfer of the Property;

(B) all charges in connection with issuance of a CLTA Standard Policy of Title Insurance in the amount of the Purchase Price;

(C) all charges in connection with the recordation of the Deed; and

(D) one-half (1/2) of the escrow fees and costs charged by Escrow Agent.

(ii) Buyer shall pay:

(A) all premiums for ALTA and other extended title coverage in excess of the premium for a CLTA standard coverage owner's policy and title endorsements; and

(B) one-half (1/2) of the escrow fees and costs charged by Escrow Agent.

(iii) Real Estate Taxes, Bonds, and Assessments. Current, non-delinquent real property taxes and assessments and bonds shall be prorated at the Close of Escrow based on the most current real property tax bill available, including any additional property taxes that may be assessed after the Close of Escrow but that relate to a period prior to the Close of Escrow, regardless of when notice of those taxes is received or who receives the notice. All delinquent taxes, assessments and installments shall be paid by Seller.

(g) Possession. Possession of the Property shall be delivered to Buyer at the Close of Escrow.

(h) Reports. If Buyer does not close the purchase of the Property as a result of Buyer's default, Buyer shall provide Seller with copies of all plans, reports, studies, and other documents prepared by Buyer in connection with the Property, without representation or warranty regarding the sufficiency or quality of such plans, reports, and studies. To the extent the plans, reports, and studies are assignable without the consent of a third party, there shall be an assignment without liens or outstanding balances for all rights to use the plans, reports, and studies for the purpose of Seller completing the matters shown in the plans, reports and studies.

Section 11. Condemnation.

(a) If any portion of the Property is taken by condemnation or eminent domain or is the subject of a threatened or pending condemnation or eminent domain proceeding that has not been consummated prior to the Close of Escrow resulting in a decrease in the value of the Property in an amount not exceeding One Million Dollars ($1,000,000.00), Buyer and Seller shall consummate this Agreement without change in the Purchase Price, provided that Seller shall assign to Buyer Seller's rights to all awards for the condemnation or taking.

7

Exhibit CC-22

NAMCO-4813

(b) If any portion of the Property is taken by condemnation or eminent domain or is the subject of a threatened or pending condemnation or eminent domain proceeding that has not been consummated prior to the Close of Escrow resulting in a decrease in the value of the Property in an amount equal to or in excess of One Million Dollars ($1,000,000.00), Buyer may elect either to terminate this Agreement upon written notice to Seller and Escrow Agent or to consummate this Agreement, in which event Seller shall assign to Buyer Seller's rights to all awards for the condemnation or taking. If Buyer elects to terminate this Agreement pursuant to this provision, Escrow Agent shall, within immediately upon receipt of Buyer's notice, return the Deposit, together with accrued interest, to Buyer. Upon termination, neither party shall have any further obligations under this Agreement except as otherwise provided in this Agreement.

Section 12. Liquidated Damages. IF BUYER FAILS TO COMPLETE THE PURCHASE PROVIDED FOR IN THIS AGREEMENT BY REASON OF ANY DEFAULT OF BUYER, SELLER SHALL BE RELEASED FROM SELLER'S OBLIGATION TO SELL THE PROPERTY TO BUYER AND MAY PROCEED AGAINST BUYER UPON ANY CLAIM OR REMEDY THAT SELLER MAY HAVE IN LAW OR EQUITY; PROVIDED, HOWEVER, THAT, BY INITIALING THIS SECTION BUYER AND SELLER BOTH AGREE THAT IN EVENT OF DEFAULT BY BUYER, (A) IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO FIX ACTUAL DAMAGES; (B) AN AMOUNT EQUAL TO THE DEPOSIT SHALL CONSTITUTE LIQUIDATED DAMAGES PAYABLE TO SELLER; (C) THE PAYMENT OF THE LIQUIDATED DAMAGES TO SELLER SHALL CONSTITUTE THE EXCLUSIVE REMEDY OF SELLER FOR THE DEFAULT BY BUYER; (D) SELLER MAY RETAIN THE DEPOSIT AS LIQUIDATED DAMAGES; (E) PAYMENT OF THE DEPOSIT TO SELLER AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT INSTEAD, IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO SECTIONS 1671, 1676, AND 1677 OF THE CALIFORNIA CIVIL CODE; AND (F) SELLER SHALL ALSO BE ENTITLED TO COLLECT ITS REASNOABLE ATTORNEYS' FEES AND COSTS IN ANY ACTION TO ENFORCE THIS PROVISION, WITHOUT LIMITING THE FOREGOING IN ANY WAY.

_____          _____
BUYER'S INITIALS                 SELLER'S INITIALS

Section 13. Buyer's Remedies. In the event that any of Seller's representations or warranties contained herein are untrue, Seller fails or refuses to perform any of the covenants contained herein to be performed by Seller, or Seller fails or refuses to Close Escrow for any reason other than Buyer's default or termination of this Agreement, then Buyer may elect, in its sole and absolute discretion: (i) to terminate this Agreement and Escrow by notice to Seller and Escrow Agent and receive an immediate refund of the Deposit, and all interest accrued, and thereafter neither party shall have any obligations to the other, except that all costs of cancellation shall be paid by Seller; (ii) to seek specific performance of Seller's obligations hereunder; or (iii) to seek money damages or other legal or equitable relief allowed by law and consistent with this Agreement.

Section 14. Seller Representations. Except as specifically disclosed to Buyer in writing, Seller represents and warrants the following to Buyer:

(a) Disclosures. Seller has not received any written notice that the Property is in violation of any applicable laws; and to Seller' actual knowledge all information concerning the Property that Seller has provided to Buyer does not contain any material errors.

(b) Foreign Investment Real Property Tax Act. Seller is not a "foreign person" within the meaning of 42

8

Exhibit CC-23

NAMCO-4814

U.S.C.A. § 1445(f)(3).

For purposes of the foregoing, the phrase "to Seller's actual knowledge" means the actual, present knowledge of Seller's principal, Ezri Namvar, without any duty of inquiry, study or diligence.

Section 15. Property "As-Is"; Buyer's Waiver; Hazardous Substances.

(a) Buyer represents and warrants that, as specified in Section 5 hereof, Buyer has, or shall have inspected and conducted tests and studies of the Property, and that Buyer is familiar with the general condition of the Property. Buyer understands and acknowledges that the Real Property may be subject to earthquake, fire, floods, erosion, high water table, dangerous underground soil conditions, hazardous materials and similar occurrences that may alter its condition or affect its suitability for any proposed use. Seller shall have no responsibility or liability with respect to any such occurrence. Notwithstanding anything to the contrary contained in this Agreement, the suitability or lack of suitability of the Real Property for any proposed or intended use, or availability or lack of availability of: (i) grading or other permits or approvals of governmental or regulatory authorities; (ii) the approval of a final map; or (iii) easements, licenses or other rights with respect to any such proposed or intended use of the Property shall not affect the rights or obligations of the Buyer hereunder. Notwithstanding the foregoing, Seller has an obligation to provide and shall provide any and all documents, reports, studies, correspondence, notes, or other information, whether proprietary, privileged or confidential information, to the extent that such information is in Seller's actual possession, or any of Seller's affiliates, or any other third parties under the direction or control of Seller, and affects the value or desirability of the Property or materially and negatively impacts the ability to entitle and/or develop the Property for any residential or commercial use.

(b) Seller shall have no duty or obligation to improve or develop the Property, but shall reasonably cooperate with Buyer's efforts to do the same, at no expense to Seller.

(c) No representation, warranty, agreement, statement, guarantee or promise, if any, made by any person acting on behalf of Seller which is not contained in this Agreement will be valid or binding on Seller.

(d) EXCEPT AS STATED IN THIS AGREEMENT, BUYER ACKNOWLEDGES AND AGREES THAT, SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (I) VALUE; (II) THE INCOME TO BE DERIVED FROM THE REAL PROPERTY; (III) THE SUITABILITY OF THE REAL PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH BUYER MAY CONDUCT THEREON, INCLUDING THE POSSIBILITIES FOR FUTURE DEVELOPMENT OF THE REAL PROPERTY; (IV) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE REAL PROPERTY; (V) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE REAL PROPERTY; (VI) THE NATURE, QUALITY OR CONDITION OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY; (VII) THE COMPLIANCE OF OR BY THE REAL PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY; (VIII) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE REAL PROPERTY; (IX) COMPLIANCE WITH ANY ENVIRONMENTAL LAWS, OR ANY RULES, REGULATION, ORDERS OR REQUIREMENTS PROMULGATED PURSUANT THERETO; (X) THE PRESENCE OR ABSENCE OF HAZARDOUS SUBSTANCES AT, ON, UNDER, OR ADJACENT TO THE REAL PROPERTY; (XI) THE CONTENT, COMPLETENESS OR ACCURACY

9



Exhibit CC-24

NAMCO-4815

OF THE DUE DILIGENCE MATERIALS OR PRELIMINARY REPORT REGARDING TITLE; (XII) THE CONFORMITY OF THE IMPROVEMENTS TO ANY PLANS OR SPECIFICATIONS FOR THE REAL PROPERTY, INCLUDING ANY PLANS AND SPECIFICATIONS THAT MAY HAVE BEEN OR MAY BE PROVIDED TO BUYER; (XIII) THE CONFORMITY OF THE REAL PROPERTY TO PAST, CURRENT OR FUTURE APPLICABLE ZONING OR BUILDING REQUIREMENTS; (XIV) DEFICIENCY OF ANY UNDERSHORING; (XV) DEFICIENCY OF ANY DRAINAGE; (XVI) THE FACT THAT ALL OR A PORTION OF THE REAL PROPERTY MAY BE LOCATED ON OR NEAR AN EARTHQUAKE FAULT LINE; (XVII) THE EXISTENCE OF VESTED LAND USE, ZONING OR BUILDING ENTITLEMENTS AFFECTING THE REAL PROPERTY.

(e)    EXCEPT AS OTHERWISE STATED IN THIS AGREEMENT, AS PART OF BUYER'S AGREEMENT TO PURCHASE AND ACCEPT THE PROPERTY "AS-IS WHERE-IS," AND NOT AS A LIMITATION ON SUCH AGREEMENT, BUYER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY AND ALL ACTUAL OR POTENTIAL RIGHTS BUYER MIGHT HAVE REGARDING ANY FORM OF WARRANTY, EXPRESS OR IMPLIED, OF ANY END OR TYPE, RELATING TO ANY OF THE MATTERS REFERRED TO IN SECTION 12(d) ABOVE (COLLECTIVELY, THE "PROPERTY CONDITION"). SUCH WAIVER IS ABSOLUTE, COMPLETE, TOTAL AND UNLIMITED IN ANY WAY. SUCH WAIVER INCLUDES, BUT IS NOT LIMITED TO, A WAIVER OF EXPRESS WARRANTIES, IMPLIED WARRANTIES, WARRANTIES OF FITNESS FOR A PARTICULAR USE, WARRANTIES OF MERCHANTABILITY, WARRANTIES OF HABITABILITY, STRICT LIABILITY FIGHTS, AND CLAIMS, LIABILITIES, DEMANDS OR CAUSES OF ACTION OF EVERY KIND AND TYPE, WHETHER STATUTORY, CONTRACTUAL OR UNDER TORT PRINCIPLES, AT LAW OR IN EQUITY, INCLUDING, BUT NOT LIMITED TO, CLAIMS REGARDING DEFECTS WHICH MIGHT HAVE BEEN DISCOVERABLE, CLAIMS REGARDING DEFECTS WHICH WERE NOT OR ARE NOT DISCOVERABLE, PRODUCT LIABILITY CLAIMS, PRODUCT LIABILITY TYPE CLAIMS, ALL OTHER EXTANT OR LATER CREATED OR CONCEIVED OF STRICT LIABILITY OR STRICT LIABILITY TYPE CLAIMS AND RIGHTS, AND ANY CLAIMS UNDER CERCLA.

(f)    THE TERMS AND PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING OR THE TERMINATION OF THIS AGREEMENT FOR ANY REASON. SELLER AND BUYER HAVE EACH INITIALED THIS SECTION TO FURTHER INDICATE THEIR AWARENESS AND ACCEPTANCE OF EACH AND EVERY PROVISION HEREOF.

| _____ | _____ |
| BUYER'S INITIALS | SELLER'S INITIALS |

(g)    If, prior to the Close, Buyer discovers any Hazardous Substances or other environmental condition subject to legal requirements for corrective action or affecting the Real Property, Buyer shall immediately notify Seller.

(h)    Buyer shall indemnify and hold Seller and Seller's members and managers free and harmless from and against any and all claims (including third party claims), demands, liabilities, damages, costs and expenses arising out of, or resulting from, the activities of Buyer with respect to the Property, including but not limited to Buyer's development of the Property and construction of improvements thereon. Buyer's obligations of indemnity set forth herein shall survive the Close of Escrow and shall not be merged with the Deed.

Section 16. Tax Qualified Exchanges: Buyer's Obligation to Cooperate.

10



Exhibit CC-25

NAMCO-4816

(a) Buyer agrees to cooperate with Seller in completing an exchange qualifying for nonrecognition of gain under Internal Revenue Code § 1031 and the applicable provisions of the California Revenue and Taxation Code. Seller reserves the right to convert this transaction to an exchange at any time before the Closing Date. Seller and Buyer agree, however, that consummation of the transaction contemplated by this Agreement is not predicated or conditioned on completion of such an exchange. If Seller elects to complete an exchange, Buyer shall execute all escrow instructions, documents, agreements, or instruments reasonably requested by Seller to complete the exchange; provided, however, that buyer shall not be required to take title to any property acquired by Seller in such exchange. Buyer shall incur no additional liabilities, expenses, or costs as a result of or connected with the exchange. Seller agrees to indemnify, defend, and hold Buyer harmless from any liabilities, damages, or costs (including but not limited to reasonable attorneys' fees and related costs) that may arise from Buyer's participation in the exchange. Seller agrees to cooperate with Buyer in completing an exchange qualifying for nonrecognition of gain under Internal Revenue Code § 1031 and the applicable provisions of the California Revenue and Taxation Code. Buyer reserves the right to convert this transaction to an exchange at any time before the Closing Date. Buyer and Seller agree, however, that consummation of the transaction contemplated by this Agreement is not predicated or conditioned on completion of such an exchange. If Buyer elects to complete an exchange, Seller shall execute all escrow instructions, documents, agreements, or instruments reasonably requested by Buyer to complete the exchange; provided, however, that Seller shall not be required to take title to any property acquired by Buyer in such exchange. Seller shall incur no additional liabilities, expenses, or costs as a result of or connected with the exchange. Buyer agrees to indemnify, defend, and hold Seller harmless from any liabilities, damages, or costs (including but not limited to reasonable attorneys' fees and related costs) that may arise from Seller's participation in the exchange.

(b) Either party shall have the right to: (1) assign its rights under this Agreement to a qualified intermediary for the purpose of implementing its election to convert this transaction to an exchange; (2) substitute such intermediary in place of its obligations hereunder. Any such substitution, however, shall not relieve such party of any obligation contained in this Agreement or the Escrow Instructions that is to survive the transfer of the Property; and/or (3) utilize the sale of the Property as part of a reverse or forward exchange.

Section 17. Duty of Confidentiality. Buyer and Seller represent and warrant that each shall keep all information and/or reports obtained from the other, or related to or connected with the Property, the other party, or this transaction, confidential and will not disclose any such information to any person or entity, nor make any press or publicity release with regard to this transaction, without obtaining the prior written consent of the other party, which consent shall not be unreasonably withheld, conditioned or delayed; provided, however, that Buyer may disclose such information to Buyer's members, managers, tax advisors, lenders, consultants, attorneys, and investors, and as required by law. If Buyer has executed a separate confidentiality agreement in favor of Seller, this Section shall be supplemental to and not in derogation of the provisions of such confidentiality agreement.

Section 18. Authority of Parties. Each party represents and warrants that this Agreement and all other documents delivered prior to or at the Close of Escrow:

(i) have been authorized, executed, and delivered by such party;

(ii) are binding obligations of such party; and

(iii) do not violate the provisions of any agreement to which such party is a party, nor violate the formation documents of such party.

11



Exhibit CC-26

NAMCO-4817

The parties further represent and warrant that the persons executing this Agreement on their behalf are authorized to do so, and on execution of this Agreement, this Agreement shall be valid and enforceable against Buyer or Seller in accordance with this Agreement.

Section 19. Brokers and Finders. Buyer and Seller each represent and warrant to the other that there are no commissions, finder's fees or brokerage fees arising out of the transactions contemplated by this Agreement. Except as provided in the immediately preceding sentence, each party represents and warrants to the other that no commissions, finder's fees or brokerage fees are payable to any person or entity in connection with the transaction contemplated hereby and each party shall indemnify and hold the other harmless from and against any and all liabilities, claims, demands, damages, costs and expenses, including, without limitation, reasonable attorneys fees and court costs, in connection with claims for any such commissions, finder's fees or brokerage fees, other than such commissions, finder's fees or brokerage fees arising out of Seller's conduct or the inaccuracy of the foregoing representation and/or warranty. This indemnification shall extend to any and all claims, liabilities, costs and expenses (including reasonable attorneys' fees and litigation costs) arising as a result of such claims and shall survive the Close of Escrow.

Section 20. Assignment. Buyer shall have the right to assign all rights and liabilities under this Agreement to an entity: (a) in which Buyer is the manager or general partner; and (b) which assumes in writing delivered to Seller the obligations of Buyer hereunder; provided, however, that any such assignment shall not relieve Buyer of its obligations hereunder.

Section 21. Attorneys' Fees. If litigation is commenced between the parties, the Prevailing Party in that litigation shall be entitled to recover from the nonprevailing party all reasonable attorneys' fees and costs. "Prevailing Party" shall include without limitation a party who dismisses an action in exchange for sums allegedly due; the party who receives performance from the other party for an alleged breach of contract or a desired remedy where the performance is substantially equal to the relief sought in an action; or the party determined to be the prevailing party by a court of law.

Section 22. Notices. All notices to be given under this Agreement shall be in writing and sent by:

(a) certified mail, return receipt requested, in which case notice shall be deemed delivered three (3) business days after deposit, postage prepaid in the United States Mail;

(b) a nationally recognized overnight courier, in which case notice shall be deemed delivered one (1) business day after deposit with that courier;

(c) hand delivery; in which case notice shall be deemed delivered upon receipt; or

(d) telecopy or similar means if a copy of the notice is also sent by United States Certified Mail, in which case notice shall be deemed delivered on transmittal by telecopier or other similar means, provided that a transmission report is generated by reflecting the accurate transmission of the notices, as follows:

IF TO SELLER:    Tranmar Properties, LLC
                 12121 Wilshire Blvd., Suite 1400
                 Los Angeles, CA 90025
                 Attn.: Hamid Taba
                 Fax: (310) 207-6308

IF TO BUYER:     _____

12



Exhibit CC-27

NAMCO-4818

or to such other address as Buyer or Seller may respectively designate by written notice to the other.

Section 23. Entire Agreement. This Agreement and the documents referenced herein contain the entire agreement between the parties to this Agreement and shall not be modified in any manner except by an instrument in writing executed by the parties or their respective successors in interest.

Section 24. Severability. If any term or provision of this Agreement shall, to any extent, be held invalid or unenforceable, the remainder of this Agreement shall not be affected.

Section 25. Waivers. A waiver or breach of covenant or provision in this Agreement shall not be deemed a waiver of any other covenant or provision in this Agreement, and no waiver shall be valid unless in writing and executed by the waiving party. An extension of time for performance of any obligation or act shall not be deemed an extension of the time for performance of any other obligation or act.

Section 26. Construction. The Section headings and captions of this Agreement are, and the arrangement of this instrument is, for the sole convenience of the parties to this Agreement. The Section headings, captions, and arrangement of this instrument do not in any way affect, limit, amplify, or modify the terms and provisions of this Agreement. The singular form shall include plural, and vice versa. This Agreement shall not be construed as if it had been prepared by one of the parties, but rather as if both parties have prepared it. Unless otherwise indicated, all references to Sections are to this Agreement. All exhibits and schedules referred to in this Agreement are attached to it and incorporated in it by this reference.

Section 27. Merger. All of the terms, provisions, representations, warranties, and covenants of the parties under this Agreement shall survive the Close of Escrow and shall not be merged in the Deed or other documents.

Section 28. Counterparts. This Agreement may be executed in one or more counterparts. Each shall be deemed an original and all, taken together, shall constitute one and the same instrument.

Section 29. Time of the Essence. Time is of the essence in this Agreement.

Section 30. Successors. This Agreement shall inure to the benefit of and shall be binding upon the parties to this Agreement and their respective heirs, successors, and assigns.

Section 31. Governing Law. This Agreement shall be governed and construed in accordance with California law.

Section 32. Waiver of Trial by Jury. Seller and Buyer, to the extent they may legally do so, hereby expressly waive any right to trial by jury of any claim, demand, action, cause of action, or proceeding arising under or with respect to this Agreement, or in any way connected with, or related to, or incidental to, the dealings of the parties hereto with respect to this Agreement or the transactions related hereto or thereto, in each case whether now existing or hereafter arising, and irrespective of whether sounding in contract, tort, or otherwise. To the extent they may legally do so, Seller and Buyer hereby agree that any such claim, demand, action, cause of action, or proceeding shall be decided by a court trial without a jury and that any party hereto may file an original counterpart or a copy of this Section with any court as written evidence of the consent of the other party or parties hereto to waiver of its or their right to trial by jury.

13



Exhibit CC-28

NAMCO-4819

Section 33. Independent Counsel. Buyer and Seller each acknowledge that: (a) they have been represented by independent counsel in connection with this Agreement; (b) they have executed this Agreement with the advice of such counsel; and (c) this Agreement is the result of negotiations between the parties hereto and the advice and assistance of their respective counsel.

Section 34. No Reservation of Property. The preparation and/or delivery of unsigned drafts of this Agreement shall not create any legally binding rights in the Property and/or obligations of the parties, and Buyer and Seller acknowledge that this Agreement shall be of no effect until it is duly executed by both Buyer and Seller and delivered to the parties hereto. Buyer understands and agrees that Seller shall have the right to continue to market the Property and/or to negotiate with other potential purchasers of the Property until the expiration of the Feasibility Period and the satisfaction or waiver in writing of all conditions to the obligations of Buyer under this Agreement.

Section 35. Business Day. If the Closing Date or the deadline or day for performance of any act required under this Agreement falls on a Saturday, Sunday or legal holiday, then the Closing Date or the deadline or day for such performance, as the case may be, shall be the next following regular business day.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

TRANMAR PROPERTIES, LLC,
a Delaware limited liability company

By: _____
Its: _____

KAMRAN GROUP, LLC,
a Delaware limited liability company

By: _____
Its: _____

14

Exhibit CC-29

NAMCO-4820

EXHIBIT "A"
LEGAL DESCRIPTION OF REAL PROPERTY

All that certain real property located in the County of Los Angeles, State of California, described as follows:

Parcel 4, as shown on Parcel Map Number 6936 in the City of Pasadena, County of Los Angeles, State of California, filed in Book 87, Pages 17 and 18 of Parcel Maps in the Office of the County Recorder of said County.

Except therefrom, all oil, gas, minerals, and other hydrocarbon substances lying below a depth of 500 feet from the surface of said Property, but with no right of surface entry, as provided in the Deeds recorded on (i) July 30, 1976 as Instrument Number 5977, (ii) August 13, 1976 as Instrument Numbers 51, 52, 53, and 54, and (iii) February 15, 1974 as Instrument Number 162.

The above exception affects all land, except that portion included within Lot 3 of the Esther Turner Tract, in the City of Pasadena, County of Los Angeles, as per Map recorded in Book 7, Page 89 of Maps in the Office of the County Recorder of said County.



15

Exhibit CC-30

NAMCO-4821

EXHIBIT "B"
GRANT DEED

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

_____

_____

_____

MAIL TAX STATEMENTS TO:

_____

_____

_____

_____

(Above Space For Recorder's Use Only)

GRANT DEED

   The undersigned Grantor declares: Documentary Transfer Tax is $_____, based on _____.

   FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, _____ ("Grantor"), hereby GRANTS to _____ limited liability company, the following described real property (the "Property") located in the County of Los Angeles, State of California:

This conveyance is made subject to all recorded exceptions affecting title to the Property, and all matters which a survey of the Property would disclose.

DATED: _____, 200_



16

Exhibit CC-31

NAMCO-4822

EXHIBIT "C"
GENERAL ASSIGNMENT

This General Assignment ("Assignment") is entered as of _____, 200_, between _____ ("Assignor"), and, a _____ limited liability company ("Assignee"), with reference to the following:

A. Assignor and Assignee (or its predecessor in interest) have entered into a Purchase and Sale Agreement With Escrow Instructions dated September __, 2008 ("Purchase Agreement") in which Assignee has agreed to purchase certain real property more particularly described in the Purchase Agreement ("Property").

B. Pursuant to the Purchase Agreement, Assignor has agreed to assign to Assignee all tangible and intangible property rights related to the Property.

For good and valuable consideration, Assignor and Assignee agree as follows:

Section 1. Assignment and Assumption. Assignor assigns all of Assignor's rights, title and interest in and to all tangible and intangible property and rights directly and/or indirectly related to the Property, without representation or warranty ("Assignment"). Assignee hereby assumes all of such rights and all duties related thereto.

Section 2. Successors. This Assignment shall be binding on and inure to the benefit of the parties to it, their heirs, executors, administrators, successors in interest, and assigns.

Section 3. Severability. If any term or provision of this Assignment shall be held invalid or unenforceable, the remainder of this Assignment shall not be affected.

Section 4. Waivers. No waiver or breach of any covenant or provision shall be deemed a waiver of any other covenant or provision, and no waiver shall be valid unless in writing and executed by the waiving party.

Section 5. Construction. Headings are solely for the parties' convenience, are not a part of this Assignment, and shall not be used to interpret this Assignment. The singular form shall include the plural and vice versa. This Assignment shall not be construed as if it had been prepared by one of the parties, but rather as if both parties have prepared it. Unless otherwise indicated, all references to sections are to this Assignment.

Section 6. Counterparts. This Assignment may be executed in one or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

Section 7. Amendment. This Assignment may not be amended or altered except by a written instrument executed by Assignor and Assignee.

Section 8. Further Assurances. Whenever requested to do so by the other party, each party shall execute, acknowledge, and deliver any further conveyances, assignments, confirmations, satisfactions, releases, powers of attorney, instruments of further assurance, approvals, consents, and any further instruments or documents that are necessary, expedient, or proper to complete any conveyances, transfers, sales, and assignments contemplated by this Assignment. In addition, each party shall do any other acts and execute,

17

Exhibit CC-32

NAMCO-4823

acknowledge, and deliver any requested documents in order to carry out the intent and purpose of this Assignment.

Section 9. Attorneys' Fees. In the event of any litigation between Assignor and Assignee arising out of or relating to this Assignment or concerning interpretation of any of its provisions, the losing party shall pay the prevailing party's costs and expenses of the litigation, including reasonable attorneys' fees, expenses and costs.

Section 10. Governing Law. This Assignment shall be governed and construed in accordance with California law.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date first written above.

ASSIGNOR:                          ASSIGNEE:



18

Exhibit CC-33

NAMCO-4824

Case 2:10-ap-01244-BR    Doc 126    Filed 02/08/12    Entered 02/08/12 16:31:07    Desc
Main Document    Page 38 of 55

NAMCO-4825

Exhibit CC-34

**SCHEDULE 1**
**EXISTING LOANS**

| Date | Amount of DOT | Instrument # | Recording date | Borrower | Beneficiary | Assignee | Percentage assigned | Amount owed |
|---|---|---|---|---|---|---|---|---|
| 6/29/2007 | $5,000,000.00 | 07-1990505 | 08/24/07 | Pasadena Athletic Club, Inc | Namco Capital Group, Inc | | | |
| | | | | | | Ashland properties LLC | 8.00 | $420,000.00 |
| | | | | | | Swalelle Properties LLC | 16.00 | $780,000.00 |
| | | | | | | Morteza Homayounjam | 25.00 | $925,000.00 |
| | | | | | | Jamshid Baharvar | 40.00 | $1,541,999.00 |
| | | | | | | Faye Faranak Saraflan | 5.50 | $260,000.00 |
| | | | | | | Daniel Jacob Isaak | 3.50 | $170,000.00 |
| | | | | | | | 98.00 | $4,096,999.00 |
| 6/29/2007 | $3,600,000.00 | 07-1986920 | 08/24/07 | Kamran Group, LLC | Namco Capital Group, Inc | Mehrnaz Hekmatravan | 100 | 3,600,000.00 |
| 9/10/2007 | $1,300,000.00 | 20072133936 | 09/17/07 | Kamran Group, LLC | Namco Capital Group, Inc | Darioush Soleimani | 100 | 1,000,000.00 |
| 9/10/2007 | $650,000.00 | 20072133956 | 09/17/07 | Kamran Group, LLC | Namco Capital Group, Inc | Mahmoud Fatoorechi and Soussan Hashemi Trustees of Fatorechi-Hashemi family trust | 100 | 500,000.00 |
| 9/9/2007 | $450,000.00 | 20072133932 | 09/17/07 | Kamran Group, LLC | Namco Capital Group, Inc | Farmo Trust dated 01/01/07 | 100 | 450,000.00 |
| Total | $11,000,000.00 | | | | | | | $9,646,999.00 |
| 6/16/2006 | $4,500,000.00 | | | Tranmar properties LLC | United Commercial Bank | | 100 | 4,550,000.00 |
| 1st on properties | $15,500,000.00 | | | | | | | |
| 10/7/2008 | $3,000,000.00 | 20081817990 | 10/10/08 | Tranmar properties LLC | Jade Enterprises LLC, David Taban Regal Group, LLC Taban Family Trust Berkley Capital LLC | | 100 | 3,000,000.00 |
| | $1,700,000.00 | | | Pasadena Athletic Club, Inc | Namco Capital Group, Inc | | 100 | 1,700,000.00 |
| 2nd on properties | 4,700,000.00 | | | | | Total Owed 1st and 2nd | | $18,896,999.00 |

SCHEDULE 2
NAMCO NOTE

PROMISSORY NOTE

Los Angeles, California

Dated: September 22, 2006

$4,300,000.00

For value received, the undersigned (sometimes referred to herein as "NAMCO") promises to pay, without notice, demand, grace, deduction or offset, to David Golkar ("Holder"), in lawful money of the United States, in immediately available funds, the principal sum of Four Million Three Hundred Thousand and 00/100 Dollars ($4,300,000.00), together with interest thereon upon 30 days advance notice (the "Maturity Date"), at 530 Vick Place, Beverly Hills, CA 90210 or such other place as the Holder hereof may designate. The Maturity Date shall be subject to extension as set forth below.

The outstanding principal amount of this Note shall bear interest at the rate of eight Percent (8%) per annum calculated on a 360/360 basis; that is by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the number of days the principal balance is outstanding (based on 30 days a month). Interest only on the unpaid principal amount outstanding under this Note from time to time shall be payable, in arrears, on the first day of each calendar month beginning October 1, 2006 without notice, grace, demand, deduction or offset, until and including the Maturity Date, on which date, the principal amount hereof, together with all accrued and unpaid interest payable by the undersigned hereunder, shall be due and payable.

Notwithstanding any other provision of this Note, either party may notify the other for the pay off in writing at least 30 days before the undersigned shall become obligated to repay the principal sum of this Note. This provision applies to the Maturity Date as well.

In the event of any misrepresentation, breach of warranty, or other failure by the undersigned or any party to perform its obligations under this Note, all unpaid principal and interest under this Note shall, at Holder's sole discretion, be immediately due and payable, without demand, notice or presentment.

No amendment, modification, or waiver of any provision of this Note, nor consent to any departure by the undersigned therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by the Holder, and then such waiver of consent shall be effective only in the specific instance and for the specific purpose for which given.

The options, powers and rights of the Holder specified herein are in addition to, and not in lieu of, those authorized by applicable law.

Notwithstanding anything set forth in this Note, no interest payment or interest rate charged hereunder shall exceed the maximum amount or rate permitted under applicable law.

The undersigned agrees to pay all costs and expenses incurred or payable by Holder in connection with any litigation brought for the enforcement or collection of this Note, including court costs and attorneys' fees and costs actually incurred.

To the extent permitted by applicable law, the undersigned waives notice of protest, presentment, demand and any other notice in connection with the collection of this Note.

Exhibit CC-35

NAMCO-4826

 

This Note shall be prepayable upon no less than thirty (30) days written notice to Holder.

This Note shall be binding on the undersigned, its successors and assigns and shall inure to the benefit of Holder, its successors and assigns.

Any payment hereunder which is required to be made on a day which is not a business day in the City of Los Angeles shall be payable on the next immediately succeeding business day and such additional time shall be included in the computation of interest.

This Note shall be governed by, and construed in accordance with, the laws of the State of California, and subject to such laws, shall be construed in accordance with the Heter Iskoh policies observed by the undersigned.

This Note replaces and supersedes all prior instruments, documents and agreements which evidence the indebtedness represented by this Note, all of which prior instruments, documents and agreements, shall be null and void and of no force or effect.

Namco Capital Group, Inc.

_____

Ezri Namvar-President



Exhibit CC-36

NAMCO-4827

# EXHIBIT DD

**From:**    DAVID GOLKAR [dgolkar@sbcglobal.net]

**Sent:**    Thursday, September 08, 2005 1:50 PM

**To:**    Ezri Namvar

**Subject:** Various Properties

Dear Ezri

As I am working on various deals, my understanding is following:
You are the financial partner, that provides equity and debth if necessary
I am the development partner, will find oppertunities and take them through entitlement and
build them ( Specially Pasedena and LA Deal. I now have a building company that can do these
projects). You will get the preff. on the money, your money comes out  first and after expences,
we will split the profit 50-50.
We should have a partnership agreement for each transaction, or one master agreement that we
can add each project to it. You may already have one, hopefully it is not very complicated .I like
to get together with you tomorrow any time after 2Pm. if your schedule permits. Have Denise
call my cell phone after 3 Pm. today. I will be on the road the rest of the day and tomorrow untill
2Pm.

David

Exhibit DD-37

NAMCO-3388

# EXHIBIT EE

**CEC**

## COMMERCE ESCROW COMPANY

1545 WILSHIRE BLVD., 6th FLOOR, LOS ANGELES, CA 90017
TEL.: (213) 484-0855 / (310) 284-5700 / (888) 732-6723 / FAX: (213) 484-0417

COMMERCE ESCROW COMPANY IS LICENSED BY THE DEPARTMENT OF CORPORATIONS
STATE OF CALIFORNIA, LICENSE # 963 0384

Via Messenger

July 27, 2009

Ezra Brutzkus Gubner LLP
Attn: Robyn B. Sokol, Esq.
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

### Declaration Pursuant to Evidence Code Sections 1560-1561

Re:   Escrow No.:   08-20307-LC
      Case No.:     2:08-bk-32333-BR
      Debtor:       Namco Capital Group, Inc.

To Whom It May Concern:

I, Mark R. Minsky, declare:

1.      I am a duly authorized custodian of the records of Commerce Escrow Company, a California Corporation, and I have authority to certify its records.

2.      This office was served with a **Subpoena in a Case Under the Bankruptcy Code**, issued on July 23, 2009, out of the United States Bankruptcy Court Central District of California, in the above referenced action calling for all records constituting the escrow files and records contained therein of Escrow No. 08-20307-LC.

3.      The accompanying copies are true copies of all of the records described in said subpoena which are in my possession as custodian of records of Commerce Escrow Company. Said records were prepared by personnel of Commerce Escrow Company, acting under the control of said personnel, in the ordinary course of business at or near the time of the acts, conditions or events recorded therein.

**Executed on**  7-27-09

**I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

Commerce Escrow Company

Mark R. Minsky, Vice President
Acting as Custodian of the records

Our witness fees are in the amounts shown below, pursuant to Evidence Code Section 1563(b).
**Please remit our witness fees promptly.**

| | | |
|---|---|---|
| File Retrieval Fee (1 file @ $25.00/file) | | $25.00 |
| Copying Service – (Rounded to nearest quarter hour @ $6.00/quarter hour) | | |
| Page Numbering/Copying | 2.00 hours | $48.00 |
| Photocopy Fees: | 562 pages Legal Size @ $0.10/Page | $56.20 |
| **Total Fees** | | **$129.20** |

**Please forward your remittance immediately in compliance with Evidence Code 1563 payable to Commerce Escrow Company, Attn: Danielle Graf. Please include a copy of this letter with your remittance. Should you have any questions, please contact Danielle Graf at (213) 484-0855.**

cc:   Stephen Davis, Esq.        sdavis@ddesq.com

Exhibit EE-38

NAMCO-4510



**ROX
CONSULTING
GROUP, INC.**
575 Anton Blvd, Suite #820,
Costa Mesa, CA 92626

- Engineering
- Planning
- Surveying

- Construction Management
- Geotechnical Services
- Environmental

# FAX

| | |
|---|---|
| Date: | 10/30/08 |
| Number of pages including cover sheet: | 3 |

**To:**
Abraham Yermian

Phone: 310-444-7404
Fax phone: 310-444-1801
CC:

**From:**
David Golkar
Komal Desai

Phone: (949)502-8100
Fax phone: (949)502-8111

**REMARKS:** ☒ Urgent ☒ For your review ☐ Reply ASAP ☐ Please comment

RE: Please deposit the Original Promissory note & deed of trust into the Escrow, so that upon closing we can pay without any delays. Thank you

Regards,

Komal Desai

CASE NO: Adv. No. 2:10-ap-01244-BR
KAMRAN PASADENA GROUP, et al.
VS BRADLEY D. SHARP, ETC. et al.
110
DEFENDANT'S EXHIBIT
DATE ___ IDEN.
DATE ___ EVID.
Exhibit EE 36
BY

⑦

## BENEFICIARIES DEMAND
### Original Note $5,000,000.00

TO:

Commerce Escrow Company
4590 MacArthur Blvd., Suite 295
Newport Beach, CA 92660
Telephone: (949) 870-3302
Telecopier: (949) 870-3398

Escrow No. 08-20307

Escrow Officer: Luisa Chi

This Beneficiaries Demand is made this 24th day of October 2008 by the undersigned with respect to the undersigned's interest in that certain Deed of Trust under which Woodman Partners, LLC, a California limited liability company, is the trustee, dated June 29, 2007, and Namco Capital Group, Inc., a California corporation, is the original beneficiary, to which the undersigned is the holder of a 16% by Assignment recorded November 7, 2007, as Instrument No. 20072498569 of official records of Los Angeles County, California as it pertains to that certain real property, described on Exhibit "A" attached hereto ("Property").

At such time as Commerce Escrow Company ("Escrow Holder") holds the amount of Seven Hundred Eighty Thousand Dollars ($780,000.00) in immediately available funds, for unconditional and immediate release to the undersigned, Woodman Partners, LLC, as trustee, is hereby immediately instructed to reconvey to Kamran Group, LLC, a California limited liability company, the trustor under the referenced Deed of Trust, and current holder of fee simple title to the Property, all of the undersigned's interest under the Deed of Trust. Immediately upon the subject reconveyance, Escrow Holder is instructed to transmit the payoff amount to the undersigned at the address specified below and deliver the original promissory note secured by the referenced Deed of Trust (delivered herewith) to the Trustor.

This Beneficiaries Demand shall remain in full force and effect until November 1, 2008.

Sawtelle Properties, LLC

By: _____
Its: Managing Member

JACK YERMIAN
Sawtelle Properties, LLC

Exhibit "A" - 11
C:\Documents and Settings\dgolkar.ROX_CGI\Local Settings\Temporary Internet
Files\Content.IE5\6L7D9ISU\Agreement%20and%20Joint%20Escrow%20Instructions%20PTWWW%20v2[1].doc



Exhibit EE-40

## BENEFICIARIES DEMAND
### Original Note $5,000,000.00

TO:

| | |
|---|---|
| Commerce Escrow Company | Escrow No. 08-20307 |
| 4590 MacArthur Blvd., Suite 295 | |
| Newport Beach, CA 92660 | Escrow Officer: Luisa Chi |
| Telephone: (949) 870-3302 | |
| Telecopier: (949) 870-3398 | |

This Beneficiaries Demand is made this 24th day of October 2008 by the undersigned with respect to the undersigned's interest in that certain Deed of Trust under which Woodman Partners, LLC, a California limited liability company, is the trustee, dated June 29, 2007, and Namco Capital Group, Inc., a California corporation, is the original beneficiary, to which the undersigned is the holder of a 8% by Assignment recorded November 7, 2007, as Instrument No. 20072498568 of official records of Los Angeles County, California as it pertains to that certain real property, described on Exhibit "A" attached hereto ("Property"). *$410,000.— ✱*

At such time as Commerce Escrow Company ("Escrow Holder") holds the amount of Four Hundred Thousand Dollars ($400,000.00) in immediately available funds, for unconditional and immediate release to the undersigned, Woodman Partners, LLC, as trustee, is hereby immediately instructed to reconvey to Kamran Group, LLC, a California limited liability company, the trustor under the referenced Deed of Trust, and current holder of fee simple title to the Property, all of the undersigned's interest under the Deed of Trust. Immediately upon the subject reconveyance, Escrow Holder is instructed to transmit the payoff amount to the undersigned at the address specified below and deliver the original promissory note secured by the referenced Deed of Trust (delivered herewith) to the Trustor.

This Beneficiaries Demand shall remain in full force and effect until November 1, 2008.

Ashland Properties, LLC

By: _____
Its: _____

✱ See Original Note

Exhibit "A" - 10



Exhibit EE-41

# EXHIBIT FF

**From:**    DAVID GOLKAR [dgolkar@sbcglobal.net]

**Sent:**    Tuesday, December 30, 2008 3:54 PM

**Cc:**      Hamid Taba

**Subject:** Pasadena Update

Option 1. We are expected to close by next week due to finalizing our negotiation with the parcel next door to be able to get free and clear title.

Option 2. We have been working on a bridge loan from another source that we could close on or before January 23rd to pay off the note holders only.

Option 3.  We will raise 2.5 million to pay down the notes and carry paper for eight months.

Call me with any questions.

Thank you,
David



Exhibit FF-42                                                    NAMCO-3831

# EXHIBIT GG

c: Walnut & Fairoak, Pasadena - Yahoo! Mail                          http://us.mc830.mail.yahoo.com/mc/showMessage?fid=Inbox&nextMi

YAHOO! MAIL
Classic

Re: Walnut & Fairoak, Pasadena                                       Thursday, November 20, 2008 5:48 PM
From: "dgolkar@sbcglobal.net" <dgolkar@sbcglobal.net>
To: abeyerman@yahoo.com

This escrow was only opened to handle the lien holders and deliver a free and clear title to the new partner.
The property is not being sold
Therefore
No escrow is required
In our side
Hope this clarifies it
Sent via BlackBerry from T-Mobile

From: Abraham Yermian <abeyermian@yahoo.com>
Date: Thu, 20 Nov 2008 15:44:23 -0800 (PST)
To: <dgolkar@sbcglobal.net>
CC: Dariush Soleimani<dariushsol@aol.com>; Jamshid Baharvar<drbaharvar@yahoo.com>; Morteza
Homayounjam<mhomayounjam@yahoo.com>; Jack Yermian<jayinvestments@hotmail.com>; Faramarz
Masachi<eofhollywood@aol.com>; Faye Sarafian<fayesarafian@yahoo.com>; Mahmood Fatorechi<fatorechi@aol.com>
Subject: Re: Walnut & Fairoak, Pasadena
Mr. Golkar,
Checking with Escrow, The Escrow officer ( Louisa Chi) has NO knowledge of this Transaction - There is No Contract, No
money In Escrow, Apparently knows nothing.

Escrow Tel # (949) 8703302

We are very confused. Please clarify ASAP.
Thanks.

Abraham Yermian, President
1st Trust Deed Mortgage Co.
Phone: (310) 444-7404 Fax (310) 444-1801
11022 Santa Monica Blvd. Suite 280
Los Angeles, CA 90025

— On Thu, 11/20/08, dgolkar@sbcglobal.net <dgolkar@sbcglobal.net> wrote:

From: dgolkar@sbcglobal.net <dgolkar@sbcglobal.net>
Subject: Re: Walnut & Fairoak, Pasadena
To: abeyermian@yahoo.com
Cc: "Dariush Soleimani" <dariushsol@aol.com>, "Jamshid Baharvar" <drbaharvar@yahoo.com>, "Morteza
Homayounjam" <mhomayounjam@yahoo.com>, "Faye Sarafian" <fayesarafian@yahoo.com>, "Jack Yermian"
<jayinvestments@hotmail.com>, "Faramarz Masachi" <eofhollywood@aol.com>
Date: Thursday, November 20, 2008, 2:33 PM

We are working to close our deal by tomorrow and funding by early next week
As part of closing we must have every ones. Deed and promissery notes negociated and finalized and in escrow prior
to the payments released

My attorny is working with some of you to finalize but we may still be short that we need to work out
I am happy to announce that after over 90 days in our side that the deal is getting concluded
pending the resolution of all note holders and I need every ones cooperation to finally close this transaction
I appreciate your paitience and understanding
If you have any question
Please call me
Sent via BlackBerry from T-Mobile

From: Abraham Yermian <abeyermian@yahoo.com>
Date: Thu, 20 Nov 2008 12:04:29 -0800 (PST)
To: <dgolkar@sbcglobal.net>
CC: Dariush Soleimani<dariushsol@aol.com>; Jamshid Baharvar<drbaharvar@yahoo.com>; Morteza
Homayounjam<mhomayounjam@yahoo.com>; Faye Sarafian<fayesarafian@yahoo.com>; Jack
Yermian<jayinvestments@hotmail.com>; Faramarz Masachi<eofhollywood@aol.com>                    1-5

Exhibit GG-43

From: dgolkar@sbcglobal.net <dgolkar@sbcglobal.net>
Subject: Re: Walnut & Fairoak, Pasadena
To: abeyermian@yahoo.com
Date: Monday, November 17, 2008, 3:00 PM

We are working day and night to get it done
I think it is extremely a bad idea to take such an action since every one is in the first position and we are so
close to get our deal done
It is in every ones best interst to allow this deal happens without any distraction
Whatever happens to EZRI will not impact this deal
So please be patient
We are in final stretches
Thank u for your understanding
Sent via BlackBerry from T-Mobile

_____

From: Abraham Yermian <abeyermian@yahoo.com>
Date: Mon, 17 Nov 2008 11:04:15 -0800 (PST)
To: <dgolkar@sbcglobal.net>
CC: Dariush Soleimani<dariushsol@aol.com>; Jamshid Baharvar<drbaharvar@yahoo.com>; Morteza
Homayounjam<mhomayounjam@yahoo.com>; Faye Sarafian<fayesarafian@yahoo.com>; Jack
Yermian<jayinvestments@hotmail.com>
Subject: Re: Walnut & Fairoak, Pasadena
**Mr. Golkar,**
Thank you for your Email.
As a courtesy to you, and a heads up, our group is all set up to
to initiate the foreclosure & related law suites on Monday November 24, 2008, if your DEAL does not go
through (for any reason) on or before Friday November 21, 2008.
Please advise.
Thank you.

Abraham Yermian, President
*1st Trust Deed Mortgage Co.*
Phone: (310) 444-7404 Fax: (310) 444-1801
11022 Santa Monica Blvd. Suite 280
Los Angeles, CA 90025

— On Thu, 11/13/08, DAVID GOLKAR *<dgolkar@sbcglobal.net>* wrote:

From: DAVID GOLKAR <dgolkar@sbcglobal.net>
Subject: Re: Walnut & Fairoak, Pasadena
To: abeyermian@yahoo.com
Cc: "Morteza Homayounjam" <mhomayounjam@yahoo.com>, "Dariush Soleimani"
<dariushsol@aol.com>, "Jack Yermian" <jayinvestments@hotmail.com>, drbaharvar@yahoo.com,
fayesarafian@yahoo.com
Date: Thursday, November 13, 2008, 4:34 PM


Dear Mr. Yermian

Exhibit GG-44

> Please let us know the Status of your Transaction with Ezri
> today.
> Thank you.
> Abraham Yermian
>
>
> Abraham Yermian, President
> 1st Trust Deed Mortgage Co.
> Phone: (310) 444-7404 Fax: (310) 444-1801
> 11022 Santa Monica Blvd. Suite 280
> Los Angeles, CA 90025

1-7

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1900 Avenue of the Stars, Seventh Floor, Los Angeles, California  90067-4308

A true and correct copy of the foregoing document described as ***Reply to Plaintiff Kamran Pasadena Group, Inc. and Kamran Group, LLC's Opposition to Defendant Bradley D. Sharp, Chapter 11 Trustee of Namco Capital Group, Inc.'s Motion for Summary Judgment, Or, in the Alternative, Partial Summary Adjudication*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***February 8, 2012,*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***February 8, 2012,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

*Sent By Overnight Mail*:
Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***February 8, 2012,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Dugan P. Kelley     dugan@christmankelley.com
Matthew M. Clarke     matt@christmankelley.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 8, 2012 | Claudean Brandon | /s/ Claudean Brandon |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                   **F 9013-3.1.PROOF.SERVICE**

**I.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING**:

- Matthew M Clarke    mclarke@cappellonoel.com
- Marc S Cohen    mcohen@kayescholer.com
- Ashleigh A Danker    adanker@kayescholer.com
- Joseph A Eisenberg    jae@jmbm.com
- Teresa Y Hillery    teresa.hillery@fnf.com
- Alexis M McGinness    amm@jmbm.com, vr@jmbm.com;fc3@jmbm.com
- Susan I Montgomery    susan@simontgomerylaw.com
- David M Poitras    dpoitras@jmbm.com
- Gregory M Salvato    gsalvato@pmcos.com, calendar@salvatolawoffices.com
- Gregory M Salvato    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com
- Robyn B Sokol    ecf@ebg-law.com, rsokol@ebg-law.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                    **F 9013-3.1.PROOF.SERVICE**